## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **HEALTH DIAGNOSTIC LABORATORY, INC.**, *et al.*, | Case No. 15-[    ] (___) |
| | **(Joint Administration Requested)** |
| Debtors.[1] | |

## MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND CONTINUE TO USE EXISTING CASH MANAGEMENT SYSTEM; (II) GRANTING ADMINISTRATIVE EXPENSE STATUS FOR INTERCOMPANY CLAIMS; AND (III) WAIVING THE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by

their undersigned counsel, hereby move the Court for the entry of an order, the proposed form of

which is attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 345(b),

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and Integrated Health Leaders, LLC (7832).

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

363(c)(1), and 364 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), that (i) authorizes the Debtors to maintain existing bank accounts and business forms and to continue to use their existing cash management system; (ii) granting administrative expense priority to intercompany claims, and (iii) waiving the requirements of section 345(b) of the Bankruptcy Code. In support of this Motion, the Debtors rely on the Declaration of Martin McGahan in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "McGahan Declaration"). In further support of this Motion, the Debtors submit as follows:

## I.    Jurisdiction, Venue and Predicates for Relief

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. §157 (b)(2).

2.      The predicates for the relief requested herein are sections 105(a), 345, 363(c)(1) and 364 of the Bankruptcy Code.

## II.    Background

3.      On the date hereof (the "Petition Date"), each of the Debtors filed with the Court its respective voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No creditors' committee has been appointed in these cases. No trustee or examiner has been appointed.

5.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases.

6.      A full description of the Debtors' business operations, corporate structures, capital structures, and reasons for commencing these cases is set forth in full in the McGahan Declaration, which was filed contemporaneously with this Motion and which is incorporated herein by reference.  Additional facts in support of the specific relief sought herein are set forth below.

### III.      Relief Requested

7.      By this Motion, the Debtors seek entry of the Order (i) authorizing the Debtors to maintain existing bank accounts (and, together with any accounts opened after the Petition Date, the "Bank Accounts") located at various banks and financial institutions (collectively, the "Banks") and business forms and continue to use their existing cash management system (the "Cash Management System"), (ii) granting administrative expense priority to intercompany claims, and (iii) waiving the requirements of section 345(b) of the Bankruptcy Code.

### A.      The Debtors' Bank Accounts and Cash Management System

8.      As of the Petition Date, in the ordinary course of business, the Debtors utilize the Cash Management System to collect, concentrate, and disburse funds generated by the Debtors' operations.  In order to lessen the disruption caused by the bankruptcy filings and maximize the value of their estates in these chapter 11 proceedings, it is vital for the Debtors that they maintain their system of managing cash.

9.      As part of their Cash Management System, the Debtors maintain separate Bank Accounts (each, an "Account" and collectively, the "Accounts") that are held by Debtors Health Diagnostic Laboratory, Inc. ("HDL") and Central Medical Laboratory, LLC ("CML").

10.     Specifically, as of the Petition Date and in the ordinary course of business, HDL maintains eight (8) separate Accounts, including six (6) Accounts at Branch Banking & Trust

3

Company ("BB&T"), one (1) Account at SunTrust Bank ("Sun Trust") and one (1) Account at

Fulton Bank ("Fulton").  These Accounts are comprised of four separate categories of accounts:

> a.  Operational Account:  BB&T Account No. 0843[2] is an operating account (the "Operating Account").  Corporate and administrative operating expenses are paid out of the Operating Account.  The Operating Account also serves as the ultimate collection point for all funds moved in and through the BB&T Accounts held by HDL.

> b.  Funding Accounts:  The Operating Account is funded by (i) BB&T Account No. 1417, where direct payments from clients, covering corporate wellness clients and physician practices, are deposited; (ii) BB&T Account No. 0886, where Medicare/Medicaid payments are deposited; (iii) BB&T Account No. 0878, where insurance provider payments are deposited; and (iv) BB&T Account No. 1997, where direct payments from patients are deposited (collectively, the "Funding Accounts").  The Funding Accounts are zero balance accounts, which means that funds in those accounts are automatically swept into the Operating Account on a daily basis.

> c.  Disbursement Account:  BB&T Account No. 0851 is a payroll account, out of which funds are drafted bi-weekly by a third-party payroll service. This Account is funded by the Operating Account and is a zero balance account.

> d.  Independent Accounts:  HDL also maintains (i) SunTrust Account No. 7927, which is a general account, and (ii) Fulton Account No. 4770, which holds a security deposit that is pledged to secure HDL's performance under the headquarters lease.

11.    In addition, as of the Petition Date and in the ordinary course of business, CML

maintains Account No. 3474, which is a general operating account.  Account No. 3474 receives

funding from the other Accounts and is used for CML's general operating expenses, including

bi-weekly payroll for CML's employees, in the ordinary course of business.

12.    A list of the Debtors' Accounts is attached hereto as Exhibit B.  Each of the

Accounts are maintained at stable financial institutions.

---

[2]    For ease of reference, the Motion identifies the Accounts by the last four digits of the Account numbers. The complete Account numbers are shown on Exhibit B annexed hereto.

13.     The Cash Management System maintained by the Debtors has been designed (i) to provide an efficient method of collecting, transferring and disbursing funds; (ii) to establish procedures and controls necessary to account for funds in an accurate manner; and (iii) to facilitate meeting the Debtors' financial obligations.  The Debtors maintain current and accurate accounting records of daily cash transactions, and submit that preservation of their Cash Management System will prevent undue disruption to the Debtors' business operations, while protecting the Debtors' cash for the benefit of their estates.  All funds received or disbursed for each company are properly reflected on that Debtors' books and records.

### B.      The Debtors' Existing Business Forms

14.     In the ordinary course of their business, the Debtors use a variety of checks and other pre-printed business forms (collectively, the "Business Forms").  Because of the nature and scope of the Debtors' business operations and the number of suppliers of goods and services with whom the Debtors transact business on a regular basis, it is important that the Debtors be permitted to continue to use their Business Forms without alteration or change.

### IV.      Basis for Relief Requested

15.     The Office of the United States Trustee (the "U.S. Trustee") has established operating guidelines for debtors-in-possession to facilitate the administration of chapter 11 cases (the "U.S. Trustee Guidelines").  These guidelines provide that chapter 11 debtors must: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish a single debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) acquire new checks for all debtor-in-possession accounts which bear the designation "Debtor-In-Possession," the bankruptcy case number, and the type of account.  For the reasons set forth herein, the Debtors submit that it is appropriate for the Court to grant the Debtors a

5

waiver of the requirements of the U.S. Trustee' Guidelines to the extent they prohibit the Debtors

from continuing to utilize their existing Cash Management System.

### A.   The Debtors Should Be Granted Authority to Maintain Their Existing Bank Accounts

16.   The Debtors seek a waiver of the requirements of the U.S. Trustee Guidelines to

the extent they require that the Debtors open new bank accounts and close their existing Bank

Accounts.  Such requirements likely would cause substantial disruption in the Debtors' business

and would impair the Debtors' funding alternatives and reorganization efforts.  As explained

herein, the Debtors' Bank Accounts are critical elements of an established Cash Management

System that the Debtors must maintain in order to ensure the uninterrupted conduct of their

businesses.  Thus, to ensure as smooth a transition into chapter 11 as possible, the Debtors

submit that it is imperative that they be permitted to continue to maintain their existing bank

Accounts. [3]

17.   Accordingly, the Debtors request that their existing Bank Accounts be deemed

debtor-in-possession accounts and that the maintenance and continued use of such accounts, in

the same manner and with the same account numbers, styles, and document forms as those

employed during the prepetition period, be authorized.

18.   Bankruptcy courts in Virginia have recognized that, in complex chapter 11 cases,

strict enforcement of the requirement that a debtor in possession close its bank accounts and

open new bank accounts in accordance with the U.S. Trustee Guidelines does not serve the

rehabilitative purpose of chapter 11.  Accordingly, bankruptcy courts in Virginia have waived

this requirement and replaced it with more effective procedures similar to those requested by this

---

[3]   The Debtors, however, reserve their rights to close the prepetition Accounts and open new accounts as may be necessary in the Debtors' business discretion and in the ordinary course.

Motion.  *See, e.g.*, *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10,

2014); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov.

14, 2012); *In re RoomStore, Inc.*, Case No. 11-37790 (DOT) (Bankr. E.D. Va. Dec. 14, 2011); *In*

*re Workflow Mgmt., Inc.*, Case No. 10-74617 (SCS) (Bankr. E.D. Va. Sept. 30, 2010); *In re Bear*

*Island Paper Co., L.L.C.*, Case No. 10-31202 (DOT) (Bankr. E.D. Va. Feb. 25, 2010); *In re*

*Movie Gallery, Inc.*, Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); *In re S & K*

*Famous Brands, Inc.*, Case No. 09-30805 (KRH) (Bankr. E.D. Va. Feb. 9, 2009); *In re Canal*

*Corp. f/k/a Chesapeake Corp.*, Case No. 08-36642 (DOT) (Bankr. E.D. Va. Dec. 30, 2008); *In re*

*LandAmerica Fin. Grp., Inc.*, Case No. 08-35994 (KRH) (Bankr. E.D. Va. Dec. 2, 2008); *In re*

*Circuit City Stores, Inc.*, Case No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008); *In re*

*Movie Gallery, Inc.*, Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 17, 2007); *In re The Rowe*

*Cos.*, Case No. 06-11142 (SSM) (Bankr. E.D. Va. Sept. 20, 2006); *In re US Airways, Inc.*, Case

No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 14, 2004).  Similar authorization is appropriate in

these chapter 11 cases.

   **B.**     **The Continued Use of the Debtors' Cash Management System Is**
              **Essential to the Debtors' Ongoing Operations and Restructuring**
              **Efforts**

   19.     Furthermore, the Debtors hereby seek authority to continue using their current

centralized, integrated Cash Management System.  The Debtors' Cash Management System

provides significant benefits to the Debtors, including the ability to (a) control corporate funds

centrally, (b) ensure availability of funds when necessary, and (c) reduce administrative expenses

by enabling the movement of funds among relevant entities.  Accordingly, it is essential that the

Debtors be permitted to continue to consolidate the management of their cash and transfer

monies from entity to entity as necessary and appropriate to continue the operation of their businesses.

20.    Moreover, it would be very time consuming, difficult and costly for the Debtors to establish an entirely new system of accounts and a new cash management system, and doing so would disrupt the Debtors' relationships with their key customers and suppliers.  For example, if the Debtors were required to open separate accounts as debtors in possession and rearrange their Cash Management System, it would necessitate closing and re-opening at least eight bank accounts.    The attendant delays from opening new accounts, revising cash management procedures and instructing customers and other payers to redirect payments would negatively impact the Debtors' ability to operate their businesses while pursuing these arrangements.  Under the circumstances, maintenance of the Cash Management System is essential and clearly in the best interest of the Debtors' estates.  Furthermore, preserving the "business as usual" atmosphere and avoiding the unnecessary and costly distractions that would inevitably be associated with any substantial disruption in the Cash Management System will facilitate the Debtors' efforts in chapter 11.

21.    The Debtors' Cash Management System includes the necessary accounting controls to enable the Debtors, as well as other interested parties in these cases, to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable.  The Debtors will continue to maintain detailed records reflecting all transfers of funds.

22.    Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a

debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *See In re Dornier Aviation (North Am.), Inc.*, Case Nos. 02-82003 (SSM) 02-82004 (SSM), 2002 WL 31999222, at *7–8 (Bankr. E.D. Va. Dec. 18, 2002) (citing *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992)); *see also Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtors seek authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, disbursement and investment of cash pursuant to their Cash Management System described above.

23. The Court may also exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Debtors' Cash Management System without interruption is vital to the Debtors' survival. In particular, an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994); *see also In re US Airways, Inc.*, Case No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 14, 2004); *In re NTELOS, Inc.*, Case No. 03-32094 (DOT) (Bankr.

E.D. Va. Mar. 4, 2003).  The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."  *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

24.     The Cash Management System is the complex mechanism whereby the Debtors are able to transfer their revenue toward the payment of their obligations and without which the Debtors' operations would be severely disrupted.  It is well within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System.

25.     As noted, these procedures are similar to those employed by comparable corporate enterprises.  Moreover, the relief requested herein to maintain the Debtors' existing Cash Management System is routinely granted in chapter 11 cases by bankruptcy courts in Virginia.  *See, e.g.*, *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012); *In re RoomStore, Inc.*, Case No. 11-37790 (DOT) (Bankr. E.D. Va. Dec. 14, 2011); *In re Workflow Mgmt., Inc.*, Case No. 10-74617 (SCS) (Bankr. E.D. Va. Sept. 30, 2010); *In re Bear Island Paper Co., L.L.C.*, Case No. 10-31202 (DOT) (Bankr. E.D. Va. Feb. 25, 2010); *In re Movie Gallery, Inc.*, Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); *In re S & K Famous Brands, Inc.*, Case No. 09-30805 (KRH) (Bankr. E.D. Va. Feb. 9, 2009); *In re Canal Corp. f/k/a Chesapeake Corp.*, Case No. 08-36642 (DOT) (Bankr. E.D. Va. Dec. 30, 2008); *In re LandAmerica Fin. Grp., Inc.*, Case No. 08-35994 (KRH) (Bankr. E.D. Va. Dec. 2, 2008); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008); *In re Movie Gallery, Inc.*, Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 17, 2007); *In re The Rowe*

*Cos.*, Case No. 06-11142 (SSM) (Bankr. E.D. Va. Sept. 20, 2006); *In re US Airways, Inc.*, Case

No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 14, 2004).

      C.      **Any Post-Petition Intercompany Claims Should Be Accorded
Administrative Expense Priority**

26.      As mentioned above, the Debtors can ascertain, trace and account for all

transactions in the Cash Management System and will continue to do so post-petition.  To ensure

that each individual Debtor will not fund, at the expense of its creditors, the operations of another

entity, the Debtors respectfully request that, pursuant to sections 364(a), 503(b) and 507(a)(2) of

the Bankruptcy Code, that post-petition intercompany claims (if any) against one entity by

another entity, as a result of ordinary course transactions through the Cash Management System,

be accorded administrative expense status priority.

27.      The Bankruptcy Code provides a debtor in possession the freedom to obtain

unsecured credit and incur unsecured debt in the ordinary course of business allowable under

section 503(b)(1) of the Bankruptcy Code as an administrative expense without notice and a

hearing.  11 U.S.C. § 364(a); *see also Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura

Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996); *In re Lite Coal Mining Co.*, 122 B.R. 692, 695

(W.D. Va. 1990).  Moreover, bankruptcy courts in Virginia have granted administrative expense

priority to intercompany claims.  *See, e.g.*, *In re James River Coal Co.*, No. 14-31848 (KRH)

(Bankr. E.D. Va. Apr. 10, 2014); *In re Movie Gallery, Inc.,* Case No. 10-30696 (DOT) (Bankr.

E.D. Va. Feb. 3, 2010); *In re Canal Corp. f/k/a Chesapeake Corp.*, Case No. 08-36642 (DOT),

(Bankr. E.D. Va. Dec. 30, 2008); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (KRH)

(Bankr. E.D. Va. Nov. 10, 2008); *In re Movie Gallery, Inc.*, Case No. 07-33849 (DOT) (Bankr.

E.D. Va. Oct. 17, 2007).

**D.     The Debtors Should Be Authorized to Use Their Existing Business
Forms**

28.     As described above, in the ordinary course of business, the Debtors use numerous

varieties of Business Forms.   To avoid disruption of their Cash Management System and

unnecessary expense, the Debtors request that they be authorized to continue to use their

Business Forms substantially in the forms existing immediately before the Petition Date, without

reference to their status as debtors-in-possession.

29.     In the absence of such relief, the estates will be required to bear a potentially

significant administrative burden and expense, which the Debtors respectfully submit is

unwarranted and likely will have little or no attendant benefit to their estates or creditors under

the facts of these cases.

30.     Because parties doing business with the Debtors undoubtedly will be aware of the

Debtors' status as debtors-in-possession, changing business forms would be unnecessary and

unduly burdensome.   In other large cases, courts in Virginia have allowed debtors to use their

prepetition business forms without the "debtors in possession" label.   *See, e.g.*, *In re James River

Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014); *In re AMF Bowling Worldwide,

Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012); *In re Workflow Mgmt. Inc.*,

Case No. 10-74617 (SCS) (Bankr. E.D. Va. Sept. 30, 2010); *In re Movie Gallery, Inc.*, Case No.

07-33849 (DOT) (Bankr. E.D. Va. Oct. 17, 2007); *In re Rowe Cos.*, Case No. 06-11142 (SSM)

(Bankr. E.D. Va. Sept. 20, 2006).

**E.     The Banks Should Be Authorized to Continue to Treat, Service
and Administer the Bank Accounts in the Ordinary Course of
Business**

31.     The U.S. Trustee Guidelines require that all receipts and all disbursements of

estate funds must be made by check with a notation representing the reason for the disbursement.

12

Accordingly, the Debtors request that the Court grant relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.

32.     Specifically, the Debtors seek entry of an order granting the Banks authority to continue to treat, service and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and in the usual and ordinary course, and to receive, process and honor and pay any and all postpetition checks, drafts, wires or automated clearing house transfers  ("ACH Transfers") drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent the Debtors have good funds standing to their credit with such Bank.

33.     Notwithstanding anything to the contrary in any other order of this Court, the Debtors request that the Banks be authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH Transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date.  Pursuant to the relief requested in this Motion, the Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

34.     The Debtors further request that any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any

Debtor pursuant to a "midnight deadline" or otherwise, be deemed to be paid prepetition, whether or not actually debited from such Bank Account prepetition.

**F.      The Deposit and Investment Requirements of Section 345(b) of the Bankruptcy Code Should Be Waived**

35.      Under section 345(a) of the Bankruptcy Code, debtors are authorized to deposit or invest the money of a bankruptcy estate in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  To the extent such deposits or investments are not "insured or guaranteed by the United States or by a department, agent or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires that a debtor obtain from the entity with which the money is deposited (i) a bond in favor of the United States secured by the undertaking of an adequate corporate surety, or (ii) a deposit of certain governmental securities.  11 U.S.C. § 345(b).

36.      Section 345(b) of the Bankruptcy Code also provides that it is within the Court's discretion to extend or waive these investment requirements "for cause."  11 U.S.C. § 345(b); see also 140 Cong. Rec. H10752-01 (October 4, 1995) (section 345(b) investment guidelines may be "*wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, [but] can work to needlessly handcuff larger, more sophisticated debtors.*") (emphasis added).   In determining whether "cause" is present, courts consider a "totality of the circumstances" test utilizing the following factors:

   (a)      The sophistication of the debtor's business;

   (b)      The size of the debtor's business operations;

   (c)      The amount of investments involved;

   (d)      The bank ratings (Moody's and Standard and Poors) of the financial institutions where debtor-in-possession funds are held;

(e)     The complexity of the case;

(f)     The safeguards in place within the debtor's own business of insuring the safety of the funds;

(g)     The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(h)     The benefit to the debtor;

(i)     The harm, if any, to the estate; and

(j)     The reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (citations omitted).

37.    Here, cause exists to grant a waiver of the requirements of section 345(b) of the Bankruptcy Code for several reasons.  First, the Accounts are held at large institutions with strong bank ratings.  And second, most of the Debtors' Accounts maintain little or no balances.  Therefore, the Court may grant a waiver of the section 345(b) requirement.

### V.    Necessity for Immediate Relief

38.    Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ."  If the Debtors are not permitted to continue to use their Cash Management System in its current form, it would cause immediate and irreparable harm by causing operational chaos, disabling the Debtors from paying for goods and services received postpetition or otherwise approved by this Court and disrupting the collection of receivables.  Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003, and the Court should authorize the Debtors' continued use of the Cash Management System.

## VI.    <u>Request for Waiver of Stay</u>

39.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

## VII.    <u>Notice</u>

40.    The Debtors have served notice of this Motion on (a) the U.S. Trustee; (b) all known creditors holding secured claims against the Debtors' estates; (c) those creditors holding the 30 largest unsecured claims against the Debtors' estates on a consolidated basis; and (d) the Banks.

## VIII.    <u>Waiver of Memorandum of Law</u>

41.    The Debtors respectfully request that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

## IX.    <u>No Previous Request</u>

42.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and proper.

DATED: June 7, 2015

Respectfully submitted,

/s/ Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77979)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| In re:<br><br>**HEALTH DIAGNOSTIC LABORATORY, INC.**, *et al.*,<br><br>Debtors.[1] | **Chapter 11**<br><br>**Case No. 15-[    ] (___)**<br><br>**(Joint Administration Requested)** |

**ORDER (I) AUTHORIZING DEBTORS TO MAINTAIN EXISTING
BANK ACCOUNTS AND BUSINESS FORMS AND CONTINUE TO USE
EXISTING CASH MANAGEMENT SYSTEM; (II) GRANTING ADMINISTRATIVE
EXPENSE STATUS FOR INTERCOMPANY CLAIMS; AND (III) WAIVING THE
REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order, pursuant to sections 105(a), 345(b), 363(c)(1), and 364 of the Bankruptcy Code, (i) authorizing the Debtors to maintain existing bank

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and Integrated Health Leaders, LLC (7832).

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors
and Debtors in Possession*

accounts and business forms and continue to use their existing cash management system, (ii) granting administrative expense priority to the Debtors' intercompany claims, and (iii) waiving the requirements of section 345(b) of the Bankruptcy Code; the Court finds that: (a) it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; (d) the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; (e) proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; and (f) upon the record herein, and after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.  Therefore,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby GRANTED.

2.      The Debtors are authorized and empowered, but not directed, to continue to maintain, operate and make transfers under their Cash Management System.

3.      The Debtors are authorized and empowered, but not directed, to continue to maintain the Bank Accounts with the same names and account numbers as existed immediately prior to the chapter 11 cases.

4.      Any requirement to establish separate accounts for tax payments is waived.

5.      The Debtors are authorized to deposit funds in and withdraw funds from the Accounts by all usual means, including, but not limited to, checks, wire transfers, electronic funds transfers, automated clearing house transfers ("ACH Transfers") and other debits, and to otherwise treat the prepetition Accounts for all purposes as debtor in possession accounts.

2

6.     The Debtors are authorized to direct the Banks and the Banks are authorized and directed to pay all obligations in accordance with this or any separate order of this Court.

7.     All Banks with which the Debtors maintain the Accounts are authorized and directed to continue to maintain, service and administer the Accounts.  Notwithstanding anything to the contrary in any other order of this Court, the Banks (a) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date, and whether the Banks believe the payment is or is not authorized by an order of this Court and (b) have no duty to inquire as to whether such payments are authorized by an order of this Court.

8.     The Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

9.     The Debtors are authorized to continue to use their existing Business Forms, including without limitation their existing check stock, which forms shall not be required to include the legend "Debtor in Possession" or other similar legend.

10.     All intercompany claims incurred in the ordinary course of business arising from post-petition intercompany transactions shall be, and hereby are, accorded administrative expense status pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

3

11.     Any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

12.     The Debtors are authorized to open any new bank accounts or close any existing bank accounts as they may deem necessary and appropriate in their sole discretion.

13.     The requirement that the Debtors comply with section 345(b) of the Bankruptcy Code is hereby waived.

14.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

15.     The notice procedures set forth in the Motion are good and sufficient notice and satisfy Bankruptcy Rule 9014 by providing the counterparties with notice and an opportunity to object and be heard at a hearing.

16.     Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule of the Eastern District of Virginia that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

18.     The requirements of Bankruptcy Rule 6003 are satisfied.

19.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

4

Dated:_____, 2015

_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: _____

WE ASK FOR THIS:

/s/ Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Fax:  (804) 788-8218

*Proposed Counsel to the Debtors
and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Henry P. (Toby) Long, III

5

**EXHIBIT B**

**Bank Accounts**

| DEBTOR | BANK ACCOUNT NUMBER | FINANCIAL INSTITUTION | ACCOUNT DESCRIPTION |
|---|---|---|---|
| Health Diagnostic Laboratory, Inc. | 157290843 | BB&T | Operating |
| Health Diagnostic Laboratory, Inc. | 155801417 | BB&T | Funding |
| Health Diagnostic Laboratory, Inc. | 157290878 | BB&T | Funding |
| Health Diagnostic Laboratory, Inc. | 157290886 | BB&T | Funding |
| Health Diagnostic Laboratory, Inc. | 251701997 | BB&T | Funding |
| Health Diagnostic Laboratory, Inc. | 157290851 | BB&T | Payroll |
| Health Diagnostic Laboratory, Inc. | 1000097657927 | Sun Trust | General |
| Health Diagnostic Laboratory, Inc. | 362744770 | Fulton | Security Deposit |
| Central Medical Laboratory, Inc. | 252783474 | BB&T | Operating |