# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>**HEALTH DIAGNOSTIC LABORATORY, INC.,** *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 15-32919 (KRH)<br><br>(Jointly Administered) |

## MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY AN ORDER AUTHORIZING THE DEBTORS TO (I) RETAIN THE ETTIN GROUP, LLC, AND (II) SELL CERTAIN MISCELLANEOUS EQUIPMENT FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned counsel, hereby move the Court for the entry of an order, the proposed form of which is attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), authorizing the Debtors to (i) retain The Ettin Group, LLC ("Ettin") pursuant to the terms of the

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and Integrated Health Leaders, LLC (7832).

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors
and Debtors in Possession*

Auctioneer Agreement (defined below), and (ii) sell certain surplus equipment and machinery (the "Miscellaneous Equipment"), listed on "Exhibit A" to the Auctioneer Agreement and Exhibit C hereto, free and clear of liens, claims and encumbrances.

## I.     Jurisdiction, Venue and Predicates for Relief

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 28 U.S.C. § 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. §157 (b)(2).

2. The predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code.

## II.     Background

### A.     Chapter 11 Cases

3. On June 7, 2015 (the "Petition Date"), each of the Debtors filed with the Court its respective voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 9, 2015, the Court entered an order authorizing the joint administration of these chapter 11 cases [Docket No. 42].

4. No creditors' committee has been appointed in these cases. No trustee or examiner has been appointed.

5. A full description of the Debtors' business operations, corporate structures, capital structures, and reasons for commencing these cases is set forth in full in the Declaration of Martin McGahan in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "McGahan Declaration") [Doc. No. 4]. Additional facts in support of the specific relief sought herein are set forth below.

2

### B.     Facts in Support of the Motion

6.     As set forth in the McGahan Declaration, since at least September 2014, the Debtors have been engaged in the process of implementing strategic initiatives aimed at returning the Debtors to growth and continued profitability.  As part of these efforts, prior to the Petition Date the Debtors determined in their good faith business judgment that the sale of the Miscellaneous Equipment identified on Exhibit A to the Auctioneer Agreement (the "Original Miscellaneous Equipment") would be in the best interest of the Debtors and their stakeholders.

7.     In an effort to maximize the value for the Original Miscellaneous Equipment and other assets, and to sell such property in an efficient and expeditious manner, on or about May 11, 2015, the Debtors entered into the Auctioneer Retention Agreement (the "Auctioneer Agreement") with Ettin to market and sell, including without limitation by conducting online auctions for, such property.  A true and accurate copy of the Auctioneer Agreement is attached hereto as Exhibit B.[2]

8.     The Debtors have recently determined in their good faith business judgment that the sale of the Miscellaneous Equipment identified on Exhibit C (the "Additional Miscellaneous Equipment") would be in the best interest of the Debtors and their stakeholders

9.     Ettin is scheduled to conduct an online public auction for the Miscellaneous Equipment on June 26, 2015 (the "Auction").

10.    Since entering into the Auctioneer Agreement, Ettin actively has marketed the Original Miscellaneous Equipment.  Specifically, since entering into the Auctioneer Agreement, Ettin has spent significant time and effort marketing the Original Miscellaneous Equipment and

---

[2]     The summary of the Auctioneer Agreement described herein is provided for convenience only and is qualified in its entirety by the actual terms of the Auctioneer Agreement.  In addition, reserve amounts have been redacted from the version of the Auctioneer Agreement attached hereto.

advertising the Auction, including personally contacting prospective buyers and publishing advertisements in no less than six online publications that, in the aggregate, have over 50,000 subscribers and/or receive approximately 300,000 "hits" or visitors per month. Ettin also already has set up the website for the Auction.[3] Now that the Additional Miscellaneous Equipment has been identified, Ettin will include the Additional Miscellaneous Equipment in its marketing efforts prior to the Auction.

11. The Debtors and Ettin believe that Ettin's marketing efforts to date, combined with Ettin's anticipated marketing efforts prior to the Auction, will adequately notify prospective buyers of the Auction for the sale of the Miscellaneous Equipment. Given the marketing efforts to date and Ettin's anticipated marketing efforts prior to the Auction, the Debtors believe that proceeding with the Auction as scheduled on June 26, 2015, will maximize value for the Debtors' estates and creditors.

12. Under the terms of the Auctioneer Agreement, Ettin has agreed to advertise and market the Miscellaneous Equipment and to conduct the auction in exchange for a 15% buyer's premium on all items sold to be paid by purchasers. Ettin will not charge any other fees or commissions for the sale of the Miscellaneous Equipment. In addition, the Auction Agreement, provides that the Debtors shall pay Ettin reasonable and necessary expenses in an amount not to exceed $45,000.

13. Ettin Group is a prominent auctioneer with considerable experience in selling assets similar to the Miscellaneous Equipment. Because of this background, the Debtors believe that the retention of Ettin pursuant to the terms of the Auctioneer Agreement is in the best interests of the Debtors' estate. If the Court approves the relief requested herein, Ettin will be

---

[3] The Auction website can be viewed at http://ettingroup.com/auction/state-of-the-art-laboratory-surplus-sale/#.VXdluk1OXcs

retained as the Debtors' auctioneer pursuant to section 363 of the Bankruptcy Code. Accordingly, Ettin will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

14. For the avoidance of doubt, although the Motion only seeks authority for the Debtors to sell the Miscellaneous Assets, the retention of Ettin pursuant to the terms of the Auctioneer Agreement would relate to both the sale of the Miscellaneous Assets and any other sales pursuant to the terms of the Auctioneer Agreement. The Debtors, of course, would need to seek further authority from the Court in connection with any other sales.

15. Although the Debtors seek to retain Ettin pursuant to section 363, out of an abundance of caution, attached hereto as Exhibit C is the *Declaration of Ross A. Ettin in Support of the Motion of the Debtors and Debtors in Possession for Entry of an Order Authorizing the Debtor to (i) Retain The Ettin Group, LLC and (ii) Sell Certain Miscellaneous Equipment Free and Clear of Liens, Claims and Encumbrances* (the "Ettin Declaration"). As set forth in the Ettin Declaration, Ettin does not have any connection with the Debtors or their estates with respect to the matters on which Ettin is to be employed. The Ettin Declaration also confirms that Ettin does not hold any prepetition claim.

### III.   Relief Requested

16. By this Motion, the Debtors seek entry of the Order authorizing the Debtors to (i) retain Ettin pursuant to the terms of the Auctioneer Agreement and (ii) sell the Miscellaneous Equipment free and clear of liens, claims and encumbrances.

## IV. Basis for Relief Requested

### A. The Debtors Have Exercised Their Sound Business Judgment

17. The Debtors seek to employ and retain Ettin pursuant to section 363 of the Bankruptcy Code pursuant to the terms of the Auctioneer Agreement. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363. In reviewing a debtor's decision to use estate property pursuant to section 363 of the Bankruptcy Code, courts have routinely held that if such use represents the reasonable business judgment of the part of the debtors, such use should be approved. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (citing *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995))); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "a good business reason").

18. Bankruptcy courts, including this Court, have analyzed the propriety of a debtor-in-possession's retention of third parties to conduct asset sales under section 363 of the Bankruptcy Code and have determined that it is an appropriate exercise of business judgment to retain such parties. *See, e.g., In re James River Coal Company*, Case No. 14-31848 (Bankr. E.D. Va. Mar. 25, 2015) [ECF No. 940]; *In re James River Coal Company*, Case No. 14-31848

(Bankr. E.D. Va. Dec. 29, 2014) [ECF No. 821]; *In re Movie Gallery*, Case No. 10-30696 (Bankr. E.D. Va. May 20, 2010) [ECF No. 1155]; *In re Love Culture, Inc.*, Case No. 14-24508 (Bankr. D. N.J. July 31, 2014) [ECF No. 124]; *In re Saint Vincents Catholic Med. Ctrs. of N.Y.*, Case No. 10-11963 (CGM) (Bankr. S.D.N.Y. Oct. 12, 2010) [ECF No. 999].

19. Here, the decision to retain Ettin as an auctioneer pursuant to the terms of the Auctioneer Agreement should be authorized because it is based on the sound exercise of the Debtors' business judgment. The Debtors seek to retain Ettin because it has extensive experience as an auctioneer. Indeed, Ettin has been retained by Bankruptcy Courts in other districts to perform similar services in other chapter 11 cases.

20. Furthermore, the Debtors do not have the extensive experience Ettin has in connection with marketing and selling assets similar to the Miscellaneous Equipment or other assets that might be sold pursuant to the Auctioneer Agreement, and any attempts to sell such property without the assistance of a third-party would likely result in the Debtors' obtaining a sub-optimal price for such assets. Likewise, the marketing and selling of such assets without assistance would require the dedication of time, efforts and resources of the Debtors' employees, which would distract such employees from the immense tasks at hand in these chapter 11 cases. Absent entry into the Auctioneer Agreement, the Debtors could fail to maximize the value of the assets in their estates and would, instead, expend significant resources to market and sell the Miscellaneous Equipment or other assets, to the detriment of the Debtors' estates and creditors.

21. In view of the foregoing, the Debtors believe that the retention of Ettin is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in these chapter 11 cases, and respectfully request that the Court authorize the relief requested herein.

22. Even though the Debtors are not seeking to retain Ettin pursuant to section 327 of the Bankruptcy Code, to the best of the Debtors' knowledge, information and belief and as set forth in the Ettin Declaration, Ettin does not have any connection with the Debtors or their estates with respect to the matters on which Ettin is to be employed and also does not hold any prepetition claim against the Debtors.

23. Additionally, the Debtors believe that the Auction for the Miscellaneous Equipment represents the most expeditious and efficient manner to sell such property and avoid costs to the Debtors' estates associated with maintaining the Miscellaneous Equipment while simultaneously maximizing value for the benefit of the Debtors' estates and creditors.

24. Moreover, the Debtors submit that Ettin has conducted, and is continuing to conduct, a broad marketing process that is targeting all potential buyers and will maximize value for their estates and creditors.

25. Accordingly, the Debtors propose that they, through Ettin, will sell the Miscellaneous Equipment to the purchaser offering the highest and best bid for such item at the Auction, and submit that the Auction is both fair and reasonable and will result in the highest and/or best price for the Miscellaneous Equipment. The proposed sale of the Miscellaneous Equipment, therefore, is an exercise of the Debtors' sound business judgment and is in the best interests of the Debtors' estates and creditors.

    **B.**     **The Sales of the Miscellaneous Equipment Satisfy the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Encumbrances**

26. The Debtors request that the Court authorize the sale of the Miscellaneous Equipment free and clear of any and all liens, claims, interests and encumbrances (collectively, "<u>Encumbrances</u>").

27. Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim or interest in such property of an entity other than the estate if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

28. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Miscellaneous Equipment "free and clear" of such Encumbrances. *See, e.g.*, *In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995) ("Section 363(f) is phrased in the disjunctive, such that only *one* of the enumerated conditions must be met in order for the Court to approve the proposed sale.") (emphasis in original).

29. Although section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. While some courts have "narrowly interpreted that phrase to mean only in rem interests in property," *see, e.g., In re White Motor Credit Corp.,* 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987), the Fourth Circuit has held that the scope of section 363(f) is not limited to in rem interests, and can extend to liabilities that arise under federal statute and for which a succeeding purchaser would otherwise be liable. *In re Leckie Smokeless Coal Co.*, 99 F.3d 573,

581-85 (4th Cir. 1996). Accordingly, courts in this District have given "any interest" a broad interpretation. *See In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) ("[Section] 363 covers more situations than just sales involving liens… [it] addresses sales free and clear of *any interest*." (emphasis in original)).

30.     In taking this view, courts in this District are in keeping with the trend toward "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003) (citing 3 COLLIER ON BANKRUPTCY ¶ 363.06[l]); *see also MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93-94 (2d Cir. 1988) (channeling of claims to sale proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *Ninth Avenue Remedial Group v. Allis-Chalmers Corp.*, 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *In re New England Fish Co.*, 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtors' employees*)*; *American Living Systems v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (product liability claims precluded in a sale of assets free and clear); *In re Hoffman*, 53 B.R. 874, 876 (Bankr. D. R.I. 1985) (transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes).

31.     The Debtors submit that section 363(f) permits the sales of the Miscellaneous Equipment free and clear of all Encumbrances. Each Encumbrance that is not the result of an assumed liability satisfies at least one, if not more, of the tests of section 363(f) of the Bankruptcy Code. In particular, the Debtors submit that any Encumbrance that exists will be

adequately protected by attachment to the proceeds of the sale of the Miscellaneous Equipment, subject to any claims and defenses the Debtors may possess with respect thereto, thereby providing adequate assurance for the holder of any such interest.

32.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors, and therefore should be granted.

### V.     Request for Waiver of Stay

33.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion pursuant to any applicable Bankruptcy Rule or Local Bankruptcy Rule pursuant to any applicable Bankruptcy Rule or Local Bankruptcy Rule. Specifically, pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors require immediate relief in order to move forward expeditiously with respect to the sale of the Miscellaneous Equipment. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and any other applicable Bankruptcy Rule or Local Bankruptcy Rule or otherwise applicable law, to the extent that it applies.

### VI.     Notice

34.     Notice of this Motion has been provided in accordance with the *Notice, Case Management and Administrative Procedures* [ECF No. 40] approved by this Court on June 9, 2015 (the "Case Management Procedures"). The Debtors submit that no other or further notice need be provided.

## VII.    No Previous Request

35. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the Debtors the relief requested herein and such other and further relief as the Court deems just and proper.

DATED: June 11, 2015

                                        Respectfully submitted,

                                        /s/ Henry P. (Toby) Long, III
                                        Tyler P. Brown (VSB No. 28072)
                                        Jason W. Harbour (VSB No. 68220)
                                        Henry P. (Toby) Long, III (VSB No. 75134)
                                        Justin F. Paget (VSB No. 77979)
                                        HUNTON & WILLIAMS LLP
                                        Riverfront Plaza, East Tower
                                        951 East Byrd Street
                                        Richmond, Virginia 23219
                                        Telephone:  (804) 788-8200
                                        Facsimile:   (804) 788-8218

                                        *Proposed Counsel to the Debtors*
                                        *and Debtors in Possession*