**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| **HEALTH DIAGNOSTIC LABORATORY, INC.,** *et al.*, | Case No. 15-32919 (KRH) |
|  | **(Jointly Administered)** |
| Debtors.[1] |  |

**MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN
ORDER AUTHORIZING THE DEBTORS TO (I) ENTER INTO TERM SHEET AND
(II) USE ESTATE PROPERTY OUTSIDE THE ORDINARY COURSE OF BUSINESS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by

their undersigned counsel, hereby move the Court for the entry of an order, the proposed form of

which is attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 363(b)(1) of

Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy

Code"), authorizing the Debtors to (i) enter into the Non-Binding Outline of Terms and

Conditions and the related letter attached hereto as Exhibit B (collectively, the "Term Sheet")

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and
Integrated Health Leaders, LLC (7832).

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors
and Debtors in Possession*

with Cerberus Business Finance, LLC ("Cerberus"), and (ii) use estate property outside the ordinary course of business.

## I.        Jurisdiction, Venue and Predicates for Relief

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 28 U.S.C. § 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

2.        The predicates for the relief requested herein are sections 105(a) and 363(b)(1) of the Bankruptcy Code.

## II.        Background

### A.        Chapter 11 Cases

3.        On June 7, 2015 (the "Petition Date"), each of the Debtors filed with the Court its respective voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 9, 2015, the Court entered an order authorizing the joint administration of these chapter 11 cases [Docket No. 42].

4.        No creditors' committee has been appointed in these cases.  No trustee or examiner has been appointed.

5.        A full description of the Debtors' business operations, corporate structures, capital structures, and reasons for commencing these cases is set forth in full in the Declaration of Martin McGahan in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "McGahan Declaration") [Doc. No. 4].  Additional facts in support of the specific relief sought herein are set forth below.

2

### B.      Facts in Support of the Motion

6.      As set forth in the McGahan Declaration, since at least September 2014, the Debtors have been engaged in the process of implementing strategic initiatives aimed at returning the Debtors to growth and continued profitability.  When it became apparent that additional short term capital likely would be unavailable, the Debtors began to anticipate the need to pursue a restructuring under chapter 11.

7.      In connection with the Debtors' restructuring efforts, the Debtors determined in their good faith business judgment that obtaining debtor-in-possession financing ("DIP Financing") would be necessary to continue operations in the ordinary course, thereby preventing irreparable harm to the Debtors and their stakeholders.

8.      As set forth in the McGahan Declaration, the Debtors first approached their prepetition lender, Branch Banking and Trust Company ("BB&T") about the possibility of offering or participating in DIP Financing.  The Debtors also informed BB&T that they intended to approach, and have approached, other lenders concerning DIP Financing.

9.      As set forth in the McGahan Declaration, following receipt of the Notice of Default (as defined in the McGahan Declaration), the Debtors, with the assistance of their professional advisors, engaged in further discussions with potential DIP Financing lenders with increased urgency.

10.      In connection with the Debtors' efforts to obtain DIP Financing, on June 4, 2015, Cerberus presented the Debtors with the Term Sheet.  The Term Sheet contemplates Cerberus

providing the Debtors with a revolving credit facility of up to $30.0 million (the "Cerberus DIP Facility") substantially on the terms and conditions set forth in the Term Sheet.[2]

11.    With the assistance and advice of the Debtors' professionals, the Debtors compared the Term Sheet with other term sheets received from potential DIP Financing lenders. The Debtors determined, in the sound exercise of their business judgment, that the terms of the Cerberus DIP Facility, and ability of Cerberus to accommodate the need for expedited DIP Financing, were superior to the other proposals from DIP Financing lenders received to date.

12.    Accordingly, on June 5, 2015, the Debtors wired the Expense Deposit (as defined in the Term Sheet) to Cerberus, and on June 9, 2015, the Debtors executed the Term Sheet. The Expense Deposit is a typical component of financing proposals of this type and the Debtors believe that the Expense Deposit set forth in the Term Sheet is reasonable. The Term Sheet requires the Debtors, among other things, to obtain approval from the Court to enter into and perform under the Term Sheet. In addition, although much of the Term Sheet is non-binding, entry into the Term Sheet will bind the Debtors to the indemnification and expense reimbursement provisions in paragraph 6 of the Term Sheet and the Expense Deposit provisions in paragraph 2 of the Term Sheet.

13.    Cerberus has indicated that it will continue to work towards finalizing the Cerberus DIP Facility as long as the Debtors obtain Court approval to enter into and perform under the Term Sheet by June 22, 2015, and the Debtors seek to obtain such approval in the interim. Absent Court approval of the Debtors' entry into and performance under the Term Sheet by June 22, 2015, however, the Term Sheet will expire by its terms. Further, given the

---

[2]    The Term Sheet attached hereto as Exhibit B has been redacted to delete the interest rate and fee amounts identified in the Term Sheet.

Debtors' need for DIP Financing, it is in the best interests of all stakeholders for the Debtors to obtain DIP Financing as quickly as possible.

14.     In the good faith exercise of the Debtors' business judgment, the Debtors reasonably believe that the Term Sheet represents the best offer for DIP Financing received to date and that Cerberus will be able to finalize the Cerberus DIP Facility on the required expedited timeline.

15.     The Debtors' liquidity crisis discussed in the McGahan Declaration continues. Thus, it is critical that the Debtors obtain DIP Financing as soon as possible.

16.     As a result, entry into and performance under the Term Sheet is in the best interests of the Debtors' estates and creditors because entry into and performance under the Term Sheet is necessary to finalize the terms of the Cerberus DIP Facility.

17.     Although the Debtors believe that entry into and performance under the Term Sheet is in the ordinary course of the Debtors' business, the Debtors seek the relief requested herein out of an abundance of caution and to satisfy the requirements to obtain Court approval set forth in the Term Sheet.  In addition, for the avoidance of doubt, this Motion does not request authority to enter into the Cerberus DIP Facility, which would need to be requested through a separate motion.

### III.     Relief Requested

18.     By this Motion, the Debtors seek entry of the Order authorizing the Debtors to (i) enter into and perform under the Term Sheet with Cerberus, and (ii) to the extent that the Court determines that entry into and performance under the Term Sheet is not in the ordinary course of the Debtors' business, use estate property outside the ordinary course of business in accordance with the Term Sheet.

5

## IV.    Basis for Relief Requested

### A.    The Debtors Have Exercised Their Sound Business Judgment

19.    The Debtors seek to enter into and perform under the Term Sheet pursuant to section 363 of the Bankruptcy Code in accordance with the terms of the Term Sheet.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363.  In reviewing a debtor's decision to use estate property pursuant to section 363 of the Bankruptcy Code, courts have routinely held that if such use represents the reasonable business judgment of the part of the debtors, such use should be approved.  *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (citing *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995))); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "a good business reason").

20.    Courts in this and other districts have consistently and appropriately been reluctant to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (applying the business judgment rule to a debtor's decision to reject an executory contract); *see*

*also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1992)*, appeal dismissed,* 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted).

21.    Here, the decision to enter into and perform under the Term Sheet should be authorized because it is based on the sound exercise of the Debtors' business judgment.  The Debtors need to obtain DIP Financing on an expedited basis. As set forth above, the Debtors reasonably believe that the Term Sheet represents the best offer for DIP Financing received to date and that Cerberus will be able to close the Cerberus DIP Facility on the required expedited timeline.  Further, payment of the Expense Deposit is a de minimis expense when weighed against the benefit to the Debtors' estate of obtaining DIP Financing.

22.    As Cerberus requires Court approval of the Debtors entry into and performance under the Term Sheet for Cerberus to proceed to finalize the Cerberus DIP Facility, and for the other reasons set forth above, the Debtors reasonably believe that entry into and performance under the Term Sheet is in the best interests of the Debtors estates and creditors.

23.    As a result, the Debtors believe that they have soundly exercised their business judgment by seeking to enter into and perform under the Term Sheet, and respectfully request that the Court authorize the relief requested herein.

## V.    Satisfaction of Bankruptcy Rule 6003(b)

24.    Bankruptcy Rule 6003(b) provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition," grant relief upon "a motion to use, sell, lease, or otherwise incur  an obligation regarding property of the estate."  Fed. R. Bankr. P. 6003(b).

25.     As set forth above and in the McGahan Declaration and above, the Debtors have

an immediate and urgent need for DIP Financing.  Absent authorization to enter into and perform

the obligations in the Term Sheet, which is an integral step toward accessing additional funds in

the near term, the Debtors will not be able to meet their working capital and liquidity needs, and

their estates and creditors will suffer immediate and irreparable harm.  Accordingly, the Debtors

submit that the requirements of Bankruptcy Rule 6003(b) has been satisfied.

## VI.      **Request for Waiver of Stay**

26.     In addition, by this Motion, the Debtors seek a waiver of any stay of the

effectiveness of the order approving this Motion pursuant to any applicable Bankruptcy Rule or

Local Bankruptcy.  Specifically, pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing

the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14

days after entry of the order, unless the court orders otherwise."  The Debtors require immediate

relief in order to move forward expeditiously to obtain DIP Financing.  Accordingly, the Debtors

submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy

Rules 6004(h) and any other applicable Bankruptcy Rule or Local Bankruptcy Rule or otherwise

applicable law, to the extent that it applies.

## VII.     **Notice**

27.     Notice of this Motion has been provided in accordance with the *Notice, Case

Management and Administrative Procedures* [ECF No. 40] approved by this Court on June 9,

2015 (the "Case Management Procedures").  The Debtors submit that no other or further notice

need be provided.

## VIII.   <u>No Previous Request</u>

28.      No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the Debtors the

relief requested herein and such other and further relief as the Court deems just and proper.

DATED: June 15, 2015

Respectfully submitted,

/s/ Justin F. Paget
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77979)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

# Exhibit A

The Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| In re: | **Chapter 11** |
| **HEALTH DIAGNOSTIC LABORATORY, INC.,** *et al.,* | **Case No. 15-32919 (KRH)** |
|  | **(Jointly Administered)** |
| **Debtors.**[1] |  |

**ORDER AUTHORIZING THE DEBTORS AND DEBTORS IN POSSESSION
TO (I) ENTER INTO TERM SHEET AND (II) USE ESTATE PROPERTY
OUTSIDE THE ORDINARY COURSE OF BUSINESS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, authorizing the Debtors to (i) enter into the Non-Binding Outline of Terms and Conditions and the related letter attached to the Motion as Exhibit B (collectively, the "Term Sheet") with Cerberus Business Finance, LLC ("Cerberus"), and (ii) use

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and Integrated Health Leaders, LLC (7832).

[2]      Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Motion.

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors
and Debtors in Possession*

estate property outside the ordinary course of business; the Court finds that: (a) it has jurisdiction

to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334;

(b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) venue is proper before this court

pursuant to 28 U.S.C. §§ 1408 and 1409; (d) the relief requested in the Motion is in the best

interests of the Debtors, their estates and creditors, and is necessary to avoid immediate and

irreparable harm; (e) proper and adequate notice of the Motion and the hearing thereon has been

given and no other or further notice is necessary; and (f) upon the record herein, and after due

deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth

herein.  Therefore,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby GRANTED.

2.      Pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, the Debtors

are authorized to enter into and perform under the Term Sheet without further Court approval.

3.      The Debtors and Cerberus are authorized to take all actions necessary to

effectuate the relief granted pursuant to this Order in accordance with the Motion.

4.      The relief granted herein shall be binding upon any chapter 11 trustee appointed

in these chapter 11 cases, or upon any chapter 7 trustee appointed or serving in the event of a

subsequent conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy

Code.

5.      This Court retains exclusive jurisdiction to hear and determine all matters arising

from or related to the implementation and/or interpretation of this Order.

6.      The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum

of law in connection with the Motion is hereby waived.

2

7.      Notwithstanding any Bankruptcy Rule or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated: Richmond, Virginia

_____, 2015


_____
UNITED STATES BANKRUPTCY JUDGE


WE ASK FOR THIS:

/s/ Justin F. Paget
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Fax:  (804) 788-8218

*Proposed Counsel to the Debtors
and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

_____/s/ Justin F. Paget_____

# Exhibit B

The Term Sheet

**Cerberus Business
Finance, LLC**

June 4, 2015

Health Diagnostic Laboratory, Inc.
C/O Alvarez & Marsal Holdings, LLC
555 13th Street, N.W., 5th Floor
Washington, DC 20004

Attn.: Rick Arrowsmith

Re: **Non-Binding Outline of Terms**

Rick:

Health diagnostic Laboratory, Inc., a Debtor-in-Possession and a corporation ("HDL"), and its subsidiaries (together with the HDL, each a "Company" and collectively, the "Companies") (i) have advised Cerberus Business Finance LLC ("Cerberus") that HDL has filed petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and will require debtor-in-possession financing for general working capital purposes and (ii) have requested that Cerberus provide such debtor-in-possession financing (such financing, the "Requested Financing. Cerberus is willing to consider providing (i) HDL, as debtors-in-possession, with a revolving credit facility of up to $30.0 million (the "Requested Total DIP Financing Facility") substantially on the terms and conditions set forth in this letter and the Outline of Terms and Conditions attached hereto as Exhibit A, the "Outline of Terms").                                                              $20,0MM  OK

Although Cerberus' Outline of Terms with respect to debtor-in-possession financing is for the Requested Total DIP Financing Facility, Cerberus understands that the Bankruptcy Code and the applicable rules thereunder require the approval of, and entry of an order by, the United States Bankruptcy Court (the "Bankruptcy Court") having jurisdiction over the respective chapter 11 cases of HDL (the "Cases") and at least 15 days' notice for approval of such financing pursuant to a final order by the Bankruptcy Court (the "Final Order") in form and substance satisfactory to Cerberus in its sole discretion. Therefore, Cerberus is willing to consider lending such portion of the Requested Total DIP Financing Facility, not to exceed $15.0 million, as the Bankruptcy Court may approve (the "Requested Interim Financing Facility" and together with the Requested Total DIP Financing Facility, the "Requested Financing Facility"), on an emergency basis, substantially on the terms and conditions set forth in an order to be entered by the Bankruptcy Court in the Cases approving the Requested Interim Financing Facility (the "Interim Order") in form and substance satisfactory to Cerberus, and on the terms and conditions contained in this letter and the Outline of Terms. For purposes of this letter, the Requested Financing shall be deemed to include the Requested Financing Facility. As more particularly provided herein, this letter and the Outline of Terms is not intended to be, and shall not be, binding upon Cerberus or any of its affiliates. Rather, this letter and the Outline of Terms is intended to serve only as a guide for further discussions between Cerberus and HDL with respect to the Requested Financing on the following bases:

1. **Acknowledgment.** HDL on behalf of itself and its subsidiaries acknowledges the following:

    a.     Neither this letter nor the Outline of Terms is intended to be, nor shall they be deemed to be or construed as, a binding commitment by Cerberus or any of its affiliates to provide the Requested Financing or to provide any other financial accommodation to HDL or any of its subsidiaries. The Outline of Terms is intended as an outline only and does not purport to summarize all of the conditions, covenants, representations, warranties and other provisions that would be contained in definitive transaction documentation for the Requested Financing. Any obligation on the part of Cerberus or its affiliates to provide the Requested Financing will be subject to, among other things, the negotiation and

Health Diagnostic Laboratory, Inc.
June 4, 2015
Page 2

execution of definitive transaction documents.  Such definitive legal documentation, if any, shall at all times be in form and substance satisfactory to Cerberus in its sole discretion.

b.      Cerberus has performed only a preliminary due diligence investigation of HDL and its subsidiaries and their respective assets and businesses.  Based on this due diligence, Cerberus has preliminarily concluded that it is willing to consider providing the Requested Financing on the terms set forth herein and in the Outline of Terms.  In addition, Cerberus has reviewed certain preliminary information with respect to HDL and its subsidiaries and their respective assets and businesses.  HDL has not submitted to Cerberus. and Cerberus has not reviewed or been requested to review, any final information relating to HDL and its subsidiaries and their respective assets and businesses.  Accordingly, Cerberus has not yet had the opportunity to complete either its business or legal due diligence analysis and review.  Cerberus' willingness to provide the Requested Financing is subject to, among other conditions, its satisfaction, in its sole discretion, with such analyses and reviews and its continuing satisfaction with the results thereof.

2.  **Deposit.**  HDL will pay on demand all reasonable fees and expenses incurred by or on behalf of Cerberus in connection with this letter and the Outline of Terms and the transactions contemplated hereby and thereby, including, but not limited to, those incurred in connection with the negotiation, preparation, execution and delivery of this letter, the Outline of Terms and any and all definitive documentation relating hereto and thereto, Cerberus's reasonable fees and expenses (both for in-house and outside counsel), costs and expenses incurred by Cerberus's examiners and appraisers (including agents for Cerberus), audit fees, documentation fees and any filing and search fees (collectively, "Cerberus's Expenses").  HDL agrees, upon its acceptance in writing of this letter and, to the extent required, subject to the approval of the Bankruptcy Court, to pay to Cerberus in immediately available funds $150,000, which represents a deposit (the "Expense Deposit") to fund Cerberus's Expenses.  If Cerberus's Expenses are less than $150,000, the unused portion of the Expense Deposit will be returned to HDL.  The Expense Deposit is neither an estimate of nor a cap on Cerberus's Expenses, and the Expense Deposit shall not be deemed to limit HDL's reimbursement obligations hereunder.  *Cerberus hereby Acknowledges receipt of the Aforementioned deposit in full as of the date hereof.  CL*

3.  **Absence of Material Adverse Change.**  Cerberus' willingness to consider providing the Requested Financing is subject to (i) the negotiation, execution and delivery of definitive loan documentation in form and substance satisfactory to Cerberus in its sole discretion (including, but not limited to, the form and substance of the order(s) of the Bankruptcy Court approving the Requested Financing Facility), (ii) the determination to Cerberus' satisfaction in its sole discretion that since the date hereof there has not occurred or become known to HDL or Cerberus any material adverse change with respect to the condition (financial or otherwise), business, operations, assets, liabilities or prospects of HDL, other than the filing of the Cases and the events resulting in the filing of the Cases (a "Material Adverse Change"), (iii) the absence of any material disruption or general adverse developments in the financial markets, as determined by Cerberus in its sole discretion, and (iv) such other customary conditions as are set forth or described in the Outline of Terms.  If at any time Cerberus shall determine (in its sole and absolute discretion) that either (A) HDL will be unable to fulfill any condition set forth in this letter or in the Outline of Terms or (B) any Material Adverse Change has occurred, Cerberus may terminate this letter by giving notice thereof to HDL (subject to the obligation of HDL to pay all fees, costs, expenses and other payment obligations expressly assumed by HDL hereunder, which shall survive the termination of this letter.

4.  **Borrower's Information.**  HDL represents and warrants that (i) all written information and other materials concerning HDL, and its subsidiaries (the "Information") which has been, or is hereafter, prepared or made available by, or on behalf of, HDL or its subsidiaries or its respective agents and representatives and delivered to Cerberus is, or when delivered will be complete and correct in all material respects and does not, or will not when delivered, contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements contained therein not misleading in light of the circumstances under which such statement has been made and (ii) to the extent that any such Information contains projections, such projections were prepared in good faith on the basis of (a) assumptions, methods and tests

Health Diagnostic Laboratory, Inc.
June 4, 2015
Page 3

stated therein which are believed by HDL to be reasonable and (b) information believed by HDL to have been accurate based upon the information available to HDL at the time such projections were furnished to Cerberus. HDL agrees to immediately notify Cerberus if HDL discovers that any of the Information is no longer accurate or complete or any of the assumptions, methods or tests underlying any such projections are no longer reasonable.

5.  **Publicity.** This letter is delivered to HDL upon the condition that, prior to its acceptance of this letter and the payment of the Expense Deposit, neither the existence of this letter or the Outline of Terms, nor any of their contents, shall be disclosed by HDL or its subsidiaries, except as may be compelled to be disclosed in a judicial or administrative proceeding or as otherwise required by law (including as may be required by the Bankruptcy Court) or, on a confidential and "need to know" basis, solely to the directors, officers, employees, advisors and agents of HDL. In addition, HDL agrees that (other than as required by the Bankruptcy Court) it will (i) consult with Cerberus prior to the making of any filing in which reference is made to Cerberus, its affiliates or the proposal contained herein, and (ii) obtain the prior approval of Cerberus before releasing any public announcement in which reference is made to Cerberus, its affiliates or to the proposal contained herein. HDL acknowledges that Cerberus and its affiliates may now or hereafter provide financing or obtain other interests in other companies in respect of which HDL or its affiliates may be business competitors, and that Cerberus and its affiliates will have no obligation to provide to HDL or any of its affiliates any confidential information obtained from such other companies.

6.  **Indemnification.** By its written acceptance of this letter and, to the extent required, subject to the approval of the Bankruptcy Court, HDL agrees to indemnify and hold harmless Cerberus, its affiliates, and each of their respective assignees, subsidiaries, directors, officers, employees and agents (each an "Indemnified Party") from and against any and all expenses, losses, claims, damages and liabilities to which such Indemnified Party may become subject, insofar as such expenses, losses, claims, damages and liabilities (or actions or other proceedings commenced or threatened in respect thereof) arise out of or in any way relate to or result from, this letter or the extension of the Requested Financing Facility contemplated by this letter, or in any way arise from any use or intended use of this letter or the proceeds of the Requested Financing Facility contemplated by this letter, and HDL agrees to reimburse each Indemnified Party for any legal or other expenses incurred by such Indemnified Party in connection with investigating, defending or participating in any such loss, claim, damage, liability or action or other proceeding as such expenses are incurred (whether or not such Indemnified Party is a party to any action or proceeding out of which indemnified expenses arise), but excluding therefrom all expenses, losses, claims, damages and liabilities which are finally determined in a non-appealable decision of a court of competent jurisdiction to have resulted solely from the gross negligence or willful misconduct of the Indemnified Party. In the event of any litigation or dispute involving this letter or the Requested Financing Facility, neither Cerberus nor any other Indemnified Party shall be responsible or liable to HDL, or any other person for any special, indirect, consequential, incidental or punitive damages. In addition, and, to the extent required, subject to the approval of the Bankruptcy Court, HDL agrees to reimburse Cerberus for all of Cerberus' Expenses. The obligations of HDL under this paragraph shall remain effective whether or not a commitment is issued by Cerberus or any of its affiliates for the Requested Financing or definitive documentation is executed and notwithstanding any termination of this letter.

7.  **Expiration.** The proposal made by Cerberus in this letter shall expire, unless otherwise agreed by Cerberus in writing, at 5:00 p.m. (New York City time) on June 12, 2015, unless prior thereto (i) HDL has obtained the approval of the Bankruptcy Court to HDL accepting this letter and paying the Expense Deposit and (ii) Cerberus has received (A) a copy of this letter, signed by HDL accepting the terms and conditions of this letter and the Outline of Terms, and (B) the Expense Deposit, in immediately available funds. The proposal by Cerberus to provide the Requested Financing Facility shall expire at 5:00 p.m. (New York City time) on July 15, 2015, unless at or prior to such date, definitive loan documentation shall have been agreed to in writing by all parties on or prior thereto, such documentation to be subject to Bankruptcy Court approval, and the conditions set forth therein shall have been satisfied.

1571149.6

Health Diagnostic Laboratory, Inc.
June 4, 2015
Page 4

8. **Miscellaneous.** This letter, including the attached Outline of Terms, (a) supersedes all prior discussions, agreements, commitments, arrangements, negotiations or understandings, whether oral or written, of the parties with respect thereto and (b) shall be governed by the laws of the State of New York, without giving effect to the conflict of laws provisions thereof, and HDL agrees to the jurisdiction and venue of the federal and/or state courts located within the City of New York, (c) shall be binding upon the parties and their respective successors and assigns, (d) may not be relied upon or enforced by any other person or entity, and (e) may be signed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. **If this letter becomes the subject of a dispute, each of the parties hereto hereby waives its right to trial by jury to resolve such dispute.** This letter may be amended, modified or waived only in a writing signed by the parties hereto.

NOTWITHSTANDING ANYTHING SET FORTH HEREIN TO THE CONTRARY, EXCEPT WITH RESPECT TO SECTIONS 2, 5, 6 AND 8 HEREOF, THE TERMS OF WHICH SHALL BE BINDING UPON THE PARTIES, THE TERMS OF THIS LETTER, ANY AND ALL ATTACHMENTS HERETO, INCLUDING THE OUTLINE OF TERMS, AND ANY AND ALL DISCUSSIONS BETWEEN THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF, SHALL BE NON-BINDING AND SHALL NOT IN ANY WAY OBLIGATE CERBERUS OR ANY OF ITS AFFILIATES (OR ANY OTHER PARTY) TO PERFORM ANY TRANSACTION OUTLINED OR DESCRIBED HEREIN, OR ANY OTHER TRANSACTION, OR TO CONTINUE THEIR DISCUSSIONS WITH RESPECT HERETO OR THERETO. EXCEPT WITH RESPECT TO SECTIONS 2, 5, 6 AND 8 HEREOF, THE TERMS OF WHICH SHALL BE BINDING UPON THE PARTIES, SUCH PARTIES SHALL ONLY BECOME LEGALLY BOUND WITH RESPECT TO ANY SUCH TRANSACTION IF AND WHEN THEY EXECUTE AND DELIVER DEFINITIVE LOAN AND OTHER TRANSACTION DOCUMENTS, PREPARED AND REVIEWED BY THEIR RESPECTIVE COUNSEL, WHICH SHALL, AMONG OTHER THINGS, CONTAIN REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS CUSTOMARILY INCLUDED IN TRANSACTIONS OF THE TYPE CONTEMPLATED HEREBY AND WHICH ARE MUTUALLY ACCEPTABLE TO THE PARTIES TO SUCH DEFINITIVE TRANSACTION DOCUMENTS.

[This space intentionally left blank; signature page follows.]

1571149.6

Health Diagnostic Laboratory, Inc.
June 4, 2015
Page 5

If the foregoing correctly sets forth your understanding with respect to the subject matter hereof, kindly execute this letter where indicated and return it to the undersigned, along with the Expense Deposit, not later than June 12, 2015.

Very truly yours,

CERBERUS FINANCE LLC

By:
Name: Kevin P. Genda
Title: Vice Chairman .

Agreed and accepted on this
___ day of June, 2015:

Health Diagnostic Laboratory, Inc.

By:
Name: Martin McFahan
Title: CRO

1571149.6

## Exhibit A

### Health Diagnostic Laboratory, Inc.

### Non-Binding Outline of Terms and Conditions

This Non-Binding Outline of Terms and Conditions is part of the letter, dated June 4, 2015 (the "Letter"), addressed to Health Diagnostic Laboratory, Inc. ("HDL") by Cerberus Finance LLC ("Cerberus") and is subject to the terms and conditions of the Letter.  Capitalized terms used herein shall have the meanings set forth in the Letter unless otherwise defined herein.

| | |
|---|---|
| **Borrower:** | HDL as debtor in possession under chapter 11 of the Bankruptcy Code |
| **Co-Borrowers/ Guarantors:** | All subsidiaries of HDL required by Cerberus, each, as debtor-in-possession (together with HDL, each a "Company" and collectively, the "Companies"). |
| **Lender:** | Cerberus or one or more affiliates thereof, to be designated at closing. |

**Requested Financing:**

Requested Total DIP
Financing Facility:  A revolving credit facility of $30,000,000.

Requested Interim
Financing Facility:  A revolving credit commitment of up to $30,000,000 to the extent permitted by the Bankruptcy Court pursuant to the Interim Order.  The Requested Interim Financing Facility would have a final maturity of not more than 30 days from the date of the Interim Order.  The Requested Interim Financing Facility would have substantially the same terms and conditions as the Requested Total DIP Financing Facility, except as otherwise provided herein.

*$20,000,000 OL*

Borrowings under the revolving credit facility will be subject to a borrowing base.  Borrowing base shall be the lesser of (i) $15,000,000 upon the Interim Order and $30,000,000 upon entry of the Final Order; or (ii) the sum of (a) Eighty-five (85%) of the net collectible value of the eligible accounts receivable of the borrower from third party payors; and (b) Eighty-five percent (85%) of the net orderly liquidation value of the Borrower's eligible inventory; and (c) up to seventy-five percent (75%) of the orderly liquidation value of the eligible equipment.  Borrowings under the Revolving Credit Facility will be subject to and in accordance with a 13-week cash budget to be agreed upon between Cerberus and HDL. *Eligible A/R = 0.457*

**Maturity Date:**

All revolving credit loans would be repaid in full upon the earlier of (i) the date which is one year following the date of entry of the Interim Order and (ii) the substantial consummation (as defined in 11 U.S.C. § 1101(2)) of any plan of reorganization in the Case[s], which has been confirmed by an order of the Bankruptcy Court (such earlier date, the "Maturity Date").  Any confirmation order entered in the Case[s] would not discharge or otherwise affect in any way any of the joint and several obligations of the Companies to Cerberus under the Requested Financing Facility, other than after the

1571149.3

payment in full and in cash to Cerberus of all obligations under the Requested Financing Facility on or before the effective date of any such plan of reorganization.

**Closing Date:**

The first date on which all definitive loan documentation satisfactory to Cerberus in its sole discretion is executed by the Companies, any Guarantors and Cerberus, and on which all conditions set forth therein have been satisfied or waived by Cerberus, which date would not be later than July 15, 2015 on or after the date the Bankruptcy Court has entered the Interim Order in form and substance satisfactory to Cerberus (the "Closing Date"). Borrowings under the Requested Financing Facility would be subject to entry of the Interim Order or the Final Order, as the case may be, in form and substance satisfactory to Cerberus.

**Interest Rate:**

All revolving credit loans would bear interest at the rate per annum equal to the 30-day Libor plus ███. Interest would be payable monthly in arrears.

As used herein, "Libor" would be defined as the London Interbank Rate, provided that at no time would the Libor rate referred to above be less than one percent (1.00%). All interest and fees would be computed on the basis of a year of 360 days for the actual days elapsed. If any Event of Default occurs and is continuing, interest would accrue at a rate per annum equal to two percent (2.00%) above the rate previously applicable to such obligation, payable on demand.

**Use of Proceeds:**

To fund working capital in the ordinary course of business of the Companies.

**Mandatory and
Optional Prepayment:**

Mandatory prepayment and commitment reduction from asset sale proceeds (net of reasonable and customary expenses to be defined) realized by the Companies from the sale or other disposition of any assets of the Companies outside of the ordinary course of business and casualty events. HDL would be permitted to prepay the Requested Financing Facility in whole or in part at any time without penalty or premium.

**Collateral:**

All obligations of the Companies to Cerberus would be: (X) entitled to super-priority administrative expense claim status pursuant to 11 U.S.C. § 364(c)(1) in each Case, subject only to (i) the payment of allowed professional fees and disbursements incurred by the Companies and any official committees appointed in the Cases, in an aggregate amount at any time outstanding to be agreed upon by Cerberus and HDL and (ii) the payment of fees pursuant to 28 U.S.C. § 1930 (collectively, the "Carve-Out Expenses") and (Y) secured pursuant to 11 U.S.C. §§ 364(c)(2) and (c)(3) and 364(d) by a security interest in and lien on all now owned or hereafter acquired assets and property of the estate (as defined in the Bankruptcy Code), real and personal, of the Companies, including all avoidance actions and all of the stock of each subsidiary of HDL, but excluding such assets as Cerberus, in its sole discretion, determines to be immaterial (the "Collateral"). The security interests in and liens on the Collateral would be perfected first priority, not subject to subordination, other than to permitted liens that are acceptable to Cerberus, but would be subject to the Carve-Out Expenses. No liens would be released until all amounts due under the Requested Financing Facility were paid.

1571149.3

**Cash Management:**

All proceeds of the Collateral would be deposited in lockbox accounts under the sole dominion and control of Cerberus. All funds deposited in such lockbox accounts would be transferred to Cerberus on each business day and applied to repay the outstanding obligations of HDL. Collections would be credited to the obligations on the day received in the lockbox accounts conditional on final payment to Cerberus and Cerberus shall charge two (2) collection days for interest calculation purposes with respect to all collections. No funds of any subsidiary or affiliate of the Companies that is not a Guarantor would be deposited in such lockbox accounts or commingled with the funds contained therein.

**Fees:**

Closing Fee:                     ███████ , non-refundable and earned in full and payable on the Closing Date.

Unused Line Fee:           ███████ ████ on the unused portion of the revolving line of credit, payable monthly in arrears.

Loan Servicing Fee:        █████ per month, payable monthly in advance.

**Expenses:**

HDL would pay on demand all reasonable fees and expenses of Cerberus (including legal fees, audit fees, search fees, filing fees, and documentation fees, and expenses in excess of the Expense Deposit), incurred in connection with the Letter and this Outline of Terms and the transactions contemplated by the Letter and this Outline of Terms.

**Conditions:**

Loan Documents in connection with the Requested Financing would include usual conditions precedent acceptable to Cerberus, including but not limited to:

(i)     Cerberus' completion of its due diligence, including all ERISA, environmental, tax and labor matters, with results satisfactory to Cerberus in its sole discretion, including receipt by Cerberus of a satisfactory appraisal of the liquidation value of the Companies performed by the Cerberus' auditors.

(ii)    An opinion from HDL's and Guarantors' outside counsel as to such matters as Cerberus may request.

(iii)   The execution and delivery of all agreements, instruments and other documents evidencing or securing the loan in form and substance satisfactory to Cerberus in its sole discretion.

(iv)    Cerberus is granted a perfected, first priority, security interest in all Collateral, and Cerberus has received UCC, tax and judgment lien searches and other appropriate evidence evidencing the absence of any other liens or mortgages on the Collateral.

(v)     Evidence satisfactory to Cerberus in its sole discretion that each creditor of the Companies that has a lien on the Collateral has consented to the first priority liens to be granted to Cerberus on the Collateral.

1571149.3

B-3

(vi)     All necessary governmental, shareholder, and third-party approvals and/or consents in connection with the Requested Financing have been obtained and remain in effect.

(vii)    HDL and Guarantors have insurance, satisfactory to Cerberus in its sole discretion; such insurance to include liability insurance for which Cerberus would be named as an additional insured and property insurance with respect to the Collateral for which Cerberus would be named as loss payee.

(viii)   Cerberus is satisfied in its sole discretion with reference checks for key management personnel.

(ix)     Cerberus is satisfied in its sole discretion with the cash management systems of the Companies.

(x)      The Companies have paid to Cerberus all fees and expenses then owing to Cerberus.

(xi)     Cerberus has received such financial and other information regarding the Companies as Cerberus may request.

(xii)    No Material Adverse Change has occurred other than the filing of the Case[s] and the events resulting in the filing of the Case[s].

(xiii)   Such other conditions as Cerberus may require in its sole discretion.

(xiv)    Filing (the date of such filing being herein referred to as the "Filing Date") of petitions commencing the Case[s] [and entry of the Interim Order by the Bankruptcy Court], satisfactory in form and substance to Cerberus in its sole discretion, no later than June 30, 2015, which Interim Order approves the transactions contemplated herein, grants the superpriority administrative expense claim status and liens referred to above and which Interim Order has not been reversed, modified, amended, stayed or vacated.

(xv)     Receipt of and satisfaction with, prior to the entry of the Interim Order, monthly projections for the next twelve months including balance sheet, statement of operations and cash flow statements, on a consolidating basis as well as a 13-week cash budget.

(xvi)    Entry by the Bankruptcy Court of the Final Order, in form and substance satisfactory to Cerberus in its sole discretion, no later than thirty days from the date of the entry of the Interim Order.

(xvii)   There are no restrictions on the assignment by HDL of material intellectual property rights.

(xviii)  HDL shall have retained a chief Restructuring Officer, with powers and authorities of the highest executive officer of the Borrower, satisfactory to the lender.

(xix)    Cerberus is satisfied in its sole discretion with the cash management systems of the Companies.

1571149.3

B-4

**Representations and
Warranties:**

Usual representations and warranties, including, but not limited to, corporate existence and good standing, authority to enter into loan documentation, governmental approvals, non-violation of other agreements, financial statements, litigation, compliance with environmental, pension and other laws, taxes, insurance, absence of material adverse change, absence of default or unmatured default, validity of any Interim Order and Final Order and priority of Cerberus' liens.

**Covenants:**

Customary covenants, including, but not limited to, financial covenants to be agreed upon, provision of financial statements and other customary reporting with respect to sales, accounts receivable, inventory and payables, defaults and unmatured defaults and other information (including pleadings, motions, applications and other documents filed with the Bankruptcy Court or distributed to any official committee appointed in the Case[s]), compliance with laws, inspection of properties, books and records, maintenance of insurance, limitations with respect to liens and encumbrances, dividends and retirement of capital stock, guarantees, sale and lease back transactions, consolidations and mergers, investments, capital expenditures, restricted payments, loans and advances, indebtedness, compliance with pension, environmental and other laws, transactions with affiliates, prepayment of other indebtedness, and limitations on senior indebtedness.

Financial covenants would include minimum debt service coverage, 13-week cash budget compliance, minimum EBITDA, and minimum liquidity to be mutually agreed upon by Cerberus and HDL.

**Events of Default:**

Usual events of default, including, but not limited to, defaults relating to payment, cross-default, violation of covenants, breach of representations or warranties, judgment, ERISA, environmental, change of control and other events of default which are customary in facilities of this nature.

In addition, an Event of Default shall occur if: (i) (A) any of the Cases shall be dismissed or converted to a chapter 7 case; a chapter 11 trustee or an examiner with enlarged powers shall be appointed; any other superpriority administrative expense claim which is senior to or pari passu with Cerberus' claims shall be granted; or the Interim Order or the Final Order, as the case may be, shall be stayed, amended, modified, reversed or vacated; or (B) the Final Order shall not have been entered within thirty days from the date of the entry of the Interim Order; a plan of reorganization shall be confirmed in any of the Cases which does not provide for termination of the commitment under the Requested Financing Facility and payment in full in cash of the Companies' obligations thereunder on the effective date of such plan of reorganization; or an order shall be entered which dismisses any of the Companies' chapter 11 cases and which order does not provide for termination of the Requested Financing Facility and payment in full in cash of all obligations thereunder or (C) the Companies shall take any action, including the filing of an application, in support of any of the foregoing or any person other than the Companies shall do so and such application is not contested in good faith by the Companies and the relief requested is granted in an order that is not stayed pending appeal; or (ii) the Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder of any security interest in any asset of the Companies having a book value in an amount equal to or exceeding $500,000 in the aggregate.

1571149.3

B-5

<u>Governing Law</u>:                         All documentation in connection with the Requested Financing would be
                                     governed by the laws of the state of New York, except as governed by the
                                     Bankruptcy Code.

<u>Assignments and
Participations</u>:                        Cerberus would be permitted to assign its rights and obligations with
                                     respect to all, or any portion of, the Requested Financing, or any part
                                     thereof, to any persons or entities. Cerberus would be permitted to grant or
                                     sell participations in such rights and obligations, or any part thereof, to any
                                     person or entity.