**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | **Chapter 11** |
| **HEALTH DIAGNOSTIC LABORATORY, INC.**, *et al.*, | **Case No. 15-32919 (KRH)** |
| | **(Jointly Administered)** |
| Debtors.[1] | |

**MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION
FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) RETAIN
ALVAREZ & MARSAL HEALTHCARE INDUSTRY GROUP, LLC TO PROVIDE THE
DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL
PERSONNEL AND (B) DESIGNATE MARTIN MCGAHAN AS CHIEF
RESTRUCTURING OFFICER FOR THE DEBTORS, EFFECTIVE AS OF THE
PETITION DATE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by

their undersigned counsel, file this motion (the "Motion") for entry of an order, substantially in

the form of order attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and
Integrated Health Leaders, LLC (7832).

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors
and Debtors in Possession*

363(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), (I) authorizing the Debtors to (a) retain Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") to provide the Debtors with a Chief Restructuring Officer ("CRO") and certain Additional Personnel (as defined herein) to assist the CRO and (b) designate Martin McGahan as the Debtors' CRO ("Mr. McGahan"), effective as of June 7, 2015, on the terms and conditions set forth herein and in the engagement agreement, dated as of June 6, 2015, attached as Exhibit 1 to Exhibit A attached hereto (the "Engagement Agreement"); and (II) granting related relief.  In support of this Motion, the Debtors submit the Declaration of Martin McGahan, attached hereto as Exhibit B (the "McGahan Declaration").  In further support of this Motion, the Debtors respectfully state as follows:

## I.      Jurisdiction, Venue and Predicates for Relief

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 28 U.S.C. § 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. §157 (b)(2).

2.      The predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Rules").

## II.      Background

3.      On June 7, 2015 (the "Petition Date"), each of the Debtors filed with the Court its respective voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

2

Bankruptcy Code.   On June 9, 2015, the Court entered an order authorizing the joint administration of these chapter 11 cases [Docket No. 42].

4.      On June 16, 2015, the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") appointed the statutory committee of unsecured creditors (the "Committee"). No trustee or examiner has been appointed.

5.      A full description of the Debtors' business operations, corporate structures, capital structures, and reasons for commencing these cases is set forth in full in the Declaration of Martin McGahan in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings [Doc. No. 4].  Additional facts in support of the specific relief sought herein are set forth below.

### III.    Relief Requested

6.      By this Motion, the Debtors seek entry of an order (I) authorizing the Debtors to (a) retain A&M to provide the Debtors with a CRO as well as additional authorized representatives of A&M and its professional service provider affiliates (the "Additional Personnel"), as needed to assist the CRO and (b) designate Martin McGahan as the Debtors' CRO (together with the Additional Personnel, the "Engagement Personnel"), effective as of the Petition Date, on the terms and conditions set forth herein and in the Engagement Agreement; and (II) granting related relief.

### IV.    A&M's Engagement

7.      Due to the size and complexity of their business, as well as the exigencies of their financial circumstances, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates.

8.      The Engagement Personnel specialize in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational

3

restructuring. A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including: (a) developing or validating forecasts and business plans and related assessments of a business's strategic position; (b) monitoring and managing cash, cash flow, and supplier relationships; (c) assessing and recommending cost reduction strategies; and (d) designing and negotiating financial restructuring packages.

9.      The Debtors propose to designate Martin McGahan as their CRO, effective as of the Petition Date.  Mr. McGahan is a Managing Director and Co-Head of A&M's Healthcare Industry Group.  He has over 10 years of experience advising and working with operationally and financially challenged organizations in the health care industry.  Mr. McGahan has been involved in major corporate restructuring projects throughout the United States, representing both debtors and creditors.  Some of his notable client engagements include Physiotherapy Holdings, Inc, Church Street Health Management, LLC, Sunwest Management, Inc., Medical Staffing Network, St. Vincent Catholic Medical Centers, Orthodontic Centers of America, Inc., and World Health Alternatives.

10.     A&M and the CRO are intimately familiar with the Debtors' businesses, financial affairs, and capital structure.  A&M and Mr. McGahan first became involved with the Debtors on November 17, 2014, when A&M and the Debtors executed a prior engagement agreement (the "Prior Agreement").  Since entering into the Prior Agreement, the Engagement Personnel have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these chapter 11 cases.  Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors, their operations, and the unique circumstances of these chapter 11 cases.  For these reasons, A&M is well suited

to deal efficiently with matters that may arise in the context of these chapter 11 cases. Accordingly, the Debtors submit that the retention of A&M and the designation of Mr. McGahan as CRO on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should granted in all respects.

### V.   Scope of Services

11.   Subject to approval by the Court, the Debtors propose to retain A&M to provide Mr. McGahan as CRO and to provide the Additional Personnel on the terms and conditions set forth herein and in the Engagement Agreement.

12.   Among other things, the Engagement Personnel will support the Debtors with respect to:

(a)   performing a financial review of the Debtors, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Debtors to their creditors, including without limitation its short and long-term projected cash flows and operating performance;

(b)   assisting the Debtors in their reorganization efforts, which will include:

(i)   assistance in evaluation of the Debtors' current business plan and in preparation of a revised operating plan and cash flow forecast and presentation of such plan and forecast to the Board of Directors  (the "Board") and the Debtors' creditors;

(ii)   assistance in identification of cost reduction and operations improvement opportunities;

(iii)   assistance in the development and management of a 13-week cash flow forecast; and

(iv)   assistance in financing issues including assistance in preparation of reports and liaison with creditors;

(c)   assisting other professionals engaged by the Debtors in developing for the Board's review possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Debtors' various business lines;

5

(d)      the CRO serving as the principal contact with the Debtors' creditors with respect to the Debtors' financial and operational matters;

(e)      performing such other services as requested or directed by the Board or other personnel of the Debtors as authorized by the Board, and agreed to by A&M that is not duplicative of work others are performing for the Debtors.

13.      These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their restructuring.

14.      As set forth in the Engagement Agreement, the Engagement Personnel shall report to the CEO or other applicable officers, and, at the request of the Board, will make recommendations to and consult with the Board. The Engagement Personnel will continue to be employed, by A&M and, while rendering services to the Debtors, will continue to work with other personnel at A&M in connection with unrelated matters that will not unduly interfere with the services rendered by the Engagement Personnel pursuant to this Agreement. These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their restructuring. With respect to the Debtors the Engagement Personnel shall operate under the direction of the CEO and Board and A&M shall have no liability to the Company for any acts or omissions of the Engagement Personnel related to the performance or nonperformance of services at the direction of the CEO or Board and consistent with the requirements of the Engagement and Order.

## VI.    <u>Terms of Retention</u>

### A.    Compensation

15.      In connection with entry into the Engagement Agreement, A&M transferred $450,000 received under the Prior Agreement to hold as a retainer (the "<u>Retainer</u>") under the Engagement Agreement, subject to approval of this Court. The amount of the Retainer will be

credited against any amounts due at the termination of the Engagement Agreement and any excess amounts will be returned to the Debtors.

16.     In addition to the Retainer, A&M and the Debtors have agreed that the Debtors will pay A&M a flat monthly rate of $105,000 in return for the services rendered to the Debtors by the CRO.   A&M shall receive fees for the services of the Additional Personnel at their customary hourly billing rates which fall within the following ranges:

| **Personnel** | **Hourly Rate** |
| --- | --- |
| Managing Directors | $675 – $875 |
| Directors – Sr. Directors | $475 – $675 |
| Associates – Sr. Associates | $375 – $475 |
| Analysts / Staff | $275 – $375 |

17.     The Debtors also have agreed that A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with the Engagement Agreement, such as reasonable travel, lodging, duplicating, messenger, computer research and telephone charges and 3% of fees billed for in-house, indirect administrative expenses such as telephone charges, computer use, in-house copying facsimiles and other internal services.   In addition, in the event that, at any time whether before or after completion of A&M's engagement, as a result of or in connection with A&M's or the Engagement Personnel's role for the Debtors, A&M is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or the Engagement Personnel are required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within their possession or control pursuant to a subpoena or other legal (including administrative) process, A&M will be reimbursed by the Debtors for its out of pocket expenses, including the reasonable fees and expenses of its counsel.   All fees and expenses due to A&M

7

will be billed in advance on a monthly basis or more frequently as agreed to between A&M and the Debtors, as further set forth in the Engagement Agreement, but in all events subject to the order approving this Motion.  All fees and expenses will be billed and payable on a monthly basis or, at A&M's discretion, more frequently.

18.    A&M will charge for its out-of-pocket expenses in a manner and at rates consistent with charges made generally to A&M's other clients.  A&M will use reasonable efforts to minimize expenses in these chapter 11 cases.

### B.    Indemnification

19.    As a material part of the consideration for which the Engagement Personnel have agreed to provide the services described herein, and pursuant to the Engagement Agreement (including the indemnification agreement attached to and made a part of the Engagement Agreement (the "Indemnification Agreement")), the Debtors have agreed to: (a) indemnify the Engagement Personnel acting as officers to the same extent as the most favorable indemnification they extend to their officers and directors and to cover such Engagement Personnel under the Debtors' director and officer liability policy; and (b) indemnify and hold harmless A&M, its affiliates, and their respective shareholders, members, managers, employees, agents, representatives, and subcontractors (collectively, the "Indemnified Parties") under certain circumstances.  The rights to indemnification shall survive the termination of these chapter 11 cases or any cases into which they may be converted.

20.    The Debtors believe the Indemnification Agreement is a reasonable term and condition of A&M's engagement.  The Indemnification Agreement, along with all terms of the Engagement Agreement, were negotiated by the Debtors and A&M at arm's-length and in good faith.  A&M and the Debtors believe that the indemnity provisions are comparable to those

8

indemnification provisions generally obtained by crisis management firms of similar stature to A&M and for comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification provisions contained in the Indemnification Agreement, viewed in conjunction with the other terms of A&M's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require A&M's services to successfully reorganize.

### C.    Fees and Reporting

21.    Upon Court approval of the relief requested herein, A&M will be retained to provide the Debtors with the Engagement Personnel, and Mr. McGahan will be designated as the Debtors' CRO pursuant to section 363 of the Bankruptcy Code. Because A&M is not being employed as a professional under section 327 of the Code, A&M will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, A&M will file with the Court, and provide notice to the U.S. Trustee and all official committees (together with the U.S. Trustee, the "Notice Parties"), a report on staffing (the "Staffing Report") each month for the previous month, which will include the names of the CRO and all Engagement Personnel, a summary of tasks filled by the CRO and all Engagement Personnel involved in this matter,  a summary chart that describes the compensation earned by each executive officer and staff employee and itemizes the expenses incurred for the relevant period, and a time report indicating the time incurred (in hourly increments) on a daily basis and the general categories of service provided during such day (*e.g.*, restructuring, claims management, tax matters, and forensic litigation service). The Notice Parties shall have 21 days after the date each Staffing Report is served on the Notice Parties to object to such Staffing Report. The Staffing Report

(and A&M's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

22.     A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first Staffing Report.  The unapplied residual retainer, which is estimated to total approximately $450,000, will not be segregated by A&M in a separate account, and will be held until the end of these chapter 11 cases and applied to A&M's finally approved fees in these proceedings, unless an alternate arrangement is agreed to by the Debtors.

23.     Given the numerous issues which the Engagement Personnel may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this matter in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Agreement are reasonable.

### D.    Dispute Resolution Procedures

24.     The Debtors and A&M have agreed, subject to the Court's approval of this Motion, that:  (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by the Engagement Personnel to the Debtors as outlined in this Motion, including any matter involving a successor in interest or agent of any of the Debtors or of A&M, shall be brought in this Court or the United States District Court for the Eastern District of Virginia (the "District Court") (if the reference is withdrawn); (b) A&M, the Debtors, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; (c) A&M and the Debtors, and any and all successors and assigns

10

thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, A&M and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation and, if mediation is not successful, then to binding arbitration; and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction.  By this Motion, the Debtors seek approval of this agreement by the Court.  Further, A&M and the Debtors have agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or the District Court (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

## VII.    Basis for Relief

### A.    The Debtors Have Exercised Their Sound Business Judgment.

25.    The Debtors seek to employ and retain A&M and appoint Mr. McGahan  as CRO pursuant to section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363.  In reviewing a debtor's decision to use estate property pursuant to section 363 of the Bankruptcy Code, courts have routinely held that if such use represents the reasonable business judgment on the part of the debtors, such use should be approved.  *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when

examining § 363(b) sales." (citing *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)));

*see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge

determining a section 363(b) application must find from the evidence presented before him or

her a good business reason to grant such application); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670,

675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is

"a good business reason").

26.     Bankruptcy courts in this district and others have analyzed the propriety of a

debtor-in-possession's employment of corporate restructuring officers under section 363 of the

Bankruptcy Code on numerous occasions and have determined that it is an appropriate exercise

of business judgment to employ a corporate restructuring officer in such manner. *See, e.g., In re

Patriot Coal Corporation*, Case No. 15-32450 (KLP) [Docket No. 272] (Bankr. E.D. Va. June 10,

2015); *In re Circuit City Stores, Inc.,* Case No. 08-35653 (KRH) [Docket No. 6795] (Bankr. E.D.

Va. Mar. 11, 2010); *In re Movie Gallery, Inc.*, Case No. 10-30696 (KLP) [Docket No. 81]

(Bankr. E.D. Va. Feb. 4, 2010); *In re S & K Famous Brands, Inc.*, Case No. 09-30805 (KRH)

[Docket No. 295] (Bankr. E.D. Va. Apr. 27, 2009); *In re LandAmerica Financial Group, Inc.*,

Case No. 08-35994 (KRH) [Docket No. 476] (Bankr. E.D. Va. Dec. 29, 2008); *In re Universal

Building Prods., Inc.*, No. 10-12453 (MFW) [Docket No. 129] (Bankr. D. Del. Aug. 23, 2010);

*In re Mirant Corp.*, Case No. 03-46590 (DML) [Docket No. 999] (Bankr. N.D. Tex. Sept. 29,

2003); *In re Fleming Cos.*, Case No. 03-10945 (MFW) [Docket No. 1698] (Bankr. D. Del. June

25, 2003); *In re Exide Techs., Inc.*, Case No. 02-11125 (JCA) [Docket No. 214] (Bankr. D. Del.

May 10, 2002).

27.     Here, the decision to employ A&M and appoint Martin McGahan as CRO should

be authorized because it is based on the sound exercise of the business judgment of the Debtors.

First, as set forth above, Mr. McGahan is well qualified to serve as CRO because of his extensive experience advising troubled companies, their creditors and other economic stakeholders in both chapter 11 and out-of-court workouts.

28.     Additionally, through negotiations, the Debtors have been able to secure the services of Mr. McGahan on economic terms that are fair and reasonable and beneficial to the estates.  Moreover, the compensation arrangement provided for in the Engagement Agreement is consistent with and typical of arrangements entered into by other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

29.     In view of the foregoing, the Debtors believe that the retention of A&M and appointment of Martin McGahan as CRO is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in these chapter 11 cases, and respectfully request that the Court authorize the relief requested herein.

**B.     The Proposed Retention Comports with the Bankruptcy Code.**

30.     As discussed above, if the Court approves the relief requested herein, A&M will be retained to make Mr. McGahan and the Additional Personnel available to the Debtors pursuant to section 363 of the Bankruptcy Code, rather than as a professional under section 327 of the Bankruptcy Code.  Accordingly, A&M will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, A&M will file with the Court reports of compensation earned and expenses incurred on a quarterly basis, and shall provide notice thereof to the U.S. Trustee and any official committee.  Such compensation and expenses shall be subject to Court review in the event that an objection is filed within twenty-one days of service and such objection is not resolved by the applicable parties within twenty days of the filing of such objection (or such later time as the parties mutually agree).

13

31.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors, and therefore should be granted.

### VIII.   Waiver of Memorandum of Law

32.     The Debtors respectfully request that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Rule 9013-1(G) of the Local Rules.

### IX.     Notice

33.     Notice of this Motion has been provided in accordance with the *Notice, Case Management and Administrative Procedures* [ECF No. 40] approved by this Court on June 9, 2015 (the "Case Management Procedures").  The Debtors submit that no other or further notice need be provided.

### X.     No Previous Request

34.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested

herein and such other and further relief as is just and proper.

DATED: June 23, 2015

Respectfully submitted,

*/s/ Jason W. Harbour*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| In re:<br><br>**HEALTH DIAGNOSTIC LABORATORY, INC.**, *et al.*,<br><br>Debtors.[1] | **Chapter 11**<br><br>**Case No. 15-32919 (KRH)**<br><br>**(Jointly Administered)** |

**ORDER (I) AUTHORIZING THE DEBTORS TO
(A) RETAIN ALVAREZ & MARSAL HEALTHCARE INDUSTRY GROUP, LLC TO
PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN
ADDITIONAL PERSONNEL AND (B) DESIGNATE MARTIN MCGAHAN AS CHIEF
RESTRUCTURING OFFICER FOR THE DEBTORS, EFFECTIVE AS OF THE
PETITION DATE AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-

possession (collectively, the "Debtors") for entry of an order pursuant to 105(a) and 363(b)

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and Integrated Health Leaders, LLC (7832).

[2]     Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors
and Debtors in Possession*

(i) authorizing the Debtors to (a) retain Alvarez & Marsal Healthcare Industry Group, LLC

("A&M") to provide the Debtors with a Chief Restructuring Officer ("CRO") and certain

Additional Personnel to assist the CRO and (b) designate Martin McGahan CRO for the Debtors

effective as of the Petition Date and (ii) granting related relief; and the Court having jurisdiction

to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334;

and upon consideration of the Motion, the McGahan Declaration and all pleadings related

thereto; and consideration of the Motion and the requested relief being a core proceeding under

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided; and no other or further

notice need be provided; and the relief requested in the Motion being in the best interests of the

Debtors, their estates, the creditors and other parties in interest; and the Court having reviewed

the Motion and having held a hearing on the same (the "Hearing"); and the Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein; and upon all of the proceedings had before the Court; and

after due deliberation and sufficient cause appearing therefor,

     **IT IS HEREBY ORDERED THAT:**

1.     The relief requested in the Motion is hereby GRANTED.

2.     The terms of the Engagement Agreement, including without limitation, the

compensation provisions and the indemnification provisions, as modified by the Motion and this

Order, are reasonable terms and conditions of employment and are hereby approved.

3

3.      The Debtors are authorized to engage A&M, appoint Martin McGahan as their CRO, and engage the Additional Personnel on the terms described in the Motion and in the Engagement Agreement attached hereto as <u>Exhibit 1</u>, effective as of the Petition Date.

4.      A&M shall not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.    Instead, A&M shall file with the Court reports of compensation earned and expenses incurred on a monthly basis, and shall provide notice thereof to the U.S. Trustee and any official committee.   The notice shall provide a time period for objections and the compensation and expenses shall be subject to Court review in the event that an objection is filed within twenty-one days of service and such objection is not resolved by the applicable parties within twenty days of the filing of such objection (or such later time as the parties mutually agree).

5.      The Debtors are permitted to indemnify A&M, the CRO, and any Additional Personnel in accordance with the terms of the Engagement Agreement and Motion.

6.      A&M is authorized, but not directed, to continue to hold the Retainer and apply such Retainer, to the extent necessary, to pay any allowed fees, costs, and expenses relating to services rendered by A&M to the Debtors subsequent to the Petition Date in accordance with the Motion.

7.      Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn or resolved are overruled in all respects on the merits.

8.      The Debtors are authorized and empowered to take all actions necessary to implement and effectuate the terms of this Order.

4

9.      Notice of the Motion as provided therein shall be deemed good and sufficient

notice.

10.      In the event of any inconsistencies between this Order and the Motion, this Order

shall govern in all respects

Richmond, Virginia
Dated:_____, 2015

_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: _____

WE ASK FOR THIS:


*/s/ Jason W. Harbour*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Fax:  (804) 788-8218

*Proposed Counsel to the Debtors*
*and Debtors in Possession*


## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)


I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Jason W. Harbour*

# EXHIBIT 1



Alvarez & Marsal
Healthcare Industry Group, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

June 6, 2015

Joseph P. McConnell, Ph. D.
President and Chief Executive Officer
Health Diagnostic Laboratory, Inc.
737 North 5th Street
Richmond, VA  23219

Dear Dr. McConnell:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") and Health Diagnostic Laboratory, Inc. and its subsidiaries, assigns and successors (jointly and severally, the "Company"), including the scope of the services to be performed and the basis of compensation for those services.  Upon execution of this letter by each of the parties below and receipt of the retainer described below, (a) this letter will constitute an agreement between the Company and A&M (the "Agreement") that will become effective concurrent with the Company's anticipated filing of a petition with the Bankruptcy Court on or about June 7, 2015 and (b) this letter shall supersede that certain engagement letter agreement, dated November 17, 2014 (the "Prior Agreement"), between A&M and the Company, provided that, for the avoidance of doubt, the terms of the Prior Agreement which survive termination shall so survive.

1)  <u>Description of Services</u>

    a)  <u>Officers</u>.  In connection with this engagement, A&M shall make available to the Company:

        i)  Martin McGahan, a Managing Director of A&M, to serve as the Chief Restructuring Officer (the "CRO"); and

        ii)  Upon the mutual agreement of A&M and the Company, A&M will provide additional employees of A&M and/or its affiliates and wholly-owned subsidiaries ("Additional Personnel") as required (collectively, with the CRO, the "Engagement Personnel"), to assist the CRO in the execution of the duties set forth more fully herein.

    b)  <u>Duties</u>.

        i)  The Engagement Personnel in cooperation other applicable officers of the Company, shall perform a financial review of the Company, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Company to its creditors, including without limitation its short and long-term projected cash flows and operating performance;

        (a)  The Engagement Personnel shall assist the Company in its reorganization efforts.  It is anticipated that A&M's activities shall include the following:

Alvarez & Marsal
North America, LLC

    (i)       assistance in evaluation of the Company's current business plan and in preparation of a revised operating plan and cash flow forecast and presentation of such plan and forecast to the Company's Board of Directors (the "Board") and its creditors;

    (ii)     assistance in identification of cost reduction and operations improvement opportunities;

    (iii)    assistance in the development and management of a 13-week cash flow forecast;

    (iv)    assistance in financing issues including assistance in preparation of reports and liaison with creditors;

ii)  The Engagement Personnel shall assist other Company engaged professionals in developing for the Board's review possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various business lines;

iii)  The CRO shall serve as the principal contact with the Company's creditors with respect to the Company's financial and operational matters;

iv)  The Engagement Personnel shall perform such other services as requested or directed by the board of the directors of the Company (the "Board") or other Company personnel as authorized by the Board, and agreed to by A&M that is not duplicative of work others are performing for the Company.

c)  The Engagement Personnel shall report to the Board and, at the request of the Board, will make recommendations to and consult with the Board.

d)  The Engagement Personnel will continue to be employed by A&M and, while rendering services to the Company, will continue to work with other personnel at A&M in connection with unrelated matters that will not unduly interfere with the services rendered by the Engagement Personnel pursuant to this Agreement.   With respect to the Company, however, the Engagement Personnel shall operate under the direction of the Board and except in circumstances of fraud or intentional misconduct, A&M shall have no liability to the Company for any acts or omissions of the Engagement Personnel related to the performance or non-performance of services at the direction of the Board and consistent with the requirements of the Engagement and this Agreement.

e)  In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates, subsidiaries, and independent contractors as Engagement Personnel.  Such affiliates and subsidiaries are wholly owned by A&M's parent company and employees. A&M personnel providing services to the Company may also work with other A&M clients in conjunction with unrelated matters.

-2-

2) <u>Information Provided by the Company and Forward Looking Statements</u>. The Company shall use all reasonable efforts to: (i) provide the Engagement Personnel with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that Engagement Personnel reasonably request in connection with the services to be provided to the Company. The Engagement Personnel shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by Engagement Personnel in connection with the services performed for the Company. The Company acknowledges and agrees that the Engagement Personnel are not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M and Engagement Personnel are under no obligation to update data submitted to them or to review any other areas unless specifically requested by the Board to do so.

You understand that the services to be rendered by the Engagement Personnel may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, Engagement Personnel will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3) <u>Limitation of Duties</u>. Neither A&M, nor the Engagement Personnel make any representations or guarantees that, <u>inter alia</u>, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company, (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Board will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company, or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, neither A&M, nor the Engagement Personnel, assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. The Engagement Personnel shall be responsible for implementation only of the restructuring proposal or alternative approved by the Board and only to the extent and in the manner authorized and directed by the Board.

4) <u>Compensation</u>.

a) For services related to the role of CRO, A&M will receive a flat monthly fee of $105,000.

b) A&M, for all other services, will receive fees for the services of the Engagement Personnel based on the following hourly rates:

| | |
|---|---|
| Managing Directors | $675 – $875 |
| Directors – Sr. Directors | $475 – $675 |
| Associates – Sr. Associates | $375 – $475 |
| Analysts / Staff | $275 – $375 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

c) In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this Agreement, such as reasonable travel, lodging, duplicating, messenger, computer research and telephone charges and 3% of fees billed for in-house, indirect administrative expenses such as telephone charges, computer use, in-house copying facsimiles and other internal services. All fees and expenses will be billed and payable on a monthly basis or, at A&M's discretion, more frequently.

d) A&M and the Company agree that A&M may transfer the $450,000 received under the Prior Agreement and hold such amount as a retainer under this Agreement. The retainer shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

5) Termination.

a) This Agreement will commence as of the commencement of the services referred to in Section 1 and may be terminated with immediate effect by either party without cause by written notice to the other party.

b) A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists.

c) On termination of the Agreement, any fees and expenses due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

d) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6) No Audit. Company acknowledges and agrees that A&M and Engagement Personnel are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7) No Third Party Beneficiary. The Company acknowledges that all advice (written or oral) provided by A&M and the Engagement Personnel to the Company in connection with this engagement under this Agreement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

8) <u>Conflicts</u>.  A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "<u>Firm</u>") that serves clients on an international basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to, or have business associations with, other entities or people which had or have or may have relationships with the Company, including creditors of the Company.  The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained; provided, however, that the Firm shall not, during the term of this Agreement, provide services to other entities in matters related to the Company restructuring in which the Engagement Personnel are acting without the prior consent of the Company. Each of the entities which encompass the definition of "Company" acknowledges and agrees that the services being provided hereunder are being provided on behalf of each of them under the direction of the Company, and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other such entity. Each such entity represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

9) <u>Confidentiality/Non-Solicitation</u>.

A&M and Engagement Personnel shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this engagement. In any event, A & M and Engagement Personnel shall adhere to and comply with the terms and conditions under HIPAA as pertains to protected health information. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is, or becomes, public other than as a result of a breach of this provision.  The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not knowingly solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked directly on this engagement while employed by A&M or its affiliates ("<u>Solicited Person</u>").   Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets knowingly extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the party extending such offer equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee.  The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision.  The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

10) <u>Indemnification/Limitations on Liability</u>.  The Company shall indemnify the Engagement Personnel acting as officers (the "<u>Indemnified Professionals</u>") to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's bylaws, its certificate of incorporation, by contract or otherwise, and no reduction or termination

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal Healthcare Industry Group, LLC

By: _____

Martin McGahan, Managing Director

Accepted and agreed:

Health Diagnostic Laboratory, Inc. on behalf of itself and its subsidiaries and it and their respective Boards of Directors

By: _____
Name: President & CEO
Title: Joseph P. McConnell

-7-

## INDEMNIFICATION AGREEMENT

This indemnity is made part of an agreement, dated June 6, 2015 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") by and between Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") and Health Diagnostic Laboratory, Inc. and its subsidiaries (jointly and severally, the "Company"), for services to be rendered to the Company by A&M. Capitalized terms used herein and not otherwise defined shall have the respective meanings set forth in the Agreement.

A.      The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement or the Prior Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.      These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or the Prior Agreement or A&M's and its personnel's role under the Agreement or the Prior Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or

-8-

other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.     If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.  The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement or the Prior Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor.  Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense.  The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.     In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement.   No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.    In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court.  The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.    Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.    The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

Health Diagnostic Laboratory, Inc, on behalf of
itself and its subsidiaries

ALVAREZ & MARSAL HEALTHCARE
INDUSTRY GROUP, LLC

By: _____

By: _____

-10-

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>**HEALTH DIAGNOSTIC LABORATORY, INC.**, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 15-32919 (KRH)<br><br>(Jointly Administered) |

**DECLARATION OF MARTIN MCGAHAN IN SUPPORT OF
THE MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF
AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) RETAIN ALVAREZ &
MARSAL HEALTHCARE INDUSTRY GROUP, LLC TO PROVIDE THE DEBTORS A
CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL
AND (B) DESIGNATE MARTIN MCGAHAN AS CHIEF RESTRUCTURING OFFICER
FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE AND
(II) GRANTING RELATED RELIEF**

Martin McGahan declares and says:

1.     I am a Managing Director and Co-Head of the Healthcare Industry Group of

Alvarez & Marsal Healthcare Industry Group, LLC (together with employees of its professional

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and Integrated Health Leaders, LLC (7832).

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors
and Debtors in Possession*

service provider affiliates (all of which are wholly-owned by its parent company and employees), its wholly-owned subsidiaries, and independent contractors, "A&M"), a healthcare advisory services firm with numerous offices throughout the country.  I have over 10 years of experience advising and working with operationally and financially challenged organizations in the health care industry.  I have been involved in major corporate restructuring projects throughout the United States, representing both debtors and creditors.  Some of my notable client engagements include Physiotherapy Holdings, Inc, Church Street Health Management, LLC, Sunwest Management, Inc., Medical Staffing Network, St. Vincent Catholic Medical Centers, Orthodontic Centers of America, Inc., and World Health Alternatives.

2.    I submit this declaration in support of the *Motion of the Debtors and Debtors in Possession for Entry of an Order (I) Authorizing the Debtors to (a) Retain Alvarez & Marsal Healthcare Industry Group, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (b) Designate Martin McGahan as Chief Restructuring Officer for the Debtors, Effective as of the Petition Date and (II) Granting Related Relief* (the "Motion")[2] on the terms and conditions set forth in the Motion and the engagement agreement, dated June 6, 2015, by and between the Debtors and A&M and attached to the Motion as Exhibit 1 to Exhibit A (the "Engagement Agreement").

3.    Except as otherwise noted, I have personal knowledge of the matters set forth herein.[3]

---

[2]    Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

[3]    Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at A&M and are based on information provided by such professionals.

## I.    A&M's Qualifications

4.    A&M together with its professional service provider affiliates (the "Firm") specialize in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.    The Firm's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including: (a) developing or validating forecasts and business plans and related assessments of a business's strategic position; (b) monitoring and managing cash, cash flow, and supplier relationships; (c) assessing and recommending cost reduction strategies; and (d) designing and negotiating financial restructuring packages.

5.    A&M and I are intimately familiar with the Debtors' businesses, financial affairs, and capital structure.    While I just recently have been appointed the position of Chief Restructuring Officer, I and others from A&M have been advising HDL since November, 2014. I am familiar with the day-to-day operations, business, and financial affairs of the Debtors.  I and others from A&M have worked closely with the Debtors' management and other professionals in assisting with the requirements of these chapter 11 cases.

## II.    Compensation

6.    Subject to Court approval of the Motion and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines, and the Local Rules, A&M will receive compensation and expense reimbursement in accordance with the terms set forth in the Motion.

7.    To the best of my knowledge:  (a) no commitments have been made or received by A&M with respect to compensation or payment in connection with these chapter 11 cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy

Rules; and (b) A&M has no agreement with any other entity to share with such entity any

compensation received by A&M in connection with these chapter 11 cases.

### III.   Eligibility

8.      The Firm utilizes certain procedures (the "Firm Procedures") to determine its

relationships, if any, to parties that may have a connection to any of the Debtors in these chapter

11 cases.   In implementing the Firm Procedures, the following actions were taken to identify

parties that may have connections to the Debtors and to determine the Firm's relationship with

such parties:

(a)     A&M requested and obtained from the Debtors lists of interested parties and significant creditors (the "Potential Parties in Interest").[4]   The list of Potential Parties in Interest which A&M reviewed is attached hereto as **Schedule 1**.

(b)     A&M then compared the names of each of the Potential Parties in Interest to the names in the master electronic database of the Firm's current and former clients (the "Client Database").   The Client Database generally includes the name of each client of A&M, the name of each party who is or was known to be adverse to such client of the Firm in connection with the matter in which the Firm is representing such client, the name of each party that has, or has had, a substantial role with regard to the subject matter of the Firm's retention, and the names of Engagement Personnel who are or were primarily responsible for matters for such clients.

(c)     An email was issued to all Firm professionals requesting disclosure of information regarding:  (i) any known personal connections between the respondent and/or the Firm on the one hand, and either the Potential Parties in Interest or the Debtors, on the other hand;[5] (ii) any known

---

[4]   As may be necessary, A&M will supplement this Declaration if it becomes aware of a relationship that may adversely affect A&M's retention in these chapter 11 cases or would otherwise require disclosure.

[5]   In reviewing its records and the relationships of its professionals, A&M did not seek information as to whether any Firm personnel or member of his/her immediate family:  (a) indirectly owns, through a public mutual fund or through partnerships in which certain A&M personnel have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors or any other party in interest, or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact A&M's disinterestedness or otherwise give rise to a finding that A&M holds or represents an interest adverse to the Debtors' estates.

4

connection or representation by the respondent and/or the Firm of any of the Potential Parties in Interest in matters relating to the Debtors; and (iii) any other conflict or reason why the Firm may be unable to represent the Debtors.

(d)     Known connections between former or recent clients of the Firm and the Potential Parties in Interest were compiled for purposes of preparing this Declaration.  These connections are listed in **Schedule 2** attached hereto.

9.     As a result of the Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, A&M:

(a)     is not a creditor of the Debtors (including by reason of unpaid fees for prepetition services)[6] or an equity security holder of the Debtors;

(b)     is not and has not been, within 2 years before the date of the filing of the petition, a director, officer (other than by virtue of A&M employees serving in the roles as Engagement Personnel (pre and post-petition) as described in the Motion), or an employee of the Debtors; and

(c)     does not have any interest materially adverse to the interests of the Debtors' estates, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

10.     As can be expected with respect to any international professional services firm such as the Firm, the Firm provides services to many clients with interests in the Debtors' chapter 11 cases.  To the best of my knowledge, except as indicated below, the Firm's services for such clients do not relate to the Debtors' chapter 11 cases.

11.     Further, as part of its diverse practice, the Firm appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who represent claimants and parties-in-interest in the Debtors' chapter 11 cases.  Further, A&M has performed in the past, and may perform in

---

[6]     *See* paragraph 11 below.

5

the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of which may be involved in these proceedings.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which the Firm is to be employed, and none are in connection with these chapter 11 cases.

12.    If any new material relevant facts or relationships are discovered or arise, A&M will promptly file a supplemental declaration

### IV.    Specific Disclosures

13.    A&M and certain of its professionals currently conduct business with and likely will continue to conduct business with certain of the parties-in-interest in connection with matters unrelated to the Debtors and their chapter 11 cases.  As of the filing of the Application, A&M is not aware of any such relationships except as disclosed on **Schedule 2** or otherwise described herein.  None of these connections are materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders thereof.

14.    Therefore, each of the professionals of A&M, insofar as I have been able to ascertain, do not have any connection, except as otherwise set forth herein, with the Debtors, their creditors or any other parties in interest, the United States Trustee for the Eastern District of Virginia or any person employed in the office of the same, United States District Court Judges for the Eastern District of Virginia, United States Magistrate Judges for the Eastern District of Virginia, or the United States Bankruptcy Judges for the Eastern District of Virginia.

15.     By reason of the foregoing, I believe A&M is eligible for retention by the Debtors pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

Dated: June 23, 2015                          _/s/ Martin McGahan_____
                                              Martin McGahan

# SCHEDULE 1

## Parties in Interest List

### Entities and Individuals Searched by Category

### Debtors and Affiliates

Health Diagnostic Laboratory, Inc.
Central Medical Laboratory, LLC
Integrated Health Leaders, LLC

### Non-Debtor Affiliates

Biotech 8, LLC
Global Genomics Group, LLC
Global Institute for Research, LLC
HDL Europe Ltd.
HDL Properties, LLC
HDL USA Holdings, LLC
Henrico Family Physicians, LLC

### Officers, Directors and Managers

Martin McGahan
Joseph P. McConnell
G. Russell Warnick
Noel Barlett
Robert S. Galen

### Equityholders

Galen, Robert S.
Petersen, Eric
Mayes, David
Tessler, John
Bartlett, Noel
Oates, Pamela
Golias, Joseph Hilton
Golias, Donald M.
Falgout, Karla
Mallory, LaTonya S.
Mallory, Scott Wingfield
McConnell, Joseph P.
The Joseph P. McConnell 2012 Irrevocable Trust
Warnick, George Russell

Karl F. Warnick and Kristan Warnick, as Co-Trustees under The Warnick Family 2012
Irrevocable Trust
Johnson, Robert Bradford
Dent, III, F. Calhoun
Golias, Tipton Lee
Wyndell L. Golias Voting Trust

**Creditors Holding Secured Claims**

BB&T
BB&T Equipment Finance, LLC
PNC Equipment Finance, LLC
Bank of the West

**Consolidated List of Creditors Scheduled as Holding 30 Largest Unsecured Claims**

U.S. Department of Justice
Randox Laboratories
Metabolon
LaTonya S. Mallory
Ropes & Gray LLP
Roche Diagnostics Corporation
Kansas Bioscience Authority
diaDexus
Numares Group
Oncimmune Limited
FedEx
Cleveland HeartLab, Inc.
LeClairRyan
City of Richmond
VWR International
Phillips & Cohen LLP; Roe Cassidy Coates & Price PA
Berk Law PLLC; Cotchett, Pitre and McCarthy, LLP
LabCorp
Beckman Coulter
BG Medicine
Mercodia, Inc.
Helena Laboratory Corporation
ProFootball Inc. (The Washington Redskins)
Petragallo Gordon Alfano Bosick & Raspanti, LLP; Wyatt & Blake LLP
Finnegan Henderson Farabow Garrett & Dunner LLP
DiaSorin
Monument Consulting, LLC
Kronus Market Development Associates, Inc.
Orchard Software

2

Chrom Tech, Inc.

## **Professionals**

Alvarez & Marsal
Hunton & Williams LLP
Hirschler Fleischer PLLC

## **Financial Institutions**

SunTrust Bank
Fulton Bank

## **Regulatory Agencies**

State Corporation Commission of Virginia
Internal Revenue Service
Virginia Department of State
Commonwealth of Virginia

## **Parties Involved in Litigation with the Debtors**

Aetna, Inc.
BlueWave Healthcare Consultants
Cigna Health and Life Insurance Co.
Connecticut General Life Insurance Co.

## **Insurers**

American International Group
AXIS Speciality Insurance
Berkley National Insurance Company
Lexington Insurance
National Union Fire Insurance Company of Pittsburg, PA
Chubb

## **Utilities**

Level 3 Communications
Charter Business
Time Warner
Verizon
Verizon Wireless
Comcast
AT&T

3

Windstream
Star2Star Communications
DirecTV
Lenoir City Utilities Board
Dominion Virginia Power
Alabama Power
County Waste of Virginia
Avid Communications LLC
De Soto
Westar Energy

**United States Bankruptcy Court for the Eastern District of Virginia**

Chief Judge Stephen C. St. John
Judge Kevin R. Huennekens
Judge Brian F. Kenney
Judge Robert G. Mayer
Judge Keith L. Phillips
Judge Frank J. Santoro
William C. Redden, Clerk of Court

**Employees of the Office of the U.S. Trustee for the Eastern District of Virginia**

Judy Robbins, United States Trustee
Robert B. Van Arsdale, Assistant United States Trustee
Paula F. Blades
Margaret L. Bloom
Susan L. Eberhardt
Peggy T. Flinchum
Jack I. Frankel
Joseph A. Guzinski
Frances B. Hodges
Bradley D. Jones
Jay W. Legum
Theresa E. McPherson
Peter M. Orens
Shannon F. Pecoraro
Tony Pika
Ilene M. Sims
Mark E. Steven
June E. Turner
Martha J. Watson
Cecelia A. Weschler
Kenneth N. Whitehurst, III
Sheryl D. Wilson

# SCHEDULE 2

## **SCHEDULE 2**

| Entity Searched | Entity or Individual with a Connection to Hunton & Williams | Status | Nature of Representation |
|---|---|---|---|
| **Debtor and Affiliates** | | | |
| Entities and/or Individuals Listed on Schedule 1 | None | | |
| **Non-Debtor Affiliates** | | | |
| Entities and/or Individuals Listed on Schedule 1 | None | | |
| **Officers, Directors, and Managers** | | | |
| Entities and/or Individuals Listed on Schedule 1 | None | | |
| **Equityholders** | | | |
| Entities and/or Individuals Listed on Schedule 1 | None | | |

| Creditors Holding Secured Claims | | | |
|---|---|---|---|
| Bank of the West | Bank of the West | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| BB&T | BB&T | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| PNC Equipment Finance, LLC | PNC Equipment Finance, LLC | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| All Other Entities and/or Individuals Listed on Schedule 1 | None | | |
| **Consolidated List of Creditors Scheduled as Holding 30 Largest Unsecured Claims and Other Unsecured Creditors** | | | |
| U.S. Department of Justice | U.S. Department of Justice | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| Ropes and Gray LLP | Ropes and Gray LLP | Current or former client of A&M and/or its Affiliates; professionals in cases in which A&M has been involved as an advisor. | Matters unrelated to these bankruptcy cases. |
| FedEx | FedEx | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| LeClairRyan | LeClairRyan | Professionals in cases in which A&M has been involved as an advisor. | Matters unrelated to these bankruptcy cases. |
| City of Richmond | City of Richmond | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| Beckman Coulter | Beckman Coulter | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |

| All Other Entities and/or Individuals Listed on Schedule 1 | None | | |
|---|---|---|---|
| **Professionals** | | | |
| Hunton & Williams LLP | Hunton & Williams LLP | Current or former client of A&M and/or its Affiliates; professionals in cases in which A&M has been involved as an advisor. | Matters unrelated to these bankruptcy cases. |
| Hirschler Fleischer PLLC | Hirschler Fleischer PLLC | Professionals in cases in which A&M has been involved as an advisor. | Matters unrelated to these bankruptcy cases. |
| All Other Entities and/or Individuals Listed on Schedule 1 | None | | |
| **Financial Institutions** | | | |
| SunTrust | Bank | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| All Other Entities and/or Individuals Listed on Schedule 1 | None | | |

| Regulatory Agencies | | | |
|---|---|---|---|
| Entities and/or Individuals Listed on Schedule 1 | None | | |

| Parties Involved in Litigation with the Debtors | | | |
|---|---|---|---|
| Aetna, Inc. | Aetna, Inc. | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| Cigna Health and Life Insurance Co. | Cigna Health and Life Insurance Co. | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| All Other Entities and/or Individuals Listed on Schedule 1 | None | | |

| Insurers | | | |
|---|---|---|---|
| American International Group | American International Group | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| Lexington Insurance | Lexington Insurance | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| National Union Fire Insurance Company of Pittsburg, PA | National Union Fire Insurance Company of Pittsburg, PA | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| Chubb | Chubb | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| All Other Entities and/or Individuals Listed on Schedule 1 | None | | |

| Utilities | | | |
|---|---|---|---|
| Time Warner | Time Warner | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| Verizon | Verizon | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| Verizon Wireless | Verizon | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| Comcast | Comcast and certain of its affiliates | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| AT&T | AT&T | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| Windstream | Windstream Connections | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| Alabama Power | Alabama Power | Current or former client of A&M and/or its Affiliates | Matters unrelated to these bankruptcy cases. |
| All Other Entities and/or Individuals Listed on Schedule 1 | None | | |
| **United States Bankruptcy Court for the Eastern District of Virginia** | | | |
| Entities and/or Individuals Listed on Schedule 1 | None | | |
| **Employees of the Office of the U.S. Trustee for the Eastern District of Virginia** | | | |
| Entities and/or Individuals Listed on Schedule 1 | None | | |

5