UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | HEALTH DIAGNOSTIC LABORATORY, INC., *et al.*, | Case No. 15-32919-KRH<br>Chapter 11<br>(Jointly Administered) |
| | Debtors. | |

## MEMORANDUM OPINION

Before the Court is the Motion for Stay Pending Appeal Pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") filed by Branch Banking and Trust Company and BB&T Equipment Finance Corporation (collectively "BB&T") against Health Diagnostic Laboratory, Inc. ("HDL" or the "Debtors").[1] On August 4, 2015 the Court conducted a hearing at which it granted HDL's Motion to Approve Debtor in Possession Financing (the "DIP Motion"). On August 7, 2015, the Court entered an Interim Order (i) Authorizing Debtors to Obtain Post-Petition Secured, Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364; and (ii) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c) (the "Interim DIP Financing Order"). The Court subsequently entered a memorandum opinion in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure setting forth its findings of fact and conclusions of law in regards to the Interim DIP Motion.

On August 7, 2015, BB&T filed a Motion for Leave to Appeal, a Motion for Stay Pending Appeal, and a Motion for an Expedited Hearing on its Motion for Stay Pending Appeal. That same day, the Court entered an order: (i) granting BB&T Motion for Expedited Hearing; (ii)

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and Integrated Health Leaders, LLC (7832).

setting a hearing on BB&T's Motion for Stay Pending Appeal for August 17, 2015 (the "Hearing"); and (iii) establishing a briefing schedule for the Hearing.

At the conclusion of the Hearing, the Court denied the BB&T Motion for Stay Pending Appeal. This memorandum opinion sets forth the Court's analysis and conclusions that support its ruling in accordance with Bankruptcy Rule 7052.[2]

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

## Factual and Procedural Background

On June 7, 2015, (the "Petition Date") the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[3] The Debtors, who are engaged in the business of conducting medical laboratory testing and analysis, continue to operate their business as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108. On June 16, 2015, the Official Committee of Unsecured Creditors was appointed in this case.

BB&T provided prepetition financing to HDL through four loan agreements: (i) an Equipment loan in the amount of $9,603,898.56 (the "Equipment Loan"); (ii) a line of credit in the original principal amount of $20,000,000 (the "Revolving Line of Credit"); (iii) a term loan in the original principal amount of $5,500,000 (the "Term Loan"); and (iv) a standby letter of

---

[2] Rule 9014 of the Federal Rules of Bankruptcy Procedure provides that Rule 7052 is applicable to this contested matter. *See* Fed. R. Bankr. P. 9014(c). Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[3] 11 U.S.C. §§ 1101–1174. All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

2

credit in the face amount of $4,000,000 for the benefit of Fulton Bank, NA, for the account of HDL (the "Standby Letter of Credit").

As of this date, the approximate amounts due by HDL, plus accrued interest and fees on each of these loans are: (i) $7,118,348, collectively, on the Equipment Loan and on the Term Loan; (ii) $2,234,370 on the Revolving Line of Credit; and (iii) $4,000,000 on the Standby Letter of Credit issued to Fulton Bank. To secure the amount owed under the Equipment Loan, BB&T obtained a first priority purchase money security interest in the equipment HDL purchased with the loan proceeds. The Equipment Loan is also secured by a second priority interest in HDL's accounts, inventory, and equipment. To secure the amount owed under the Revolving Line of Credit, BB&T obtained a first priority security interest in all of HDL's accounts (including contract rights and health care insurance receivables), inventory, equipment, and deposit accounts held by BB&T. To secure the amount owed under the Term Loan, BB&T obtained a perfected security interest in certain of HDL's equipment. To secure the amount owed under the Standby Letter of Credit, BB&T obtained a perfected security interest in HDL's accounts (including contract rights and health care insurance receivables), inventory, and equipment. The Revolving Line of Credit, Term Loan, and Standby Letter of Credit are all cross-collateralized.

On June 7, 2015, the Debtors filed a Motion for Entry of Interim and Final Orders Authorizing the Debtors to Use Cash Collateral and Granting Adequate Protection. The Court subsequently entered four interim orders authorizing the Debtors to use cash collateral, whereby the Court authorized the Debtors to use BB&T's cash collateral on an interim basis through August 4, 2015.

Following the Petition Date, the Debtors immediately began seeking debtor in possession financing ("DIP Financing"). Through diligent efforts, the Debtors were eventually able to

3

locate a lender willing to provide the Debtors with DIP Financing. BB&T was unwilling to provide the Debtors with such financing. The Debtors' obtained a credit agreement for secured, superpriority postpetition financing consisting of a revolving facility with a principal amount up to $12,000,000. As outlined in the Court's memorandum opinion pertaining to the entry of the DIP Financing Order, the Court found that the Debtors exercised their sound business judgment in obtaining this DIP Financing and granting the DIP lender a priming lien, that obtaining this DIP Financing is essential to the Debtors successfully emerging from chapter 11, and that BB&T is adequately protected due to the equity cushion that exists in its collateral. The Court's entry of the DIP Financing Order prompted BB&T to file this Motion for Stay Pending Appeal to request that the Court stay the effect of the DIP Financing Order pending the District Court's ruling on BB&T's appeal. The Debtors have a critically important sale hearing scheduled within the next month. The Debtors need DIP Financing in order to consummate this sale process, repay its debts, and continue the operation of the business as a going concern.

**Analysis**

Bankruptcy Rule 8007 governs motions for stay pending appeal. That rule provides "[o]rdinarily, a party must move first in the bankruptcy court for the following relief: (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). The United States Court of Appeals for the Fourth Circuit has adopted a four part test to determine whether a motion for stay pending appeal should be granted. In *Long v. Robinson*, the Fourth Circuit announced that:

> [A] party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay.

4

432 F.2d 977, 979 (4th Cir. 1970).  The Court finds that BB&T is unable to satisfy any of these elements.

Beginning with factor one—the likelihood of success on appeal—the Court finds that BB&T is unlikely to prevail on the merits on appeal.  BB&T argues that it will succeed on appeal because the Court's approval of a priming lien for the DIP lender under Bankruptcy Code § 364(d) is based on the Court's determination that an equity cushion exists that will protect BB&T's interests.  BB&T believes that no such equity cushion exists, therefore leaving BB&T without adequate protection.  BB&T contends that the Court incorrectly valued the Debtors' assets at fair market value, instead of using a forced liquidation analysis.  BB&T adopts this position despite the fact that the Debtors are still operating as a going concern.

After the presentation of expert testimony regarding valuation by the Debtors, the Court determined that the going concern, fair market value of the Debtors' property provides BB&T with an equity cushion that exceeds 100%.  Courts within this district have held that an equity cushion of 20% is generally considered adequate protection.  "A substantial 'equity cushion' can provide adequate protection."  *In re Franklin Equip. Co.*, 416 B.R. 483, 528 (Bankr. E.D. Va. 2009) (quoting *In re Colonial Center, Inc.*, 156 B.R. 452, 460 (Bankr. E.D. Pa. 1993) (internal quotation marks omitted).  "The amount of equity cushion sufficient to adequately protect the creditor is determined on a case-by-case basis.  [*In re Kost*, 102 B.R. 829, 831 (D. Wyo. 1989)]. However, the reported cases do provide some guidance: Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection."  *Franklin*, 416 B.R. at 528 (citing *Kost*, 102 B.R. at 831–32).  Additionally, in *In re Rogers Development Corp.*, this Court found that an equity cushion of 15% to 20% constituted adequate protection for a creditor.  2 B.R. 679 (Bankr. E.D. Va. 1980).  These cases stand in contrast to *Principal Mutual Life Ins. Co.*

5

*v. Atrium Development Co. (In re Atrium Development Co.)*, where a separate division of this Court found that a 12% equity cushion did not provide the creditor with adequate protection, considering the totality of circumstances in the case. 159 B.R. 464, 471–72. As BB&T's equity cushion in this case far exceeds the equity cushion in *Atrium*, and is well above what courts have "almost uniformly held . . . [constitutes] adequate protection" the Court finds that BB&T is adequately protected for purposes of Bankruptcy Code § 364(d)(1)(B). *Franklin*, 416 B.R. at 528 (citing *Kost*, 102 B.R. at 831–32).

The Court found that BB&T's challenge to the Court's use of the going concern value of the Debtors' property to determine adequate protection is unlikely to prevail on appeal. BB&T presented evidence of forced liquidation value, and argued that using liquidation value is appropriate in this case because the Debtors have negative cash flow. "[T]he bankruptcy court has considerable discretion in determining the appropriate method of valuation" when gauging whether an objecting creditor is adequately protected. *In re Beker Indus. Corp.*, 58 B.R. 725, 737 (Bankr. S.D.N.Y 1986) (quoting *In re Automatic Voting Machine Corp.*, 26 B.R. 970, 972 (Bankr. W.D.N.Y. 1983)) (citing *In re Kennedy Mortg. Co.*, 23 B.R. 466, 470 (Bankr. D.N.J. 1982)). As this Court has previously acknowledged, "[t]he going concern threshold is very low; a debtor may be financially unstable, but it is still a going concern as long as the amount it could realize from converting its assets to cash in the ordinary course of business exceeds the expenses of conducting business." *In re Heilig-Meyers Co.*, 319 B.R. 447, 457 (Bankr. E.D. Va. 2004) (citing *In re Taxman Clothing Co., Inc.*, 905 F.2d 166, 170 (7th Cir. 1990); *see Fryman v. Century Factors, Factor for New Wave (In re Art Shirt Ltd., Inc.)*, 93 B.R. 333, 341 (E.D. Pa. 1988)).

6

Taking into consideration the totality of the circumstances and the Debtors' business operations as a whole, the Court finds that the use of going concern value is appropriate. Liquidation of the Debtors does not seem likely for the foreseeable future, especially now that the Debtors have secured DIP Financing. The Debtors are also in the process of selling assets to improve the financial well being of the business. Additionally, the Debtors continue to work to resolve their dispute with the United States Department of Justice.[4] Given these facts, the Court does not believe liquidation in imminent, and finds that it would be inappropriate to use liquidation value to price the Debtors' assets. *See Beker*, 58 B.R. at 738. Additionally, "valuation is a question of fact, and can be overturned on appeal only if clearly erroneous." *Estate Const. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 219 (4th Cir. 1994) (*citing In re Midway Partners*, 995 F.2d 490, 493 (4th Cir. 1993)). Accordingly, the Court finds it unlikely that BB&T will prevail on appeal.

Turning to factor two—whether BB&T will suffer irreparable injury if the stay is denied—the Court finds that BB&T will not be irreparably harmed. Because a trial judge is unlikely to find that he or she will likely be reversed on appeal, courts have found "that primary weight should be given to the balance of hardships. Accordingly, as with a preliminary injunction, if the balance of hardships tips decidedly in favor of the appellant, the appellant need only show some reasonable likelihood of success on the merits." *Hoekstra v. Oak Cluster Community Cluster (In re Hoekstra)*, 268 B.R. 904, 906 (Bankr. E.D. Va. 2000). The balance of hardships in this case weighs in favor of the Debtors.

---

[4] The Debtors and the Department of Justice have entered into an agreed settlement in which HDL agreed to pay the United States $47,000,000 over a five-year period under a fixed payment schedule. This settlement was reached following the United States' investigation into HDL's practices involving the payment of various fees to physicians in return for HDL processing those physicians' lab samples.

7

BB&T's main contention is that by being relegated to second status as a result of the priming lien being granted to the DIP lender, BB&T will not receive full repayment on the credit it extended to the Debtors. BB&T argues that it will not receive any distributions until the $12,000,000 owed under the DIP loan agreement is repaid in full. The Court is not persuaded by these arguments. First, as stated above, BB&T is adequately protected by the large equity cushion that exists in the collateral. Second, BB&T will actually benefit by the Debtors receiving DIP Financing, because HDL will be able to successfully proceed with the sale process and begin to repay its debts in full. Therefore, the Court finds that BB&T will not suffer any irreparable injury if the stay is denied.

Under factor three—whether the stay will substantially harm other parties—the Court finds that the Debtors will be irreparably harmed by imposition of the stay. The Debtors are operating at a deficit, and need DIP Financing to keep the business operating. It is unlikely that the Debtors would be able to make it through the sale process without receiving this DIP Financing promptly. By staying the effect of the DIP Financing Order all creditors in the case will be harmed and the ability of the Debtors to successfully emerge from the bankruptcy process would be jeopardized.

The DIP Financing will also allow the Debtors to pay their accrued and accruing postpetition administrative expense claims, which the Debtors currently do not have the capital to accomplish. To successfully confirm a plan of reorganization and emerge from chapter 11, the Debtors will be required to pay all administrative expense claims. *See* 11 U.S.C. § 1129(a)(9). This DIP Financing will also allow the Debtors to make their first payment to the Department of Justice under the parties' settlement. If this payment is not made, the Department of Justice may exercise its setoff rights, which would have serious negative ramifications on the

8

Debtors' ability to emerge from bankruptcy. Therefore, balancing the hardships in the case, the Court finds that the potential detriment to the Debtors that would come about as a result of the imposition of the stay vastly outweighs any potential injury BB&T will suffer as a result of denial of the stay.

The final factor—whether the public interest will be served by granting the stay—also weighs against granting BB&T's Motion for Stay Pending Appeal. The Court finds that third parties and the public interest in general will be harmed by imposition of the stay. If the Debtors cannot proceed to consummate the sale process, which likely would not occur if the Court grants the stay, the Debtors may not continue to operate as a going concern, and the company's approximately 645 employees would lose their jobs. While having a direct effect on these employees, this would also have a broader negative impact on the community more generally. HDL is a large employer in Richmond and a company that has received a fairly substantial amount of public investment since it first began operating in 2009. It is imperative not only to creditors, but also the community, that HDL is provided with an opportunity to reach the sale hearing and keep the business operating. Therefore, this factor also weighs against BB&T.

## Conclusion

After considering the applicable statutory authority, case law, pleadings, and arguments, the Court finds: (i) BB&T is unlikely to prevail on the merits on appeal; (ii) BB&T will not suffer irreparable injury if the stay is denied; (iii) the Debtors will be seriously harmed by imposition of a stay; and (iv) the public interest will be served by the denial of a stay. Therefore, BB&T's Motion for Stay Pending Appeal is denied.

A separate order shall issue.

ENTERED: Aug 17 2015

        /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

ENTERED ON DOCKET: Aug 17 2015