# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (RICHMOND DIVISION)

| | |
|---|---|
| In re:<br><br>HEALTH DIAGNOSTIC LABORATORY INC. *et. al.*,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 15-32919 (KRH)<br><br>(Jointly Administered) |

## MOTION FOR ORDER APPROVING
## SETTLEMENT AGREEMENT BETWEEN
## RICHARD ARROWSMITH, LIQUIDATING TRUSTEE
## <u>OF THE HDL LIQUIDATING TRUST AND LECLAIRRYAN</u>

Richard Arrowsmith, in his capacity as Liquidating Trustee of the HDL Liquidating Trust (the "<u>Liquidating Trustee</u>"), appointed pursuant to the Debtors' confirmed Modified Second Amended Plan of Liquidation (the "<u>Plan</u>") in these jointly administered bankruptcy cases (the "<u>Chapter 11 Cases</u>" or the "<u>Cases</u>"), by his undersigned counsel, hereby moves the Court (the "<u>Motion</u>") pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("<u>Rule 9019</u>"), for an order approving the Settlement Agreement, substantially in the form attached hereto as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434).

| | |
|---|---|
| Cullen D. Speckhart (VSB No. 79096)<br>**WOLCOTT RIVERS GATES**<br>919 E. Main Street, Richmond, VA 23219 200<br>Bendix Road, Ste. 300 Virginia Beach, VA 23452<br>Telephone: (757) 497-6633<br>Direct: (757) 470-5566<br>Email: cspeckhart@wolriv.com<br><br>*Counsel to Richard Arrowsmith, Liquidating Trustee*<br>*of the HDL Liquidating Trust* | Richard S. Kanowitz (admitted pro hac vice)<br>Evan M. Lazerowitz (admitted pro hac vice)<br>**COOLEY LLP**<br>1114 Avenue of the Americas<br>New York, New York 10036<br>Telephone: (212) 479-6000<br>Facsimile: (212) 479-6275<br>Email: rkanowitz@cooley.com<br>Email: elazerowitz@cooley.com<br><br>*Counsel to Richard Arrowsmith, Liquidating Trustee,*<br>*and the Liquidating Trust Oversight Committee* |

**Exhibit A** (the "Settlement Agreement")[2] between the Liquidating Trustee and LeClairRyan (as that term is defined in Section 1 of the Settlement Agreement). In support of this Motion, the Liquidating Trustee respectfully represents as follows:

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding within the meaning of 28 U.S.C. § 157.

2. The relief sought in this Motion is predicated upon sections 105 and 363 of the Bankruptcy Code, and Rule 9019.

## BACKGROUND

### A. THESE CHAPTER 11 CASES

3. On June 7, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

4. On June 9, 2015, the Court entered an order authorizing the joint administration of these Chapter 11 Cases, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure [Docket No. 42].

5. On June 16, 2015, the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division, appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee"), pursuant to section 1102 of the Bankruptcy Code.

6. On May 12, 2016, this Court entered its Confirmation Order confirming the Plan.

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Settlement Agreement.

2

7. Pursuant to the Plan and 11 U.S.C. § 1123, the Liquidating Trustee is the successor, for all purposes, of the Debtors and the Creditors' Committee, and is thereby vested with standing to bring this Motion as a representative of the HDL Liquidating Trust.

**B. LeClairRyan's Representation of HDL**

8. LeClairRyan provided legal services to HDL from its inception in or about 2008 until 2015.

9. Various claims against and disputes concerning HDL arose as a consequence of the company's operations, including an investigation by the United States Department of Justice (the "DOJ") and litigation instituted by private payors, who alleged that the company failed to comply with various federal or state regulations governing the delivery of health care services.

10. The claims against HDL, including an April 2015 settlement with the DOJ, were the precipitating causes of these Chapter 11 Cases.

**C. Events Leading to the Settlement Agreement**

11. HDL has pursued claims against LeClairRyan since the early stages of these Chapter 11 Cases. On October 26, 2015, HDL's Chief Restructuring Officer sent LeClairRyan a demand letter outlining HDL's claims and causes of action against LeClairRyan (the "LeClairRyan Claims").

12. On October 27, 2015, the Bankruptcy Court entered an order [Docket No. 619] granting the Creditors' Committee's motion pursuant to Rule 2004 [Docket No. 541] to conduct a wide-ranging investigation into potential causes of action by taking discovery of, *inter alia*, LeClairRyan and all of the Debtors' officers, directors and shareholders.

13. In an effort to reach a consensual resolution of the LeClairRyan Claims, the parties engaged in mediation commencing in December 2015. The mediation included two sessions in

March 2016 and June 2016, respectively, during which the parties engaged in extensive negotiations through counsel. These negotiations culminated in execution of the Settlement Agreement, pursuant to which the Liquidating Trustee and LeClairRyan seek to fully and finally resolve all disputes among them, and to release all claims that have been asserted or are capable of being asserted against LeClairRyan and its attorneys or other personnel by the Liquidating Trustee.

## THE SETTLEMENT AGREEMENT

14. The Settlement Agreement speaks for itself in its entirety as to its terms and operative effect. Nonetheless, the primary terms of the Settlement Agreement include, but are not limited to, the following[3]:

   a. LeClairRyan will pay to the Liquidating Trust the sum of $20,375,000.00 (the "Settlement Amount").

   b. Nothing in the Settlement Agreement shall be construed as an admission that LeClairRyan is liable to any person or entity for any act or omission.

   c. The Settlement Agreement provides for the release of LeClairRyan from any and all claims that the Liquidating Trustee holds or will hold under the Plan, including but not limited to (1) all claims arising out of the provision of legal services, or the failure to provide legal services, to HDL by LeClairRyan or any attorney employed by or otherwise associated at any time with LeClairRyan; and (2) all claims of any

---

[3] This is not an exhaustive list of the terms of the Settlement Agreement, which can be ascertained only by a careful review of the Settlement Agreement itself.

4

kind that have been or will be assigned to the Liquidating Trustee pursuant to the provisions of section 6.16 of the Plan (the "LeClairRyan Releases").[4]

d. LeClairRyan will release HDL from any and all claims, including, without limitation, the scheduled unsecured claim in favor of LeClairRyan in the amount of $344,065.05.

e. LeClairRyan will receive the protections of sections 8.01-35.1 and 8.01-35.1.A.2 of the Code of Virginia ("Section 35.1").

f. The Liquidating Trustee agrees to cooperate with LeClairRyan to obtain the dismissal of any actions, claims or proceedings initiated against LeClairRyan based on claims arising out of matters released by the Settlement Agreement or that are prohibited by the order approving the Settlement Agreement.

g. The negotiations among the parties will remain confidential.

15. The Settlement was negotiated by the Liquidating Trustee, with independent review provided by the HDL Liquidating Trust Oversight Committee's (the "Oversight Committee") counsel and financial advisor. The members of the Oversight Committee have approved the Settlement Agreement. The Liquidating Trustee has determined that the settlement terms set forth in the Settlement Agreement are in the best interest of the Debtors and their estates.

16. The Settlement Agreement is the product of arms-length negotiations. It resolves, on terms beneficial to the bankruptcy estates, potentially complicated litigation over the LeClairRyan Claims, the continued pursuit of which would be costly, time consuming and may

---

[4] The LeClairRyan Releases do not release, acquit or discharge Dennis Ryan from any claims that the Liquidating Trustee holds or will hold against Dennis Ryan arising out of his actions, inactions, receipt of compensation or other transfers, or other conduct undertaken during the period when he was employed by HDL.

5

pose the risk of an unfavorable result. Furthermore, the estates will receive the Settlement Amount, which represents fair and reasonable compensation for the LeClairRyan Claims.

## RELIEF REQUESTED

17. By this Motion, the Liquidating Trustee seeks the entry of an order approving the Settlement Agreement and all of its terms, and authorizing and directing the Liquidating Trustee and LeClairRyan and to take all such actions as are reasonably necessary to effectuate the Settlement Agreement.

## APPLICABLE STANDARD

18. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." In turn, Rule 9019(a) provides that: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "'a normal part of the process of reorganization.'" *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

*19.* The decision whether to approve a compromise under Rule 9019 is committed to the discretion of the Court, which must determine if the compromise or settlement is fair and equitable. *See In re Alpha Nat. Res. Inc.*, 544 B.R. 848, 856 (Bankr. E.D. Va. 2016); *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997). The Court is not required to conduct a "mini-trial" of the underlying case, but instead must only decide whether the Settlement proposed falls "below the lowest point in the range of reasonableness." *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995) (citations omitted); *accord In re Alpha Nat. Res. Inc.*, 544 B.R. at 857.

20. Factors the Court should consider when evaluating a settlement under Bankruptcy Rule 9019 include: (i) the probability of success in the litigation; (ii) the complexity, expense and likely duration of the litigation; (iii) all other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise, including potential difficulties in collection, if any; and (iv) whether the proposed compromise is fair and equitable to the debtor, its creditors, and other parties in interest. *See TMT*, 390 U.S. at 424; *In re Alpha Nat. Res. Inc.*, 544 B.R. at 857; *In re Frye*, 216 B.R. at 174.

21. Basic to the process of evaluating proposed settlements, then, is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT*, 390 U.S. at 425. But "the settlement may be approved even if the court finds it likely that the trustee would ultimately succeed in the litigation." *In re Austin*, 186 B.R. at 400.

## BASIS FOR RELIEF

### A. THE SETTLEMENT AGREEMENT SHOULD BE APPROVED

22. The foregoing factors weigh in favor of approval of the Settlement Agreement. The Liquidating Trustee believes that the Settlement Agreement represents a fair, reasonable and responsible compromise and settlement of the issues and costs posed by the LeClairRyan Claims. The Liquidating Trustee, the Oversight Committee, and the Oversight Committee's professionals have carefully evaluated the Liquidating Trustee's allegations against LeClairRyan and weighed the costs and risks of prosecuting the LeClairRyan Claims.

23. The Settlement Agreement is the result of good faith negotiations among the Liquidating Trustee and LeClairRyan. Prosecuting the LeClairRyan Claims would involve a complex factual dispute, the litigation of which would create a significant expense and risks to

7

both parties. Avoiding such cost is particularly beneficial to creditors, given that estate would incur the full cost of litigation as an administrative expense.

24. Most importantly, the Settlement Agreement represents a result well above the lowest bound of the range of reasonableness.[5] In the event the LeClairRyan Claims were litigated, there is a reasonable possibility that the LeClairRyan Claims could result in a lower recovery to the Liquidating Trustee than is contemplated in the Settlement Agreement. The Settlement Amount represents fair and reasonable compensation for the LeClairRyan Claims in light of the uncertainty and risk associated with time-consuming litigation that could result in an unfavorable outcome.

25. The Liquidating Trustee therefore submits that the Settlement Agreement is in the best interests of the estates.

### B. VIRGINIA FAVORS SETTLEMENTS IN THE MULTIPLE TORTFEASOR CONTEXT

26. Virginia has a strong public policy in favor of encouraging settlements in cases involving multiple tortfeasors. Section 8.01-35.1 of the Code of Virginia provides in pertinent part that "When a release or a covenant not to sue is given in good faith to one of two or more persons liable for the same injury to a person or property, or the same wrongful death . . . [i]t shall discharge the person to whom it is given from all liability for contribution to any other person liable for the same injury to person or property or the same wrongful death." A release of one person liable in tort for an injury, from among two or more persons liable, "shall not discharge any of the other tortfeasors from liability for the injury, property damage or wrongful death unless its terms so provide." *Id.* § 8.01-35.1.A.1.

27. The purpose of Section 35.1 is to "foster settlements in the multiple tortfeasor

---

[5] Although the Liquidating Trustee sought damages well in excess of the Settlement Amount, a ten-figure settlement represents a fair compromise of the LeClairRyan Claims.

8

context." *Dacotah Mktg. & Research, L.L.C. v. Versatility, Inc.*, 21 F. Supp. 2d 570, 575 (E.D. Va. 1998). Section 35.1 operates to "preserv[e] the right of action against the non-settling tortfeasor, provid[e] that any amount recovered from the non-settling tortfeasor must be reduced by the amount received from the settling tortfeasor, and require[] the court to consider the amount paid by the settling tortfeasor in determining the amount for which judgment should be entered." *RGR, LLC v. Settle*, 288 Va. 260, 295 (2014) (internal quotation marks and citation omitted).

28. The Settlement Agreement qualifies as a covenant not to sue and a release under Section 35.1. *See, e.g.*, *Wright v. Orlowski,* 218 Va. 115, 121–22 (1977) (holding that even a "tacit understanding" was sufficient to establish an accord between the parties which constituted a release). The public policy of Virginia favoring settlements in multiple tortfeasor cases, as reflected in Section 35.1, provides an additional reason to approve the Settlement Agreement.

### C. THE LIQUIDATING TRUSTEE HAS EXCLUSIVE STANDING TO SETTLE THE LECLAIRRYAN CLAIMS

29. Under the Plan, the Liquidating Trust is the successor, for all purposes, of HDL and holds all "claims, rights or other Causes of Action which may be asserted by or on behalf of the Debtors, the Estates, or the Creditors' Committee." *See* Plan, §§ 1.68, 1.76 and 6.4(e). The LeClairRyan Claims were specifically identified in the Plan's schedule of preserved litigation claims and are property of HDL's estate. *See* Plan, Ex. A.

30. A "claim based on rights 'derivative' of, or 'derived' from, the debtor's typically involves property of the estate." *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 88 (2d Cir. 2014). Derivative claims are tied to derivative injuries, which are "based upon a secondary effect from harm done to the debtor," and in the context of bankruptcy are "ones that "arise[ ] from harm done to the estate and that "seek [] relief against third parties that pushed the debtor into bankruptcy." *Id.* at 89 (internal quotation marks and citations omitted). *See also Nat'l Am. Ins.*

9

*Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) (holding that because a fraudulent conveyance action was property of the estate, individual creditors' claims were "so similar in object and purpose to claims that the trustee could bring in bankruptcy court that the [creditors] lack standing to pursue these claims").

31. The Liquidating Trustee, as the successor to HDL's estate, is the only party that can assert or settle claims arising out of LeClairRyan's provision of legal services to HDL. The attorney-client relationship, an essential element of bringing a malpractice claim, only existed between LeClairRyan and HDL. *See, e.g.*, *Carstensen v. Chrisland Corp.,* 247 Va. 433, 447 (1994) ("The existence of an attorney-client relationship is essential to establishing a claim of legal malpractice."). Once settled, any direct or derivative claims arising out of the LeClairRyan Claims are extinguished and cannot be asserted by any party. *In re Ionosphere Clubs, Inc.*, 17 F.3d 600, 604 (2d Cir. 1994) (holding that derivative claims "belong exclusively to the [estate] and were extinguished by its settlement of those claims").

32. Accordingly, non-settling parties cannot bring duplicative or derivative actions against LeClairRyan that arise out of the claims described in the LeClairRyan Releases, as those claims are property of HDL's estate. The only claims that could possibly be brought are those involving particularized injuries to individual creditors (other than Creditor Causes of Action,[6] which the Liquidating Trustee owns).

[*Remainder of page intentionally left blank*]

---

[6] As that term is defined in the Plan.

**WHEREFORE**, the Liquidating Trustee respectfully requests that this Court enter an order, a form of which is attached hereto as **Exhibit B** approving the Settlement Agreement and all of its terms, and authorizing and directing the Liquidating Trustee and LeClairRyan and to take all such actions as are reasonably necessary to effectuate the Settlement Agreement.

Dated:  September 1, 2016                                    Respectfully submitted,

/s/ Cullen D. Speckhart
Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Ste. 1040 Richmond, VA 23219
200 Bendix Road, Ste. 300 Virginia Beach, VA
Telephone: (757) 497-6633
Direct: (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted pro hac vice)
Evan M. Lazerowitz (admitted pro hac vice)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com
Email: elazerowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating Trustee, and the Liquidating Trust Oversight Committee*