**Exhibit A**

**<u>Settlement Agreement</u>**

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release ("Agreement") is entered into as of the 30th day

of August 2016, by and among, Richard Arrowsmith, the Liquidating Trustee of the HDL

Liquidating Trust (as fully defined below) and LeClairRyan, A Professional Corporation (as

fully defined below).

Whereas, LeClairRyan, A Professional Corporation provided legal services to Health

Diagnostic Laboratory, Inc. from its inception in or about 2008 until 2015; and

Whereas, various claims against and disputes concerning Health Diagnostic Laboratory,

Inc. arose as a consequence of the company's operations, including an investigation by the

United States Department of Justice and litigation instituted by private payors, making

allegations that the company failed to comply with various federal or state regulations governing

the delivery of health care services; and

Whereas, Health Diagnostic Laboratory, Inc. filed a voluntary petition pursuant to

Chapter 11 of the United States Bankruptcy Code on June 7, 2015, instituting the case styled *In*

*re Health Diagnostic Laboratory, Inc. et al.*, Case No. 15-32919 (KRH); and

Whereas, numerous persons and entities submitted claims against Health Diagnostic

Laboratory, Inc. in the course of the bankruptcy proceeding; and

Whereas, the United States Bankruptcy Judge overseeing the bankruptcy proceeding

entered an order dated May 12, 2016 (Doc. No. 1095), appointing the Liquidating Trustee to

pursue claims on behalf of the estate of Health Diagnostic Laboratory, Inc. and its creditors, to

the extent set forth fully in the Modified Second Amended Plan of Liquidation filed by the

Debtors (Doc. No. 995), dated March 25, 2016; and

Whereas, the Liquidating Trustee has given notice to LeClairRyan, A Professional

Corporation of his intention to bring claims against the firm and certain of its current or former

attorneys  on behalf of Health Diagnostic Laboratory, Inc. and certain of its creditors; and

Whereas, LeClairRyan, A Professional Corporation and all attorneys and other persons

currently or formerly associated with the law firm in any capacity deny that they are liable to the

Liquidating Trustee or to any other person or entity for acts or omissions relating to their

provision of professional services to Health Diagnostic Laboratory, Inc.; and

Whereas, after extensive negotiations, through their respective counsel, the Liquidating

Trustee and LeClairRyan, A Professional Corporation, seek to fully and finally resolve all

disputes among them, and to release all claims that have been asserted or are capable of being

asserted against the law firm and its attorneys or other personnel by the Liquidating Trustee.

Now, therefore, the parties, subject to the final approval of the United States Bankruptcy

Court, agree to the following:

1. **Definitions.** As used in this Agreement, the following definitions apply:

(a)      "Approval Order" means the order to be entered by the Bankruptcy Court

granting approval of this Agreement pursuant to and in conformance with Section 11 of this

Agreement.

(b)      "Assigning Creditor" means a creditor defined in Section 1.9 of the Plan.

(c)      "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern

District of Virginia, Richmond Division.

(d)      "Bankruptcy Proceeding" means the case styled *In re Health Diagnostic

Laboratory, Inc. et al.*, Case No. 15-32919 (KRH), filed in the United States Bankruptcy Court

for the Eastern District of Virginia, Richmond Division, initiated on June 7, 2015, by Health

Diagnostic Laboratory, Inc.'s filing of a petition under Chapter 11 of the bankruptcy laws of the

United States. All docket references in this Agreement are to documents filed in the Bankruptcy

Proceeding.

(e)      "Final Order" means that with respect to any judicial ruling or order, the later of:

(i) the expiration of any period for any appeals, petitions, motions for reconsideration, rehearing

or certiorari or any other proceedings for review ("Review Proceeding") without the initiation of

a Review Proceeding, or (ii) if a Review Proceeding has been timely initiated, the full and final

disposition of any such Review Proceeding without a reversal or any material modification,

including the exhaustion of proceedings in any remand or in the appeal of any ruling or order on

remand.

(f)        "HDL" means Health Diagnostic Laboratory, Inc., a corporation organized under

the laws of the Commonwealth of Virginia that maintained its principal place of business in

Richmond, Virginia, and includes all parties identified as "Debtors" in Section 1.37 of the Plan.

When used in this Agreement without express modification, "HDL" includes the Debtor

corporate entities and all subsidiaries and affiliates, all successor entities, and the Estates created

in the Bankruptcy Proceeding as defined in Section 1.49 of the Plan, as well as all current or

former directors, officers, employees and agents of HDL to the extent they acted on behalf of or

as representatives of HDL.

(g)        "LeClairRyan" means LeClairRyan, A Professional Corporation, a professional

corporation engaged in the practice of law organized under the laws of the Commonwealth of

Virginia.  When used in this Agreement without express modification, "LeClairRyan" includes

both the corporate entity and each of its current or former directors, officers, shareholders,

attorneys, employees and agents, and includes but is not limited to all current or former

LeClairRyan attorneys identified by name on Exhibit A to the Plan. Whenever a provision of this

Agreement confers a right, benefit or protection, included but not limited to any release or

discharge from liability, upon "LeClairRyan," all persons falling within the definition in the prior

sentence of this subsection 1(g) shall be entitled to enforce such right, benefit or protection with

or without the participation of LeClairRyan, A Professional Corporation.

(h)      "Liquidating Trust" means the HDL Liquidating Trust defined in Section 1.66 of

the Plan and operated pursuant to Section 6.4 of the Plan.

(i)      "Liquidating Trustee" means the trustee appointed under the Plan approved by

the Bankruptcy Court on May 12, 2016, and specifically defined in Section 1.74 of the Plan.

(j)      "Plan" means the Modified Second Amended Plan of Liquidation Proposed by

the Debtors (Doc. No. 995) confirmed by the Bankruptcy Court by order dated May 12, 2016

(Doc. No. 1095).

2.      **Purpose of this Agreement.**  The Liquidating Trustee and LeClairRyan intend by

entering into this Agreement to fully and finally resolve all claims, both asserted and capable of

being asserted, against LeClairRyan that are (a) in the possession or under the control of the

Liquidating Trustee by virtue of his exercise of the powers and duties conferred by Section 6.5 of

the Plan, including but not limited to all claims asserted on behalf of HDL and the other Debtors,

and all claims assigned to the Liquidating Trustee by creditors of HDL or (b) otherwise within

the jurisdiction of the Bankruptcy Court and capable of resolution through further action of the

Bankruptcy Court, including the entry of orders, injunctions or other relief effective to bind

persons or entities that are not parties to this Agreement and to restrain them from taking actions

inconsistent with the complete resolution of claims against LeClairRyan as contemplated by this

Agreement.

3.      **Representations of Liquidating Trustee.**  The Liquidating Trustee represents to

LeClairRyan that:

(a)      by virtue of the operation of the bankruptcy laws of the United States and the

Bankruptcy Court's approval of the Plan, he is in possession and control of all claims that are

released by the provisions of Section 8 of this Agreement;

(b)      he has the authority to represent the interests of, and to bind, HDL and the other

Debtors in connection with this Agreement;

(c)      he has the power and authority to represent the interests of, and to bind, all

persons or entities whose claims are released under this Agreement, including all persons

identified in Section 6.5(c)(1) of the Plan and each and every Assigning Creditor that has

assigned a claim or claims to him as authorized by the Plan;

(d)      he has agreed to take, or cause his counsel to take, all steps necessary to seek the

Bankruptcy Court's approval of this Agreement, and to seek Bankruptcy Court approval of all

actions contemplated by this Agreement to effectuate its provisions and bind persons or entities

that are not parties to this Agreement;

(e)      he and his counsel have taken the opportunity independently to investigate and

evaluate the facts and circumstances giving rise to the claims against LeClairRyan, and they are

not relying on any representations of fact or law made by LeClairRyan or its counsel; and

(f)       the Liquidating Trustee and all other persons executing this Agreement on his

behalf have reviewed it with the advice of counsel and possess the authority to bind the

Liquidating Trustee.

   **4.       Representations of LeClairRyan.**  LeClairRyan represents to the Liquidating

Trustee that:

(a)       it, with the assistance of its counsel, has taken the opportunity independently to

investigate and evaluate the facts and circumstances giving rise to the claims against

LeClairRyan, and is not relying on any representations of fact or law made by the Liquidating

Trustee or his counsel;

(b)       it has agreed to take, or cause its counsel to take, all steps necessary to seek the

Bankruptcy Court's approval of the Agreement, and to seek Bankruptcy Court approval of all

actions contemplated by this Agreement to effectuate its provisions and bind persons or entities

that are not parties to this Agreement;

(c)       the person executing this Agreement on behalf of LeClairRyan has reviewed it

and is authorized to bind LeClairRyan; and

(d)       each current or former LeClairRyan attorney executing  this Agreement has

reviewed it with the advice of counsel and signs it of his own accord.

7

5.      **No Admission of Liability.**  Nothing in this Agreement operates nor shall it be construed as an admission that LeClairRyan is liable to any person or entity for any act or omission.

6.      **Settlement Amount.**  In consideration of the releases, covenants, representations, and undertakings of the Liquidating Trustee as set forth in this Agreement, LeClairRyan shall pay or cause to be paid to the Liquidating Trustee the sum of Twenty Million Three Hundred Seventy Five Thousand and 00/100 dollars ($20,375,000.00) (the "Settlement Amount"), in full and final settlement of all matters identified in this Agreement.  The monies (the "Settlement Funds") delivered by LeClairRyan to fund the Settlement Amount in full shall be transferred as set forth in Section 7 of this Agreement.

7.      **Payment and Handling of Settlement Funds.**  LeClairRyan shall deliver the Settlement Funds to the Liquidating Trustee or his designee, in the full Settlement Amount, in good funds, no later than fourteen (14) days after the entry by the Bankruptcy Court of the Approval Order, to an account specifically identified by the Liquidating Trustee and pursuant to commercially reasonable procedures.  Until such time as the Approval Order becomes a Final Order, the Liquidating Trustee shall hold the Settlement Funds in a segregated account maintained by the Liquidating Trust, shall not commingle the Settlement Funds with other monies or assets maintained by the Liquidating Trust, and shall not apply or disburse the Settlement Funds for any purpose.  If the Approval Order fails to become a Final Order upon the

full and final disposition of any timely initiated Review Proceeding (a "Final Order Condition

Failure"), the Settlement Funds, including all interest earned thereon and after deduction of

applicable and customary bank charges, administration fees, and taxes (but excluding legal fees

of the Liquidating Trustee and the Liquidating Trust) ("Net Interest"), shall be returned to

LeClairRyan's insurers (per written instructions to be provided by LeClairRyan to the

Liquidating Trustee) within fourteen (14) days after that event.  Once the Approval Order has

become a Final Order, the Settlement Funds and all Net Interest earned on such funds while in

the segregated account shall immediately become unrestricted assets of the Liquidating Trust

without further notice.

**8.     Release of LeClairRyan by Liquidating Trustee.**  In consideration of the

payment of the Settlement Amount described in Section 6 of this Agreement, upon the

Liquidating Trustee's receipt of the Settlement Funds in good funds, with the exception stated

below, and expressly subject to Section 15 of this Agreement, the Liquidating Trustee does

hereby release, acquit, and forever discharge LeClairRyan and each of its insurers, as well as

each of LeClairRyan's current or former directors, officers, shareholders, owners, employees,

agents, affiliates, partners, administrators, executors, predecessors, transferees, attorneys,

successors, personal representatives, heirs, estates and assigns, solely in their capacities as such

or to the extent they were otherwise acting in the name of or on behalf of LeClairRyan or within

the scope of their employment or agency for or on behalf of LeClairRyan, of and from any and

all claims, damages, causes of action or liabilities, of whatever kind or nature, known or

unknown, suspected or unsuspected, accrued or unaccrued, that the Liquidating Trustee presently

holds or in the future will hold or be entitled to assert under the Plan, including but not limited to

(1) all claims arising out of the provision of legal services, or the failure to provide legal

services, to HDL by LeClairRyan or any attorney employed by or otherwise associated at any

time with LeClairRyan; (2) all claims of any kind whatsoever, presently assigned or assigned at

any time in the future to the Liquidating Trustee, or capable of being asserted by the Liquidating

Trustee, pursuant to the provisions of Section 6.16 of the Plan, regardless of the character or

basis of such claims and including claims arising out of acts or omissions undertaken by HDL in

its marketing and sale of laboratory services, and including but not limited to claims arising out

of any failure by HDL to conduct its marketing and sale of laboratory services to any person or

entity in compliance with the laws of the United States of America or any of its constituent states

or territories, whether such claims arise at law or in equity, under any statute or regulation, and

whether sounding in tort, contract, or otherwise. The provisions of the previous sentence in this

Section 8 shall be identified as "the LeClairRyan Release."  Notwithstanding any other provision

in this Agreement, nothing herein, including without limitation the LeClairRyan Release, shall

release, acquit or discharge Dennis M. Ryan from any claims, damages, causes of action or

liabilities, of whatever kind or nature, known or unknown, suspected or unsuspected, accrued or

unaccrued, that the Liquidating Trustee presently holds or in the future will hold or be entitled to

assert under the Plan against Dennis M. Ryan arising out of Dennis M. Ryan's actions, inactions,

receipt of compensation or other transfers, or other conduct undertaken during the period when

he was employed by HDL.  Notwithstanding any provision of this Agreement, including but not

limited to the proviso set forth in the previous sentence in this Section 8, nothing herein shall

preclude Dennis M. Ryan from asserting any and all defenses available to him in response to any

claims asserted against him by the Liquidating Trustee.  A list of creditors that have assigned

claims to the Liquidating Trustee pursuant to Section 6.16 of the Plan as of August 30, 2016 is

attached to this Agreement as Attachment A.

**9.     Release of HDL, the Liquidating Trust, and the Liquidating Trustee by**

**LeClairRyan.** In consideration of the releases, covenants and undertakings set forth in this

Agreement, effective immediately upon the grant of the releases set forth in Section 8 of this

Agreement, LeClairRyan does hereby release, acquit, and forever discharge HDL, the

Liquidating Trust, the Liquidating Trustee, and each of their current or former directors, officers,

shareholders, owners, employees, agents, affiliates, subsidiaries, partners, insurers,

administrators, predecessors, transferees, attorneys, successors and assigns, solely within their

capacities as such or to the extent they were otherwise acting in the name of or on behalf of HDL

or within the scope of their employment or agency for or on behalf of HDL, the Liquidating

Trust, and the Liquidating Trustee, from any and all claims, damages, causes of action or

liabilities, of whatever kind or nature, known or unknown, suspected or unsuspected, accrued or

11

unaccrued, arising out of the provision of legal services to HDL by LeClairRyan, whether such

claims arise at law or in equity, under any statute or regulation, and whether sounding in tort,

contract, or otherwise, from the beginning of time to the effective date of this release, including

without limitation, the scheduled unsecured claim in the Bankruptcy Proceeding in favor of

LeClairRyan in the amount of $344,065.05, which is deemed stricken and withdrawn with

prejudice.  The provisions of the previous sentence in this Section 9 shall be identified as "the

HDL Release."  Notwithstanding any other provision in this Agreement, nothing herein,

including without limitation the HDL Release and the provisions of Section 11 of this

Agreement, shall release, acquit or discharge HDL from any claims, damages, causes of action or

liabilities, of whatever kind or nature, known or unknown, suspected or unsuspected, accrued or

unaccrued, that Dennis M. Ryan holds or in the future may timely assert against HDL in

response to claims made by the Liquidating Trustee or by any other person or entity included

within the definition of the term HDL as set forth in this Agreement, arising out facts or

circumstances occurring during the period when he was employed by HDL.  Notwithstanding

any provision of this Agreement, including but not limited to the proviso set forth in the previous

sentence in this Section 9, nothing herein shall preclude the Liquidating Trustee or HDL from

asserting any and all defenses available to it in response to any claims asserted against it by

Dennis M. Ryan.

**10.     Effect of Releases on Claims for Contribution by Alleged Joint Tortfeasors.**

The parties to this Agreement acknowledge that the provisions of Sections 8 and 9 of this

Agreement constitute a "release or a covenant not to sue" within the meaning of Code of

Virginia § 8.01-35.1, and are governed by that statute.  Pursuant to Code of Virginia § 8.01-

35.1.A.2, the releases granted in Section 8 of this Agreement operate to discharge LeClairRyan

from all liability for contribution to any other person alleged or found to be liable as a joint

tortfeasor for any and all claims released by those paragraphs.  LeClairRyan shall have and be

entitled to the benefits and protections available to released parties under Code of Virginia §

8.01-35.1, and the Bankruptcy Court shall retain jurisdiction over all proceedings in which a

person or entity seeks to deprive LeClairRyan of such benefits and protections.

**11.     Bankruptcy Court Approval**.  By the later of (a) ten (10) business days of the

full execution of this Agreement by all parties, or (b) September 8, 2016 (the date by which

motions must be filed in the Bankruptcy Proceeding so as to be heard at the September 22, 2016

omnibus hearing), the Liquidating Trustee shall submit this Agreement to the Bankruptcy Court

for approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("9019

Motion"), and shall promptly thereafter take all necessary steps at his expense to submit such

motions and supporting memoranda as are necessary to establish that the standards for approval

of this Agreement are satisfied.  Except for this Section 11, which shall be effective from and

after the earliest date when this Agreement has been executed by all parties, Bankruptcy Court

13

approval is and shall be a precondition to this Agreement becoming effective notwithstanding

any provision of the Plan or the Bankruptcy Code.  In the 9019 Motion, the Liquidating Trustee

shall move for the entry of the Approval Order in substantially the form attached to this

Agreement as Attachment B which, after notice to all affected parties and an opportunity to be

heard, shall (a) provide for the approval of this Agreement, (b) provide that this Agreement, and

the provisions of the order approving this Agreement, shall not operate to discharge any person

or entity, other than LeClairRyan and the other released persons and entities provided for in

Section 8 of this Agreement, from liability to the Liquidating Trustee in connection with any

claim held by the Liquidating Trustee as provided in the Plan.

**12.**      **Jurisdiction to Enforce Settlement Retained.**  The Bankruptcy Court shall

retain jurisdiction to implement and enforce the provisions of this Agreement and the Approval

Order.  At any time after entry of the Approval Order, LeClairRyan may move (and the

Liquidating Trustee shall join in such motion at his own expense) for the entry of any further

order to ensure that this Agreement and the Approval Order are effectuated in accordance with

their terms, including but not limited to an order that enjoins any person or entity from instituting

or prosecuting any claim, action or proceeding that interferes with or impairs the releases or

other protections conferred by this Agreement.  The Bankruptcy Court, in the exercise of its

inherent powers and the jurisdiction it has retained under the Plan, shall entertain on an expedited

basis any motion (i) to enforce this Agreement, (ii) to enforce the releases granted hereunder,

(iii) to enforce the Approval Order, or (iv) to adjudicate any motion made pursuant to the provisions of this Section 12 against any creditor, person or entity who violates or interferes with the provisions of this Agreement or the Approval Order.  Any such motion may include a request for a finding of contempt, the imposition of monetary sanctions, and an award of attorneys' fees and costs incurred in moving for relief under this Section.

13.    **Assistance of the Liquidating Trustee.**  In the event any person or entity initiates an action, claim or proceeding of any kind, including but not limited to any third-party claim made in an action brought by the Liquidating Trustee, against LeClairRyan in any federal or state court or tribunal, or before any private arbitral tribunal, seeking to recover damages, restitution or any other remedy, monetary or otherwise, based on claims arising out of matters released by this Agreement or prohibited by the order of the Bankruptcy Court approving this Agreement, the Liquidating Trustee shall cooperate with LeClairRyan to obtain the dismissal of such action or claim on any proper grounds, including the ground that the order of the Bankruptcy Court approving this Agreement prohibits the prosecution of such action.  The Liquidating Trustee and LeClairRyan shall each bear its own attorneys' fees or costs in connection with such action.

14.    **Confidentiality and Non-Disparagement.**  All parties to this Agreement affirm that this is a settlement and release of disputed claims, and that the content and subject matter of all negotiations among the parties have been and will remain strictly confidential.  Except as

15

required by law, no party shall communicate by any means the content of the negotiations among the parties to this Agreement and their respective counsel, and no party or counsel shall disparage any other party to this Agreement, its counsel or other advisors, or any third-party neutral involved in achieving this Agreement.  Failure to adhere to this provision shall be grounds for monetary sanctions to be imposed by the Bankruptcy Court in the exercise of its inherent authority, and the Bankruptcy Court shall retain jurisdiction after approval of this Agreement for purposes of enforcing this provision.

15.    **Reservation of Rights.**  This Agreement and the settlement herein is an accord and satisfaction, not a novation.  In the event this Agreement does not become effective for any reason, including the failure of the Bankruptcy Court to enter the Approval Order or the occurrence of a Final Order Condition Failure, the parties will return, without prejudice, to the status quo ante, for all litigation purposes, as if no settlement had been negotiated or entered into and the settlement and its existence shall be inadmissible for any purpose.  Notwithstanding the foregoing, in the event of a Final Order Condition Failure, the releases set forth herein shall remain fully effective unless and until the full Settlement Funds, including Net Interest, have been returned to LeClairRyan's insurers pursuant to Section 7 above, at which time the releases granted hereunder shall be deemed null and void ab initio, and nunc pro tunc.  Upon execution of this Agreement, those parties that executed that certain Second Amendment to Agreement to Toll Lawsuit Limitations Periods, effective as of August 12, 2016 shall also execute that certain Third

Amendment To Agreement To Toll Lawsuit Limitations Period, a copy of which is attached to this Agreement as Attachment C, which shall provide that the running of any statute of limitations, statute of repose, or other rule, defense, or principle based on the passage of time (including, without limitation, laches, waiver, or estoppel) with respect to any claims which are the subject of this Agreement shall be tolled and suspended through and including the date that is 60 days after (i) the date upon which the Approval Order becomes a Final Order or (ii) the occurrence of a Final Order Condition Failure.

16.     **Controlling Law.**  This Agreement shall be construed under the laws of the Commonwealth of Virginia.

17.     **Rules of Construction.**  This Agreement was negotiated by the parties with the advice of counsel.  Neither LeClairRyan nor the Liquidating Trustee shall be designated, for purposes of interpretation or construction of the provisions of the Agreement, as the party that drafted the Agreement.

18.     **Integrated Agreement; Amendment by Writing Only.**  This Agreement is the full and final expression of the intentions of the parties, and all prior oral and written communications concerning the subject matter of this Agreement are extinguished and merged into this Agreement, which is the sole source of the parties' respective obligations.  No amendment to this Agreement may be undertaken, nor shall any such amendment be effective, unless it is in a writing executed by the authorized representatives of the parties.  This

Agreement includes the following three attachments: (A) Schedule of Claims Assigned to

Liquidating Trustee as of August 30, 2016, (B) Proposed Order Approving Agreement, and (C)

Third Amendment To Agreement To Toll Lawsuit Limitations Period.

**19.**   **Dispute Resolution.**   All disputes concerning the interpretation of this Agreement

or the enforcement of its provisions shall be submitted only to the Bankruptcy Court for

resolution, and the parties consent to the entry of such further order or the granting of such relief

as the Bankruptcy Court may deem proper to effectuate the purposes of this Agreement.

**20.**   **Signatures; Duplicate Originals.**   This Agreement may be executed in

counterparts by the signatories, with a copy delivered to counsel for all parties, and the

counterparts, taken together, shall constitute a single original of the Agreement.

_____          Dated: _____
Richard Arrowsmith
In His Capacity as Liquidating Trustee


_____          Dated: _____
LeClairRyan, A Professional Corporation
By Its Chief Legal Officer


_____          Dated: _____
Dennis M. Ryan


_____          Dated: _____
Patrick J. Hurd


_____          Dated: _____
Michael F. Ruggio

_____          Dated: _____
Charles M. Sims