IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | HEALTH DIAGNOSTIC LABORATORY, INC., *et al*., | Case No. 15-32919 |
| | | Chapter 11 |
| | | (Jointly Administered) |
| | Debtors. | |

## **MEMORANDUM OPINION**

Before the Court in this contested matter is the motion (the "Motion") filed by Richard Arrowsmith, in his capacity as Liquidating Trustee of the HDL Liquidating Trust (the "Liquidating Trustee")[1] for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Civil Rules"), as incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in connection with the Applications for Orders Allowing Administrative Claims (the "Applications") filed by Joseph P. McConnell ("McConnell") and G. Russell Warnick ("Warnick").[2]  The Liquidating Trustee's Motion seeks to eliminate a number of the claims included in the Applications that are not eligible for administrative expense status as a matter of law under § 503 of Title 11 of the United States Code (the "Bankruptcy Code").[3]

The Court conducted a hearing on the Motion on August 18, 2016 (the "Hearing") at the conclusion of which the Court took the matter under advisement.  Having now fully considered

---

[1] The confirmed Modified Second Amended Plan of Liquidation of the Debtors appointed Richard Arrowsmith as the Liquidating Trustee of the HDL Liquidating Trust in the jointly administered chapter 11 cases (the "Cases") of Health Diagnostic Laboratory, Inc., Central Medical Laboratory, LLC, and Integrated Health Leaders, LLC ("HDL" or the "Debtors").  The Liquidating Trustee is the successor for all purposes of the Debtors.

[2] Proceedings to adjudicate objections to the allowance of administrative claims are contested matters governed by Bankruptcy Rule 9014.  *See In re Circuit City Stores, Inc.,* 426 B.R. 560, 567 (Bankr. E.D. Va. 2010) (citing *In re Fleming*, 2008 WL 4736269 at *1 (Bankr. E.D.Va. Oct. 15, 2008) ("The hearing on the claim objection is treated as a contested matter, and Fed. R. Bankr. P. 9014 applies.")).  As such, certain rules under part VII of the Federal Rules of Bankruptcy Procedure are applicable, including Bankruptcy Rule 7056.  *See* Fed. R. Bankr. P. 9014(c).

[3] All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

the pleadings, the memoranda, the supporting affidavits, and the arguments of counsel, the Court finds that there is no genuine dispute as to any material fact that would entitle McConnell and Warnick to recover administrative expense claims for actions and events rooted in the prepetition past. McConnell and Warnick are not entitled to recover, as a matter of law, administrative claims arising out of their prepetition contracts with HDL. Nor are they entitled to an administrative claim arising from any prepetition indemnification obligations HDL may have had. To the extent that some portion of any such asserted claims is ultimately determined to be allowable, the allowed amount would constitute a general unsecured claim under § 502 of the Bankruptcy Code. Accordingly, the Court will grant the Liquidating Trustee's Motion in part.

The Court finds that the parties dispute material facts regarding any entitlement McConnell and Warnick may have to compensation for the postpetition services they provided to HDL as well as to the value of those services. McConnell and Warnick bear the burden of proving that any services they rendered postpetition were an actual and necessary cost of preserving the bankruptcy estate. Counsel for McConnell and Warnick may recover the actual, necessary expenses they incurred for any contribution they made to the bankruptcy Cases only if McConnell and Warnick can prove that they are entitled to a substantial contribution claim in their capacities as creditors under § 503(b)(3)(D) of the Bankruptcy Code. This memorandum opinion sets forth the Court's analysis and conclusions that support its rulings in accordance with Civil Rule 56(a).

### Procedural Background

These Cases were commenced under Chapter 11 of the Bankruptcy Code[4] on June 7, 2015 (the "Petition Date").[5] The Court confirmed the Debtors' Modified Second Amended Plan

---

[4] *See* 11 U.S.C. §§ 1101–1174.

of Liquidation (the "Plan") by order entered May 12, 2016 (the "Confirmation Order").[6]  The

Court set the initial bar date for filing administrative expense claims that arose before October

22, 2015, for December 22, 2015 (the "First Administrative Claims Bar Date").[7]  The Plan and

Confirmation Order set a second administrative claims bar date of June 13, 2016, for any

administrative claims that were not subject to the First Administrative Claims Bar Date.

On December 22, 2015, Warnick filed Administrative Expense Claim Nos. 1342 through

1344 in unliquidated amounts (the "Warnick Administrative Claim").   On June 13, 2016,

Warnick filed an Application for Order Allowing Administrative Expense Claim for Postpetition

Costs and Expenses (the "Warnick Application").   The Warnick Application sought an order

authorizing payment of the Warnick Administrative Claim for: (i) fees, costs, and expenses that

Warnick incurred as a result of his postpetition service to the Debtors as a director and officer;

(ii) unpaid compensation as a director and officer of the Debtors (including, but not limited to,

deferred compensation and severance); (iii) indemnification for unliquidated and contingent

liability to the Debtors' estate; (iv) claims and interest arising from Warnick's Amended and

Restated Employment Agreement executed by HDL and Warnick on March 1, 2011; (v) claims

arising from the Shareholders' Agreement of HDL dated June 23, 2009, (the "Shareholders'

Agreement") including, but not limited to, for an amount not less than $458,958 for distributions

and related amounts with respect to federal and state taxes paid by Warnick and attributable to

Warnick's allocable share of HDL's income tax for the 2014 tax year; (vi) claims and interest

---

[5] The material facts pertinent to the Motion are established by reference to the Petition Date.

[6] *See* Order Confirming Debtors' Plan of Liquidation under Chapter 11 of the Bankruptcy Code, *In re Health Diagnostic Laboratory, Inc., et al.*, Case No. 15-32919-KRH (Bankr. E.D. Va. May 12, 2016), EFC No. 1095.

[7] *See* Order (I) Establishing Bar Dates for Filing Proofs of Claim and Certain Administrative Claims, (II) Approving the Form and Manner of Notice Thereof, and (III) Providing Certain Supplemental Relief, *In re Health Diagnostic Laboratory, Inc., et al.,* Case No. 15-32919-KRH (Bankr. E.D. Va. Nov. 5, 2015), EFC No. 640 [hereinafter Bar Date Order].

arising from or on account of the HDL Articles of Incorporation, dated November 20, 2008 (the

"HDL Articles of Incorporation"); (vii) claims and interest arising from the By-Laws of HDL

(the "HDL By-Laws"); (viii) any other claims, damages, remedies, causes of action, or demands

that may exist as a matter of contract, statute, or other applicable law; and (ix) future legal fees.

The Warnick Application sought the allowance of the Warnick Administrative Claim in an

amount not less than $1,345,274.67.[8]

On December 21, 2015, McConnell filed Administrative Expense Claim Nos. 1289 and

1290 (the "McConnell Administrative Claim").    On June 13, 2016, McConnell filed an

Application for Order Allowing Administrative Expense Claim for Postpetition Costs and

Expenses (The "McConnell Application").    The McConnell Application sought an order

authorizing payment of the McConnell Administrative Claim for: (i) McConnell's participation

in these current Cases and costs and expenses incurred in responding to the actions; (ii) earned,

but unpaid compensation as director and officer of HDL; (iii) indemnification for unliquidated

and contingent liability; (iv) claims arising under McConnell's Amended and Restated

Employment Agreement dated March 1, 2011; (v) claims arising under the Shareholders'

Agreement in the amount of $388,062.86 for distributions and related amounts with respect to

federal and state income taxes paid by McConnell in the 2014 tax year; and (vi) future legal fees.

---

[8] Warnick seeks to amend the Warnick Application by increasing the amount of the Warnick Administrative Claim to $3,845,274.67 by way of a footnote included in G. Russell Warnick's (A) Cross-Motion Pursuant to Fed. R. Civ. P. 56(d) in Response to Liquidating Trustee's Motion for Summary Judgment Regarding Request for Allowance of Administrative Claims, and (B) Amendment to Administrative Claim at 5, n. 2, *In re Health Diagnostic Laboratory, Inc., et al.*, Case No. 15-32919-KRH (Bankr. E.D. Va. Aug. 17, 2016), EFC No. 1422.  Warnick argues that, as Bankruptcy Rule 7015 is not made applicable to contested matters by Bankruptcy Rule 9014, there is nothing that prevents him from amending the Warnick Administrative Claim in this manner.  *But see* Bar Date Order at 7, ¶¶ 19, 20, 23, *In re Health Diagnostic Laboratory, Inc., et al.*, Case No. 15-32919-KRH (Bankr. E.D. Va. Nov. 5, 2015) EFC No. 640 (approving forms and establishing procedures for filing administrative claims).

The McConnell Application sought the allowance of the McConnell Administrative Claim in an amount not less than $1,636,096.75.[9]

On June 27, 2016, the Liquidating Trustee filed a combined objection to the Applications of Warnick and McConnell (the "Combined Objection").[10]  After receiving three separate requests for the production of documents from Warnick, the Liquidating Trustee filed a Motion to Stay Discovery Regarding Request for Allowance of Administrative Expenses (the "Motion to Stay Discovery").  On July 21, 2016, the Court conducted a hearing on the discovery matter and granted the Motion to Stay Discovery.  Subsequently on August 4, 2016, the Liquidating Trustee filed his Motion so that the portions of the D&O Administrative Claims that do not require discovery might be disallowed as a matter of law.[11]  McConnell filed his objection to the Motion on August 15, 2016, and Warnick filed his objection to the Motion on August 17, 2016.

## Facts

HDL was a privately held company with its headquarters in Richmond, Virginia.  As of the Petition Date, HDL was governed by a five member Board of Directors (the "Board").  HDL operated an accredited, full service clinical laboratory that provided testing of biomarkers for the indication of risk for cardiovascular disease, diabetes, and other illnesses.  HDL's testing services offered physicians the ability to detect major health issues in patients before potentially life-

---

[9] The Warnick Administrative Claim and the McConnell Administrative Claim are hereinafter jointly referred to as the "D&O Administrative Claims".

[10] The Plan deems the Warnick Application and the McConnell Application to be disputed claims.  The Plan also preserved the right of the Liquidating Trustee to assert any and all defenses to the indemnification claims of Warnick and McConnell.  *See* Order Confirming Debtors' Plan of Liquidation under Chapter 11 of the Bankruptcy Code at Ex. A, 39, § 6.14.  *In re Health Diagnostic Laboratory, Inc., et al.*, Case No. 15-32919-KRH (Bankr. E.D. Va. May 12, 2016), EFC No. 1095.

[11] The Liquidating Trustee was also concerned that the D&O Administrative Claims might create a reserve problem hindering interim distribution to unsecured creditors, as the Plan requires that disputed administrative claims must be reserved at their full face amount.

threatening events occurred.  HDL processed lab tests it received from physicians all around the country.

Prior to the Petition Date, McConnell served as the Chief Executive Officer of HDL (the "CEO") and he also served as a member of HLD's Board.  Following the Petition Date, McConnell served as the Chairman of HDL's Board.  He also continued to serve as the CEO through the closing of the sales transaction with True Health Diagnostics, LLC on September 29, 2015.[12]  After his resignation as CEO, McConnell continued to serve as Chairman of HDL's Board during the formation, negotiation, and confirmation of the liquidation Plan.

Warnick served as HDL's former Chief Scientific Officer and as a member of HDL's Board.  He continued to serve as a member of HDL's Board until the effective date of the Plan, when he was deemed to have resigned.[13]

### Summary Judgment Standard

Bankruptcy Rule 7056 makes Civil Rule 56 applicable to adversary proceedings.  *See* Fed. R. Bankr. P. 7056.  Under Civil Rule 56(a), the court may only grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This standard is well established, and summary judgment "is favored as a mechanism to secure the 'just, speedy and inexpensive determination' of a case."  *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.,* 57 F.3d 1317,

---

[12] The business of HDL was sold as a going concern under § 363 of the Bankruptcy Code to True Health Diagnostics LLC, for approximately $37 million.  *See* Order (I) Approving Asset Purchase Agreement And Authorizing The Sale Of Assets Of The Debtors Outside The Ordinary Course Of Business, (II) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests, (III) Authorizing The Assumption And Sale And Assignment Of Certain Executory Contracts And Unexpired Leases And (IV) Granting Related Relief, *In re Health Diagnostic Laboratory, Inc., et al.*, Case No. 15-32919-KRH (Bankr. E.D. Va. Sept. 17, 2016), EFC No. 512.

[13] *See* Order Confirming Debtors' Plan of Liquidation under Chapter 11 of the Bankruptcy Code at 22, ¶ 51.  *In re Health Diagnostic Laboratory, Inc., et al.*, Case No. 15-32919-KRH (Bankr. E.D. Va. May 12, 2016), EFC No. 1095.

1322–23 (4th Cir. 1995) (quoting Fed. R. Civ. P. 1). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See id.* at 322. The court will consider all evidence in the light most favorable to the party opposing the motion for summary judgment. *See, e.g., U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 8 L.Ed.2d 176 (1962); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979). Furthermore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," while factual disputes over irrelevant or unnecessary facts are not considered. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

In this case, the Liquidating Trustee is asking the Court for partial summary judgment in order to determine the portions of the Warnick Administrative Claim and the McConnell Administrative Claim that are not entitled to administrative expense priority under § 503 of the Bankruptcy Code as a matter of law.[14] The Liquidating Trustee has asked the Court to grant summary judgment in four instances: (1) on claims arising from prepetition contracts; (2) on claims arising from prepetition indemnification provisions; (3) on claims arising from post-petition conduct; and (4) on claims arising from compensation for attorneys.

---

[14] *See* Fed. R. Civ. P. 56(a) (providing that any party "may move for summary judgment, identifying . . . the part of each claim or defense . . . on which summary judgment is sought."). Here, the Liquidating Trustee requested partial summary judgment on particular legal issues for which no material facts are in dispute.

## Analysis

Administrative expense claims allowed under § 503 of the Bankruptcy Code are entitled to payment as a second priority under the distribution scheme provided in the Bankruptcy Code. 11 U.S.C. § 507(a).  As the general presumption in bankruptcy cases is for all of a debtor's limited resources to be equally distributed among creditors, administrative status under § 503 of the Bankruptcy Code is to be construed strictly.  *See In re Merry-Go-Round Enters., Inc.,* 180 F.3d 149, 158 (4th Cir. 1999) (citing *Ford Motor Credit Co. v. Dobbins¸* 35 F.3d at 865).  As this Court explained some fourteen years ago:

> [B]ecause one of the goals of chapter 11 is to keep administrative costs to a minimum in order to preserve scarce resources, the provision for allowance of administrative claims should not be read to saddle debtors with special post-petition obligations lightly or give preferential treatment to certain select creditors.  Rather, the administrative priority provision must be narrowly construed.  In order for a claim to qualify for administrative priority, there must be *actual use* of the creditor's property by the debtor, thereby conferring a *concrete benefit* on the estate.  Moreover, the moving party bears the burden of proving that his claim is an administrative priority expense.

*In re Dornier Aviation  (N. Am.),* Case No. 02-82003-SSM, 2002 WL 31999222, at *9, 10 (Bankr. E.D. Va. 2002) (citing *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865-67 (4th Cir. 1994) (internal citations and quotations omitted).

Courts generally agree that "an administrative expense has two defining characteristics: (1) the expense and right to payment arise after the filing of bankruptcy,[15] and (2) the consideration supporting the right to payment provides some benefit to the estate."  *CIT Commc'n Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 237 (4th Cir. 2005) (internal citations omitted); *see also Gull Indus. v. John Mitchell, Inc. (In re Hanna),* 168 B.R. 386, 388 (B.A.P. 9th Cir. 1994) (citing *In re Great N. Forest Prods., Inc.*, 135 B.R. 46, 60 (Bankr. W.D. Mich. 1991) ("[A]dministrative status is allowed when a claim (1) is

---

[15] *See, supra* note 5.

incurred postpetition, (2) directly and substantially benefits the estate, and (3) is an actual and necessary expense.")).[16]  In order for a claim to be an administrative expense claim, it must meet one of the requirements of § 503(b) of the Bankruptcy Code.  The relevant portions of § 503 of the Bankruptcy Code at issue in the case at bar provide for the allowance of an administrative expense for: (1) "the actual, necessary costs and expenses of preserving the estate . . .," 11 U.S.C § 503(b)(1)(A); (2) "the actual, necessary expenses . . . incurred . . . by a creditor . . . in making a substantial contribution in a case . . .," *id*. § 503(b)(3)(D); and (3) reasonable compensation for attorney services rendered to a creditor whose expenses are allowed under § 503(b)(3)(A)-(E), based on time, nature, extent, and value of such services, and the cost of comparable services. *See id*. § 503(b)(4).

When considering the allowance of an administrative expense predicated upon the actual, necessary costs and expenses of preserving the estate, the modifiers "actual" and "necessary" set forth in § 503(b)(1)(A) of the Bankruptcy Code "must be observed with scrupulous care."  *In re Merry-Go-Round Enters., Inc.,* 180 F.3d at 158 (citing *Ford Motor Credit Co. v. Dobbins,* 35 F.3d at 865).  For a claim to qualify as an "actual" and "necessary" administrative expense, (1) the claim must arise out of a postpetition transaction between the creditor and the debtor in possession (or trustee) and (2) the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor in possession in the operation of the business.  *See id.* (citing *In re Stewart Foods, Inc.,* 64 F.3d 141, 145 n. 2 (4th Cir. 1995)).

The Liquidating Trustee argues that McConnell and Warnick are not entitled to administrative expense priority for any portion of the D&O Administrative Claims arising

---

[16] Congress created a single exception to the general requirement that an administrative claim must arise postpetition when it adopted *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* to include a new prepetition category of administrative claim for the value of goods received by the debtor within 20 days *before* the commencement of a bankruptcy case.  *See* 11 U.S.C. § 503(b)(9).

from their prepetition contracts.  This would include any form of prepetition compensation allegedly due under the respective employment agreements of Warnick and McConnell and any distributions or reimbursements due under the Shareholders' Agreement.  It is well-settled that such claims arising out of prepetition agreements do not qualify for administrative expense status.  *See In re Stewart Foods, Inc.,* 64 F.3d 141; *In re Dornier Aviation (N. Am.)*, 2002 WL 31999222, at *8; *In re Merry-Go-Round Enters.,* Case No. 94-50161-SD, 1999 WL 33457180 (Bankr. D. Md. Oct. 21, 1999).

Warnick and McConnell have asserted claims under unassumed prepetition contracts. Under § 365(d)(2) of the Bankruptcy Code, a debtor in possession has until plan confirmation to decide whether to assume or reject an executory contract.  When the debtor in possession exercises its right to reject a contract, either prior to plan confirmation or under a confirmed plan, the rejection is treated as a prepetition breach.  *See* 11 U.S.C. § 365(g). The counterparty to a  rejected contract is entitled to assert a general unsecured claim on account of any damages occasioned thereby.  *See* 11 U.S.C. § 502(g).  The Plan in the case at bar provided for the rejection of the Debtors' contracts with Warnick and McConnell.[17]

The Fourth Circuit Court of Appeals has recognized that "regardless of the nature of [a] contract, if at the time of the bankruptcy filing the debtor has an obligation under the contract to pay money to [a] non-debtor party, that obligation is handled as a pre-petition claim."  *In re Stewart Foods, Inc.,* 64 F.3d at 145.  A claim arising under any such prepetition contract will only be afforded administrative expense priority under 11 U.S.C. § 503 if the debtor in possession assumes the contract under 11 U.S.C. § 365.  *See id.* at 144-45.  This

---

[17] The Plan provided for the rejection of all of the Debtors' contracts unless the contract was expressly assumed. *See* Order Confirming Debtors' Plan of Liquidation under Chapter 11 of the Bankruptcy Code at Ex. A, § 8.1. *In re Health Diagnostic Laboratory, Inc., et al.*, Case No. 15-32919-KRH (Bankr. E.D. Va. May 12, 2016), EFC No. 1095.

Court extended the application of the holding in *Stewart Foods* to cover a creditor's request under a prepetition employment agreement for administrative expense priority for severance pay on account of a termination that occurred postpetition. *See In re Dornier Aviation (N. Am.),* 2005 WL 4781236. This Court denied the creditor's claim for administrative expense priority on the grounds that the term "claim" in the Bankruptcy Code is defined to include "contingent" and "unmatured" rights to payment. *See id.* at *6, 7; *see also* 11 U.S.C. § 101(5)(A). The Court noted that "[a] claim of a creditor arising under a prepetition contract is simply a general unsecured claim in the bankruptcy case even if the time for performance—and hence, the breach—occurs post-petition." *In re Dornier Aviation (N. Am.), Inc.,* 2002 WL 31999222, *at 6 (citing *In re Stewart Foods, Inc.,* 64 F.3d at 146)).

The requests for administrative expense priority that are included in the McConnell Administrative Claim arising out of McConnell's Employment Agreement, his Bonus Retention Agreement, his Salary Deferral Agreement, and the Shareholders' Agreement[18] all arise from rejected prepetition contracts. Similarly, the requests for administrative expense priority that are contained in the Warnick Administrative Claim on account of Warnick's Employment Agreement, the Shareholders' Agreement[19], and the HDL By-Laws all arise from rejected prepetition contracts. These rights to payment included in the D&O Administrative Claims were all contingent, unmatured, or matured claims as of the Petition Date. Even if an alleged breach occurred after the Petition Date, any damages occasioned by the breach must be treated as a prepetition, general unsecured claim. *See In re Dornier Aviation (N. Am.), Inc.,* 2002 WL 31999222, *at 6 (citing *In re Stewart Foods, Inc.,* 64 F.3d at 146). These claims, based on

---

[18] This includes the $388,062.86 claim for distributions and related amounts with respect to federal and state income taxes paid by McConnell and attributable to McConnell's allocable share of HDL's income tax for the 2014 tax year.

[19] This includes the $458,958 claim for distributions and related amounts with respect to federal and state income taxes paid by Warnick and attributable to Warnick's allocable share of HDL's income tax for the 2014 tax year.

unassumed prepetition contracts, do not meet the first prong of the administrative expense test that requires the right to payment to arise postpetition.  *See In re Midway Airlines Corp.*, 406 F.3d at 237.  Accordingly, none of these claims are entitled to administrative expense priority under § 503 of the Bankruptcy Code.

The Liquidating Trustee argues that the D&O Administrative Claims for indemnification should also be denied because the claims are based on prepetition conduct.  The Liquidating Trustee relies on *Christian Life Center Litig. Defense Comm. v. Silva (In re Christian Life Center)*, 821 F.2d 1370, 1373 (9th Cir. 1987), *In re Baldwin-United Corp.*, 43 B.R. 443, 454-56 (S.D. Ohio 1984), and *In re Phila. Mortg. Trust*, 117 B.R. 820, 828 (Bankr. E.D. Pa. 1990) in which the courts struck down the administrative expenses claims of officers and directors for indemnification on account of prepetition conduct.  The Liquidating Trustee maintains that summary judgment is warranted as the Applications of McConnell and Warnick seek indemnification for attorneys' fees that McConnell and Warnick incurred in defending themselves against claims alleging prepetition misconduct.  The Liquidating Trustee assets that the indemnification portion of the D&O Administrative Claims is not entitled to administrative expense priority as a matter of law.  Both McConnell and Warnick argue that they incurred the attorneys' fees postpetition as officers and directors of the Debtor and are entitled to indemnification under the HDL By-Laws and the HDL Articles of Incorporation and under the Virginia Stock Corporation Act.  *See* Va. Code Ann. § 13.1-698.

The relationship between a corporation and its shareholders is a contractual one.  *See Middleburg Training Center, Inc. v. Firestone*, 477 F. Supp. 2d 719, 724-25 (E.D. Va. 2007); *Blankenship v. Sprint Corp.*, No. 3:03-cv-221, 2007 WL 1387971, at *3, 4 (W.D.N.C. May 9, 2007).  A corporation's articles of incorporation and by-laws are similar to any other contract.

*See Toler v. Clark Rural Elec. Co-op. Corp.,* 512 S.W.2d 25, 27 (Ky. 1974) ("The relationship of a corporation and its shareholders is contractual and the articles and by-laws are part of the contract.  The articles and by-laws should be construed as any other contract") (citations omitted).  The articles and by-laws are agreements between the corporation, its shareholders, and the state that grants the corporation authority to operate.[20]

The Debtors did not assume the HDL Articles of Incorporation or HDL By-Laws.  Both were rejected upon confirmation of the Plan.[21]  Rejection damage claims resulting from the breach of the articles and by-laws are treated as prepetition claims.  11 U.S.C. § 365(g).  Thus, the D&O Administrative Claims for indemnification are general unsecured prepetition claims and not entitled to administrative priority under § 503(b)(l) of the Bankruptcy Code.[22]  *See In re Midway Airlines Corp*, 406 F.3d at 237.

Warnick contends that *Baldwin* does not support the position advanced by the Liquidating Trustee.  He argues that *Baldwin* stands for the proposition that postpetition directors and officers are entitled to assert indemnity claims related to their prepetition conduct.  Warnick maintains that these indemnity claims are entitled to administrative priority, without regard to whether the applicable contract was assumed, if the claims otherwise constitute an "actual,

---

[20] "While by-laws of a corporation constitute a contract between the corporation and its shareholders – not between the corporation and its officers and directors – directors may enforce, as third-party beneficiaries, obligations of the company incorporated in the by-laws."  *In re Baldwin-United Corp.*, 43 B.R. at 459.

[21] *See, supra* note 17.

[22] McConnell argues that it was necessary for him to engage counsel in order to fulfill his legal obligations postpetition as a member of HDL's Board.  McConnell maintains that the Debtors had a legal obligation to indemnify him for the legal fees he incurred postpetition.  However, the legal duty upon which McConnell relies arises out of prepetition contractual obligations that the Debtors had to indemnify their directors, none of which were assumed by the Debtors.  *See In re Stewart Foods, Inc.,* 64 F.3d 141; *In re Dornier Aviation (N. Am.),* 2002 WL 31999222, at *8 (holding that claims arising out of prepetition agreements do not qualify for administrative expense status).  It is the Plan's exculpation provision that now governs claims predicated upon the postpetition conduct of the Debtor's directors.

necessary cost and expenses of preserving the estate" within the meaning of 11 U.S.C. § 503(b)(l)(a). Warnick concludes that summary judgment, therefore, is not appropriate.

Although the decision in *Baldwin* is not binding on this Court, its holding is not so far reaching as Warnick would suggest. In *Baldwin*, the debtors in possession (not their directors) sought permission to retain counsel to represent their former and present officers and directors in connection with nonbankruptcy, securities litigation. *See In re Baldwin-United Corp.*, 43 B.R. at 445. The bankruptcy court had initially granted the debtors' motion. The United States District Court for the Southern District of Ohio reversed, holding that the bankruptcy court lacked discretion to authorize expenditures as an administrative expense for indemnification obligations that matured prepetition but did not become due until postpetition. *See id.* at 454. The district court did, however, remand to the bankruptcy court the narrow question whether the continued service of the present outside directors was so crucial to the debtors' chances for a successful reorganization as to justify administrative treatment for their litigation costs.[23] The district court stressed that this inquiry would need to "focus, as § 503 commands, upon the *benefits the debtors can demonstrate that they will obtain* from the outside directors' *continued service*, as opposed to the potential detriment the directors will experience should their defense costs not be given administrative treatment." *Id* at 462 (emphasis added).

The undisputed facts presented in the instant case are quite different from those presented in *Baldwin*. It was the " bankruptcy estate" in *Baldwin* that was seeking the administrative expense priority for its outside directors. Here, it is the former inside directors who are seeking to force the bankruptcy estate to indemnify them. Far from advancing the request, the Liquidating Trustee apposes the payment of the administrative claim. He contests that the

---

[23] Central to the Court's decision to remand in *Baldwin* was its concern that the outside directors should be able to direct their full attention to the reorganization effort without the distractions attendant to nonbankruptcy litigation if indeed their continued service was found to be crucial.

bankruptcy estate ever received any benefit from the services provided by McConnell and Warnick. In fact, the Liquidating Trustee alleges that McConnell's and Warnick's postpetition conduct caused harm to the estate.[24] While those contentions raise issues of material fact that remain strongly in dispute, there is no dispute over the critical fact that the services of McConnell and Warnick are not now (nor were they ever) crucial to the Debtors' reorganization in this case. That is because at no point did the debtors attempt to reorganize. The bankruptcy estate was liquidated. Furthermore, McConnell and Warnick were former inside directors; they are not present outside directors. The Liquidation Trust will derive no benefit from their continued services.

The Court concludes that, as a matter of law, the Liquidating Trustee is entitled to summary judgment on the D&O Claims that relate to prepetition contracts and that arise for indemnification. The Court finds, as a matter of law, that the Applications of Warnick and McConnell must be denied to the extent they seek administrative expense priority claims for actions and events rooted in the prepetition past.[25]

---

[24] *See*, *infra* note 26.

[25] The claims included in the Warnick Administrative Claim for (i) unpaid prepetition compensation as a director and officer of the Debtors (including, but not limited to, deferred compensation and severance); (ii) indemnification for unliquidated and contingent liability to the Debtors' estate; (iii) claims and interest arising from Warnick's Amended and Restated Employment Agreement executed by HDL and Warnick on March 1, 2011; (iv) claims arising from the Shareholders' Agreement, including, but not limited to, for an amount not less than $458,958 for distributions and related amounts with respect to federal and state taxes paid by Warnick and attributable to Warnick's allocable share of HDL's income tax for the 2014 tax year; (v) claims and interest arising from or on account of the HDL Articles of Incorporation; (vi) claims and interest arising from the HDL By-Laws; (vii) any other claims, damages, remedies, causes of action, or demands that may exist as a matter of prepetition contract, and (viii) future legal fees will all be disallowed as administrative claims.

The claims included in the McConnell Administrative Claim for (i) costs and expenses incurred in responding to the Lawsuit; (ii) earned, but unpaid prepetition compensation as director and officer of HDL; (iii) indemnification for unliquidated and contingent liability; (iv) claims arising under McConnell's Amended and Restated Employment Agreement dated March 1, 2011; (v) claims arising under the Shareholders' Agreement in the amount of $388,062.86 for distributions and related amounts with respect to federal and state income taxes paid by McConnell in the 2014 tax year; and (vi) future legal fees will all be disallowed as administrative claims.

The Liquidating Trustee argues that the D&O Administrative Claims that arise out of the postpetition conduct of McConnell and Warnick should be denied administrative expense priority as well.  In order to qualify for administrative expense status for compensation or reimbursement under § 503(b)(1)(A) of the Bankruptcy Code, McConnell and Warnick carry a "heavy burden of demonstrating that the [postpetition services for which they seek compensation] provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *In re Bernard Technologies, Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006) (quoting *Calpine Corp. v. O'Brien Envt'l Energy, Inc. (In re O'Brien Envt'l Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999)).  McConnell and Warnick must prove their entitlement to the requested compensation and expense reimbursement by a preponderance of the evidence.  *See, e.g., In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992).

The Liquidating Trustee argues that the postpetition conduct of McConnell and Warnick was self-interested, vexatious, and tactically engineered to delay the progress of the debtors' exit from chapter 11.  The Liquidating Trustee cites the Court's Memorandum Opinion rejecting Warnick's objections to Plan confirmation in support of his contentions.[26]  The Liquidating Trustee argued that McConnell and Warnick cannot carry their burden to show that their conduct benefited the unsecured creditors or was necessary to preserve the value of the estate.

McConnell takes issue with the Liquidating Trustee's contentions.  McConnell argues that he did not impede the chapter 11 proceedings.  He maintains that he "substantially contributed" to the bankruptcy case by remaining as a member of the Debtors' board of

---

[26] *See In re Health Diagnostic Laboratory, Inc.*, 551 B.R. 218 (Bankr. E.D. Va. 2016) wherein the Court found that Warnick used his position as a member of the Debtors' Board to frustrate the advancement of the bankruptcy case.

directors.[27]  McConnell claims he gave valuable advise to the Liquidating Trustee on the value of

HDL's assets.  He claims to have alerted the Liquidating Trustee about the interference of True

Health with the collection of HDL's accounts receivable.  McConnell contends that he provided

assistance to the Liquidating Trustee in connection with the sale of the holdings HDL had in

Global Genomics Group.  McConnell maintains that throughout his postpetition tenure with

HDL he acted in accordance with his fiduciary duties as a director.

Warnick contends that he provided a benefit to the bankruptcy case by raising objections,

engaging in negotiations, and offering improvements to the Debtors' disclosure statement and

Plan.  Warnick claims to have been involved in negotiating the Debtors' liquidating trust

agreement and the Debtors' tolling agreement.  He claims that he contributed to the development

of protocols for accessing proceeds under the Debtors' insurance policies.  Warnick argues that

summary judgment is not proper and that the Motion should be denied or be delayed until

discovery is conducted.

Whether the postpetition services of McConnell and Warnick were "beneficial" to the

estate is a question of fact.  *See In re Lickman*, 273 B.R. 691, 704 (Bankr. M.D. Fla. 2002) ("The

issue of whether an administrative claimant has benefited the bankruptcy estate is a 'question of

fact for the court to determine.'") (internal citation omitted).  There is a division among the

circuits regarding whether to apply a subjective test or an objective test for determining whether

an administrative claimant has benefitted the bankruptcy estate.  *See Broadcast Corp. of Georgia*

*v. Broadfoot (In re Subscription Television of Greater Atlanta),* 789 F.2d 1530, 1532 (11th

Cir.1986) (applying the subjective test). *But see In re Patient Education Media, Inc.*, 221 B.R.

---

[27] McConnell filed an affidavit wherein he claims that he reluctantly agreed to remain a member of the Debtors' Board at the request of the Liquidating Trustee due to McConnell's institutional knowledge and his steadying hand. He also points to the testimony of the Liquidating Trustee at the confirmation hearing to the effect that McConnell acted in good faith in connection with his participation in negotiating and drafting the Plan.

97, 102 (Bankr. S.D.N.Y. 1998) (applying the objective test).  Although the Fourth Circuit Court

of Appeals has not addressed which test applies in this circuit, both tests require "an actual,

concrete benefit to the estate before a claim is allowable . . . as an administrative expense."  *See*

*In re Lickman*, 273 B.R. at 704 (citing *In re Subscription Television of Greater Atlanta*, 789 F.2d

at 1532).

The Liquidating Trustee responds that even if McConnell and Warnick can prove that

they did not deliberately impede the progress of the bankruptcy proceedings and did provide the

postpetition assistance they allege, their Applications should still be denied on the grounds that

their conduct constitutes "expected or routine activates" that do not rise to the level of

administrative expense priority.[28]  Courts have held that administrative claims are not allowable

for such things as: reviewing documents and attending hearings, *In re Baldwin-United Corp.,* 79

B.R. at 341; negotiating terms of documents, *In re Alumni Hotel Corp.,* 203 B.R. 624, 632

(Bankr. E.D. Mich. 1996); and commenting on a disclosure statement and plan of reorganization,

*In re Jack Winter Apparel, Inc.,* 119 B.R. 629, 634 (E.D. Wis. 1990).

In order for a claim to receive administrative expense status under 11 U.S.C

§ 503(b)(3)(D), the expense must be "the actual, necessary expenses . . . incurred . . . by a

creditor . . . in making a substantial contribution in a case . . . ."  11 U.S.C. § 503(b)(3)(D).  The

Bankruptcy Code does not define the term "substantial contribution," and the question whether a

---

[28] The rule prevailing in Virginia, as in most jurisdictions, is that when a corporation becomes insolvent, the directors become trustees for the corporate creditors. *See Schnelling v. Crawford, et el. (In re James River Coal Co., et al.)*, 360 B.R. 139, 170 (Bankr. E.D. Va. 2007) ("[W]hen a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they cannot by transfer of its property or payment of cash, prefer themselves or other creditors.") (internal citations omitted). *See generally* 3A Fletcher Cyc. Corp § 1035.60 ("In most jurisdictions, when a corporation becomes insolvent, officers and directors of a corporation owe a fiduciary duty to the corporation's creditors."). Directors of a chapter 11 corporate debtor become fiduciaries of the estate, which the debtor in possession holds as trustee for the creditors. *See* 11 U.S.C. § 1107.  The relationship between the debtors and their directors differs prepetition from what the relationship is postpetition.  As the District Court observed in *Baldwin,* "the nature of the directors' duties [changes] from helmsman to guardian." *In re Baldwin-United Corp.*, 43 B.R. at 459, n. 22.

creditor has made a "substantial contribution" involves questions of fact.  *See Lebron v. Mechem Fin. Inc., et al.*, 27 F.3d 937, 946 (3d Cir. 1994); *Matter of Consol. Bancshares, Inc.,* 785 F.2d 1249, 1253 (5th Cir. 1986); *see also* 4 Collier on Bankruptcy ¶ 503.10[5][a] (A. Resnick & H. Sommer eds., 16th ed .2015).  The Fourth Circuit Court of Appeals has not addressed the issue of what constitutes a "substantial contribution" under § 503(b)(3)(D) of the Bankruptcy Code. However, other circuits have addressed the issue and generally agree that the contribution must have actual, concrete benefit to the estate.[29]

As the inquiry into whether McConnell and Warnick are entitled to assert administrative expense priority claims for postpetition conduct under §§ 503(b)(1)(A) and 503(b)(3)(D) requires a factual determination and as facts material to that determination remain in dispute, summary judgment as to the D&O Administrative Claims relating to the postpetition contributions of McConnell and Warnick to the estate must be denied.[30]

Finally, the Liquidating Trustee argues that the D&O Administrative Claims related to the payment of the attorneys' fees of McConnell and Warnick under § 503(b)(4) of the Bankruptcy Code should also be denied.  The Liquidating Trustee argues that neither McConnell nor Warnick can satisfy the statutory pre-condition of § 503(b)(4) of the Bankruptcy Code. Alternatively, the Liquidating Trustee argues that even if the statutory predicate is met, neither McConnell nor Warnick have satisfied their burden of showing that the amount of the attorneys'

---

[29] Two separate tests have been developed by the various circuits to evaluate "substantial contributions" under § 503(b)(3)(D) of the Bankruptcy Code.  The Fifth and Eleventh circuits do not inquire about the claimants' motivations for the conduct.  *See Speights & Runyan v. Celotex Corp. (In re Celotex Corp.),* 227 F.3d 1336, 1338 (11th Cir. 2000); *In re DP Partners, Ltd.,* 106 F.3d 667, 673 (5th Cir.1997).  The Third and Tenth circuits require that the claimants' motivations not be self-interested.  *See Lebron v. Mechem Financial, Inc.,* 27 F.3d 937, 944 (3d Cir. 1994); *In re Lister,* 846 F.2d 55, 57 (10th Cir. 1988).  The Ninth Circuit has addressed the issue, but refused to adopt either test.  *See Cellular 101, Inc. v. Channel Commc'ns,* 377 F.3d 1092, 1097-98 (9th Cir. 2004).

[30] As the Court has already made factual findings regarding Warnick's postpetition involvement in the bankruptcy case, Warnick will carry a much heavier burden to prove that he provided any benefit or made any "substantial contribution" to the bankruptcy Case.

fees they incurred were reasonable in nature or amount, or that they conferred any identifiable

benefit to the Debtors' bankruptcy estate.

The Court agrees.  A claimant may receive administrative expense status under 11 U.S.C

§ 503(b)(4) for "reasonable compensation for professional services rendered by an attorney . . .

[to a creditor] whose expense is allowable under subparagraphs (A), (B), (C), (D), or (E) of

[§ 503(b)(3) of the Bankruptcy Code] . . . ."  11 U.S.C § 503(b)(4).  The compensation must be

"based on the time, the nature, the extent, and the value of such services, and the cost of

comparable services other than in a case under this title, and reimbursement for actual, necessary

expenses incurred by such attorney . . . ."  *Id.*  The the statutory language indicates that no

administrative claim can arise for compensation of a claimant's attorneys' fees unless the

claimant's underlying administrative expense application has been allowed under § 503(b)(3) of

the Bankruptcy Code.  *See In re Rennie Petroleum Corp.*, 384 B.R. 412, 417 (Bankr. E.D. Va.

2008) (disallowing debtor's attorney to recover any compensation as an administrative expense

under § 503(b)(4) of the Bankruptcy Code because the debtor could not qualify for an

administrative expense claim under § 503(b)(3) of the Bankruptcy Code).

McConnell's and Warnick's Applications for administrative expense priority for

attorneys' fees related to their postpetition conduct are premature.  McConnell and Warnick may

only recover reasonable compensation for services rendered by an attorney for services that are

related to conduct for which they have established a valid administrative expense priority claim

under § 503(b)(3)(A), (B), (C), (D), or (E) of the Bankruptcy Code.[31]  The dispute over whether

---

[31] On September 16, 2016 the Liquidating Trustee filed a much-anticipated comprehensive complaint against numerous defendants including Warnick and McConnell seeking recoveries for the benefit of the estate on account of fraudulent conveyances and other alleged wrongdoing.  *See* Complaint, *Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust v. Mallory, et al.*, Case No. 16-03271 (Bankr. E.D. Va. Sept. 16, 2016) [hereinafter Lawsuit].  To be sure, attorneys' fees incurred in preparing for the defense of or defending against the Lawsuit do not qualify for administrative priority status under any circumstances.

McConnell and Warnick have a valid substantial contribution claim under § 503(b)(3)(D) of the Bankruptcy Code must be resolved before any claim under § 503(b)(4) of the Bankruptcy Code can be considered.

## Conclusion

The D&O Administrative Claims arising from prepetition contracts and indemnification will be disallowed as administrative claims. The Court has determined as a matter of law that this portion of the D&O Administrative Claims are (at best) prepetition general unsecured claims that do not meet the requirements of § 503(b) of the Bankruptcy Code. To that extent, the Motion of the Liquidating Trustee will be granted.

There are material facts in dispute regarding the D&O Administrative Claims relating to the postpetition conduct of McConnell and Warnick. To the extent that McConnell and Warnick can prove that the postpetition services they rendered were an actual and necessary cost of preserving the estate, they may be entitled to compensation for the reasonable value of those services as an expense of administration under § 503(b)(1) of the Bankruptcy Code. In addition, to the extent that McConnell and Warnick can prove that they provided a postpetition substantial contribution to the estate in their capacities as creditors, they may be entitled to an administrative claim under § 503(b)(3)(D) of the Bankruptcy Code. Accordingly, the Court denies the Motion with respect to the D&O Administrative Claims arising from the postpetition contributions made by McConnell and Warnick to the Debtors. The Court will consolidate the issues that remain unresolved in this contested matter with the Lawsuit in order to consider them together in the interest of the efficient administration of these Cases.

Counsel for McConnell and Warnick cannot recover reasonable compensation for any contribution they made to the bankruptcy estate under § 503(b)(4) of the Bankruptcy Code unless

and until McConnell and Warnick can prove that they are entitled to a substantial contribution

claim under § 503(b)(3)(D) of the Bankruptcy Code.  The Court finds the claims asserted under

§ 503(b)(4) to be premature and those claims will be dismissed without prejudice.  Counsel for

McConnell and Warnick (as their interests may appear) will be granted leave to file requests for

the allowance of an administrative claim under § 503(b)(4) of the Bankruptcy Code once the

Lawsuit has concluded, should either McConnell or Warnick prevail on their administrative

claim under § 503(b)(3)(D) of the Bankruptcy Code.

      A separate order shall issue.


Entered: <u>Oct 6 2016             </u>


              <u>     /s/ Kevin R. Huennekens     </u>
              UNITED STATES BANKRUPTCY JUDGE


              Entered on Docket:  Oct 6 2016