IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | HEALTH DIAGNOSTIC LABORATORY, INC., *et al.*, | Case No. 15-32919 |
| | | Chapter 11 |
| | | (Jointly Administered) |
| | Debtors. | |

## <u>MEMORANDUM OPINION</u>

Before the Court in this contested matter is the motion (the "Motion") filed by Richard Arrowsmith, in his capacity as the Liquidating Trustee of the HDL Liquidating Trust (the "Liquidating Trustee")[1], for approval of a settlement agreement between the HDL Liquidating Trust and LeClairRyan, A Professional Corporation ("LeClairRyan") under Federal Rule of Bankruptcy Procedure 9019 (the "Bankruptcy Rules").  Through the Motion, the Liquidating Trustee seeks to resolve claims asserted on behalf of the HDL Liquidating Trust against LeClairRyan in connection with LeClairRyan's prepetition representation of the Debtors.[2] Finding that the terms of the Settlement Agreement are fair and equitable, the Court granted the Motion at the conclusion of an evidentiary hearing conducted on September 22, 2016 (the "Hearing").  This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in support of its decision in accordance with Bankruptcy Rule 7052.[3]

---

[1] The confirmed Modified Second Amended Plan of Liquidation of the Debtors appointed Richard Arrowsmith as the Liquidating Trustee of the HDL Liquidating Trust in the jointly administered chapter 11 cases (the "Cases") of Health Diagnostic Laboratory, Inc., Central Medical Laboratory, LLC, and Integrated Health Leaders, LLC ("HDL" or the "Debtors").  The Liquidating Trustee is the successor for all purposes of the Debtors.

[2] *See* Motion for Order Approving Settlement Agreement Between Richard Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust and LeClairRyan at Ex. A, § 10, *In re Health Diagnostic Laboratories, Inc.*, No. 15-32919 (Bankr. E.D. Va. Feb. 9, 2016) ECF No. 1443 (hereinafter Settlement Agreement).

[3] Certain rules under part VII of the Bankruptcy Rules are applicable to contested matters, including Bankruptcy Rule 7052.  *See* Fed. R. Bankr. P. 9014(c).  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

**Procedural Background**

On June 7, 2015 (the "Petition Date"), the Debtors commenced these bankruptcy Cases

by each filing separate voluntary petitions for relief under chapter 11 of Title 11 of the United

States Code (the "Bankruptcy Code")[4] in the United States Bankruptcy Court for the Eastern

District of Virginia (the "Court").  The Court confirmed the Debtors' Modified Second Amended

Plan of Liquidation (the "Plan") by order entered May 12, 2016 (the "Confirmation Order").[5]

The HDL Liquidating Trust was formed in accordance with the terms of the Plan on the effective

date of the Plan.[6]  Unless otherwise specifically waived, relinquished or settled by the terms of

the Plan, all of the Debtors' litigation claims were transferred to the HDL Liquidating Trust,

including the claims asserted against LeClairRyan.[7]

The Liquidating Trustee filed his Motion on September 1, 2016.  Tipton Golias, Joseph

Golias, Donald Golias, Wyndell L Golias Voting Trust, Helena Laboratories Corporation, Karla

Falgout, Pamela Oates, Eric Petersen, John Tessler, David Mayes, Noel Bartlett, Robert Galen,

Joseph McConnell, LaTonya S. Mallory, and G. Russell Warnick filed objections to the Motion

on September 15, 2016.  Satyanarain Rangarajan, Floyd Calhoun Dent, III, Bradley Johnson, and

---

[4] *See* 11 U.S.C. §§ 1101–1174.  All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq.*

[5] *See In re Health Diagnostic Laboratory, Inc., et al.*, Case No. 15-32919-KRH (Bankr. E.D. Va. Aug. 17, 2016), EFC No. 1095.

[6] The Plan became effective on May 12, 2016 (the "Effective Date").  *See* Notice of Confirmation of Chapter 11 Plan at 1, *In re Health Diagnostic Laboratories, Inc.*, No. 15-32919 (Bankr. E.D. Va. May 14, 2016) ECF No. 1106.

[7] *See* Order Confirming Debtors' Plan of Liquidation under Chapter 11 of the Bankruptcy Code at App. A, pp. 32-33, ¶ 64, *In re Health Diagnostic Laboratories, Inc.*, No. 15-32919 (Bankr. E.D. Va. May 12, 2016) ECF 1095.

BlueWave Healthcare Consultants, Inc. filed joinders to the objections to Settlement Agreement.[8]

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

## Factual Background

In January of 2013 the United States Department of Justice ("DOJ") commenced an investigation into the Debtors' delivery of health care services.  The investigation focused on whether the Debtors' business practice of paying a processing and handling fee to referring physicians in connection with collecting, processing, and packaging blood specimens violated certain federal anti-kickback laws.  As the DOJ investigation continued, the Office of Inspector General for the Department of Health and Human Services issued a special fraud alert (the "Special Fraud Alert") regarding laboratory payments to referring physicians on June 25, 2014. Related litigation instituted by a number of private payors ensued (the "Litigation").  On April 9, 2015, the DOJ announced a settlement with HDL whereby HDL agreed to pay $47 million to resolve all the government claims against it in connection with the referral fees (the "DOJ Settlement").  HDL commenced these chapter 11 Cases as a result of the claims asserted in the Litigation and the DOJ Settlement.

---

[8] Tipton Golias, Joseph Golias, Donald Golias, Wyndell L Golias Voting Trust, Helena Laboratories Corporation, Karla Falgout, Pamela Oates, Eric Petersen, John Tessler, David Mayes, Noel Bartlett, Robert Galen, Joseph McConnell, LaTonya S. Mallory, G. Russell Warnick, Satyanarain Rangarajan, Floyd Calhoun Dent, III, Bradley Johnson, and BlueWave Healthcare Consultants, Inc., are hereinafter jointly referred to as the "Objectors".  The objections and joinders filed by the Objectors are hereinafter referred to as the "Objections."

LeClairRyan provided legal services to the Debtors prior to the Petition Date. HDL asserted claims against LeClairRyan from the early stages of the bankruptcy Cases. On October 26, 2015, the Chief Restructuring Officer of HDL sent a demand letter to LeClairRyan. HDL assigned the claims it held against LeClairRyan to the HDL Liquidating Trust on the Effective Date of the Plan.[9] LeClairRyan and the Liquidating Trustee engaged in settlement negotiations to explore the possibility of a consensual resolution. The parties commenced formal mediation proceedings beginning in December of 2015. Two face-to-face negotiating sessions were conducted, one in March and the other in June of 2016. The parties continued their discussions after the second round of negotiations had been completed. Finally, with the assistance of the mediator, the parties agreed upon the terms of the Settlement Agreement.

The pertinent provisions of the Settlement Agreement provide for LeClairRyan to pay the HDL Liquidating Trust the sum of $20,375,000. *See* LeClairRyan Settlement Agreement, at Ex. A, § 6, *In re Health Diagnostic Laboratories, Inc.*, No. 15-32919 (Bankr. E.D. Va. Feb. 9, 2016) ECF No. 1443. The parties will release all claims that each has against the other.[10] *See id.* at § 8, 9. LeClairRyan admits no liability on any of HDL's asserted claims to any person for any act or omission. *See id.* § 5. The Settlement Agreement is intended to be a "release or covenant not to sue" within the meaning of Va. Code Ann. § 8.01-35.1 and LeClairRyan is entitled to the benefits and protections available to released parties under that code section. *See id.* at § 10. Finally, the negotiations among the parties are to remain confidential.

---

[9]  The claims against LeClairRyan included causes of actions related to the provision of legal services in connection with the Debtors' business practices and for professional malpractice. *See* Second Amended Plan of Liquidation Proposed by the Debtors at Ex. A, *In re Health Diagnostic Laboratories, Inc.*, No. 15-32919 (Bankr. E.D. Va. Feb. 9, 2016) ECF No. 852.

[10] This includes the scheduled unsecured claim of LeClairRyan in the amount of $344,065.05.

## Analysis

The Liquidating Trustee seeks approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019.  The Settlement Agreement was negotiated by the Liquidating Trustee under the supervision of the Liquidating Trust Oversight Committee.[11]  The Liquidating Trustee argues that the Settlement Agreement is the product of difficult, arms-length negotiations.  It resolves potentially complex litigation, which could prove costly and time consuming to pursue, on terms beneficial to the bankruptcy estate.  The Liquidating Trustee maintains that the Settlement Agreement is fair, equitable, and in the best interests of the bankruptcy estates.  The Liquidating Trustee argues that if the claims against LeClairRyan had to be litigated, there would be a reasonable possibility for a lower recovery.

Bankruptcy Rule 9019 allows a trustee, after notice and a hearing, to settle a matter with the approval of the Court.[12]  *See* Fed. R. Bankr. P. 9019.  Compromises and settlements are "a normal part of the process of reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 414, 20 L. Ed. 2d 1 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130, 60 S. Ct. 1, 84 L. Ed. 110 (1939)).  The decision whether to approve a compromise under Bankruptcy Rule 9019 is committed to the sound discretion of the Court.

"All compromises must be 'fair and equitable.'"  *In re Alpha Nat. Res., Inc., et al.*, 544 B.R. 848, 857 (Bankr. E.D. Va. 2016) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. at 424).  The court analyzes four factors in determining

---

[11] The members of the Liquidating Trust Oversight Committee provided their own independent review following which they approved the Settlement Agreement.

[12] The proponent of the settlement has the burden of proving that the settlement is fair and equitable.  *See In re Frye,* 216 B.R. 166, 174 (Bankr. E.D. Va. 1997) (citing *In re A & C Props.,* 784 F.2d 1377, 1381 (9th Cir. 1986)). Bankruptcy Rules require that notice of the settlement be given to all creditors, the United States Trustee, the debtor, and indenture trustees.  *See* Fed. R. Bankr. P. 2002(a)(3), 9019(a).

whether to approve a settlement under this standard: (i) the probability of success in litigation; (ii) the potential difficulties in any collection; (iii) the complexity of the litigation and the expense, inconvenience, and delay necessarily attending it; and (iv) the paramount interest of the creditors. *See In re Frye,* 216 B.R. at 174 (citing *In re Martin,* 91 F.3d 389, 393 (3d. Cir. 1996)); *see also In re Three Rivers Woods, Inc.,* No. 98–38685, 2001 WL 720620 at *5–6 (Bankr. E.D. Va. Mar. 20, 2001). "In essence, a compromise or settlement will likely gain approval if it is both 'fair and equitable,' as well as representative of the best interests of the estate as a whole." *In re Three Rivers Woods Inc.,* 2001 WL 720620 at *6 (internal citations omitted). A bankruptcy judge is not required to "conduct a full evidentiary hearing or mini trial" before approving a settlement. *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995) (quoting *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983)); *see also DePoister v. Mary M. Holloway Found.,* 36 F.3d 582, 586 (7th Cir. 1994)). Instead, the Court must decide "whether the settlement falls 'below the lowest point in the range of reasonableness.'" *In re Austin*, 186 B.R. at 400; *accord In re Alpha Nat. Res. Inc.,* 544 B.R. at 857.

The Court finds that the foregoing factors favor approval of the Settlement Agreement. The uncontroverted evidence presented at the Hearing[13] established that the Settlement Agreement was the hard-fought product of an intense, arms-length mediation process that lasted nearly nine months. The parties utilized the skills of an independent mediator who had experience in legal malpractice, healthcare regulation, fraud, and complex commercial disputes. The Liquidating Trustee relied heavily upon the advice of financial advisors, tax counsel, bankruptcy counsel, and legal malpractice counsel in evaluating the terms of the Settlement

---

[13] The Liquidating Trustee offered the declaration of his counsel, Richard S. Kanowitz ("Kanowitz"), who was extensively involved with the settlement negotiations. Kanowitz also testified at the Hearing as did the Liquidating Trustee. No other testimony was presented at the Hearing.

Agreement.  The Court finds the Settlement Agreement represents a fair and equitable deal for all parties, and is far above the lowest point of reasonableness.

First, without the Settlement Agreement, the Liquidating Trustee would have had to engage in factually complex litigation with an uncertain outcome.  The evidence shows that the Liquidating Trustee raised and discussed with LeClairRyan all of the claims that had been asserted in the demand letter as well as other claims that had been assigned to the HDL Liquidating Trust under the Plan.  These included claims for the recovery of (i) intentional and constructive fraudulent conveyances under 11 U.S.C. § 548 and Va. Code Ann. §§ 55-80, 55-81, (ii) other avoidance actions under chapter 5 of the Bankruptcy Code, (iii) unlawful distributions to shareholders under Va. Code Ann. § 13.1-653, (iv) breach of fiduciary duty claims under Va. Code Ann. § 13.1-69, (v) common law conspiracy and statutory conspiracy claims under Va. Code Ann. § 18.2-499, (vi) claims for civil remedies against racketeer influenced and corrupt organizations under chapter 96 of title 18 of the United States Code, and (vii) claims for legal malpractice.  The Liquidating Trustee assessed the various defenses LeClairRyan would be likely to raise during litigation.  He considered the challenges presented by the standard of care, proximate cause, contributory negligence and the *in pari delicto* doctrine.  Given the complexity of the claims the Liquidating Trustee would advance and of the defenses LeClairRyan would raise, the likelihood of success in the litigation was hardly assured.

Second, even if the litigation brought by the Liquidating Trustee turned out to be wildly successful, collection on a judgment could prove to be problematic.  The testimony elicited at the Hearing indicated that "[l]aw firms are not blue-chips; they don't have millions just lying around; they're based on . . . what their lawyers do."  Transcript of Hearing at 37, *In re Health Diagnostic Laboratories, Inc.*, No. 15-32919 (Bankr. E.D. Va. Sept. 26, 2016) ECF 1503.  The

Liquidating Trustee evaluated the impact that causes of action other than malpractice might have on the collectability of a judgment if LeClairRyan's professional liability insurance were unable to cover those claims. The specified payment in the Settlement Agreement resolves any uncertainty about the Liquidating Trustee's ability to recover on the claims he has advanced.

Third, the Liquidating Trustee would incur significant costs pursuing the litigation. Many of the claims would require the production of fact intensive evidence at trial. Expert testimony would need to be presented to prove critical elements of causes of action such as legal malpractice and conspiracy. Expert testimony would also be required to establish damages. Litigation would likely be a prolonged process. Parties would likely appeal unfavorable decisions. Entry into the Settlement Agreement allows the Liquidating Trustee to avoid expensive and protracted litigation with an uncertain outcome.

Finally, the paramount interest of the creditors weighs in favor of approving the Settlement Agreement. The Settlement Agreement will provide for the infusion of $20,375,000 into the bankruptcy estate while fully resolving the Liquidating Trustee's claims against LeClairRyan. Over 699 creditors hold claims against the bankruptcy estate.[14] The settlement proceeds will be available for distribution to the unsecured creditors. For the foregoing reasons, the Court finds that the Settlement Agreement represents a fair and equitable resolution of the Liquidating Trustee's claims against LeClairRyan, and is far above the lowest point of reasonableness.

---

[14] On September 16, 2016 the Liquidating Trustee filed a comprehensive complaint against numerous defendants seeking recoveries for the benefit of the estate on account of fraudulent conveyances and other alleged wrongdoing (the "Complaint"). *See* Complaint, *Arrowsmith, Liquidating Trustee v. Warnick, et al.* Case No. 16-03271 (Bankr. E.D. Va. Sept. 16, 2016) ECF 1. It is telling that the only creditors who filed Objections to the Motion are named defendants in the Complaint. The Objectors may not be so much concerned about providing a meaningful return to all creditors of the bankruptcy estate as they are with obtaining some strategic litigation advantage for themselves. As the fiduciary for the bankruptcy estate, the Liquidating Trustee negotiated the Settlement Agreement in good faith in the service of all 699 creditors.

One of the Objectors, G. Russell Warnick ("Warnick"), argues that the Court should deny the benefit of the Settlement Agreement outright to all creditors. Warnick asserts that the amount of the Settlement Agreement is not reasonable in light of the full value of the Liquidating Trustee's claims against LeClairRyan. Warnick failed to provide any evidence in support of this contention. Instead, Warnick challenged the motives of the Liquidating Trustee in negotiating the Settlement Agreement. Warnick's assertions to the contrary notwithstanding, the Court need not explore the subjective motives behind the settlement of the legal claims. Bankruptcy Rule 9019 requires the application of an objective test. The Court must determine whether the settlement is fair and equitable to the bankruptcy estate, not to Warnick individually. Furthermore, the Court may consider the opinions of the Liquidating Trustee in assessing the relative fairness of the proposed compromise. *See In re Three Rivers Woods, Inc.,* 2001 WL 720620, at *6. The Liquidating Trustee was entitled to "rely on his counsel and his counsel's judgment in reaching a determination whether or not to proceed with [the] settlement agreement." *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990). The Liquidating Trustee has carried his burden of proving that the Settlement Agreement is fair and equitable.

Warnick next asserts that the Liquidating Trustee deprived the Court of information that was necessary for the Court to properly evaluate the Settlement Agreement; and so the Court must deny the Motion for lack of evidentiary support. Warnick sought at the Hearing to illicit testimony from counsel for the Liquidating Trustee regarding his analysis of the legal positions the parties had advanced and his negotiating strategy.[15] In reviewing the Liquidating Trustee's

---

[15] The Liquidating Trustee suggests that Warnick wants to obtain privileged information not to prove that the Liquidating Trustee failed to meet the standards required by Bankruptcy Rule 9019 for approval of the Settlement Agreement, but rather, to show that LeClairRyan (or some other party) was primarily at fault for Warnick's own transgressions which are the subject of the Complaint.

decision, the Court need only consider the legal positions underlying the disputed claims.  The Court

is not required to delve into privileged matters, as Warnick argues it must do.

> It is not necessary for the Debtors to waive the attorney/client privilege by presenting
> testimony regarding what counsel felt was the likelihood they would win on the
> claims being settled . . . .   It is sufficient to present the Court with legal positions
> asserted by each side and the facts relevant to those issues.  The Court itself can then
> evaluate the likelihood of the parties' prevailing in that litigation to determine
> whether the settlement is reasonable.

*In re Washington Mutual, Inc.*, 442 B.R. 314, 330 (Bankr. D. Del. 2011); *see also In re Lee Way*

*Holding Co.*, 120 B.R. at 897 (approving settlement where trustee's counsel "reviewed

documents which . . . [were] successfully withheld . . . under assertions of privilege").  The Court

will not invade the Liquidating Trustee's attorney/client privilege.   The factual testimony

presented at the Hearing was sufficient to allow the Court to assess whether the Settlement

Agreement is reasonable. *See id.* at 330.   The Court finds that it does have a reasonable

evidentiary basis to approve the Settlement Agreement.[16]   *See, e.g., In re Lee Way Holding Co.,*

120 B.R. at 899 (approving settlement for $6 million on claims valued in excess of $620

million).

Another Objector, LaTonya S. Mallory ("Mallory"), raised concerns along with Warnick

over whether the Settlement Agreement will release claims that they purport to hold individually

against LeClairRyan.   The Liquidating Trustee can only release claims constituting estate

property.  The Liquidating Trustee confirmed at the Hearing that the Settlement Agreement has

no effect on particularized injuries to other persons.   While the definition of HDL in the

Settlement Agreement includes "former directors, officers, employees and agents of HDL," it

---

[16] The evidence allowed the Court to evaluate all of the potential claims against LeClairRyan that the Liquidating
Trustee is proposing to settle.  The evidence allowed the Court to consider the challenges that the standard of care,
proximate cause, contributory negligence, and the *in pari delecto* doctrine present to the Liquidating Trustee.  The
Court is satisfied that the settlement will allow the HDL Liquidating Trust to avoid expensive and protracted
litigation with an uncertain outcome.  It will allow the Liquidating Trustee to avoid the risks attendant to collecting a
judgment against LeClairRyan.

10

does so only "to the extent they acted on behalf of or as a representative of HDL." *See* LeClairRyan Settlement Agreement, at Ex. A, ¶ 1(f), *In re Health Diagnostic Laboratories, Inc.*, No. 15-32919 (Bankr. E.D. Va. Feb. 9, 2016) ECF No. 1443. The LeClairRyan release included in the Settlement Agreement only affects former officers and directors of HDL in their derivative, not individual capacities.[17]

All of the Objectors addressed section 10 of the Settlement Agreement which provides that "LeClairRyan shall have and be entitled to the benefits and protections available to released parties under Code of Virginia § 8.01-35.1 . . . ." *See* LeClairRyan Settlement Agreement, at Ex. A, § 10, *In re Health Diagnostic Laboratories, Inc.*, No. 15-32919 (Bankr. E.D. Va. Feb. 9, 2016) ECF No. 1443.[18]  Va. Code Ann. § 8.01-35.1 operates to "preserv[e] the right of action

---

[17]  The Liquidating Trustee does assert that the non-settling parties cannot bring derivative actions against LeClairRyan that arise out of claims that are property of the estate. A "claim based on rights 'derivative' of, or 'derived' from, the debtor's typically involves property of the estate." *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 88 (2d Cir. 2014). Derivative claims are tied to derivative injuries, which are "based upon a secondary effect from harm done to the debtor," and in the context of bankruptcy are "ones that 'arise[ ] from harm done to the estate' and that 'seek [] relief against third parties that pushed the debtor into bankruptcy.'" *Id.* at 89 (internal citations omitted); *see also Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) (holding that because a fraudulent conveyance action was property of the estate, individual creditors' claims were "so similar in object and purpose to claims that the trustee could bring in bankruptcy court that the [creditors] lack standing to pursue these claims").

The Liquidating Trustee, as the successor to HDL's estate, is the only party that can assert or settle claims arising out of LeClairRyan's provision of legal services to HDL. The attorney-client relationship, an essential element of bringing a malpractice claim, only existed between LeClairRyan and HDL. *See, e.g., Carstensen v. Chrisland Corp.*, 247 Va. 433, 447 (1994) ("The existence of an attorney-client relationship is essential to establishing a claim of legal malpractice."). Once settled, any direct or derivative claims arising out of the LeClairRyan claims are extinguished and cannot be asserted by any party. *In re Ionosphere Clubs, Inc.*, 17 F.3d 600, 604 (2d Cir. 1994) (holding that derivative claims "belong exclusively to the [estate] and were extinguished by its settlement of those claims"). The only claims that could possibly be brought by Mallory or Warnick are those involving particularized injuries to themselves as individual creditors.

[18]  Section 8.01-35.1 of the Code of Virginia provides in pertinent part that "When a release or a covenant not to sue is given in good faith to one of two or more persons liable for the same injury to a person or property, or the same wrongful death . . . [i]t shall discharge the person to whom it is given from all liability for contribution to any other person liable for the same injury to person or property or the same wrongful death." A release of one person liable in tort for an injury, from among two or more persons liable, "shall not discharge any of the other tortfeasors from liability for the injury, property damage or wrongful death unless its terms so provide." Va. Code Ann. § 8.01-35.1.A.1.

against the non-settling tortfeasor, provid[e] that any amount recovered from the non-settling tortfeasor must be reduced by the amount received from the settling tortfeasor, and require[] the court to consider the amount paid by the settling tortfeasor in determining the amount for which judgment should be entered." *RGR, LLC v. Settle*, 288 Va. 260, 295 (2014) (internal quotation marks and citation omitted).

The Objectors misapprehend the reference to Code of Virginia § 8.01-35.1 in the Settlement Agreement. The Liquidating Trustee does not seek, nor is he getting, a preadjudication of the impact of Va. Code Ann. § 8.01-35.1 on any future claims or defenses that may be asserted by the Objectors in response to the Complaint.[19] The Court is confirming merely that the Settlement Agreement qualifies as a covenant not to sue or release. *See, e.g., Wright v. Orlowski*, 218 Va. 115, 121-22 (1977) (holding that even a "tacit understanding" was sufficient to establish an accord between the parties which constituted a release).[20] The appropriate time to make a determination about the application of Va. Code Ann. § 8.01-35.1 is in the future, when claims or defenses asserted by or against the Objectors are considered.

Objectors Malory and Warnick contend that after the amendment of Va. Code Ann. § 8.01-35.1 in 2007, it no longer applies to economic damages. While the impact of the 2007 amendment is disputed by the parties,[21] this Objection of Malory and Warnick is premature. No

---

[19] The Court is not adjudicating any party's offset rights (if any) by way of its approval of the Settlement Agreement.

[20] This Court is the proper forum to make a determination that the Settlement Agreement is a covenant not to sue or release that was given in good faith and free of collusion as these are determinations that are necessary for the Court's approval of the Motion.

[21] The 2007 Boyd-Graves Conference Subcommittee report cited by all parties states that the Virginia General Assembly amended Va. Code Ann. § 8.01-35.1 to address the effect of the Virginia Supreme Court's ruling in *Cox v. Geary*, 271 Va. 141 (2006). Several commentators have noted that the amendments to Va. Code Ann. § 8.01-35.1 broadened its scope of application beyond the confines of tort claims. *See* 1 Va. Civ. P. § 18.3 (Lexis 2016). *See also*, Robert L. Wise & Rebecca S. Herbig, *Setoff in Tort Cases Under Virginia Code Section 8.01-35.1 – For What, When, And For How Much?*, 20 J. Civ. Litig. P. 1, 1 n. 1 (2008) ("The General Assembly amended Virginia Code

party has asked the Court to adjudicate any rights under the statute.  The Court has simply been

asked to confirm that Va. Code Ann. § 8.01-35 applies to the Settlement Agreement.  Court

approval of the Settlement Agreement will not prevent any party from arguing (in the context of

an actual case or controversy) that Va. Code Ann. § 8.01-35.1 has limited applicability to a

future asserted right of contribution.  The issue now before the Court is whether the Liquidating

Trustee has met the requirements under Bankruptcy Rule 9019 for approval of the Settlement

Agreement.  The Court finds that he has.

**Conclusion**

The Court will grant the Motion and approve the Settlement Agreement.  The Court finds

that the Liquidating Trustee has met his burden under Bankruptcy Rule 9019 of proving that the

Settlement Agreement represents a fair and equitable deal for all parties and is above the lowest

point of reasonableness.

A separate order shall issue.


ENTERED: Oct 14 2016
_____


_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE


Entered on Docket:  Oct 14 2016

---

Section 8.01-35.1 to broaden that provision's reach from covering tort injuries only to covering any and all injuries
'to a person or property' and removed the limiting tort language.").