**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)**

| | |
|---|---|
| In re:<br>HEALTH DIAGNOSTIC LABORATORY INC. *et. al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 15-32919 (KRH)<br>(Jointly Administered) |

**ORDER APPROVING
SETTLEMENT AGREEMENT AND RELEASE**

Richard Arrowsmith, the Liquidating Trustee of the HDL Liquidating Trust appointed pursuant to the provisions of the Modified Second Amended Plan of Liquidation (the "Plan") proposed by the Debtors (Doc. No. 995), and approved by this Court by order dated May 12, 2016 (Doc. No. 1095), has moved the Court pursuant to Sections 105(a) and 363 of Title 11 of the United States Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Rule 9019") for the entry of an order approving a Settlement Agreement and Release ("Agreement")[2] entered into among the Liquidating Trustee and LeClairRyan (as those terms are defined in Section 1 of the Agreement). The Court finds that proper notice has been given to all necessary parties concerning the motion and the relief provided herein, and that all such parties have been given the opportunity to be heard on their objections to the Agreement.

Having considered the arguments and authorities submitted by counsel for the Liquidating Trustee, the other settling parties, and all objecting parties, and finding that the benefits of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434).

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Agreement, an unsigned copy of which is attached hereto as Exhibit A.

proposed settlement to the beneficiaries of the Liquidating Trust far outweigh the risks presented by the institution of complex and highly-contested litigation, it is hereby ORDERED that:

(1) pursuant to section 105 of the Bankruptcy Code and Rule 9019, the Agreement among the Liquidating Trustee and LeClairRyan is hereby APPROVED; and

(2) the Liquidating Trustee and LeClairRyan are authorized to take all actions as may be reasonably necessary to carry out the terms of the Agreement; and

(3) as provided in Section 10 of the Agreement and by the governing statutes of the Commonwealth of Virginia, LeClairRyan is entitled to, and is hereby afforded, the full protection of Virginia Code § 8.01-35.1; and

(4) no provision of this Order shall operate to discharge any person or entity, other than LeClairRyan and the other released persons and entities provided for in Section 8 of the Agreement, from liability to the Liquidating Trustee in connection with any claim held by the Liquidating Trustee as provided in the Plan; and

(5) the Liquidating Trustee shall from time to time, but no later than the close of each calendar quarter, provide to counsel for LeClairRyan a current and amended list of creditors whose claims have been assigned to him pursuant to the Plan, if any, which assignments shall effect the immediate and complete release of such assigned claims against LeClairRyan on the effective date of such assignment by operation of Section 8 of the Agreement; and

(6) notwithstanding any Federal Rule of Bankruptcy Procedure or Local Bankruptcy Rule of the Eastern District of Virginia that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and

(7)    the Court retains jurisdiction to implement and enforce the provisions of the Agreement and this Order, and shall entertain on an expedited basis any motion for the entry of a further order in aid of the Agreement, including but not limited to an order (i) to enforce the Agreement, (ii) to enforce or prevent interference with the releases granted under the Agreement, (iii) to enforce this Order, or (iv) to restrain and enjoin any creditor, person or entity from violating or interfering with the provisions of the Agreement or this Order.  Any such motion may include a request for a finding of contempt, the imposition of monetary sanctions, and an award of attorney's fees and costs incurred in enforcing the provisions of the Agreement or this Order.

Dated: Oct 14 2016         , 2016

Richmond, Virginia

/s/ Kevin R. Huennekens

KEVIN R. HUENNEKENS

UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: Oct 14 2016

We ask for this:

*/s/ Cullen D. Speckhart*
Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Suite 1040 Richmond, VA 23219
200 Bendix Road, Ste. 300 Virginia Beach, VA 23452
Telephone:     (757) 497-6633
Direct:           (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted *pro hac vice*)
Evan M. Lazerowitz (admitted *pro hac vice*)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating Trustee, and the Liquidating Trust Oversight Committee.*

**CERTIFICATION OF ENDORSEMENT**
**UNDER LOCAL BANKRUPTCY RULE 9022-1(C)**

I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/     *Cullen D. Speckhart*
Cullen D. Speckhart

**EXHIBIT A**
**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release ("Agreement") is entered into as of the 30th day of August 2016, by and among, Richard Arrowsmith, the Liquidating Trustee of the HDL Liquidating Trust (as fully defined below) and LeClairRyan, A Professional Corporation (as fully defined below).

Whereas, LeClairRyan, A Professional Corporation provided legal services to Health Diagnostic Laboratory, Inc. from its inception in or about 2008 until 2015; and

Whereas, various claims against and disputes concerning Health Diagnostic Laboratory, Inc. arose as a consequence of the company's operations, including an investigation by the United States Department of Justice and litigation instituted by private payors, making allegations that the company failed to comply with various federal or state regulations governing the delivery of health care services; and

Whereas, Health Diagnostic Laboratory, Inc. filed a voluntary petition pursuant to Chapter 11 of the United States Bankruptcy Code on June 7, 2015, instituting the case styled *In re Health Diagnostic Laboratory, Inc. et al.*, Case No. 15-32919 (KRH); and

Whereas, numerous persons and entities submitted claims against Health Diagnostic Laboratory, Inc. in the course of the bankruptcy proceeding; and

Whereas, the United States Bankruptcy Judge overseeing the bankruptcy proceeding entered an order dated May 12, 2016 (Doc. No. 1095), appointing the Liquidating Trustee to pursue claims on behalf of the estate of Health Diagnostic Laboratory, Inc. and its creditors, to the

5

extent set forth fully in the Modified Second Amended Plan of Liquidation filed by the Debtors (Doc. No. 995), dated March 25, 2016; and

Whereas, the Liquidating Trustee has given notice to LeClairRyan, A Professional Corporation of his intention to bring claims against the firm and certain of its current or former attorneys on behalf of Health Diagnostic Laboratory, Inc. and certain of its creditors; and

Whereas, LeClairRyan, A Professional Corporation and all attorneys and other persons currently or formerly associated with the law firm in any capacity deny that they are liable to the Liquidating Trustee or to any other person or entity for acts or omissions relating to their provision of professional services to Health Diagnostic Laboratory, Inc.; and

Whereas, after extensive negotiations, through their respective counsel, the Liquidating Trustee and LeClairRyan, A Professional Corporation, seek to fully and finally resolve all disputes among them, and to release all claims that have been asserted or are capable of being asserted against the law firm and its attorneys or other personnel by the Liquidating Trustee.

Now, therefore, the parties, subject to the final approval of the United States Bankruptcy Court, agree to the following:

1.  **Definitions.**  As used in this Agreement, the following definitions apply:

(a) "Approval Order" means the order to be entered by the Bankruptcy Court granting approval of this Agreement pursuant to and in conformance with Section 11 of this Agreement.

(b) "Assigning Creditor" means a creditor defined in Section 1.9 of the Plan.

(c) "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division.

(d) "Bankruptcy Proceeding" means the case styled *In re Health Diagnostic Laboratory, Inc. et al.*, Case No. 15-32919 (KRH), filed in the United States Bankruptcy Court for

6

the Eastern District of Virginia, Richmond Division, initiated on June 7, 2015, by Health Diagnostic Laboratory, Inc.'s filing of a petition under Chapter 11 of the bankruptcy laws of the United States. All docket references in this Agreement are to documents filed in the Bankruptcy Proceeding.

(e) "Final Order" means that with respect to any judicial ruling or order, the later of: (i) the expiration of any period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("Review Proceeding") without the initiation of a Review Proceeding, or (ii) if a Review Proceeding has been timely initiated, the full and final disposition of any such Review Proceeding without a reversal or any material modification, including the exhaustion of proceedings in any remand or in the appeal of any ruling or order on remand.

(f) "HDL" means Health Diagnostic Laboratory, Inc., a corporation organized under the laws of the Commonwealth of Virginia that maintained its principal place of business in Richmond, Virginia, and includes all parties identified as "Debtors" in Section 1.37 of the Plan. When used in this Agreement without express modification, "HDL" includes the Debtor corporate entities and all subsidiaries and affiliates, all successor entities, and the Estates created in the Bankruptcy Proceeding as defined in Section 1.49 of the Plan, as well as all current or former directors, officers, employees and agents of HDL to the extent they acted on behalf of or as representatives of HDL.

(g) "LeClairRyan" means LeClairRyan, A Professional Corporation, a professional corporation engaged in the practice of law organized under the laws of the Commonwealth of Virginia. When used in this Agreement without express modification, "LeClairRyan" includes both the corporate entity and each of its current or former directors, officers, shareholders,

attorneys, employees and agents, and includes but is not limited to all current or former LeClairRyan attorneys identified by name on Exhibit A to the Plan. Whenever a provision of this Agreement confers a right, benefit or protection, included but not limited to any release or discharge from liability, upon "LeClairRyan," all persons falling within the definition in the prior sentence of this subsection 1(g) shall be entitled to enforce such right, benefit or protection with or without the participation of LeClairRyan, A Professional Corporation.

(h) "Liquidating Trust" means the HDL Liquidating Trust defined in Section 1.66 of the Plan and operated pursuant to Section 6.4 of the Plan.

(i) "Liquidating Trustee" means the trustee appointed under the Plan approved by the Bankruptcy Court on May 12, 2016, and specifically defined in Section 1.74 of the Plan.

(j) "Plan" means the Modified Second Amended Plan of Liquidation Proposed by the Debtors (Doc. No. 995) confirmed by the Bankruptcy Court by order dated May 12, 2016 (Doc. No. 1095).

2. **Purpose of this Agreement.** The Liquidating Trustee and LeClairRyan intend by entering into this Agreement to fully and finally resolve all claims, both asserted and capable of being asserted, against LeClairRyan that are (a) in the possession or under the control of the Liquidating Trustee by virtue of his exercise of the powers and duties conferred by Section 6.5 of the Plan, including but not limited to all claims asserted on behalf of HDL and the other Debtors, and all claims assigned to the Liquidating Trustee by creditors of HDL or (b) otherwise within the jurisdiction of the Bankruptcy Court and capable of resolution through further action of the Bankruptcy Court, including the entry of orders, injunctions or other relief effective to bind persons or entities that are not parties to this Agreement and to restrain them from taking actions

8

inconsistent with the complete resolution of claims against LeClairRyan as contemplated by this Agreement.

    3.    **Representations of Liquidating Trustee.**  The Liquidating Trustee represents to LeClairRyan that:

    (a)    by virtue of the operation of the bankruptcy laws of the United States and the Bankruptcy Court's approval of the Plan, he is in possession and control of all claims that are released by the provisions of Section 8 of this Agreement;

    (b)    he has the authority to represent the interests of, and to bind, HDL and the other Debtors in connection with this Agreement;

    (c)    he has the power and authority to represent the interests of, and to bind, all persons or entities whose claims are released under this Agreement, including all persons identified in Section 6.5(c)(1) of the Plan and each and every Assigning Creditor that has assigned a claim or claims to him as authorized by the Plan;

    (d)    he has agreed to take, or cause his counsel to take, all steps necessary to seek the Bankruptcy Court's approval of this Agreement, and to seek Bankruptcy Court approval of all actions contemplated by this Agreement to effectuate its provisions and bind persons or entities that are not parties to this Agreement;

    (e)    he and his counsel have taken the opportunity independently to investigate and evaluate the facts and circumstances giving rise to the claims against LeClairRyan, and they are not relying on any representations of fact or law made by LeClairRyan or its counsel; and

    (f)    the Liquidating Trustee and all other persons executing this Agreement on his behalf have reviewed it with the advice of counsel and possess the authority to bind the Liquidating Trustee.

4. **Representations of LeClairRyan.** LeClairRyan represents to the Liquidating Trustee that:

(a) it, with the assistance of its counsel, has taken the opportunity independently to investigate and evaluate the facts and circumstances giving rise to the claims against LeClairRyan, and is not relying on any representations of fact or law made by the Liquidating Trustee or his counsel;

(b) it has agreed to take, or cause its counsel to take, all steps necessary to seek the Bankruptcy Court's approval of the Agreement, and to seek Bankruptcy Court approval of all actions contemplated by this Agreement to effectuate its provisions and bind persons or entities that are not parties to this Agreement;

(c) the person executing this Agreement on behalf of LeClairRyan has reviewed it and is authorized to bind LeClairRyan; and

(d) each current or former LeClairRyan attorney executing this Agreement has reviewed it with the advice of counsel and signs it of his own accord.

5. **No Admission of Liability.** Nothing in this Agreement operates nor shall it be construed as an admission that LeClairRyan is liable to any person or entity for any act or omission.

6. **Settlement Amount.** In consideration of the releases, covenants, representations, and undertakings of the Liquidating Trustee as set forth in this Agreement, LeClairRyan shall pay or cause to be paid to the Liquidating Trustee the sum of Twenty Million Three Hundred Seventy Five Thousand and 00/100 dollars ($20,375,000.00) (the "Settlement Amount"), in full and final settlement of all matters identified in this Agreement. The monies (the "Settlement Funds")

delivered by LeClairRyan to fund the Settlement Amount in full shall be transferred as set forth in Section 7 of this Agreement.

7.  **Payment and Handling of Settlement Funds.**  LeClairRyan shall deliver the Settlement Funds to the Liquidating Trustee or his designee, in the full Settlement Amount, in good funds, no later than fourteen (14) days after the entry by the Bankruptcy Court of the Approval Order, to an account specifically identified by the Liquidating Trustee and pursuant to commercially reasonable procedures.  Until such time as the Approval Order becomes a Final Order, the Liquidating Trustee shall hold the Settlement Funds in a segregated account maintained by the Liquidating Trust, shall not commingle the Settlement Funds with other monies or assets maintained by the Liquidating Trust, and shall not apply or disburse the Settlement Funds for any purpose.  If the Approval Order fails to become a Final Order upon the full and final disposition of any timely initiated Review Proceeding (a "Final Order Condition Failure"), the Settlement Funds, including all interest earned thereon and after deduction of applicable and customary bank charges, administration fees, and taxes (but excluding legal fees of the Liquidating Trustee and the Liquidating Trust) ("Net Interest"), shall be returned to LeClairRyan's insurers (per written instructions to be provided by LeClairRyan to the Liquidating Trustee) within fourteen (14) days after that event.  Once the Approval Order has become a Final Order, the Settlement Funds and all Net Interest earned on such funds while in the segregated account shall immediately become unrestricted assets of the Liquidating Trust without further notice.

8.  **Release of LeClairRyan by Liquidating Trustee.**  In consideration of the payment of the Settlement Amount described in Section 6 of this Agreement, upon the Liquidating Trustee's receipt of the Settlement Funds in good funds, with the exception stated below, and expressly subject to Section 15 of this Agreement, the Liquidating Trustee does hereby release,

acquit, and forever discharge LeClairRyan and each of its insurers, as well as each of LeClairRyan's current or former directors, officers, shareholders, owners, employees, agents, affiliates, partners, administrators, executors, predecessors, transferees, attorneys, successors, personal representatives, heirs, estates and assigns, solely in their capacities as such or to the extent they were otherwise acting in the name of or on behalf of LeClairRyan or within the scope of their employment or agency for or on behalf of LeClairRyan, of and from any and all claims, damages, causes of action or liabilities, of whatever kind or nature, known or unknown, suspected or unsuspected, accrued or unaccrued, that the Liquidating Trustee presently holds or in the future will hold or be entitled to assert under the Plan, including but not limited to (1) all claims arising out of the provision of legal services, or the failure to provide legal services, to HDL by LeClairRyan or any attorney employed by or otherwise associated at any time with LeClairRyan; (2) all claims of any kind whatsoever, presently assigned or assigned at any time in the future to the Liquidating Trustee, or capable of being asserted by the Liquidating Trustee, pursuant to the provisions of Section 6.16 of the Plan, regardless of the character or basis of such claims and including claims arising out of acts or omissions undertaken by HDL in its marketing and sale of laboratory services, and including but not limited to claims arising out of any failure by HDL to conduct its marketing and sale of laboratory services to any person or entity in compliance with the laws of the United States of America or any of its constituent states or territories, whether such claims arise at law or in equity, under any statute or regulation, and whether sounding in tort, contract, or otherwise. The provisions of the previous sentence in this Section 8 shall be identified as "the LeClairRyan Release." Notwithstanding any other provision in this Agreement, nothing herein, including without limitation the LeClairRyan Release, shall release, acquit or discharge Dennis M. Ryan from any claims, damages, causes of action or liabilities, of whatever kind or

nature, known or unknown, suspected or unsuspected, accrued or unaccrued, that the Liquidating Trustee presently holds or in the future will hold or be entitled to assert under the Plan against Dennis M. Ryan arising out of Dennis M. Ryan's actions, inactions, receipt of compensation or other transfers, or other conduct undertaken during the period when he was employed by HDL. Notwithstanding any provision of this Agreement, including but not limited to the proviso set forth in the previous sentence in this Section 8, nothing herein shall preclude Dennis M. Ryan from asserting any and all defenses available to him in response to any claims asserted against him by the Liquidating Trustee. A list of creditors that have assigned claims to the Liquidating Trustee pursuant to Section 6.16 of the Plan as of August 30, 2016 is attached to this Agreement as Attachment A.

9. **Release of HDL, the Liquidating Trust, and the Liquidating Trustee by LeClairRyan.** In consideration of the releases, covenants and undertakings set forth in this Agreement, effective immediately upon the grant of the releases set forth in Section 8 of this Agreement, LeClairRyan does hereby release, acquit, and forever discharge HDL, the Liquidating Trust, the Liquidating Trustee, and each of their current or former directors, officers, shareholders, owners, employees, agents, affiliates, subsidiaries, partners, insurers, administrators, predecessors, transferees, attorneys, successors and assigns, solely within their capacities as such or to the extent they were otherwise acting in the name of or on behalf of HDL or within the scope of their employment or agency for or on behalf of HDL, the Liquidating Trust, and the Liquidating Trustee, from any and all claims, damages, causes of action or liabilities, of whatever kind or nature, known or unknown, suspected or unsuspected, accrued or unaccrued, arising out of the provision of legal services to HDL by LeClairRyan, whether such claims arise at law or in equity, under any statute or regulation, and whether sounding in tort, contract, or otherwise, from the

13

beginning of time to the effective date of this release, including without limitation, the scheduled unsecured claim in the Bankruptcy Proceeding in favor of LeClairRyan in the amount of $344,065.05, which is deemed stricken and withdrawn with prejudice. The provisions of the previous sentence in this Section 9 shall be identified as "the HDL Release." Notwithstanding any other provision in this Agreement, nothing herein, including without limitation the HDL Release and the provisions of Section 11 of this Agreement, shall release, acquit or discharge HDL from any claims, damages, causes of action or liabilities, of whatever kind or nature, known or unknown, suspected or unsuspected, accrued or unaccrued, that Dennis M. Ryan holds or in the future may timely assert against HDL in response to claims made by the Liquidating Trustee or by any other person or entity included within the definition of the term HDL as set forth in this Agreement, arising out facts or circumstances occurring during the period when he was employed by HDL. Notwithstanding any provision of this Agreement, including but not limited to the proviso set forth in the previous sentence in this Section 9, nothing herein shall preclude the Liquidating Trustee or HDL from asserting any and all defenses available to it in response to any claims asserted against it by Dennis M. Ryan.

    10.    **Effect of Releases on Claims for Contribution by Alleged Joint Tortfeasors.** The parties to this Agreement acknowledge that the provisions of Sections 8 and 9 of this Agreement constitute a "release or a covenant not to sue" within the meaning of Code of Virginia § 8.01-35.1, and are governed by that statute. Pursuant to Code of Virginia § 8.01-35.1.A.2, the releases granted in Section 8 of this Agreement operate to discharge LeClairRyan from all liability for contribution to any other person alleged or found to be liable as a joint tortfeasor for any and all claims released by those paragraphs. LeClairRyan shall have and be entitled to the benefits and protections available to released parties under Code of Virginia § 8.01-35.1, and the Bankruptcy

14

Court shall retain jurisdiction over all proceedings in which a person or entity seeks to deprive LeClairRyan of such benefits and protections.

11. **Bankruptcy Court Approval**. By the later of (a) ten (10) business days of the full execution of this Agreement by all parties, or (b) September 8, 2016 (the date by which motions must be filed in the Bankruptcy Proceeding so as to be heard at the September 22, 2016 omnibus hearing), the Liquidating Trustee shall submit this Agreement to the Bankruptcy Court for approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("9019 Motion"), and shall promptly thereafter take all necessary steps at his expense to submit such motions and supporting memoranda as are necessary to establish that the standards for approval of this Agreement are satisfied. Except for this Section 11, which shall be effective from and after the earliest date when this Agreement has been executed by all parties, Bankruptcy Court approval is and shall be a precondition to this Agreement becoming effective notwithstanding any provision of the Plan or the Bankruptcy Code. In the 9019 Motion, the Liquidating Trustee shall move for the entry of the Approval Order in substantially the form attached to this Agreement as Attachment B which, after notice to all affected parties and an opportunity to be heard, shall (a) provide for the approval of this Agreement, (b) provide that this Agreement, and the provisions of the order approving this Agreement, shall not operate to discharge any person or entity, other than LeClairRyan and the other released persons and entities provided for in Section 8 of this Agreement, from liability to the Liquidating Trustee in connection with any claim held by the Liquidating Trustee as provided in the Plan.

12. **Jurisdiction to Enforce Settlement Retained.** The Bankruptcy Court shall retain jurisdiction to implement and enforce the provisions of this Agreement and the Approval Order. At any time after entry of the Approval Order, LeClairRyan may move (and the Liquidating

15

Trustee shall join in such motion at his own expense) for the entry of any further order to ensure that this Agreement and the Approval Order are effectuated in accordance with their terms, including but not limited to an order that enjoins any person or entity from instituting or prosecuting any claim, action or proceeding that interferes with or impairs the releases or other protections conferred by this Agreement. The Bankruptcy Court, in the exercise of its inherent powers and the jurisdiction it has retained under the Plan, shall entertain on an expedited basis any motion (i) to enforce this Agreement, (ii) to enforce the releases granted hereunder, (iii) to enforce the Approval Order, or (iv) to adjudicate any motion made pursuant to the provisions of this Section 12 against any creditor, person or entity who violates or interferes with the provisions of this Agreement or the Approval Order. Any such motion may include a request for a finding of contempt, the imposition of monetary sanctions, and an award of attorneys' fees and costs incurred in moving for relief under this Section.

13.  **Assistance of the Liquidating Trustee.** In the event any person or entity initiates an action, claim or proceeding of any kind, including but not limited to any third-party claim made in an action brought by the Liquidating Trustee, against LeClairRyan in any federal or state court or tribunal, or before any private arbitral tribunal, seeking to recover damages, restitution or any other remedy, monetary or otherwise, based on claims arising out of matters released by this Agreement or prohibited by the order of the Bankruptcy Court approving this Agreement, the Liquidating Trustee shall cooperate with LeClairRyan to obtain the dismissal of such action or claim on any proper grounds, including the ground that the order of the Bankruptcy Court approving this Agreement prohibits the prosecution of such action. The Liquidating Trustee and LeClairRyan shall each bear its own attorneys' fees or costs in connection with such action.

14. **Confidentiality and Non-Disparagement.** All parties to this Agreement affirm that this is a settlement and release of disputed claims, and that the content and subject matter of all negotiations among the parties have been and will remain strictly confidential. Except as required by law, no party shall communicate by any means the content of the negotiations among the parties to this Agreement and their respective counsel, and no party or counsel shall disparage any other party to this Agreement, its counsel or other advisors, or any third-party neutral involved in achieving this Agreement. Failure to adhere to this provision shall be grounds for monetary sanctions to be imposed by the Bankruptcy Court in the exercise of its inherent authority, and the Bankruptcy Court shall retain jurisdiction after approval of this Agreement for purposes of enforcing this provision.

15. **Reservation of Rights.** This Agreement and the settlement herein is an accord and satisfaction, not a novation. In the event this Agreement does not become effective for any reason, including the failure of the Bankruptcy Court to enter the Approval Order or the occurrence of a Final Order Condition Failure, the parties will return, without prejudice, to the status quo ante, for all litigation purposes, as if no settlement had been negotiated or entered into and the settlement and its existence shall be inadmissible for any purpose. Notwithstanding the foregoing, in the event of a Final Order Condition Failure, the releases set forth herein shall remain fully effective unless and until the full Settlement Funds, including Net Interest, have been returned to LeClairRyan's insurers pursuant to Section 7 above, at which time the releases granted hereunder shall be deemed null and void ab initio, and nunc pro tunc. Upon execution of this Agreement, those parties that executed that certain Second Amendment to Agreement to Toll Lawsuit Limitations Periods, effective as of August 12, 2016 shall also execute that certain Third Amendment To Agreement To Toll Lawsuit Limitations Period, a copy of which is attached to this

Agreement as Attachment C, which shall provide that the running of any statute of limitations, statute of repose, or other rule, defense, or principle based on the passage of time (including, without limitation, laches, waiver, or estoppel) with respect to any claims which are the subject of this Agreement shall be tolled and suspended through and including the date that is 60 days after (i) the date upon which the Approval Order becomes a Final Order or (ii) the occurrence of a Final Order Condition Failure.

16.     **Controlling Law.**  This Agreement shall be construed under the laws of the Commonwealth of Virginia.

17.     **Rules of Construction.**  This Agreement was negotiated by the parties with the advice of counsel. Neither LeClairRyan nor the Liquidating Trustee shall be designated, for purposes of interpretation or construction of the provisions of the Agreement, as the party that drafted the Agreement.

18.     **Integrated Agreement; Amendment by Writing Only.**  This Agreement is the full and final expression of the intentions of the parties, and all prior oral and written communications concerning the subject matter of this Agreement are extinguished and merged into this Agreement, which is the sole source of the parties' respective obligations. No amendment to this Agreement may be undertaken, nor shall any such amendment be effective, unless it is in a writing executed by the authorized representatives of the parties. This Agreement includes the following three attachments: (A) Schedule of Claims Assigned to Liquidating Trustee as of August 30, 2016, (B) Proposed Order Approving Agreement, and (C) Third Amendment To Agreement To Toll Lawsuit Limitations Period.

19.     **Dispute Resolution.**  All disputes concerning the interpretation of this Agreement or the enforcement of its provisions shall be submitted only to the Bankruptcy Court for resolution,

and the parties consent to the entry of such further order or the granting of such relief as the Bankruptcy Court may deem proper to effectuate the purposes of this Agreement.

20. **Signatures; Duplicate Originals.** This Agreement may be executed in counterparts by the signatories, with a copy delivered to counsel for all parties, and the counterparts, taken together, shall constitute a single original of the Agreement.

_____    Dated: _____
Richard Arrowsmith
In His Capacity as Liquidating Trustee

_____    Dated: _____
LeClairRyan, A Professional Corporation
By Its Chief Legal Officer

_____    Dated: _____
Dennis M. Ryan

_____    Dated: _____
Patrick J. Hurd

_____    Dated: _____
Michael F. Ruggio

_____    Dated: _____
Charles M. Sims