## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## (RICHMOND DIVISION)

In re:

HEALTH DIAGNOSTIC LABORATORY
INC. *et. al.*,[1]

            Debtors.

Chapter 11

Case No. 15-32919 (KRH)

(Jointly Administered)

**MOTION FOR ORDER (A) ENFORCING AND/OR EXTENDING THE 105(A) ORDER TO PROTECT THE LIQUIDATING TRUSTEE AND ESTATE PROPERTY FROM THIRD-PARTY SUBPOENAS ISSUED BY THE UNITED STATES DEPARTMENT OF JUSTICE SEEKING PRODUCTION OF DOCUMENTS OR TESTIMONY, (B) ENFORCING AND/OR EXTENDING THE AUTOMATIC STAY TO PERSONS OR ENTITIES, INCLUDING FORMER DIRECTORS, OFFICERS, AND EMPLOYEES OF HDL, FROM DISCLOSING PROTECTED ESTATE INFORMATION, INCLUDING IN RESPONSE TO DISCOVERY REQUESTS, THAT IS SUBJECT TO EVIDENTIARY PRIVILEGES HELD BY THE ESTATE, (C) GRANTING RELATED RELIEF UNDER 11 U.S.C. §§ 105(A) AND 107, AND (D) SCHEDULING A HEARING TO DETERMINE THE DEPARTMENT OF JUSTICE'S RESPONSIBILITY FOR THE COST OF THE LIQUIDATING TRUSTEE'S COMPLIANCE WITH THIRD-PARTY SUBPOENAS ISSUED BY THE DEPARTMENT OF JUSTICE**

       Richard Arrowsmith, in his capacity as Liquidating Trustee of the HDL Liquidating Trust

(the "<u>Liquidating Trustee</u>"), appointed pursuant to the Debtors' confirmed Modified Second

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434).

Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Richmond, VA 23219 200
Bendix Road, Ste. 300 Virginia Beach, VA
23452 Telephone: (757) 497-6633
Direct: (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating
Trustee of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted pro hac vice)
Evan M. Lazerowitz (admitted pro hac vice)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com
Email: elazerowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating
Trustee, and the Liquidating Trust Oversight
Committee*

Amended Plan of Liquidation (the "Plan") in these jointly administered bankruptcy cases (the

"Chapter 11 Cases" or the "Cases"), by his undersigned counsel, hereby moves the Court (the

"Motion") pursuant to sections 105(a), 107, 362(a), and 541 of title 11 of the United States Code

(the "Bankruptcy Code") for entry of an order substantially in the form annexed hereto as **Exhibit**

**A**, (a) enforcing and/or extending (i) the *Order on Joint Motion of Debtors, Creditors' Committee*

*and Proposed Liquidating Trustee for an Order (a) Enforcing and/or Extending the Automatic*

*Stay to Protect the Estate Parties From Third-Party Subpoenas Seeking Production of Documents*

*or Testimony, and (b) Granting Related Relief Under Section 105(a)* [Dkt. No. 1132] (the "105(a)

Order"); and (ii) the *Order Granting Motion to File Under Seal and Restricting Public Access*

*Thereto* [AP 16-03271 Dkt. No. 6] (the "Non-Waiver Order") to protect the Liquidating Trustee

and estate property, wherever located and by whomever held, from third-party subpoenas that have

been served or will in the future be served by the United States Department of Justice (the "DOJ")

seeking production of documents or testimony, (b) enforcing and/or extending the automatic stay

to persons or entities, including former directors, officers, and employees of HDL, from disclosing

protected estate information, including in response to discovery requests, that is subject to

evidentiary privileges held by the estate, (c) granting related relief under 11 U.S.C. §§ 105(a) and

107, and (d) scheduling a hearing to determine the DOJ's responsibility for the cost of the

Liquidating Trustee's compliance with third-party subpoenas issued by the DOJ.  In support of

this Motion, the Liquidating Trustee respectfully represents as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      The Liquidating Trustee submits this Motion to address certain third-party

subpoenas duces tecum (the "DOJ Subpoenas") that have been or will be issued by the DOJ on

persons or entities associated with HDL (the "DOJ Subpoena Recipients"), including subpoenas

served on HDL's former counsel (the "Law Firm Subpoenas").  In addition, the DOJ filed a motion

in the FCA Action (as defined below) to compel LaTonya S. Mallory ("Mallory"), HDL's former

Chief Executive Officer and a defendant in the FCA Action, to produce confidential documents

and information in her possession based on the DOJ's claim that a subject matter waiver has

occurred. Mallory has also threatened to produce privileged documents and information to the

DOJ, even though it is the Liquidating Trustee as the holder of HDL's attorney-client privilege,

who has exclusive authority to decide whether to waive evidentiary privileges. In order to preserve

the estates' limited resources in these Cases, and to protect the estate's evidentiary privileges, the

Liquidating Trustee seeks an order:

- Immediately enforcing this Court's prior orders, including the Plan, Confirmation Order, Non-Waiver Order and 105(a) Order to (i) prohibit any person or entity from waiving the estate's attorney-client privilege or work product protection, and (ii) prevent the DOJ from issuing third-party subpoenas that seek property of the estate;

- Barring the DOJ from violating its agreement with the Liquidating Trustee under Federal Rule of Evidence 502(e) (the "502(e) Agreement") and this Court's *Order (I) Implementing Protections of Rule 502(d) of the Federal Rules of Evidence, and (II) Approving Agreement Between the Estate of HDL and the United States of America Pursuant to Federal Rule of Evidence 502(e)* [Dkt. No. 1647] (the "502(d) Order"), under which the DOJ consented to this Court's jurisdiction over disputes related to the Liquidating Trustee's assertion of privilege; and

- Scheduling a hearing on the DOJ's responsibility for payment of the Liquidating Trustee's costs related to responding to the third-party subpoenas issued by the DOJ that have sought or will seek property of the estate under 11 U.S.C. § 105(a) and/or Federal Rule of Civil Procedure 45(d)(2)(B)(ii).

2.      The issuance of additional subpoenas by the DOJ – which seek documents subject

to the protections of the attorney-client privilege and work product doctrine – came as a surprise

to the Liquidating Trustee, who has just concluded months of negotiations with the DOJ over the

production of documents relevant to the FCA Action. The Liquidating Trustee and DOJ reached

what the Liquidating Trustee believed to be a consensual resolution of both the DOJ's objections

to the 105(a) Order, and the Liquidating Trustee's objections to the HDL Subpoena (as defined

below). That resolution included the Liquidating Trustee's agreement to produce hundreds of thousands of documents in response to the HDL Subpoena, which required the Liquidating Trustee to spend hundreds of thousands of dollars and thousands of attorney hours reviewing the documents for responsiveness and privilege. The DOJ also consented to this Court's jurisdiction over disputes related to the Liquidating Trustee's assertion of privilege in the 502(e) Agreement, as approved by the 502(d) Order.

3.      It now appears that the Liquidating Trustee's good-faith negotiations with the DOJ did not effectuate – as the Liquidating Trustee believed – a complete resolution of all issues regarding the HDL Subpoena. The issuance of the DOJ Subpoenas and filing of the motion to compel by the DOJ are attempts to retrieve privileged documents from HDL's former internal and external counsel and employees that the DOJ could not obtain from the Liquidating Trustee. According to well-settled United States Supreme Court precedent, and as set forth in the Confirmation Order and Plan, only the Liquidating Trustee can decide whether to waive HDL's evidentiary privileges with respect to pre-petition documents and information.

4.      At no point during the Liquidating Trustee's extensive negotiations with the DOJ was there any indication that the DOJ believed a subject matter waiver had occurred. The DOJ's delay and inconsistent conduct in asserting its waiver claims has caused harm to the Liquidating Trustee and creditors. And the DOJ's improper decision to file a motion to compel in the FCA Action, rather than in this Court, vitiated the 502(e) Agreement and contravened the 502(d) Order.

5.      The relief requested herein is necessary to preserve the estates' resources, avoid undue burden and expense, and protect documents and information subject to the attorney-client privilege and work product protection. The Liquidating Trustee would bear the cost of complying with the DOJ Subpoenas, which would impose significant costs on the estates as evidenced by the

hundreds of thousands of dollars spent responding to the HDL Subpoena.  This Court should compel the DOJ to comply with the procedures set forth in the 105(a) Order, as well as bar the DOJ from violating the 502(e) Agreement and 502(d) Order. For similar reasons, the Court should enter an order barring any person or entity in possession of HDL's books and records from releasing privileged information, whether in the form of documents or testimony, without the Liquidating Trustee's express consent or by further order of this Court. The Liquidating Trustee's request is supported by sections 105, 107, and 362 of the Bankruptcy Code.

6.    The Liquidating Trustee also seeks the scheduling of a hearing to determine the DOJ's responsibility for the Liquidating Trustee's cost of complying with both the HDL Subpoena and any other subpoenas that have or will be issued by the DOJ.  Absent such relief, the DOJ will continue to issue facially overbroad subpoenas without due regard for the significant cost of compliance imposed upon the Liquidating Trustee.

## JURISDICTION AND STATUTORY PREDICATES

7.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Motion is a core proceeding within the meaning of 28 U.S.C. § 157.

8.    The relief sought in this Motion is predicated upon sections 105, 107, 362, and 541 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9018, Federal Rule of Civil Procedure 45 as made applicable herein by Bankruptcy Rule 9016, and Federal Rule of Evidence 502, as made applicable herein by Bankruptcy Rule 9017.

## FACTUAL BACKGROUND

A.    **Procedural History**

9.      On June 7, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

10.     On June 9, 2015, the Court entered an order authorizing the joint administration of these Chapter 11 Cases, pursuant to Bankruptcy Rule 1015(b) [Dkt. No. 42].

11.     On June 16, 2015, the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division, appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee"), pursuant to section 1102 of the Bankruptcy Code.

12.     On May 12, 2016, this Court entered its Confirmation Order confirming the Plan. Under the Plan and Confirmation Order the Liquidation Trustee has exclusive control over the Debtors' attorney-client privilege: "[T]he Liquidating Trustee shall succeed to the rights and claims of, and hold the attorney-client privilege of, the Debtors and the Creditors' Committee, including without limitation any common interest privilege." *See* Confirmation Order, ¶ 52; Plan, § 6.5(e).  The Liquidating Trust Agreement also provides that the Liquidating Trustee shall exercise all power and authority that could have been exercised by the Debtors, including "the assertion or waiver of the Debtors' attorney/client privilege."  *See* Liquidating Trust Agreement, § 4.1(a).

13.     Pursuant to the Plan and 11 U.S.C. § 1123, the Liquidating Trustee is the successor, for all purposes, of the Debtors and the Creditors' Committee, and is thereby vested with standing to bring this Motion as a representative of the HDL Liquidating Trust.

B.    **The FCA Action and the HDL Subpoena**

14.     In response to a January 7, 2013, subpoena issued by the DOJ, HDL produced over

100,000 documents through its former legal counsel, Ropes & Gray LLP ("Ropes & Gray"), in accordance with a confidentiality agreement and an agreement of limited privilege waiver.

15.     On August 7, 2015, the United States filed a Complaint in Intervention alleging, among other things, that HDL's cofounder and former Chief Executive Officer and others violated the False Claims Act in a consolidated matter now styled as *United States ex rel. Mayes et al. v. Berkeley HeartLab, Inc., et al.*, No. 9:14-cv-00230-RMG (D.S.C.) (the "FCA Action"). HDL was previously a defendant in the FCA Action, but was dismissed from that action as part of a settlement agreement with the DOJ dated April 9, 2015.  The Honorable Richard M. Gergel, U.S.D.J., dismissed the FCA Action as to HDL by order dated June 2, 2015.

16.     On April 29, 2016, for the purpose of prosecuting the FCA Action, the DOJ served HDL, through the Liquidating Trustee, with a document subpoena issued pursuant to Federal Rule of Civil Procedure 45 (the "HDL Subpoena").

17.     In response to the HDL Subpoena, on May 10, 2016, the Debtors, the Creditors' Committee, and the Liquidating Trustee (the "Estate Parties") filed the *Joint Motion of Debtors, Creditors' Committee and Proposed Liquidating Trustee For An Order (A) Enforcing And/Or Extending The Automatic Stay To Protect The Estate Parties From Third-Party Subpoenas Seeking Production Of Documents Or Testimony, And (B) Granting Related Relief Under Section 105(a)* [Dkt. No. 1089] (the "Third-Party Subpoena Motion").  The Estate Parties also served the DOJ with written objections to the HDL Subpoena pursuant to Federal Rule of Civil Procedure 45(d)(2)(B).  *See id.*, Ex. E.

18.     The Court entered the 105(a) Order approving the Third-Party Subpoena Motion as to all parties besides the DOJ on July 1, 2016 [Dkt. No. 1272]. The 105(a) Order established a protocol for the enforcement and extension of the automatic stay to third-party subpoenas or other

discovery requests served on the Liquidating Trustee. The DOJ's deadline to object to the Third-Party Subpoena Motion was extended to allow the parties to negotiate a resolution of the Liquidating Trustee's objections to the HDL Subpoena.

19.    The DOJ and Liquidating Trustee subsequently engaged in more than seven months of negotiations over the scope of the HDL Subpoena, proposed search terms for responsive documents, and privilege issues.  A chart summarizing the extensive communications between the DOJ and the Liquidating Trustee is attached hereto as **Exhibit B**.  On or about September 13, 2016, the parties reached agreement on search terms, a list of which is attached hereto as **Exhibit C**, resulting in over 150,000 documents that needed to be reviewed for privilege.

20.    In order to complete the privilege review, the Liquidating Trustee expended more than 5,000 attorney hours – which included the engagement of contract attorneys and an e-discovery vendor – over $600,000 in attorneys' fees, and $50,000 in costs.  During the course of the review, the Liquidating Trustee simultaneously negotiated the terms of the 502(e) Agreement to allow discovery to proceed in an efficient manner without inadvertent waiver of any privilege or other protection. In the 502(e) Agreement, the DOJ agreed that if there was an unresolved dispute over the Liquidating Trustee's claim of privilege over a document, "the United States may make a sealed motion for a judicial determination of the privilege claim by the Court presiding over the HDL Estate bankruptcy action." *See* 502(d) Order, Ex. A, ¶ 5. The Liquidating Trustee believed that the parties' agreement on the parameters of the production represented a resolution of both his objections to the HDL Subpoena as well as the DOJ's objections to the Third-Party Subpoena Motion.

21.    On December 13, 2016, the Liquidating Trustee filed a motion to approve the 502(e) Agreement, and to implement the parallel protections of Federal Rule of Evidence 502(d)

[Dkt. No. 1631] (the "502(d) Motion"). In the 502(d) Motion, the Liquidating Trustee stated that the motion "also resolves the Third-Party Subpoena Motion as to the United States." *Id.* at ¶ 13. Similarly, at the December 15, 2016 hearing on the 502(d) Motion, the Liquidating Trustee represented that "as between the DOJ and the estate, concerning the subpoena that was issued in April 2015, we've resolved the motion that we filed under 105 that your [honor] granted, as to everybody else concerning third-party discovery." See Transcript of December 15, 2016 hearing, attached hereto as **Exhibit D**, at 5:3-6.  The Court approved the 502(d) Motion on December 21, 2016.  The 502(d) Order incorporated the terms of the 502(e) Agreement and provided that this Court "shall retain jurisdiction to interpret, enforce, and implement the terms and provisions of this Order." *Id.* at ¶ 7.

C.    **The DOJ Subpoenas**

22.    The Liquidating Trustee recently learned that the DOJ served the Law Firm Subpoenas on LeClairRyan, a Professional Corporation ("LeClairRyan"), Squire Patton Boggs ("Patton Boggs"), and Ropes & Gray on December 28 and 29, 2016. The Law Firm Subpoenas are attached hereto as **Exhibits E**, **F**, and **G**, respectively.  The DOJ did not consult with the Liquidating Trustee before issuing the Law Firm Subpoenas.  The Law Firm Subpoenas seek documents and information that are encompassed by the attorney-client privilege and the work product protection:

> 1.    All opinion letters prepared by You for LaTonya Mallory, HDL, and/or BlueWave relating to P&H, zero balance billing, or the HDL Sales Agreement.
>
> 2.    All documents, including but not limited to retention letters, and communications relating to any services performed by You for LaTonya Mallory, HDL, and/or BlueWave relating to P&H, zero balance billing, or the HDL Sales Agreement.
>
> 3.    All documents and communications relating to consultations between You and LaTonya Mallory, HDL, and/or BlueWave

relating to P&H, zero balance billing, or the HDL Sales Agreement.

4.  All calendars (hard copy and electronic), message slips, logs, or other similar documents belonging to [any attorney employed by Patton Boggs, Ropes & Gray, or LeClairRyan] relating to services performed by You on behalf of LaTonya Mallory, HDL, and/or BlueWave relating to P&H, zero balance billing, or the HDL Sales Agreement.

5.  All documents and communications relating to contracts, consultations, and/or discussions between you and other law firms or attorneys (including but not limited to, (1) LeClairRyan; (2) Ropes & Gray LLP; (3) King & Spalding; (4) the Law Offices of Gene Sellers; (5) Galese & Ingram; (6) White, Arnold & Dowd; and (7) Balch & Bingham) relating to P&H, zero balance billing, or the HDL Sales Agreement.

6.  All documents and communications relating to advice, opinions, guidance, or any other form of instruction provided by You to LaTonya Mallory, HDL, and/or BlueWave relating to P&H, zero balance billing, or the HDL Sales Agreement.

7.  All documents and communications You received from LaTonya Mallory, HDL, BlueWave, and/or any other third party relating to P&H, zero balance billing, or the HDL Sales Agreement.

*See* Exhibits E, F, and G.

23.    The Law Firm Subpoenas bear the caption of the District of South Carolina. However, each of the subpoenas indicates a place of compliance at "Michael E. Shaheen, Trial Attorney, Department of Justice, Civil Frauds, 601 D. Street., N.W., Washington, D.C. 20004" on January 28, 2017, at 10:00 a.m.

24.    In addition, the Liquidating Trustee has learned that the DOJ has served third-party subpoenas on former HDL employees, many of whom have contacted the Liquidating Trustee to request direction on how to respond. Thus far, HDL's former Chief Compliance Officer, Kathleen Johnson, and General Counsel, Derek Kung, have or will be served with subpoenas by the DOJ.

The Liquidating Trustee believes that additional parties, including HDL's former counsel, King &
Spalding, former Executive Vice President and General Counsel, Douglas Sbertoli, former
Executive Vice President, Dennis Ryan, and former LeClairRyan attorney, Mike Ruggio, may also
be served with third-party subpoenas.

**D.**      **Mallory's Production of Privileged Documents and Information**

25.      In an attempt to force Mallory to comply with a Subpoena to Testify at a Deposition,
which incorporates the DOJ's First Set of Document Requests (collectively, the "Mallory
Subpoena") on January 6, 2017, the DOJ filed a Motion to Compel Defendant LaTonya Mallory
to Produce Documents and Memorandum in Support Thereof (together, the "Motion to Compel")
in the FCA Action.  The Mallory Subpoena and Motion to Compel are attached hereto as **Exhibits**
**H** and **I**, respectively.   The Motion to Compel reveals that on December 22, 2016, the DOJ
conferred with Mallory's counsel, who confirmed that Mallory would continue to withhold
documents in her possession "out of an abundance of caution arising from concerns that the
privilege was HDL's, not Mallory's, to waive." Motion to Compel, p. 6.[2]

26.      In the Motion to Compel, the DOJ contends that because Mallory has asserted an
advice of counsel defense, she "abandoned any claim of attorney-client privilege or work product

---

[2]      The Motion to Compel was not served on counsel for the Liquidating Trustee, nor does it disclose
(a) this Court's entry of the 105(a) Order; this Court's entry of the 502(d) Order; (c) this Court's
entry of the Non-Waiver Order; or (d) the fact or existence of the 502(e) Agreement.   The
Liquidating Trustee believes that the DOJ has intentionally misled the District Court for the District
of South Carolina as to material facts and circumstances surrounding the status of relevant
privileges and protections upon which this Court has previously ruled. The Motion to Compel
reveals improper forum shopping on the part of the DOJ, as the DOJ seeks an order granting relief
that it could not obtain in the FCA Action, in violation of the Confirmation Order, the automatic
stay, the 105(a) Order, the Non-Waiver Order, and the 502(d) Order, all of which provide this Court
with exclusive and continuing jurisdiction over the issues presented by the DOJ's wrongful
attempts to extract privileged information from non-estate parties.   Moreover, this Court is best-
positioned to protect the Liquidating Trustee's assertions of attorney-client privilege, given that no
party to the FCA Action will do so.

privilege for all advice she received (and information relevant to that advice) concerning the

legality of: (1) the sales contract HDL entered into with BlueWave; (2) the payment of P&H fees

to physicians and physician groups; and (3) the waiver of copays and deductibles for TRICARE

beneficiaries." *Id.*, p.7.[3]  The DOJ also contends that the Liquidating Trustee waived the attorney-

client privilege by "disclosing the LeClairRyan opinion letter to third parties" and by filing the

Omnibus Complaint, which purportedly "inject[ed] . . . communications [with counsel] into its

[sic] lawsuit." *Id.* at pp. 11-13.[4]

27.    Despite Mallory's confirmation to the DOJ that she would continue to withhold

privileged documents, Mallory is now threatening to breach her duty of loyalty to the Debtors by

revealing, without authorization, privileged communications of the Debtors now controlled by the

---

[3]    The Liquidating Trustee takes no position on whether Mallory waived her own attorney's advice. But Mallory did not, and cannot, waive HDL's attorney-client privilege. As established in the record of the motion to approve the Liquidating Trustee's settlement with LeClairRyan [Dkt. No. 1443], other than receiving estate planning advice from LeClairRyan, Mallory was not a client of any of HDL's law firms as to health regulatory affairs, and no advice was given to her in an individual capacity other than for estate planning. Thus, the proper vehicle for the DOJ to challenge Mallory's advice of counsel defense is a motion to strike her affirmative defense because none of the attorneys who rendered advice to her represented her in an individual capacity. Instead, the DOJ improperly served the Law Firm Subpoenas, which, as recognized in the DOJ's motion to compel BlueWave to provide discovery responses in the FCA Action, constitutes service on the law firms' former client, the Liquidating Trustee. *See* Memorandum in Support of The United States' Motion to Compel Defendants BlueWave Healthcare Consultants, Inc., Floyd Calhoun Dent, III, and Robert Bradford Johnson to Produce Documents, *United States ex rel. Mayes et al. v. Berkeley HeartLab, Inc., et al.*, No. 9:14-cv-00230-RMG, ECF No. 350-1 (D.S.C. Jan. 3, 2017), at pp. 9-10.

[4]    Notwithstanding the express provisions of the Non-Waiver Order, the DOJ contends that a subject matter waiver has occurred with respect to the following topics: (1) the payment of process and handling fees; (2) the use of third party sales contractors; (3) the routine waiver of copayments and deductibles; (4) the Antikickback Statute; (5) the Stark Law; (6) Fair Market Value of process and handling fees; and (7) the False Claims Act.  At the appropriate time, and in the proper forum, the Liquidating Trustee will demonstrate that no subject matter waiver has occurred. However, it is important to note that the documents the DOJ relies upon to argue that a waiver has occurred, the LeClairRyan time in motion letter (*see* Motion to Compel, Ex. 1), and the Omnibus Complaint, do not support the DOJ's contentions.  The LeClairRyan letter is limited to the subject of process and handling fees, and cannot effectuate a broad subject matter waiver. And the Omnibus Complaint was filed under seal – as the DOJ admits – subject to all applicable privilege protections which were specifically preserved by the Non-Waiver Order.

Liquidating Trustee. On December 22, 2016, Mallory's then-counsel, Chris Hall and Nicholas Nastasi of Saul Ewing LLP, filed a motion to withdraw as counsel to Mallory in the FCA Action (the "Saul Ewing Motion to Withdraw"). It was these attorneys who confirmed that Mallory would continue to withhold privileged documents in her possession because only the Liquidating Trustee could waive HDL's attorney-client privilege. An order granting the Saul Ewing Motion to Withdraw was entered on the same day. Following Saul Ewing's withdrawal, on January 5, 2017, Mallory, via her new counsel, sent the Liquidating Trustee two letters dated December 29, 2016, and January 3, 2017, enclosing, *inter alia*, the Mallory Subpoena.  Mallory's letters are annexed hereto as **Exhibit J**.

28.    In her December 29, 2016, letter, Mallory stated that she plans to "fully comply with the subpoena, including testifying truthfully and producing all of the requested documents, including those identified on the enclosed Privilege Log." *See* Ex. J.  Mallory also forwarded her proposed responses (the "Interrogatory Responses") to the DOJ's First Set of Interrogatories. *See id.* The Interrogatory Responses describe documents and information that may be subject to the attorney-client privilege or work product protection.  The information and documents Mallory is threatening to reveal are privileged pre-petition communications with the Debtors' counsel, where the Debtors (and not her) were the client.

29.    The Liquidating Trustee sent Mallory a letter on January 6, 2017, informing her that her proposed responses to the Mallory Subpoena and the Interrogatory Responses contain privileged information and directing her to maintain the confidentiality of estate property.  A copy of the letter is attached hereto as **Exhibit K**.

## RELIEF REQUESTED

30.     By this Motion, the Liquidating Trustee seeks the entry of an order attached hereto as Exhibit A, (a) enforcing and/or extending the 105(a) Order to protect the Liquidating Trustee and estate property, wherever located and by whomever held, from third-party subpoenas that have been served or will in the future be served by the DOJ seeking production of documents or testimony, (b) enforcing and/or extending the automatic stay to persons or entities, including former directors, officers, and employees of HDL, from disclosing protected estate information, including in response to discovery requests, that is subject to evidentiary privileges held by the estate, (c) granting related relief under section 105(a) of the Bankruptcy Code, and (d) scheduling a hearing to determine the DOJ's responsibility for the cost of the Liquidating Trustee's compliance with third-party subpoenas issued by the DOJ.

## BASIS FOR RELIEF

**A.     The Court Has Jurisdiction Over Property of the Estate and the Liquidating Trustee's Control of the Estate's Evidentiary Privileges to Grant the Relief Requested, and the Automatic Stay Protects Such Property and Interests**

31.     This Court has "exclusive jurisdiction of all of the property, wherever located, of [HDL] as of the commencement of [the] case, and of property of the estate . . . ." 28 U.S.C. § 1334(e)(1). *See also* Confirmation Order, ¶ 65(c) (ordering that this Court has jurisdiction to "protect the property of the Estates . . . from claims against, or interference with, such property").[5] The term "property of the estate" is broadly defined under the Bankruptcy Code to include all of

---

[5]     The Confirmation Order states that "all injunctions or stays provided for in the Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, that [are] in existence on the Confirmation Date, shall remain in full force and effect until the Case is closed." *See* Confirmation Order, ¶ 61; Plan, § 7.8. In addition, the Confirmation Order enjoins any party from "commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind . . . against or affecting the Debtors, the Liquidating Trust, the Liquidating Trustee, or any of their property." Confirmation Order, ¶ 63; Plan, § 7.4.

HDL's legal and equitable interests in property as of the commencement of these cases, all proceeds, product, or offspring of or from property of the estate, and any interest in property that the bankruptcy estate acquires after the commencement of the case, wherever located and by whomever held.  11 U.S.C. § 541(a).

32.     The Liquidating Trustee is also the exclusive holder of the Debtors' attorney-client privilege pursuant to the Confirmation Order and the Plan. *See* Confirmation Order, ¶ 52; Plan, § 6.5(e); Liquidating Trust Agreement, § 4.1(a).  As a result, "the [Liquidating] Trustee became the holder of the debtors' attorney-client privilege" because "*[a]ll* of the debtors' assets (including those causes of action that had been asserted on behalf of the debtor estate by the Committee) were transferred to the Litigation Trust under the sole management and control of the Trustee."  In *re Hardwood P-G, Inc.*, 403 B.R. 445, 456 (Bankr. W.D. Tex. 2009); *In re Flag Telecom Holdings, Ltd.*, No. 02 CIV. 3400 (WCC), 2009 WL 5245734, at *10 (S.D.N.Y. Jan. 14, 2009) ("[T]he provision of the Litigation Trust that purports to transfer the attorney-client privilege along with the Trust Assets is valid and enforceable."). The Liquidating Trustee's assertion of the attorney-client privilege and work product protection extends to documents, information, and potential testimony, wherever located and by whomever held.

33.     HDL's books and records, whether in the form of documents or testimony, sought in the DOJ Subpoenas are considered property of the estate within the meaning of section 541(a) of the Bankruptcy Code.  *See, e.g.*, *In re Integrated Resources, Inc.*, No. 91-1310, 1992 WL 8335 (S.D.N.Y. Jan. 14, 1992) (affirming bankruptcy court's holding that a debtor's books and records are property of the estate and denying a motion for relief from the automatic stay); *In re Greenlife, Inc.*, No. 88-00825, 1990 WL 10091748, at *3 (Bankr. E.D. Va. July 16, 1990) (acknowledging that a debtor's books and records are protected by the automatic stay and stating that "the party

seeking issuance or enforcement of a subpoena would be precluded from taking further action in the absence of relief from the stay"). In order for the protections of the automatic stay to apply, HDL need only possess or control the documents. *See 48th Street Steakhouse, Inc. v. Rockefeller Center, Inc. (In re 48th Street Steakhouse, Inc.),* 61 B.R. 182, 187 (Bankr. S.D.N.Y. 1986) (citing legislative history in support of holding that section 362(a)(3) protects property "over which the estate has control or possession"), *aff'd,* 835 F.2d 427 (2d Cir. 1987).

34.    While the documents sought in the Law Firm Subpoenas are in the case files of HDL's former attorneys, they remain under HDL's control, custody or possession. *See Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 411 (E.D.N.C. 2014) (ruling that a party has control of documents where a party's attorney or former attorney has control, custody, or possession of those documents); *Poole ex re. Elliott v. Textron*, 192 F.R.D. 494, 501 (D. Md. 2000) (holding that "documents in the possession, custody or control of a party's attorney or former attorney are within the party's control for the purposes of [Federal Rule of Civil Procedure] 34"). *See also In re Crescent Res., LLC*, 457 B.R. 506, 530 (Bankr. W.D. Tex. 2011) (ordering debtor's former law firm to turn over client files to litigation trustee because such files were property of the estate).

35.    Thus, this Court has jurisdiction over the DOJ Subpoenas and privileged books and records because producing them requires the use of estate resources and directly implicates property and interests held by the estate. Notwithstanding the foregoing authorities, this Court has jurisdiction to interpret and enforce its prior orders to protect property of the estate, including the Plan, Confirmation Order, 105(a) Order, and the 502(d) Order, on the DOJ, Mallory, and any other party in interest in these cases. *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) (it is a longstanding principle that a bankruptcy court "[has] jurisdiction to interpret and enforce its own

prior orders"); *In re Circuit City Stores, Inc.*, 557 B.R. 443, 448 (Bankr. E.D. Va. 2016) ("Bankruptcy Courts plainly have jurisdiction to interpret and enforce their own prior orders." (internal quotation marks and citation omitted)).

**B.      The Court Should Grant Relief Under Section 105(a) of the Bankruptcy Code**

36.      This Court is empowered by section 105(a) of the Bankruptcy Code to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  In addressing third-party subpoenas served on debtors, the Bankruptcy Court for the Southern District of New York relied upon section 105(a) to extend the automatic stay to protect a debtor from unduly burdensome third-party discovery requests. 480 B.R. at 529.[6] Courts have also routinely issued injunctions under section 105(a) of the Bankruptcy Code to protect non-debtors from discovery requests. *See In re Circuit City Stores, Inc.*, 557 B.R. at 450 (quashing third-party subpoena served on liquidating trustee because "[c]ompliance with the Subpoena would require an inappropriate expenditure of trust resources and would interfere with the Liquidating Trustee's administration of the estate"); *In re Phila. Newspapers, LLC*, 423 B.R. 98, 108 (E.D. Pa. 2010) (affirming bankruptcy court's decision to extend automatic stay to enjoin plaintiffs from pursuing discovery against debtors' employees); *Johns–Manville Corp. v. Asbestos Litig. Grp. (In re Johns–Manville),* 40 B.R. 219 (S.D.N.Y. 1984) (refusing to allow document productions and depositions to proceed against non-debtor officers, directors, and

---

[6]      The *Residential Capital* court determined that a motion to extend the automatic stay to protect a debtor under section 105(a) did not require the filing of an adversary complaint because the relief sought related to the administration of the bankruptcy case.  *See Residential Capital*, 480 B.R. at 539. Although the DOJ Subpoenas were issued against non-debtors, the Liquidating Trustee respectfully submits that an adversary proceeding is not required because the subpoenas seek property of the estate. Nor is an adversary proceeding necessary to establish jurisdiction because the DOJ (1) submitted a proof of claim in these Cases, and (2) consented to this Court's jurisdiction in the 502(e) Agreement as to disputes over assertions of privilege in response to the HDL Subpoena.

employees); *In re Dakotas' Farm Mfg. Co.,* 31 B.R. 92, 94–95 (Bankr. D.S.D. 1983) (allowing discovery against non-debtors to proceed only if the party seeking discovery agreed to bear all of the debtor's costs).

37.    The Liquidating Trustee submits that the *Residential Capital* decision represents the model approach for addressing the DOJ Subpoenas in these Cases, and this Court already relied upon that decision in entering the 105(a) Order. 480 B.R. 529 (Bankr. S.D.N.Y. 2012).  In deciding to stay all third-party discovery against a debtor, the *Residential Capital* court synthesized six relevant factors from Rules 26 and 45 of the Federal Rules of Civil Procedure and case-law regarding the extension of the automatic stay to non-debtors.  As to factors (1) scope, (2) context, and (3) need, the court placed the evidentiary burden on the third-party seeking discovery.  As to factors (4) burden, and (5) expense, the debtor bore the burden.  Finally, as to factor (6) timing, the court found that both the debtor and the third-party shared the burden.  *Id.* at 544-50.

38.    An initial balancing of the six *Residential Capital* factors demonstrates the need for the extension of the 105(a) Order to the DOJ Subpoenas:[7]

        i.  **Scope.**  The scope of the DOJ Subpoenas is undeniably broad and supports issuance of an injunction. For example, the Law Firm Subpoenas seek documents and information from January 1, 2008, through the date of service of each of the Law Firm Subpoenas, including corporate organizational documents, external and internal communications, internal legal reviews and reports, financial statements and records, detailed billing and financial records and analyses, copies of contracts and agreements, and other business records. The Law Firm Subpoenas seek broad categories of documents related to LeClairRyan's, Patton Boggs', and Ropes & Gray's legal

---

[7]    Although the Liquidating Trustee has only received copies of the Law Firm Subpoenas, upon information and belief, the DOJ Subpoenas similarly seek documents and information from HDL's former employees and professionals that are estate property and/or subject to estate privilege claims.

advice rendered to HDL on a variety of topics, including process and handling fees, zero balance billing, and HDL's sales agreement with BlueWave. The vast majority of documents and information sought in the Law Firm Subpoenas are subject to the attorney-client privilege or work product protection. The Liquidating Trustee estimates that there are tens of thousands of potentially responsive documents, although the Liquidating Trustee does not have an exact estimate due to the timing involved with the DOJ Subpoenas. The DOJ Subpoenas are not narrowly tailored to minimize the burden on the Liquidating Trustee – a nonparty to the FCA Action – and therefore contravene Federal Rule of Civil Procedure 45(d)(1)'s requirement that the DOJ take "reasonable steps to avoid imposing undue burden or expense" on nonparties. The Liquidating Trustee and the DOJ conferred, but the DOJ was unwilling to narrow the scope of the DOJ Subpoenas to exclude privileged documents or exclude former HDL employees and professionals.

      ii.      **Context.**  The context of the FCA Action supports the issuance of an injunction. Any impact on the DOJ's case is outweighed by the harm that would be inflicted upon the Liquidating Trustee if he is required to undertake a review of all the documents requested in the DOJ Subpoenas. *See Residential Capital*, 480 B.R. at 545-46 (finding that the context factor weighed in favor of maintaining a discovery stay because the district court action's "uniform schedule with very tight time deadlines may simply not be compatible with the extraordinary demands on the Debtors arising from these chapter 11 cases"). The DOJ waited months to belatedly assert that there has been a blanket subject matter waiver of materials relevant to the FCA Action. All the while, the DOJ was negotiating with the Liquidating Trustee over privilege issues and the production of documents in response to the HDL Subpoena. HDL already produced over 100,000 documents to the DOJ and the Liquidating Trustee is in the process of producing approximately 100,000 additional documents in response to the HDL Subpoena, many of which

may be responsive to the DOJ Subpoenas. By waiting to act, and then filing an action in an improper forum to obtain a ruling as to subject matter waiver, the DOJ has caused and will continue to cause, harm to the estate.  Any incidental impact on the DOJ's prosecution of the FCA Action was due to its own delay.

iii.     **Need.**  The DOJ does not have an imminent need for the documents and information requested in the DOJ Subpoenas.  The DOJ can obtain non-privileged documents and information from parties to the FCA Action. Rather than seek privileged documents from HDL's former counsel and employees, the DOJ can file a motion to strike Mallory's affirmative defense of advice of counsel as none of the law firms advised Mallory in her individual capacity with respect to the subject matter of the FCA Action. *See United States v. Wells Fargo Bank*, N.A., 132 F. Supp. 3d 558, 559 (S.D.N.Y. 2015) (holding that a former employee-defendant in False Claims Act litigation was "precluded from asserting an advice-of-counsel defense in light of [his employer's] refusal to waive its attorney-client privilege"); *see also Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005) (refusing to allow employee-defendant to produce privileged documents over objections of his employer because it would make the "privilege dependent on *ex post* litigation choices made by its employees," which would, in turn, "render[ ] the privilege intolerably uncertain"). Unlike in *Residential Capital*, the court supervising the FCA Action has not determined that the non-production of the documents requested in the DOJ Subpoenas "poses a significant hurdle to the advancement of the litigation," nor has it entered an order requiring production. 480 B.R. at 546.  Moreover, as a nonparty to the FCA Action, special consideration must be given to the undue burden imposed on the Liquidating Trustee.  *See North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 52 (D.D.C. 2005).

iv.        **Timing**.    The timing and procedural posture of the bankruptcy cases strongly support issuance of an injunction. HDL has no remaining employees and substantially all of its business assets, including its core businesses, have been liquidated.  If the Liquidating Trustee is forced to expend the already limited time and resources of the estates in responding to the DOJ Subpoenas, the bankruptcy cases will not be advanced in a timely fashion because counsel and advisors to the Liquidating Trustee will have to divert resources from administering the Cases to responding to third-party subpoenas.  For example, responding to the DOJ Subpoenas will impair the Liquidating Trustee's ability to prosecute his adversary proceeding [Dkt. No. 1479] (the "Omnibus Complaint") against HDL's former officers and directors.

v.        **Burden**.  Responding to the DOJ Subpoenas would impose a heavy burden on the Liquidating Trustee and could result in estimated costs of hundreds of thousands of dollars to fully respond. Although the DOJ Subpoenas were served on LeClairRyan, Patton Boggs, Ropes & Gray, and HDL's former employees, the Liquidating Trustee would bear the burden of reviewing the documents for privilege and all costs and expenses associated with the production. The Liquidating Trustee estimates that the monumental task of collecting, processing, searching, reviewing, and producing the significant quantity of documents responsive to the broad requests in the DOJ Subpoenas would require, at a minimum: (i) identification of all electronic and paper data sources that may contain documents or information potentially responsive to the DOJ Subpoenas; (ii) the retrieval, forensic imaging and transfer of electronic and paper documents; (iii) processing and gathering electronic data into searchable databases for interrogation and dynamic inquiries, including the application of Boolean search terms, and uploading into an electronic review platform; (iv) digital scanning and processing of paper and other data not in "native" format, including the application of Boolean search terms, and uploading into an electronic review

platform; (v) months of attorney review, which will require the Liquidating Trustee to utilize a large team of contract attorneys; and (vi) preparing responsive documents for electronic production.  Because HDL has no employees, this process will take many months and significantly strain the estates' limited resources. Additionally, the documents and data that fall within the scope of the DOJ Subpoenas encompass an expansive quantity of data, including email data sources, structured data sources, proprietary databases, and hardware devices, all of which are hosted by different law firms or in the possession of different individuals, and which demand a high level of resources by the Liquidating Trustee to identify, preserve, process, host, search, review and produce.

vi.    **Expense.**  The Liquidating Trustee estimates that the cost of responding to the DOJ Subpoenas is excessive and could climb into the hundreds of thousands of dollars to fully respond.  In order to undertake the arduous task of responding to the DOJ Subpoenas, the Liquidating Trustee will need to incur attorney's fees and contract review attorney fees, to identify, preserve, host, search, review and produce the documents and data potentially responsive to the DOJ Subpoenas.

39.    This Court is best-positioned to consider the unique burdens associated with the Liquidating Trustee's compliance with third-party subpoenas.  Although the DOJ Subpoenas were issued as part of the FCA Action, the United States District Court for the District of South Carolina does not have jurisdiction over the DOJ Subpoenas under Federal Rule of Civil Procedure 45.  *See* Fed. R. Civ. P. 45(g) (stating that a motion regarding non-compliance with a third-party subpoena must be filed in "the court for the district where compliance is required"); Fed. R. Civ. P. 37(a)(2) (a "motion for an order to a nonparty must be made in the court where the discovery is or will be taken.").

40.    Rather, because the DOJ Subpoenas' stated place of compliance is or will be Washington, D.C., the United States District Court for the District of Columbia has jurisdiction over the enforcement of the Law Firm Subpoenas, as the "court for the district where compliance is required." *See, e.g.*, *Hollis v. Aerotek, Inc.*, No. 14-2494, 2015 U.S. Dist. LEXIS 144174 (D. Kan., Oct. 23, 2015) (holding that where subpoena stated that the place of compliance was Kansas City, Missouri, the plaintiff was required to file a motion to compel in the District Court for the Western District of Missouri and not in the district where the underlying action was pending).

41.    This Court is well-versed in the causes of action in the Omnibus Complaint and the assets of the estates.  In contrast, the District Court for the District of Columbia would have no familiarity with the FCA Action, the bankruptcy cases, or the estates' assets and liabilities. Moreover, only this Court has the ability and expertise to consider the unique impact of third-party subpoenas on HDL's estate and creditors.  Granting the relief requested herein concerning third-party discovery is also consistent with the bankruptcy policy of centralizing litigation against a debtor.

C.    **The Court Should Extend the Automatic Stay to Protect the
Liquidating Trustee's Assertion of the Attorney-Client Privilege**

42.    The Liquidating Trustee also seeks an order extending the protections of the automatic stay to protect HDL's privileged books and records from unauthorized disclosure.  Many of HDL's former employees, professionals, and consultants possess pre-petition books and records that contain privileged information or which could lead to privileged testimony.  As evidenced by Mallory's unilateral decision to produce privileged documents and the DOJ's filing of the Motion to Compel, there is a significant risk that other persons or entities will disclose privileged information, documents or testimony in response to subpoenas or other discovery requests.  Only the Liquidating Trustee, as holder of HDL's attorney-client privilege and attorney work product,

23

can decide to waive or invoke evidentiary privileges.  *See, e.g.*, *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355-56 (1985); *In re Williams*, 152 B.R. 123, 129 (Bankr. N.D. Tex. 1992) ("The liquidating trustee now controls the power to waive or invoke the evidentiary privileges that arise in connection with the causes of action transferred to the liquidating trust under . . . the confirmed plan.").

43.    Illustratively in *Weintraub*, the Commodity Futures Trading Commission (the "CFTC") filed a complaint against a debtor-corporation that later entered into bankruptcy. The CFTC deposed the debtor's former counsel, who claimed attorney-client privilege as to certain questions.  The United States Supreme Court unanimously held that the chapter 7 trustee of the corporation has the sole authority to waive the debtor's attorney-client privilege with respect to communications that took place pre-petition.  *Weintraub*, 471 U.S. at 358. *See also In re AmerLink, Ltd.*, No. 09-01055-8-RDD, 2014 WL 819459, at *3 (Bankr. E.D.N.C. Mar. 3, 2014) (holding that a bankruptcy trustee has "broad authority" to decide whether to waive the debtor's attorney-client privilege).

44.    This Court is empowered to protect the estate's privileged books and records, including both documents and testimony, under section 107 of the Bankruptcy Code, Bankruptcy Rule 9018, and Federal Rule of Evidence 502(d). Section 107(b) of the Bankruptcy Code authorizes the Court to issue orders to protect entities from potential harm caused by the disclosure of confidential information. In particular, section 107(b)(1) provides that: "On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may— (1) protect an entity with respect to confidential research . . . or commercial information . . . ." 11 U.S.C. § 107(b)(1).  Similarly, Bankruptcy Rule 9018 provides that: "On motion or on its own initiative, with or without notice, the court may make any order which justice

requires . . . to protect the estate or any entity in respect of . . . confidential research . . . or commercial information . . . ." Fed. R. Bankr. P. 9018.

45.    In granting relief under section 107(b) of the Bankruptcy Code, "[t]he court determines whether the subject documents fall within the provisions of § 107(b) and the appropriate remedy if they do." *In re Barney's, Inc.*, 201 B.R. 703, 707 (Bankr. S.D.N.Y. 1996). If the documents in question fall within the parameters of section 107(b), "the court is required to protect a requesting interested party and has no discretion to deny the application." *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis in original). Attorney-client privileged and attorney work product materials constitute the type of confidential research and commercial information that must be protected pursuant to Section 107(b) of the Bankruptcy Code. *See In re 50-Off Stores*, 213 B.R. 646, 655–56 (Bankr. W.D. Tex. 1997).

46.    Federal Rule of Evidence 502(d) expressly provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding."  This Court has previously entered protective orders in this case in regard to materials subject to a claim of privilege, including the 502(d) Order. [See Dkt. Nos. 834, 1153, and 1647]. Moreover, this Court has jurisdiction over the DOJ's attempts to retrieve privileged documents and information because (i) the DOJ filed a proof of claim in these Cases; and (ii) the DOJ consented to this Court's jurisdiction in the 502(e) Agreement, as approved by the 502(d) Order.

47.    Here, former directors, officers and employees of HDL, such as Mallory, have a duty to maintain the confidentiality of privileged information belonging to HDL, even in the face of the DOJ's efforts to extract such information using improper means. *Byelick v. Vivadelli*, 79 F.

Supp. 2d 610, 623 (E.D. Va. 1999) ("It is well-settled that a Virginia corporation's directors and officers owe a duty of loyalty . . . to the corporation."). That duty continues to extend beyond the time of their employment with HDL. *Today Homes, Inc. v. Williams*, 634 S.E.2d 737, 474 (Va. 2006) ("Resignation or termination does not automatically free a director or employee from his or her fiduciary obligations." (citations omitted)). Former officers and employees have no right to waive HDL's (and now the Liquidating Trustee's) privilege with respect to information they learned or were provided in the course of their work at HDL. *Weintraub*, 471 U.S. at 358. This Court should enter an order (i) protecting estate property from disclosure without the Liquidating Trustee's consent or further order of this Court; (ii) extending the protections of Federal Rule of Evidence 502(d) to any documents or information that are disclosed by any person or entity in possession of estate property without waiving the attorney-client privilege and work product protection; and (iii) barring the DOJ from violating the 502(e) Agreement and 502(d) Order, including but not limited to seeking relief in the Motion to Compel or any other motion filed in the FCA Action related to the Liquidating Trustee or property of the estate.

D.     **The Police Power Exception is Inapplicable**

48.    The Police Power Exception provides an exemption to the automatic stay provisions of 11 U.S.C. § 362(a)(1), (2), (3), or (6) for:

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11 U.S.C. § 362(b)(4).[8] In determining whether governmental action is subject to the Police Power

Exception, courts in the Fourth Circuit apply the pecuniary advantage test, under which "an action,

even one seeking entry of a money judgment is exempt from the automatic stay under the police

or regulatory powers exception provided it does not conflict with the bankruptcy court's control

over the property of the estate and does not otherwise create a pecuniary advantage for the

government vis-à-vis other creditors." *U.S. ex rel. Doe v. X, Inc.*, 246 B.R. 817, 820 (E.D. Va.

2000).

49.    The Police Power Exception does not apply to the DOJ Subpoenas because they do

not constitute an "action or proceeding" that triggers application of the exception. *See* 11 U.S.C.

§§ 362(a)(1) & (b)(4).  Courts have held that issuance of third-party subpoena on a debtor (absent

the protections of an order such as the 105(a) Order) does not violate the automatic stay. *See*

*Groner v. Miller (In re Miller)*, 262 B.R. 499 (9th Cir. BAP 2001); *In re Kenoyer*, 489 B.R. 103,

106 (Bankr. N.D. Cal. 2013); *Am. Online, Inc. v. CN Productions, Inc.*, 272 B.R. 879 n.6 (E.D.

Va. 2002). Accordingly, because the automatic stay would not bar the issuance of third-party

subpoenas, the Police Power Exception is likewise not applicable. Similarly, because HDL has

ceased operations, the DOJ's issuance of the DOJ Subpoenas does not constitute a proper exercise

of its police and regulatory powers. *See In re Healthessentials Solutions, Inc.*, No. 05-

31218(1)(11), 2007 WL 1453018 (W.D. Ky. May 17, 2007) (refusing to authorize the DOJ to

proceed with FCA action that it voluntarily dismissed against a non-operating debtor).

50.    Moreover, even if the Police Power Exception does apply, this Court nonetheless

has the authority under section 105(a) to enter an injunction.  *See Bd. of Governors v. MCorp*

---

[8]    The Confirmation Order also incorporates the Police Power Exception by stating that it is "not intended and shall not be construed to bar the United States from exercising its police and regulatory powers." Confirmation Order, ¶ 62; Plan § 7.5.

*Financial, Inc.*, 502 U.S. 32 (1991). A bankruptcy court can "utilize section 105 to 'enjoin actions

that are excepted from the automatic stay . . .'in exceptional circumstances.'" *In re FiberTower*

*Network Servs. Corp.*, 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012) (citing *Mirant Corp. v. Potomac*

*Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 523 (5th Cir. 2004)).[9]

51.     Illustratively in *FiberTower*, the FCC threatened to file a postpetition action to

terminate the debtors' licenses to use certain wireless spectrums. 482 B.R. at 182. The debtors

sought a section 105(a) injunction enjoining the FCC from terminating the licenses pending the

debtors' exhaustion of their administrative and appellate remedies. The bankruptcy and district

courts both held that the FCC's proposed regulatory action fell within the Police Power Exception.

Nonetheless, the district court affirmed the bankruptcy court's issuance of a section 105(a)

injunction, finding that (1) the licenses were property of the estate; (2) the debtors would be

irreparably harmed if the licenses were terminated; (3) the risk of harm to the debtors outweighed

the effect of delay on the FCC; and (4) any impact upon the FCC's ability "to regulate the

telecommunications industry in the public interest will be marginal given the limited scope of the

injunction requested." *Id.* at 184-189.

52.     Here, even if the Police Power Exception applies, the Court should nonetheless

enter an injunction under section 105(a) of the Bankruptcy Code because: (1) HDL's books and

records and the Liquidating Trustee's assertion of the attorney-client privilege are property or

---

[9]     *See also NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695 (8th Cir. 1985) (court may enjoin NLRB
proceedings which threaten assets of the estate); *Securities and Exchange Comm'n v. First Fin.
Grp.*, 645 F.2d 429, 444 (5th Cir. 1981) (court could enjoin appointment of a receiver pursuant to
SEC regulations to the extent appointment threatened assets of the estate); *In re Hunt*, 93 B.R. 484
(Bankr. N.D. Tex. 1988) (court may enjoin CFTC action to impose monetary penalties against
debtors for violations of Commodity Exchange Act when penalties would disrupt court's ability to
effectively manage debtor's reorganization); *In re Chateaugay Corp.*, 93 B.R. 26, 29 (S.D.N.Y.
1988) (court could enjoin action in another court to determine state tax liability); *In re Sam Daily
Realty, Inc.*, 57 B.R. 83 (Bankr. D. Haw. 1985) (court could enjoin state agency from enforcing a
money judgment for pre-petition violations if injunction was necessary to avoid preferential
treatment of agency and to provide for orderly distribution to all creditors).

interests of the estate; (2) the unauthorized disclosure of documents or information, including those subject to the attorney-client privilege, would irreparably harm the Liquidating Trustee's ability to exercise control over estate property and maintain evidentiary privileges; (3) the risk of disclosure of privileged documents outweighs any potential harm to parties seeking privileged documents; and (4) any impact on parties seeking privileged information would be marginal because they retain the right to seek relief from this Court.

E.    **The DOJ Should Bear the Burden of Production**

53.    In the event that the Liquidating Trustee is required to respond to the DOJ Subpoenas, or defend against DOJ attempts to retrieve privileged information, the DOJ should bear some or all of the Liquidating Trustee's' cost of compliance.  The same is true of the Liquidating Trustee's cost of complying with the HDL Subpoena, which required a significant expenditure of estate resources.  *See, e.g.*, *Linder v. Calero-Portocarrero*, 183 F.R.D. 314, 322-23 (D.D.C. 1998) ("When nonparties are forced to pay the costs of discovery, the requesting party has no incentive to deter it from engaging in fishing expeditions for marginally relevant material. Requesters forced to internalize the costs of discovery will be more inclined to make narrowly-tailored requests reflecting a reasonable balance between the likely relevance of the evidence that will be discovered and the costs of compliance."); *In re Dakotas' Farm Mfg. Co.,* 31 B.R. at 94–95 (requiring that "the plaintiff bear all copying expense and the salary of any clerical assistance employed on behalf of the debtor in providing the copies. This Court can see no basis for the debtor bearing such expense when the unsecured creditors in the Chapter 11 proceeding ultimately pay these costs. This cannot be justified in a state court action to which the debtor is not a party.").

54.    Cost shifting is mandatory under Federal Rule of Civil Procedure 45(d)(2)(B)(ii), which requires a court to protect nonparties "from significant expense resulting from compliance."

*See Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) ("Thus, when discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party. If so, the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'"); *Linder v. Calero–Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001).

55.    The fact that the United States government issued the DOJ Subpoenas and the HDL Subpoena does not render the DOJ immune from cost-shifting.  *See, e.g.*, *United States v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14155, 2012 WL 4838987 (E.D. Mich. Oct. 11, 2012) (shifting certain costs of producing documents in response to a subpoena from nonparties to the DOJ, despite the public importance of the underlying litigation and the fact that the nonparties were large, well-funded corporations).

56.    The Court should schedule a hearing to determine, under section 105(a) of the Bankruptcy Code and/or Federal Rule of Civil Procedure 45(d)(2)(B)(ii), the DOJ's responsibility for the Liquidating Trustee's "expense resulting from compliance," including costs, expenses, and attorneys' fees.  *See In re Am. Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016) (concluding that a third-party's attorneys' fees that are necessary to comply with a subpoena are subject to cost-shifting).

## NOTICE

57.    Notice of this Motion has been provided in accordance with the *Order Establishing Post-Confirmation Notice, Case Management and Administrative Procedures* [Dkt. No. 1261] approved by this Court on June 29, 2016. In addition, notice of the Motion has been given to the DOJ.

## NO PRIOR REQUEST

58.    Other than in the Third-Party Subpoena Motion, no previous request for the relief sought herein has been made to this Court or any other court.

## LOCAL RULE 7026-1(H) CERTIFICATION OF ATTEMPTS TO RESOLVE DISCOVERY DISPUTE

59.    The undersigned counsel for the Liquidating Trustee certify that the parties and/or their counsel conferred, unsuccessfully, with counsel for the DOJ in an attempt to resolve issues regarding the DOJ Subpoenas and the HDL Subpoena.

**WHEREFORE**, the Liquidating Trustee respectfully requests that this Court enter an order, a form of which is attached hereto as **Exhibit A**.

Dated: January 8, 2017

Respectfully submitted,

*/s/Cullen D. Speckhart*
Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Richmond, VA 23219 200
Bendix Road, Ste. 300 Virginia Beach, VA 23452
Telephone: (757) 497-6633
Direct: (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating*
*Trustee of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted pro hac vice)
Evan M. Lazerowitz (admitted pro hac vice)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com
Email: elazerowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating*
*Trustee, and the Liquidating Trust Oversight*
*Committee*