**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re:<br><br>**HEALTH DIAGNOSTIC LABORATORY, INC.,** *et al.,*<br><br>    **Debtors.**[1] | Chapter 11<br><br>Case No.: 15-32919-KRH<br><br><br>**Jointly Administered** |
| **RICHARD ARROWSMITH AS LIQUIDATING TRUSTEE OF THE HDL LIQUIDATING TRUST,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WHOLEHEALTH CHICAGO - 3, S.C.,**<br><br>**PAUL RUBIN,**<br><br>**DAVID EDELBERG,**<br><br>**KRISTEN DONIGAN,**<br><br>**CASEY KELLEY,**<br><br>**Defendants.** | <br><br><br><br><br><br>**Adversary Proceeding No. 17-_____** |

---

[1]  The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434) (the "**Debtors**").

Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Ste. 1040
Richmond, Virginia 23219
200 Bendix Road, Ste. 300
Virginia Beach, Virginia 23452
Telephone: (757) 687-3644
Email: hdl@wolriv.com

*Counsel to Plaintiff Richard Arrowsmith,*
*Liquidating Trustee of the HDL Liquidating Trust*

## COMPLAINT TO AVOID AND RECOVER AVOIDABLE
## TRANSFERS AND FOR RELATED RELIEF

Plaintiff Richard Arrowsmith, in his capacity as Liquidating Trustee ("**Liquidating Trustee**") of the HDL Liquidating Trust (the "**Trust**"), appointed pursuant to the confirmed Modified Second Amended Plan of Liquidation (the "**Plan**") in these jointly administered bankruptcy cases (the "**Chapter 11 Cases**" or the "**Cases**"), by his undersigned counsel, files his Complaint to Avoid and Recover Avoidable Transfers and for Related Relief (the "**Complaint**") against WholeHealth Chicago - 3, S.C. ("**WholeHealth**"), Paul Rubin ("**Rubin**"), David Edelberg ("**Edelberg**"), Kristen Donigan ("**Donigan**"), and Casey Kelley ("**Kelley**") (collectively, the "**Defendants**") in the above-captioned adversary proceeding (the "**Adversary Proceeding**") and respectfully states and alleges as follows:

### JURISDICTION AND VENUE

1.      On June 7, 2015 (the "**Petition Date**"), each of the Debtors filed with the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "**Bankruptcy Court**"), its respective voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), commencing the above-captioned Cases. On June 9, 2015, the Bankruptcy Court entered an order authorizing the joint administration of these Chapter 11 Cases [Docket No. 42]. On June 16, 2015, the United States Trustee for the Eastern District of Virginia appointed the statutory committee of unsecured creditors (the "**Creditors' Committee**").

2.      On May 12, 2016, this Court entered an order confirming the Plan [Docket No. 1095] (the "**Confirmation Order**"). Pursuant to the Plan and 11 U.S.C. § 1123, the Liquidating Trustee is the successor, for all purposes, of the Debtors and the Creditors' Committee, and is thereby vested with standing to bring this action as a representative of the HDL Liquidating Trust.

3.      The Bankruptcy Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

4.      The Adversary Proceeding constitutes a core proceeding by virtue of 28 U.S.C. § 157(b)(2)(A), (E), and (O).

5.      The predicates for the relief requested herein are sections 105(a), 502, 542, 544, 548, and 550 of the Bankruptcy Code; Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); applicable state law and, as applicable, 28 U.S.C. § 3304.

6.      The Liquidating Trustee consents to entry of final orders and judgment by the Bankruptcy Court in this Adversary Proceeding.

7.      Venue is proper in this Bankruptcy Court under 28 U.S.C. §§ 1408 and 1409.

8.      Venue is proper in this Bankruptcy Court as to the Defendants because a substantial part of the events or omissions giving rise to the claims asserted herein against the Defendants occurred in this judicial district.

## PARTIES

9.      The Plaintiff is the Liquidating Trustee.

10.      Upon information and belief, WholeHealth is an Illinois corporation.

11.      Upon information and belief, Rubin is a resident of Illinois, who owns and/or controls, or at the time of the alleged events, owned and/or controlled WholeHealth.

12.      Upon information and belief, Edelberg is a resident of Illinois, who owns and/or controls, or at the time of the alleged events, owned and/or controlled WholeHealth.

13.      Upon information and belief, Donigan is a resident of Illinois, who owns and/or controls, or at the time of the alleged events, owned and/or controlled WholeHealth.

14.    Upon information and belief, Kelley is a resident of Illinois,  who owns and/or

controls, or at the time of the alleged events, owned and/or controlled WholeHealth.

## NATURE OF THE ACTION

15.    This Adversary Proceeding is to recover the transfers, losses and other damages

caused to the Debtors and their creditors, including those creditors which assigned to the

Liquidating Trustee and the Trust their Creditor Causes of Action as defined in Section 1.33 of the

Plan ("**Assigning Creditors**"). A list of Assigning Creditors, as of the date of the filing of this

Complaint, is attached hereto as **Exhibit 1**.

## FACTUAL BACKGROUND

16.    Health Diagnostic Laboratory, Inc. ("**HDL**") was formed as a start-up laboratory in

Richmond, Virginia, offering a panel of blood tests for early detection of cardiovascular disease,

diabetes, and related illnesses.

17.    From the outset, HDL's insiders relied on illegal business practices that

incentivized health care providers ("**HCPs**"), including the Defendants, to use HDL.

18.    One such practice was the payment of illegal "processing and handling" ("**P&H**")

fees to HCPs, whereby HDL paid HCPs large P&H fees (the "**P&H Program**") to induce HCPs

to order HDL's tests instead of those offered by other laboratories.

19.    The P&H Program was a scheme that violated the federal Anti-Kickback Statute,

42 U.S.C. § 1320(a)-7(b)(a)(A), the federal False Claims Act, 31 U.S.C. § 3729 *et seq*., and similar

state anti-kickback laws that prohibit HDL from offering or paying, and HCPs from soliciting or

accepting, such illegal payments.

20.    By participating in the P&H Program, the Defendants knowingly assisted HDL's

insiders in perpetuating their illegal scheme.   The Defendants willfully accepted monetary

inducement to order more extensive blood testing than was medically necessary.  In exchange for ordering unnecessary tests, the Defendants accepted illegal transfers of money (each transfer, an "**Avoidable Transfer**," and, collectively, the "**Avoidable Transfers**") under the P&H Program. The Avoidable Transfers are set forth on **Exhibit 2**, which is attached hereto and incorporated by reference herein, and reflects the amounts of and dates on which the Avoidable Transfers were made.

21.     The P&H Program resulted in compensation to the HCPs, including the Defendants, that exceeded the value of the HCPs' uncompensated services for drawing blood samples, or for sending the specimens to HDL for testing. Acting in their own financial self-interest, the Defendants exploited the P&H Program to obtain payment via the Avoidable Transfers that was far in excess of what the Defendants should reasonably have been paid for services provided.  The Defendants' illegal acts in this regard caused damage to HDL and legitimate creditors of HDL, including the Assigning Creditors.

22.     The P&H Program induced the HCPs, including the Defendants, to order unnecessary tests and to utilize HDL instead of less costly in-network diagnostic laboratories. Such practice perpetuated the submission of fraudulent and inflated claims to certain creditors, including the U.S. Government and Assigning Creditors, for reimbursement.

23.     Throughout the years, the improper and illegal practices worked as intended, and HDL appeared to be enormously successful. However, despite this illusion and outward appearances, HDL was never actually solvent or profitable.

24.     HDL's financial statements failed to reflect its actual liabilities, which, due to the improper business tactics, were hundreds of millions or even billions of dollars more than the liabilities it actually reported. HDL and its insiders wrongly reported revenues HDL should never

5

have collected because they were obtained fraudulently, through false pretenses, or through improper business tactics.

25.      HDL faced catastrophic liabilities to the U.S. Government from the illegal and fraudulent conduct as described herein.  These liabilities were immediate and soared into the billions of dollars. They resulted not only from the P&H Program, but from other illegal practices, such as the commission scheme conducted under HDL's marketing contract (the "**BlueWave Agreement**") and the practice of collecting certain monies from patients (the "**Patient Responsibility Collection Practice**").

26.      As the U.S. Government determined in its investigation of HDL, every single claim HDL submitted for payment by TRICARE or Medicare outside of Virginia was a false claim under the False Claims Act ("**FCA**"). Moreover, the Patient Responsibility Collection Practice created further liability to both the U.S. Government and private insurance companies each and every time it was used.

27.      Each false claim submitted for payment by TRICARE or Medicare, as well as each penalty of trebled damages associated with such false claims, immediately created a debt to the U.S. Government under the FCA and an attendant liability for HDL. From the very first false claim submitted to the U.S. Government, HDL's actual liabilities increased day after day.  HDL's liabilities, therefore, always exceeded its revenues and assets.

28.      On January 27, 2014, the U.S. Government filed a lawsuit against HDL's former CEO LaTonya Mallory ("**Mallory**") and others. This lawsuit is currently pending in the U.S. District Court for the District of South Carolina (Case No. 14-cv-00230-RMG) (the "**FCA Action**"). In the FCA Action, the U.S. Government's damages expert filed a report detailing more than $160 million in direct damages sustained by the U.S. Government due to false TRICARE and

Medicare claims submitted by HDL through its insiders. The misconduct described herein created enormous liabilities not only in the form of direct damages sustained by the U.S. Government, but also to private insurers, such as certain of the Assigning Creditors, which liabilities exceed another $160 million.

29.    These extensive false claims immediately exposed HDL to catastrophic penalties and fines.  For false claims resulting from the P&H Program, HDL's exposure exceeded $3 billion. For false claims generated by the illegal commission scheme under the BlueWave Agreement, HDL's exposure exceeded $3 billion. HDL also faced civil monetary penalties of over $400 million for false claims stemming from the Patient Responsibility Collection Practice.

30.    Actual liabilities faced by HDL for the illegal and fraudulent practices as described herein were measured not in the tens of millions, but in the billions of dollars. Accordingly, HDL was catastrophically insolvent throughout its history and at the time the Avoidable Transfers were made.

31.    Once HDL stopped the improper practices as described herein, HDL experienced predictable and precipitous financial collapse. As evidenced by, among other things: (i) the Debtors' bankruptcy petitions (publicly filed with the Bankruptcy Court); (ii) the proofs of claim that have been filed against the Debtors' estates; and (iii) the Debtors' publicly-filed schedules, the Debtors' liabilities exceeded the value of the Debtors' assets well before the Petition Date.

32.    From or around 2013 until or around 2014, Defendants' participation in the P&H Program and the Patient Responsibility Collection Practice violated applicable federal and state law, and caused damage to HDL and its creditors as set forth herein.

### COUNT I
### Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. § 548(a)(1)(A)

33.     The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

34.     The Avoidable Transfers were transfers of interest in the Debtors' property.

35.     The Avoidable Transfers were made with actual intent of the Debtors and HDL insiders to hinder, delay, or defraud the Debtors' existing and/or subsequent creditors, including without limitation the Assigning Creditors.

36.     The primary purpose of the Avoidable Transfers was to perpetuate the illegal scheme of inducing test referrals to HDL.

37.     Some of the factors evidencing actual intent of the Debtors and HDL insiders are (i) the continuation of P&H payments to various HCPs, including the Defendants, despite knowledge of the illegality of the P&H Program; (ii) payments of the Avoidable Transfers at the same time substantial new liabilities and debts were incurred through continuation of other illegal practices and/or schemes of the Debtors; (iii) insolvency of the Debtors at the time of the Avoidable Transfers or as a result thereof; and (iv) the lack of value or consideration in exchange for the Avoidable Transfers to the Debtors.

38.     The Avoidable Transfers were made within two (2) years prior to the Petition Date.

39.     As a result of the Avoidable Transfers, creditors of the Debtors, including the Assigning Creditors, sustained significant damages.

40.     The Avoidable Transfers are avoidable transfers pursuant to 11 U.S.C. § 548(a)(1)(A).

41.     The Avoidable Transfers are recoverable from WholeHealth as the initial transferee of each of the Avoidable Transfers, or as the entity for the benefit of which the Avoidable Transfers

were made, and from Rubin, Edelberg, Donigan, and Kelley as the immediate or mediate transferee of the initial transferee receiving the Avoidable Transfers.

## COUNT II
### Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b) and 550, Va. Code § 55-80 or Other Applicable State Fraudulent Conveyance or Fraudulent Transfer Law, and, as Applicable, 28 U.S.C. § 3304

42.     The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

43.     The Avoidable Transfers were transfers of interest in the Debtors' property.

44.     The Avoidable Transfers were made with actual intent of the Debtors and HDL insiders to hinder, delay, or defraud creditors of the Debtors, including without limitation the Assigning Creditors.

45.     The primary purpose of the Avoidable Transfers was to perpetuate the illegal scheme of inducing test referrals to HDL.

46.     Some of the factors evidencing actual intent of the Debtors and HDL insiders are (i) the continuation of P&H payments to various HCPs, including the Defendants, despite knowledge of the illegality of the P&H Program; (ii) payments of the Avoidable Transfers at the same time substantial new liabilities and debts were incurred through continuation of other illegal practices and/or schemes of the Debtors; (iii) insolvency of the Debtors at the time of the Avoidable Transfers or as a result thereof; and (iv) the lack of value or consideration in exchange for the Avoidable Transfers to the Debtors.

47.     The Department of Justice ("**DOJ**") filed Proof of Claim No. 1335 in the Cases, in the amount of $94,144,852.52, plus interest, based on HDL's conduct dating back to November 2008.

48.    The Defendants knew or should have known of the Debtors' actual intent, as the circumstances surrounding the Avoidable Transfers should have put the Defendants on inquiry as to the bona fides of these transactions.

49.    As a result of the Avoidable Transfers, creditors of the Debtors, including the Assigning Creditors, sustained significant damages.

50.    The Avoidable Transfers are avoidable transfers pursuant to Virginia Code § 55-80 or other applicable state fraudulent conveyance or fraudulent transfer law and Bankruptcy Code § 544(b).

51.    The Avoidable Transfers were made within five (5) years prior to the Petition Date.

52.    Any Avoidable Transfers made within six (6) years before the Petition Date should be avoided pursuant to applicable provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3301, *et. seq*., and Bankruptcy Code §§ 544(b) and 550.

53.    Pursuant to 11 U.S.C. § 550, the Liquidating Trustee may recover the Avoidable Transfers from WholeHealth as the initial transferee of each of the Avoidable Transfers, or as the entity for the benefit of which the Avoidable Transfers were made, and from Rubin, Edelberg, Donigan, and Kelley as the immediate or mediate transferee of the initial transferee receiving the Avoidable Transfers.

## <u>COUNT III</u>
### Avoidance of Fraudulent Transfers Pursuant to Section 548(a)(1)(B) of the Bankruptcy Code

54.    The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55.    The Avoidable Transfers were transfers of interest in the Debtors' property.

56.    The Debtors did not receive reasonably equivalent value in exchange for the Avoidable Transfers.

57.    The Avoidable Transfers were made within two (2) years prior to the Petition Date.

58.    The Avoidable Transfers were made while the Debtors were insolvent, or became insolvent as a result of the Avoidable Transfers.

59.    At the time of the Avoidable Transfers, the Debtors intended to incur, or believed that they would incur, debts beyond the Debtors' ability to pay as such debts matured.

60.    At the time of, or as a result of, the Avoidable Transfers, the Debtors were engaged in business or a transaction for which any property remaining with such Debtors was unreasonably small in relation to its business.

61.    At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of 11 U.S.C. § 502, including vendors, landlords, suppliers, and other creditors.

62.    As a result of the Avoidable Transfers, creditors of the Debtors, including the Assigning Creditors, sustained significant damages.

63.    The Avoidable Transfers are avoidable transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

64.    The Avoidable Transfers are recoverable from WholeHealth as the initial transferee of each of the Avoidable Transfers, or as the entity for the benefit of which the Avoidable Transfers were made, and from Rubin, Edelberg, Donigan, and Kelley  as the immediate or mediate transferee of the initial transferee receiving the Avoidable Transfers.

## COUNT IV
**Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b) and 550,**
**Va. Code § 55-81 or Other Applicable State Fraudulent Conveyance or Fraudulent**
**Transfer Law, and, as Applicable, 28 U.S.C. § 3304**

65.     The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66.     The Avoidable Transfers were transfers of interest in the Debtors' property.

67.     The Debtors did not receive consideration deemed valuable in law or reasonably equivalent value in exchange for the Avoidable Transfers. The Avoidable Transfers were improper and illegal, and as a consequence of such transfers, the Debtors became burdened with enormous liabilities, including the liability to the U.S. Government.

68.     The DOJ filed Proof of Claim No. 1335 in the Cases, in the amount of $94,144,852.52, plus interest, based on HDL's conduct dating back to November 2008.

69.     The Avoidable Transfers were made at the time when the Debtors were insolvent, or became insolvent as a result of the Avoidable Transfers.

70.     At the time of the Avoidable Transfers, the Debtors intended to incur, or believed that they would incur, debts beyond the Debtors' ability to pay as such debts matured.

71.     At the time of, or as a result of, the Avoidable Transfers, the Debtors were engaged in business or a transaction for which any property remaining with such Debtors was unreasonably small in relation to their business.

72.     As a result of the Avoidable Transfers, creditors of the Debtors, including the Assigning Creditors, were harmed.

73.     The Avoidable Transfers were made within five (5) years prior to the Petition Date.

74.    The Avoidable Transfers are avoidable transfers pursuant to Virginia Code § 55-81 or other applicable state fraudulent conveyance or fraudulent transfer law and Bankruptcy Code § 544(b).

75.    Any Avoidable Transfers made within six (6) years before the Petition Date should be avoided pursuant to applicable provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3301, *et. seq.*, and Bankruptcy Code §§ 544(b) and 550.

76.    Pursuant to 11 U.S.C. § 550, the Liquidating Trustee may recover the Avoidable Transfers from WholeHealth as the initial transferee of each of the Avoidable Transfers, or as the entity for the benefit of which the Avoidable Transfers were made, and from Rubin, Edelberg, Donigan, and Kelley as the immediate or mediate transferee of the initial transferee receiving the Avoidable Transfers.

## COUNT V
### Disallowance of Claims Pursuant to Section 502(d) of the Bankruptcy Code

77.    The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.    Property is recoverable from the Defendants under Section 550 of the Bankruptcy Code.

79.    WholeHealth was the initial transferee of each of the Avoidable Transfers, or an entity for the benefit of which the Avoidable Transfers were made, and Rubin, Edelberg, Donigan, and Kelley   is the immediate or mediate transferee of such initial transferee.

80.    The Defendants have not paid to the Liquidating Trustee the amount of the Avoidable Transfers, or turned over such property to the Liquidating Trustee, for which the Defendants are liable under Section 550 of the Bankruptcy Code.

81.    Pursuant to Section 502(d) of the Bankruptcy Code, any and all claims of the Defendants must be disallowed until such time as the Defendants pay to the Liquidating Trustee all amounts sought herein.

### COUNT VI
**Aiding and Abetting Breach of Fiduciary Duty**

82.    The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

83.    From or around 2013 until or around 2014, the Defendants aided and abetted the breaches of fiduciary duty of due care and loyalty by one or more of the directors and officers of the Debtors, including Mallory, who owed such fiduciary duty to the Debtors and/or their creditors, including the Assigning Creditors, at all relevant times.

84.    The Defendants did so knowingly, or having reason to know the nature of the injury to the Debtors and Debtors' creditors, including the Assigning Creditors, brought about by such assistance.

85.    The Defendants directly benefited from aiding and abetting such breaches of fiduciary duty and self-dealing by reaping financial rewards to which they were not entitled.

86.    As a direct and proximate result of aiding and abetting breaches of fiduciary duty and self-dealing, the Debtors and their creditors, including the Assigning Creditors, sustained significant damages, including but not limited to hundreds of millions of dollars of unpaid obligations.

87.    The Defendants' participation in the P&H Program and the Patient Responsibility Collection Practice violated applicable state and federal law and supported and otherwise aided and abetted the breaches of fiduciary duty committed by one or more of the directors and officers of the Debtors.

88.     As a result of the Defendants' aiding and abetting of the aforementioned breaches by one or more of the directors and officers of the Debtors, including Mallory, the Liquidating Trustee is entitled to recover the damages suffered by the Debtors and the Assigning Creditors from the Defendants in an amount to be proved at trial.

### COUNT VII
### Common Law Conspiracy

89.     The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90.     From or around 2013 until or around 2014, the Defendants and one or more of the Debtors' directors and officers, including Mallory, acted in concert, agreed, associated, mutually undertook, or combined to accomplish, by concerted action, unlawful, illegal, and oppressive acts that caused catastrophic injury and damage to the Debtors and creditors of the Debtors, including the Assigning Creditors.

91.     The unlawful acts include, but are not limited to, establishing, making and accepting payments pursuant to the P&H Program and engaging in improper testing.

92.     The Defendants and one or more of the Debtors' directors and officers, including Mallory, intentionally combined to accomplish these unlawful purposes, or even if determined to be lawful purposes, accomplish them through illegal and unlawful means.

93.     As a direct and proximate result of the conspiracy and agreement among the Defendants and one or more of the Debtors' directors and officers, including Mallory, the Debtors and their creditors, including the Assigning Creditors, sustained significant damages, including but not limited to hundreds of millions of dollars of unpaid obligations.

94.     The Defendants' participation in the P&H Program and the Patient Responsibility Collection Practice violated applicable state and federal law and supported the conspiracy and

otherwise illegal acts committed by one or more of the directors and officers of the Debtors, causing damage to the Debtors' estates and their creditors.

95.     As a result of the conspiracy, the Liquidating Trustee is entitled to recover from the Defendants the damages suffered by the Debtors and their creditors, including the Assigning Creditors, in an amount to be proved at trial.

## <u>COUNT VIII</u>
### Statutory Conspiracy Pursuant to Va. Code §§ 18.2-499 *et seq.*

96.     The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

97.     From or around 2013 until or around 2014, the Defendants and one or more of the Debtors' directors and officers, including Mallory, acted in concert, agreed, associated, mutually undertook, or combined to accomplish, by concerted action, unlawful, illegal, and oppressive acts that caused catastrophic injury and damage to the Debtors and creditors of the Debtors, including the Assigning Creditors.

98.     The unlawful acts include, but are not limited to, establishing, making and accepting payments pursuant to the P&H Program and engaging in improper testing.

99.     The Defendants' unlawful acts, undertaken willfully, intentionally, purposefully and without lawful justification, have injured the Debtors and their creditors, including the Assigning Creditors.

100.     The Defendants' wrongful conduct was aimed directly at damaging the Debtors and their creditors, including the Assigning Creditors.

101.     The Defendants' wrongful conduct constitutes a violation of the Virginia Business Conspiracy Act ("**<u>VBCA</u>**").

102.    As a direct and proximate result of the conspiracy and agreement among the Defendants and one or more of the Debtors' officers and directors, including Mallory, the Debtors and their creditors, including Assigning Creditors, sustained significant damages, including but not limited to hundreds of millions of dollars of unpaid obligations.

103.    The Debtors and the Assigning Creditors, acting through the Liquidating Trustee, are entitled to recover three times the damages they sustained as a result of the conspiracy, in addition to reasonable attorneys' fees and expenses, pursuant to the VBCA.

104.    The Defendants' participation in the P&H Program and the Patient Responsibility Collection Practice violated applicable state and federal law and supported the conspiracy and otherwise illegal acts committed by one or more of the directors and officers of the Debtors, causing damage to the Debtors' estates and their creditors.

105.    As a result of the conspiracy, the Liquidating Trustee is entitled to recover from the Defendants the damages suffered by the Debtors and their creditors, including the Assigning Creditors, in an amount to be proved at trial.

## COUNT IX
### Common Law Fraud

106.    The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

107.    From or around 2013 until or around 2014, the Defendants and one or more of the Debtors' directors and officers, including Mallory, made false representations of material fact, including without limitation, on the claims presented to the Assigning Creditors such as Aetna and Cigna, which purported to be for medically necessary tests.

108.    The Defendants and one or more of the Debtors' directors and officers, including Mallory, made such representations intentionally and knowingly with the intent to mislead and

induce the Assigning Creditors such as Aetna and Cigna into making payments for the unnecessary tests.

109.    In justifiable reliance on the misrepresentations by the Defendants and one or more of the Debtors' directors and officers, including Mallory, the Assigning Creditors, such as Aetna and Cigna, made payments for the unnecessary tests.

110.    As a direct and proximate result of the foregoing misrepresentations, the Debtors and Assigning Creditors, such as Aetna and Cigna, sustained significant damages.

111.    The Defendants' participation in the P&H Program and the Patient Responsibility Collection Practice violated applicable state and federal law and supported the fraudulent and otherwise illegal acts committed by one or more of the directors and officers of the Debtors, causing damage to the Debtors' estates and their creditors.

112.    As a result of the justifiable reliance by the Assigning Creditors, such as Aetna and Cigna, on these misrepresentations by the Defendants and one or more of the Debtors' directors and officers, including Mallory, the Liquidating Trustee is entitled to recover the damages suffered by the Assigning Creditors and the Debtors in an amount to be proved at trial.

## COUNT X
### Constructive Fraud

113.    The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

114.    From or around 2013 until or around 2014, the Defendants and one or more of the Debtors' directors and officers, including Mallory, made false representations of material fact, including without limitation, on the claims presented to the Assigning Creditors such as Aetna and Cigna, which purported to be for medically necessary tests.

115.    Pleading in the alternative, the Defendants and one or more of the Debtors' directors and officers, including Mallory, negligently made such representations to the Assigning Creditors, inducing them to make payments for the unnecessary tests.

116.    In justifiable reliance on the misrepresentations by the Defendants and one or more of the Debtors' directors and officers, including Mallory, the Assigning Creditors made such payments.

117.    As a direct and proximate result of the foregoing misrepresentations, the Assigning Creditors and the Debtors sustained significant damages.

118.    As a result of the justifiable reliance by Assigning Creditors, such as Aetna and Cigna, on these misrepresentations by the Defendants and one or more of the Debtors' directors and officers, including Mallory, the Liquidating Trustee is entitled to recover the damages suffered by such Assigning Creditors and the Debtors in an amount to be proved at trial.

## COUNT XI
## Unjust Enrichment

119.    The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

120.    From or around 2013 until or around 2014, the Debtors and/or the Assigning Creditors conferred a benefit on the Defendants through, as applicable, the Avoidable Transfers and payments for claims the Defendants and one or more of the Debtors' directors and officers, including Mallory, caused to be presented to the Assigning Creditors.

121.    The Defendants knew they received a benefit and should have reasonably expected to repay the Debtors and/or Assigning Creditors.

122.    The Defendants accepted and retained the benefits without paying for their value.

123.    Allowing the Defendants to retain the benefits they received would be unjust and result in unjust enrichment.

124.    The Debtors and Assigning Creditors have no adequate remedy at law.

125.    As a direct and proximate result of the foregoing wrongful acts, the Debtors and the Assigning Creditors sustained significant damages, including but not limited to the amount of the Avoidable Transfers.

126.    As a result of the Defendants' unjust enrichment, the Liquidating Trustee is entitled to recover the damages suffered by the Debtors and Assigning Creditors in an amount to be proved at trial.

## COUNT XII
### Turnover of Property of the Estate Pursuant to § 542(a) of the Bankruptcy Code

127.    The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

128.    Section 542(a) of the Bankruptcy Code provides in pertinent part "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under 363 of this title, or that the debtor may exempt under 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property . . . ." 11 U.S.C. § 542(a).

129.    The Defendants are in possession of funds received from the Debtors and/or the Assigning Creditors, which do not belong to the Defendants, and which are property of the Debtors' bankruptcy estates pursuant to section 541 of the Bankruptcy Code.

130.    Accordingly, pursuant to section 542 of the Bankruptcy Code, the Defendants should not retain such funds and should turn them over to the Liquidating Trustee and/or the Debtors' bankruptcy estates in an amount to be proved at trial.

## COUNT XIII
### Conversion

131.    The Liquidating Trustee repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

132.    The Debtors and/or Assigning Creditors had a right to possession of the monies transferred to the Defendants via the Avoidable Transfers and/or the payments for the unnecessary tests.

133.    The Defendants intentionally and substantially interfered with the monies of the Debtors and/or Assigning Creditors by wrongfully exercising dominion and control over the Avoidable Transfers and/or the payments for the unnecessary tests.

134.    As a direct and proximate result of the foregoing wrongful acts, the Debtors and Assigning Creditors sustained significant damages, including but not limited to the amount of the Avoidable Transfers and overpayments made for unnecessary tests by Assigning Creditors.

135.    Accordingly, the Liquidating Trustee is entitled to recover the damages suffered by the Debtors and Assigning Creditors in an amount to be proved at trial.

136.    The Liquidating Trustee hereby reserves his right to supplement and/or amend this Complaint to include additional facts, theories, and/or transfers as such may be discovered during the course of this Adversary Proceeding and preserve all other claims and defenses relating to the Defendants.

**WHEREFORE**, the Liquidating Trustee respectfully requests that the Bankruptcy Court enter an Order and Judgment as follows:

(a) On Counts I and III, awarding judgment to the Liquidating Trustee, pursuant to Sections 548 and 550 of the Bankruptcy Code, in an amount of the Avoidable Transfers, and directing the Defendants to pay to the Liquidating Trustee an amount that is not less than the full amount of the Avoidable Transfers, pursuant to Section 550(a) of the Bankruptcy Code;

(b) On Counts II and IV, awarding judgment to the Liquidating Trustee, pursuant to Sections 544(b) and 550 of the Bankruptcy Code, Va. Code Sections 55-80 and 55-81, or pursuant to other applicable state fraudulent conveyance or fraudulent transfer law, and as applicable, 28 U.S.C. § 3304, in an amount to be proved at trial, and directing the Defendants to pay to the Liquidating Trustee an amount that is not less than the full amount of the Avoidable Transfers, pursuant to Section 550(a) of the Bankruptcy Code;

(c) On Count V, disallowing any claim of the Defendants pursuant to section 502(d) of the Bankruptcy Code;

(d) On Count VI, awarding judgment to the Liquidating Trustee for damages caused to the Debtors and their creditors, including the Assigning Creditors, as a result of the Defendants' aiding and abetting breaches of fiduciary duties and self-dealing in an amount to be proved at trial;

(e) On Count VII, awarding judgment to the Liquidating Trustee for damages caused to the Debtors and Assigning Creditors as a result of the conspiracy in an amount to be proved at trial;

(f) On Count VIII, awarding judgment to the Liquidating Trustee, pursuant to the VBCA, for three times the damages caused to the Debtors and Assigning Creditors as a result of the conspiracy, in addition to reasonable attorneys' fees and expenses, in an amount to be proved at trial;

(g) On Counts IX and X, awarding judgment to the Liquidating Trustee for damages caused to the Debtors and their creditors, including Assigning Creditors, as a result of their fraud and constructive fraud in an amount to be proved at trial;

(h) On Counts XI and XII, awarding judgment to the Liquidating Trustee for turnover of money or the value thereof, which does not belong to the Defendants, in an amount to be proved at trial;

(i) On Count XIII, awarding judgment to the Liquidating Trustee for damages caused to the Debtors and their creditors, including Assigning Creditors, as a result of the Defendants' acts of conversion in an amount to be proved at trial;

(j) awarding pre-judgment interest at the maximum legal rate running from the date of the Debtors' and/or the Liquidating Trustee's first demand to return all Avoidable Transfers to the date of judgment with respect to this Complaint herein;

(k) awarding the Liquidating Trustee his costs and expenses incurred in connection with this Adversary Proceeding, including reasonable attorneys' fees;

(l)  entering judgment in favor of the Liquidating Trustee and against the Defendants in an amount not less than $13,140.00, with interest accruing from the date of this Complaint at the judgment rate of interest (the "**Judgment**");

(m)  awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full, plus costs;

(n)  directing the Defendants to pay forthwith all amounts awarded; and

(o)  granting the Liquidating Trustee such other and further relief as the Bankruptcy Court deems just and proper.


Dated:  June 6, 2017                                          Respectfully submitted,


*/s/ Cullen D. Speckhart*
Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Ste. 1040
Richmond, Virginia 23219
200 Bendix Road, Ste. 300
Virginia Beach, Virginia 23452
Telephone: (757) 687-3644
Email: hdl@wolriv.com

*Counsel to Plaintiff Richard Arrowsmith,*
*Liquidating Trustee of the HDL Liquidating Trust*