IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

G. RUSSELL WARNICK,

and

LATONYA S. MALLORY
   Appellants,

v.                 Civil Action No. 3:16-CV-876
                  Civil Action No. 3:16-CV-877
RICHARD ARROWSMITH, AS
LIQUIDATING TRUSTEE OF THE
HDL LIQUIDATING TRUST,
   Appellee,

LECLAIRRYAN, A
PROFESSIONAL CORPORATION,
   Intervenor-Appellee.

## OPINION

  Health Diagnostic Laboratory, Inc., ("HDL") declared Chapter 11 bankruptcy after the Department of Justice found a number of its business practices illegal. According to the Department of Justice, HDL gave illegal kickbacks to health care providers who sent it lab work. HDL paid fines as a result of the Justice Department investigation, and these legal troubles triggered the company's downfall.

  HDL claimed that its long-time counsel, LeClairRyan, P.C., had committed malpractice by telling HDL that the kickbacks were legal. Richard Arrowsmith, HDL's trustee in bankruptcy, agreed to a settlement with LeClairRyan for more than $20 million to resolve the malpractice claim (the "Settlement"). The Bankruptcy Court for the Eastern District of Virginia found the Settlement reasonable and approved it in an order dated October 14, 2016 (the "Approval Order").

Russell Warnick and LaTonya Mallory, former HDL executives and appellants here, have objected to the approval of the Settlement. Essentially, Warnick and Mallory think that the Approval Order releases LeClairRyan from claims that Warnick and Mallory may want to assert against LeClair in future litigation. The Bankruptcy Court clarified in a memorandum opinion (the "Approval Opinion") that the viability of Warnick and Mallory's personal claims against LeClairRyan would have to be decided in future litigation by whatever court entertained the future case. Warnick and Mallory, however, argue that the Approval Order says something different. They also contend that the Bankruptcy Court erred in maintaining jurisdiction over disputes arising from the HDL bankruptcy.

Warnick and Mallory also argue that the Bankruptcy Court erred by refusing to admit into evidence the demand letter (the "Demand Letter") that Arrowsmith sent to LeClairRyan to begin settlement negotiations. The Bankruptcy Court characterized the letter as inadmissible settlement material, sealed it from public view, and did not admit it into evidence.

In these appeals, Warnick and Mallory ask this Court to reverse and vacate the Approval Order. Warnick also seeks reversal of the Bankruptcy Court's decision to exclude the Demand Letter from evidence, although he does not object to its admission under seal. Arrowsmith has moved to dismiss the appeals on mootness and standing grounds.

The Court denies the trustee's motion to dismiss because the appellants have standing to bring their claims, and the appeals are not equitably moot.

The Court affirms the Bankruptcy Court's approval of the Settlement, because the Settlement and Approval Order do not decide any future legal claims of the appellants. Lest any doubt remain about the effect of the Approval Order, the Court's Order in this case will clarify

2

these matters. The Court also affirms the decision of the Bankruptcy Court to maintain future jurisdiction over disputes arising from the Settlement.

Finally, the Court will affirm the Bankruptcy Court's decision to exclude the Demand Letter from evidence. The Demand Letter should be part of the record on appeal and will not be held under seal.

## I. BACKGROUND

According to Arrowsmith, LeClairRyan told HDL that it could legally make certain payments to health care providers who sent lab work to HDL. The Department of Justice thought the payments amounted to illegal kickbacks, and it sought fines and penalties from HDL. HDL paid $47 million to the DOJ to resolve the charges, which put HDL on the road to Chapter 11 bankruptcy. In May 2016, the Bankruptcy Court approved a liquidation plan (the "Liquidation Plan"), with Arrowsmith as the liquidating trustee. In October 2016, Arrowsmith sent the Demand Letter to LeClairRyan seeking $250 million in damages, which the parties settled for over $20 million.

Warnick and Mallory, former executives of HDL, objected to the Settlement on a number of grounds. Relevant here, they argued that the Settlement (1) interfered with their rights to bring a direct claim against LeClairRyan for legal advice given to them in their individual capacities, (2) pre-adjudicated the applicability of a Virginia statute barring contribution claims by the appellants against LeClairRyan for any future liabilities for which the appellants and LeClairRyan are found jointly liable, and (3) improperly maintained continuing jurisdiction over the Settlement. The Bankruptcy Court approved the Settlement over these objections and entered its Approval Order and Approval Opinion.

## II. DISCUSSION

### A. *Motion to Dismiss*

Arrowsmith has moved to dismiss the appeals on grounds that the appellants lack standing and that the appeals are equitably moot. The Court denies the motion to dismiss.

#### i. *Standing*

To have standing in a bankruptcy appeal, "the appellant [must] show that he has been directly and adversely affected pecuniarily by the bankruptcy order." *In re Urban Broad. Corp.*, 401 F.3d 236, 243 (4th Cir. 2005). An appellant must have "'a direct and substantial interest *in the question being appealed.*'" *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1335 (11th Cir. 2002) (emphasis added) (quoting *In re Odom*, 702 F.2d 962, 963 (11th Cir. 1983)). The question on appeal deals with the viability of claims the appellants may assert in the future; Mallory and Warnick each have a direct financial interest in the questions at issue on appeal and therefore have standing.

#### ii. *Equitable Mootness*

The doctrine of equitable mootness allows a district court to dismiss an appeal where it would be impracticable or imprudent to upset the bankruptcy court's plan of organization at a late date. *Behrman v. Nat'l Heritage Found.*, 663 F. 3d 704, 713 (4th Cir. 2011). To determine whether an appeal is equitably moot, courts consider, among other things, whether the action by the bankruptcy court has been substantially consummated, and the extent to which the relief requested on appeal would affect the success of the relief granted by the bankruptcy court. *Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002).

The Settlement has not been substantially consummated because the settlement funds remain in escrow until the completion of this case. Arrowsmith has provided only speculation as

4

to the effect of the requested relief on the Settlement. Moreover, the appellants simply ask that the Bankruptcy Court make its Approval Order consistent with the shared intent of the parties, so it can hardly affect the Settlement. Weighing all of the factors, the Court finds that the appeals are not equitably moot.

### B. *Merits of Appeals*

The Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*. *In re Anderson*, 811 F.3d 166, 171 (4th Cir. 2016).

#### i. *Pre-Adjudication of Virginia law*

The Bankruptcy Court's Approval Order does not pre-adjudicate whether Virginia Code § 8.01-35.1 protects LeClairRyan from later contribution claims from the appellants or anyone else.

When interpreting a court's order, "[i]f a judgment is clear and unambiguous, a court must adopt, and give effect to, the plain meaning of the judgment." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009) (quoting *United States v. Spallone*, 399 F.3d 415, 421 (2d Cir. 2005)). If a bankruptcy court's order contains "any ambiguity or obscurity," a bankruptcy court's interpretation of its own order, including an opinion accompanying the order, receives "substantial deference." *In re Tomlin*, 105 F.3d 933, 940–41 (4th Cir. 1997) ("The bankruptcy court was 'in the best position to interpret its own orders.'") (citations omitted).

Warnick and Mallory argue that one could read the Approval Order to provide a complete escape hatch to LeClairRyan from any future liability related to HDL, but this reading is incorrect. The Approval Order reads: "as provided in Section 10 of the [Settlement] Agreement and by the governing statutes of the Commonwealth of Virginia, LeClairRyan is entitled to, and is hereby afforded, the full protection of Virginia Code § 8.01-35.1 . . . ." (Approval Order at 2,

5

Dk. No. 1, p. 5.) Taking this language in a vacuum, one might conclude that LeClairRyan is off the hook. But the Approval Order incorporates the Settlement, which says that the limitation of liability applies between the parties only. Section 10 of the Settlement is titled "Effect of Releases on Claims for Contribution by Alleged Joint Tortfeasors." This section says:

> The *parties* to this Agreement acknowledge that the provisions of Section 8 and 9 of this Agreement constitute a "release or a covenant not to sue" within the meaning of Code of Virginia § 8.01-35.1, and are governed by that statute. Pursuant to Code of Virginia § 8.01-35.1A.2, the releases granted in Section 8 of this Agreement operate to discharge LeClairRyan from all liability for contribution to any other person alleged or found to be liable as a joint tortfeasor for any and all claims released by those paragraphs. LeClairRyan shall have and be entitled to the benefits and protections available to released parties under Code of Virginia § 8.01-35.1, and the Bankruptcy Court shall retain jurisdiction over all proceedings in which a person or entity seeks to deprive LeClairRyan of such benefits and protections.

(Settlement at 14–15, Dk. No. 1, pp. 17–18, emphasis added.) While the parties to a contract can agree to many things, they cannot create a body of law that applies to people not parties to the contract.

The Bankruptcy Court makes this clear in the Approval Opinion. The opinion says that Arrowsmith "does not seek, nor is he getting, a preadjudication of the impact of Va. Code Ann. § 8.01-35.1 on any future claims or defenses that may be asserted by" the appellants. (Approval Opinion at 12, Dk. No. 29-5, p. 956.) It continues that the Approval Order "is merely confirming that the Settlement Agreement qualifies as a covenant not to sue or release." (*Id.*) The Approval Opinion also says that "approval of the Settlement Agreement will not prevent any party from arguing (in the context of an actual case or controversy) that Va. Code Ann. 8.01-35.1 has limited applicability to a future asserted right of contribution." (*Id.* at 13.) Arrowsmith says the same thing in his briefs in support of the Settlement, and the Bankruptcy Court said the same thing from the bench at the approval hearing.

6

Contrary to the appellants' arguments, the Approval Order does not decide the effect of § 8.01-35.1 in future litigation. Lest any doubt exist, however, this Court's Order affirming the Bankruptcy Court's ruling will contain language clarifying the limited scope of the Bankruptcy Court's ruling.

### ii. *Individual Rights of Appellants Against LeClairRyan*

The Approval Order does not release claims held by the appellants individually against LeClairRyan. The Settlement agreement binds HDL, which it defines as not only its corporate entities but also as its "former directors, officers, employees and agents of HDL *to the extent they acted on behalf of or as representatives of HDL.*" (Settlement at 7, Dk. No. 1, p. 10, emphasis added.) This language does not include Mallory or Warnick as individuals, only as corporate officials.

The Settlement resolves claims held by Arrowsmith "by virtue of his exercise of the powers and duties conferred by Section 6.5 of the [Liquidation Plan] . . . or otherwise within the jurisdiction of the Bankruptcy Court." (*Id.* at 8.) The Liquidation Plan gives Arrowsmith the right to "exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been made by any partner, member, officer, director, or shareholder of the Debtors with like effect as if authorized, exercised, and taken by unanimous action of such partners, members, or officers, directors, and shareholders." (Liquidation Plan at 29, Dk. No. 29-1, App. 326.) In other words, Arrowsmith can exercise the rights of HDL, not the rights of Mallory or Warnick as individuals. Arrowsmith, therefore, cannot release the appellants' individual claims.

7

Again, to resolve any doubt, this Court's Order affirming the decision below will clarify that the Settlement does not affect any rights held by Mallory or Warnick in their individual capacities.

### *iii. Continuing Jurisdiction over Settlement*

The Bankruptcy Court properly maintained jurisdiction over disputes arising from the Settlement. Here, the Approval Order states that the Bankruptcy Court retains jurisdiction over "all proceedings in which a person or entity seeks to deprive LeClairRyan" from the protections set forth in the Settlement. Bankruptcy courts have jurisdiction to interpret and enforce their own prior orders, including the right to enforce the terms of an ongoing plan. *In re LandAmerica Fin. Grp., Inc.*, No. 08-35994-KRH, 2013 WL 1819984, at *2 (Bankr. E.D. Va. Apr. 30, 2013) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("The Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.")). The Bankruptcy Court also had the right to retain jurisdiction under the Liquidation Plan in the case, which provides the Bankruptcy Court with "such jurisdiction as is legally permissible" to implement the Plan. (Liquidation Plan at 34, Dk. No. 29-1, App. 331.) This power includes the authority to effect the settlement of the LeClairRyan claim. The Court affirms the Bankruptcy Court's decision to maintain jurisdiction over the Settlement.

### C. *The Demand Letter*

The Bankruptcy Court's handling of the demand letter raises two separate questions: should the Bankruptcy Court have sealed it, and should the court have admitted it into evidence? These questions involve, respectively, issues of public concern, and issues that affect only the parties to this case. The public's interest in the settlement of the case requires that the demand letter not be hidden from scrutiny. But its admission into evidence has no effect on the relations

8

of the parties, and therefore does not provide grounds for reversal of the Bankruptcy Court's decision.[1]

*i. Sealing The Demand Letter*

Courts do their business in public. Courts hear cases in public and announce their decisions in public, and they base their decisions on evidence the public can hear, view, or read.

Courts do their business in public because cases affect more people than just the parties before the Court. People follow court proceedings for a variety of reasons. Sometimes, simple curiosity spurs interest in judicial proceedings. Sometimes, people want to know what happened in court so that they can guide their own future conduct. And, perhaps most important, sometimes people just want to check on the courts' exercise of power.

This last reason is most important because courts exercise the authority of the government. Judicial decisions change life for litigants—whether requiring someone to go to prison, to pay money to another, or to stop doing something. For the most part, decisions by judges and juries cannot be changed. Ordinarily, elected officials (or their subordinates) make decisions that govern us. Yet, in our federal court system, many of these life-altering decisions are made by people who are not selected by the citizens, but rather are appointed—and empowered—by other government officials.

To insure that these arbiters are not arbitrary, the citizenry must have the information to show how courts reach decisions. No other check on judicial decisions exists. Our law therefore

---

[1] Before the Court can do anything with the Demand Letter, it must make the letter part of the record on appeal. The Bankruptcy Rules require a party to file a motion for the district court to accept a sealed document as part of a record under seal. Fed. R. Bankr. P. 8009. The appellants have moved to include the sealed Demand Letter as part of the record in this case. The Court grants the appellants' motion and accepts the Demand Letter as part of the record.

9

presumes that judicial records are open to the public. *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984).[2]

Here, the Bankruptcy Court decided that the Settlement of HDL's claim against LeClairRyan was reasonable and fair. The claim determined the rights and duties of a one-time corporate citizen of Richmond. This large company employed many people who are now unemployed, and bought goods and services from people and businesses who have not been paid in full for what they provided. This corporate citizen was a home-grown success story and source of civic pride, but now is a vacuum, stigmatized by corrupt dealings. People need to know how this happened, and why this resolution of a large claim is fair to all involved.

The public cannot judge the fairness of a settlement without knowing what was at stake, and it can only find out what was at stake by reading the Demand Letter. As discussed below, the contents of the Demand Letter have little to do with the merits of this appeal, which turns on a narrow legal issue. But the public judgment of the rightness of the Settlement depends entirely on knowing what the Demand Letter says.

LeClairRyan wants the Demand Letter to remain under seal. No doubt, the letter is embarrassing. Like most demand letters, Arrowsmith's claim against LeClairRyan contains a host of charges designed to scare someone into coughing up money. Any moderately sophisticated reader will recognize the letter's status as a tactical move. The letter should not influence LeClairRyan's existing and potential clients.

Even so, the letter does show where the negotiations to settle an important claim started, and the public must see the letter to judge the legitimacy of the Settlement.

---

[2] See also *Pownall v. PNC Bank*, No. 1:10-CV-00894, 2011 WL 332719, at *1 (N.D. Ohio Jan. 31, 2011) ("Unwarranted restriction of court documents hampers the public's ability to act as an important check on judicial integrity.") (citing *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)).

10

The Court will accept the Demand Letter as part of the record on appeal, direct the Bankruptcy Court to forward the letter to this Court, and direct that the Clerk unseal the Demand Letter.

### *ii. Admissibility*

The Court need not decide the admissibility of the Demand Letter into evidence. Warnick and Mallory do not contest the amount of the Settlement. As noted above, the only thing they worry about is the effect of the Settlement on claims they might want to assert against LeClairRyan in the future.

As discussed in the previous section, the Demand Letter sheds light on the propriety of the amount of the Settlement. But the amount of the Settlement is not at issue between the parties in this appeal. The Demand Letter is of crucial importance to the public, and the Court will unseal the document. But its admission into evidence is unimportant to the relations of the parties in this case: whether or not it comes into evidence, the terms of the Settlement, including the amount, remain the same.

Thus, the admissibility of the Demand Letter, even if incorrectly decided below, makes no difference to this appeal. The Bankruptcy Rules' "harmless error" provision incorporates Federal Rule of Civil Procedure 61, which says that an error in excluding evidence is not grounds for disturbing an order unless justice so requires. Fed. R. Bankr. P. 9005. Justice does not require any change based on the admissibility of evidence.

### III. **CONCLUSION**

The Court will affirm the Bankruptcy Court's approval of the Settlement. The Approval Order does not pre-adjudicate the issue of contribution, which must be decided in any future litigation. The Settlement does not affect the ability of Warnick and Mallory to assert their

11

individual claims against LeClairRyan. To the extent any doubt exists about these matters, this Court's Order will clarify them. The Bankruptcy Court also did not err in maintaining jurisdiction over the Settlement, and the Court affirms its decision to do so.

The Demand Letter will be unsealed, but its admissibility into evidence has no impact on this case. The Court, therefore, will affirm the exclusion of the letter from evidence.

An appropriate Order will issue.

Date: July 14, 2017
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge