**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **In re:**<br><br>**HEALTH DIAGNOSTIC LABORATORY, INC.,** *et al.*,<br><br>**Debtors.**[1] | **Chapter 11**<br>**Case No.: 15-32919-KRH**<br>**Jointly Administered** |

**LIQUIDATING TRUSTEE'S OPPOSITION TO TRUE**
**HEALTH DIAGNOSTICS, LLC'S MOTION TO ENFORCE**
**RELEASE, COVENANT NOT TO SUE AND SALE INJUNCTION**

Richard Arrowsmith, in his capacity as Liquidating Trustee of the HDL Liquidating Trust (the "**Liquidating Trustee**"), appointed pursuant to the confirmed Modified Second Amended Plan of Liquidation (the "**Plan**")[2] of Health Diagnostic Laboratory, Inc., and its affiliated debtors and debtors in possession (the "**Debtors**" or "**HDL**") in their jointly administered bankruptcy cases (the "**Cases**"), files this opposition (the "**Opposition**") to True Health Diagnostics, LLC's ("**True Health**") *Motion to Enforce Release, Covenant Not to Sue and Sale Injunction* [Dkt. No. 3356] (the "**Motion**"). In support of the Opposition, the Liquidating Trustee respectfully states as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434).

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion or the Plan. All references to "Dkt No." shall refer to documents filed in case no. 15-32919, and "Adv. [__] Dkt. No." shall refer to documents filed in an adversary proceeding.

| | |
|---|---|
| Cullen D. Speckhart (VSB No. 79096)<br>**WOLCOTT RIVERS GATES**<br>919 E. Main Street, Richmond, VA 23219 200<br>Bendix Road, Ste. 300 Virginia Beach, VA 23452<br>Telephone: (757) 497-6633<br>Direct: (757) 470-5566<br>Email: cspeckhart@wolriv.com<br><br>*Counsel to Richard Arrowsmith, Liquidating Trustee*<br>*of the HDL Liquidating Trust* | Richard S. Kanowitz (admitted pro hac vice)<br>**COOLEY LLP**<br>1114 Avenue of the Americas<br>New York, New York 10036<br>Telephone: (212) 479-6000<br>Facsimile: (212) 479-6275<br>Email: rkanowitz@cooley.com<br><br>*Counsel to Richard Arrowsmith, Liquidating Trustee,*<br>*and the Liquidating Trust Oversight Committee* |

**PRELIMINARY STATEMENT**

1.  In the Motion, True Health seeks an extraordinary form of equitable relief in a tardy attempt to avoid an adverse ruling on the topic of the Release, Covenant, and Sale Injunction from this Court in the adversary proceeding number 16-03271 (the "**D&O Action**"). The Motion should be denied because it is beyond dispute that the releases do not apply to the Liquidating Trustee when he pursues claims on behalf of the Liquidating Trust against the BlueWave Sales Representative Defendants (as those defendants are defined in the Complaint) as assignee and successor to the Assigning Creditors. By arguing that it was somehow denied the benefit of the Sale Order and APA, True Health ignores the fact that the Liquidating Trustee did *not* assert claims held by HDL or the estate against the BlueWave Sales Representative Defendants.[3] Thus, True Health and the BlueWave Sales Representative Defendants received the full benefit of the Sale Order and APA, and the Court should reject True Health's improper attempt to expand the scope of the Release, Covenant, and Sale Injunction.[4]

2.  Because the Complaint was constructed to provide True Health and the BlueWave Sales Representative Defendants with the benefit of the provisions of the Sale Order and underlying APA, the Motion should be denied for its failure to advance a live dispute. Indeed, the only scenario in which any dispute regarding the Covenant, Release, and Sale Injunction *might*

---

[3] A chart of the claims asserted against the BlueWave Sales Representative Defendants is annexed hereto as **Schedule A**. True Health mischaracterizes the Liquidating Trustee's claims in Counts 65 and 66 of the Complaint as being brought on behalf of the estate. In fact, those counts assert assumpsit and unjust enrichment claims on behalf of the Assigning Creditors. *See, e.g.*, Complaint ¶ 1005 ("The Defendants have been unjustly enriched at the expense of the Debtors and their creditors, **including the Assigning Creditors** . . . ." (emphasis added)); ¶ 1014 ("As a direct and proximate result of the foregoing acts, the Debtors **and the Assigning Creditors** sustained damages . . . ." (emphasis added)).

[4] In contrast to the Assigning Creditor claims against the BlueWave Sales Representative Defendants, the Liquidating Trustee brought estate claims against the corporate transferee defendants who received payments made by HDL to BlueWave (the "**BlueWave Transferee Defendants**") for avoidance of transfers under sections 544(b), 547, 548, and 550 of the Bankruptcy Code and violation of the trust fund doctrine. *See* Complaint, Counts 37-46, 52, and 55.

arise in the future, would be one in which the Liquidating Trustee pursues claims against the BlueWave Sales Representative Defendants as transferees of avoided transfers under section 550 of the Bankruptcy Code.[5] In that event, the Liquidating Trustee would seek discovery as to whether each BlueWave Sales Representative Defendant was an employee of True Health under applicable law at *the time of the future lawsuit*. These factual disputes are theoretical and not ripe for adjudication. Even if they were, True Health's blanket assertion that the BlueWave Sales Representative Defendants were its "W-2 employees" would be insufficient to prove that they were employees and not independent contractors under the fact-sensitive, multi-factor common law test governing the outcome of such future dispute.

3. Separately, the Motion should be denied because True Health is barred by laches for failing to address this matter for almost an entire year after the issue initially arose. Had True Health been truly concerned about application of the Sale Order and APA, it would have brought these issues to the fore in the D&O Action last September, when the issue was originally addressed among the parties. The real impetus for the Motion is the BlueWave Sales Representative Defendants' desire to avoid producing their financial information to the Liquidating Trustee as part of the ongoing mediation before Judge Novak. Granting the Motion would be inequitable given True Health's long delay and the fact that the real parties in interest to the Motion are the BlueWave Sales Representative Defendants.

4. Additionally, True Health cannot seek specific performance based upon its material breaches of the APA. As set forth in adversary proceeding number 16-03011 (the "**True Health Litigation**"), True Health interfered with HDL's collection of millions of dollars of account

---

[5] An action under section 550 may be commenced before the earlier of (1) one year after the transfer is avoided; and (2) the time the case is closed or dismissed. 11 U.S.C. § 550.

3

receivables, and this Court entered injunctive relief, recognizing that HDL demonstrated a likelihood of success on the merits of its claims.

5.  It would also be inequitable to enforce the Release, Covenant, and Sale Injunction to protect the BlueWave Sales Representative Defendants, who obtained more than $61 million in ill-gotten gains through their fraudulent and possibly illegal activities. The fact that several of the BlueWave Sales Representative Defendants invoked the Fifth Amendment privilege against self-incrimination when questioned in the South Carolina *qui tam* action, *United States v. BlueWave Healthcare Consultants, Inc.*, No. 14-0230 (D.S.C.) ("**Qui Tam**") speaks volumes about their culpability. The Release should be narrowly construed in light of the BlueWave Sales Representative Defendants' actions and the circumstances surrounding the negotiation of the Release with the Creditors' Committee.

## DISCUSSION

### I. The Release, Covenant, and Sale Injunction Do Not Apply to Creditor Causes of Action

6.  As a threshold matter, this Court already established in its Memorandum Opinion that the Sale Injunction did not – and cannot – bar claims by "all creditors" against True Health and each of its current and former employees. *See* Memorandum Opinion at p.23 n.45 (holding that the Sale Injunction "applied only to successors-in-interest of HDL" and could not "be interpreted otherwise as 11 U.S.C. § 524 prohibits a court from granting nondebtor third party releases outside of a properly confirmed plan" (citing *Behrmann v. Nat'l Heritage Found., Inc.*, 663 F.3d 704 (4th Cir. 2011)). Accordingly, True Health's argument that the Sale Injunction is a "channeling injunction" that bars all creditors' claims (*see* Motion, ¶¶ 39-40) should be denied.

7.  True Health's remaining contention that the Release, Covenant, and Sale Injunction bar Creditor Causes of Action asserted against the BlueWave Sales Representative Defendants

4

because such claims are "property of the estate" (*see* Motion, §§ A & B) has already been rejected by the Court when the BlueWave Sales Representative Defendants made the same argument in the D&O Action.[6] At the June 8, 2017, hearing on the motions to dismiss in the D&O Action, counsel for several of the BlueWave Sales Representative Defendants raised the Release, Covenant, and Sale Injunction as affirmative defenses, arguing at length that they applied to Creditor Causes of Action. *See* Declaration of Richard S. Kanowitz dated September 20, 2017 (the "**Kanowitz Decl.**"), Ex. G, at 79:17 to 94:1.  In response, the Liquidating Trustee's counsel made clear that the Liquidating Trustee was "suing on assigning creditors' particularized injuries" and "not suing on property of the estate claims." *See id.* at 142:16 to 144:11.

8.    The Court rejected the BlueWave Sales Representative Defendants' arguments in its Memorandum Opinion, finding that "[a]ssertion of this affirmative defense [the Release] also ignores that the Liquidating Trustee is not only bringing claims that belonged to the seller in his capacity as successor to HDL but also bringing claims **that were assigned to the Liquidating Trust by individual creditors**."  Memorandum Opinion, p. 23 n.45 (emphasis added).  True Health's agreement on this point is memorialized in the consent order entered in *G. Russell Warnick v. True Health Diagnostics*, *et al.*, Adv. No. 16-03014 [Dkt. No. 52], which states that the Release and Covenant include and only pertain to "claims and causes of action that constitute property of the Debtors' estates" and exclude "any derivative, personal, or individual claims." *Id.* at ¶¶ 14-15.

---

[6] Section A of the Motion repeats verbatim section IV of one of the BlueWave Sales Representative Defendants' briefs.  *See* Adv. 16-03271 Dkt. No. 79, pp. 26-30.

9. True Health's argument, as set forth in the Motion, suffers from a fatal flaw in that it expands the scope of the Release, Covenant, and Sale Injunction beyond what is written in the APA. As written, the Release, Covenant and Sale Injunction applies only to claims acquired by the Liquidating Trustee *in his capacity as successor to the Debtors*. It does not, as True Health argues, automatically release any claim that is acquired by the Liquidating Trustee in his other capacities, such as an assignee of direct creditor claims. As this Court has already held, the only claims that are barred are those held by the Debtors and their estates at the time the Sale Order was entered. *See* APA §§ 3.1, 3.2, 11.8; Sale Order ¶¶ 35, 41. Claims held by individual creditors based upon particularized injuries are not released by the Sale Order or APA, especially where, as here, they were transferred to the Liquidating Trust in accordance with the Plan. *See* Form Assignment Agreement, Ex. A to *Notice of Filing of Plan Supplement Relating to the Second Amended Plan of Liquidating Proposed by the Debtors* [Dkt. No. 958] (stating that Creditor Causes of Action are assigned to the Liquidating Trust).



10. Section 6.5(c)(23) of the Plan makes this clear, stating that on one hand, the Liquidating Trustee is the "successor of the Debtors and the Creditors' Committee for all purposes" and separately, that he is the "**successor of the Assigning Creditors with respect to**

**the Creditor Causes of Action of such Assigning Creditor to the extent such Creditor Causes of Action are assignable**." (emphasis added). Section 6.5(e) of the Plan states that the Liquidating Trustee is the "assignee and successor to the Assigning Creditors with respect to the Creditor Causes of Action . . . ." The Plan also authorizes Assigning Creditors to assign or otherwise transfer Creditor Causes of Action to the Liquidating Trust for the purpose of commencing actions not for the benefit of the estate, but "for the benefit of the Liquidating Trust Beneficiaries."[7]  Plan, § 6.16(a).[8]

11. Therefore, the Plan authorizes the Liquidating Trustee, on behalf of the Liquidating Trust, to stand in the shoes of the Assigning Creditors and act as their assignee and successor. Accordingly, the Sale Order and APA do not bar the Liquidating Trustee's claims as a matter of law, as courts have recognized that a trustee can assert claims solely on behalf of assigning creditors as opposed to a debtor or the bankruptcy estate. *See, e.g.*, *In re Lyondell Chem. Co.*, 541 B.R. 172, 201 (Bankr. S.D.N.Y. 2015) (recognizing that a creditor trust created to pursue creditors' claims was "an assignee of the . . . Debtors' *creditors* and [is] pursuing these suits on behalf of the *creditors*.") (emphasis in original), *rev'd and remanded on other grounds*, 554 B.R. 635 (S.D.N.Y. 2016); *Zazzali v. Hirschler Fleischer, P.C.,* 482 B.R. 495, 509 (D. Del. 2012) (holding that post-confirmation trustee pursuing claims on behalf of assigning creditors derives his authority from the trust agreement and the individual assignment of claims from each of the beneficiaries of the trust and the trustee should not "be treated differently than any other assignee").

---

[7] "Liquidating Trust Beneficiaries" are defined as the holders of Allowed Class 3 Claims, Class 4 Claims, and Class 5 Interests.

[8] Moreover, to the extent the Liquidating Trustee obtains any benefit or collects any consideration arising out of a Creditor Cause of Action, the Liquidating Trustee shall, after consulting with the Liquidating Trustee Oversight Committee, "request Court approval . . . to increase the allowed amount of such Assigning Creditor's Allowed Class 3 Claim based on such obtained benefit and/or collected consideration by an appropriate amount of up to fifty percent (50%) of the Net Proceeds attributable to such Creditor Cause of Action." Plan, § 6.16(b).

## II. There Are Material Issues of Disputed Fact That Are Not Ripe for Adjudication and Should Be Resolved in the D&O Action

12. To the extent True Health believed there are any material issues of fact as to the applicability of the Sale Order and APA – which there are not for the reasons set forth *supra* – True Health should have raised them in the D&O Action. This Court already found that the Sale Order and APA were inapplicable and could not be raised as affirmative defenses. The Court also held that to the extent the releases could ever apply, there were material issues of fact, including whether the BlueWave Sales Representative Defendants are "employees" of True Health. Memorandum Opinion, p. 23 n.45.

13. If True Health wanted to challenge that holding, it should have done so in the D&O Action. True Health threatens prejudice to the Liquidating Trustee and the parties to the D&O Action in attempting to force an adjudication of identical issues in two different forums, particularly, as the BlueWave Sales Representative Defendants have all filed dispositive summary judgment motions in the D&O Action. See Adv. 16-03271 Dkt. Nos. 244, 406. Further, the BlueWave Sales Representative Defendants objected to the Liquidating Trustee's first set of discovery requests on the grounds that they refuse to produce any documents "until after the Court rules on the Motion." *See* Kanowitz Decl., Ex. I. The BlueWave Sales Representative Defendants' baseless objection[9] demonstrates that the Motion has already adversely affected the Liquidating Trustee's ability to prosecute the D&O Action.

14. In any event, these factual issues are not ripe for adjudication because the Liquidating Trustee has not yet pursued any estate claims against the BlueWave Sales Representative Defendants. If the Liquidating Trustee decides to sue the BlueWave Sales

---

[9] The Liquidating Trustee intends to file a motion to compel the BlueWave Sales Representative Defendants to respond to his discovery demands under Bankruptcy Rule 7037. The Liquidating Trustee reserves all rights related thereto, including seeking sanctions for failure to make discovery.

Representative Defendants in the future, as transferees of avoided transfers under section 550 of the Bankruptcy Code, he intends to pursue discovery related to the specific circumstances of each BlueWave Sales Representative's work for True Health to determine whether they were employees or independent contractors. These factual issues are threshold matters for determination in future phases of the D&O Action.[10]

15. Whether the alleged beneficiaries of the Release were employees versus independent contractors of True Health as of the filing of any future complaint is a material issue of fact. This is a multi-faceted inquiry[11] that requires a court to consider, among other factors (i) the process for the individual's selection and engagement; (ii) payment of the individual's compensation; (iii) the company's power of dismissal; and (iv) the company's power to control the individual's work. *Ogunde v. Prison Health Servs.*, 274 Va. 55, 60, 645 S.E.2d 520 (2007); *Marino v. Lenoir*, No. 15-0610, 2017 WL 1553095, at *5 (Tex. Apr. 28, 2017) ("[L]ooking to control over the details of an employee's work is a longstanding common-law basis for establishing an employer-employee relationship."). Whether an individual is an employee or an independent contractor is generally a question of fact for the jury. *McDonald v. Hampton Training Sch. for Nurses*, 254 Va. 79, 87, 46 S.E.2d 299, 304 (1997).

16. The sole evidence that True Health offers in support of the Motion is the declaration of its chief executive officer, Christopher Grottenthaler, who states only that, at various times, the BlueWave Sales Representative Defendants were "W-2 employees of True Health." *See* Dkt. No.

---

[10] In the alternative, if the Motion proceeds as a contested matter under Bankruptcy Rule 9014, True Health still failed to meet its burden of proof for the reasons discussed herein. Any contested matter should be stayed and/or consolidated with the D&O Action.

[11] Because True Health has submitted insufficient information regarding the terms of the BlueWave Sales Representative Defendants' employment, it is unclear what state's law would govern whether the BlueWave Sales Representative Defendants were employees or independent contractors. Given that True Health maintains facilities in Virginia and Texas, this Opposition analyzes the issue under the laws of those states.

9

3356-1. This self-serving declaration is entirely inadequate to demonstrate that each BlueWave Sales Representative Defendant is an employee. Grottenthaler does not (i) define what "W-2 employee" means; (ii) describe each of the BlueWave Sales Representative Defendants' job titles, responsibilities, and compensation structure; (iii) explain what level of control True Health had over them and the procedures for selection and dismissal; or (iv) set forth in which state each defendant worked.

17. Simply stating that an individual is a "W-2 employee," without more, is not sufficient to meet the multi-factor test for whether an individual is an employee or independent contractor. *See, e.g.*, *Thaxton v. Commonwealth*, 211 Va. 38, 43, 175 S.E.2d 264 (1970) (holding that whether an individual is an independent contractor or employee is not controlled by the "particular label" used by the parties). Thus, even if these issues were ripe for adjudication, True Health would fail to meet its burden of proof.

### III.    The Motion Should Be Denied as Untimely and Inequitable

18. The Motion should also be denied because of True Health's delay in seeking relief and based upon equitable principles. This Motion, brought almost a year after the juncture at which True Health admits it raised the Release, Covenant, and Sale Injunction with the Liquidating Trustee, is nothing more than pure gamesmanship. True Health admits that on September 21, 2016, its counsel sent a letter to the Liquidating Trustee demanding the dismissal of the BlueWave Sales Representative Defendants from the Complaint. *See* Motion, Ex. B. Peter Ito, counsel to several of the BlueWave Sales Representative Defendants, wrote a letter to the Liquidating Trustee raising the same arguments on November 4, 2016. *See* Kanowitz Decl., Ex. B.

19. The Liquidating Trustee promptly responded and disputed True Health's and the BlueWave Sales Representatives' assertions. *See* Kanowitz Decl., Exs. A and C. True Health

took no action – either before or after the Memorandum Opinion was issued – until it filed the Motion on September 7, 2017. During the intervening time, the Liquidating Trustee successfully opposed the BlueWave Sales Representative Defendants' motions to dismiss and briefed his opposition to a summary judgment motion filed by several of those defendants. *See* Memorandum Opinion; *Liquidating Trustee's Opposition to Bouton-Yunger Defendants' Motion for Summary Judgment*, Adv. 16-03271 Dkt. No. 348.[12]

20. True Health claims that it was "instruct[ed]" to file the Motion by Judge Novak, who is conducting mediation proceedings. *See* Motion ¶ 28. Not only does this explanation fail to excuse True Health's delay, but it also mischaracterizes Judge Novak's statements and True Health's real motivation for filing the Motion. In fact, Peter Ito appears to have first raised this issue with Judge Novak. Ito then wrote a letter to counsel for True Health asking them to notify Judge Novak *whether* True Health intended to file the Motion. *See* Motion, Ex. C. True Health then made the decision to do so. *Id.*, Ex. D. Upon being informed of True Health's intention to file the Motion, the Liquidating Trustee notified True Health's counsel that the Court had already ruled on the Release, Covenant, and Sale Injunction, and placed True Health on notice that the Liquidating Trustee intended to seek his attorney's fees incurred in opposing the Motion. *See* Kanowitz Decl., Ex. D.[13]

---

[12] The remaining BlueWave Sales Representative Defendants, Patrick Colberg, Nicole Finn, and Leigha Stream filed a motion for summary judgment on September 14, 2017. *See* Adv. 16-03271 Dkt. No. 406. The Liquidating Trustee's opposition is due on November 23, 2017. Neither summary judgment motion raises the Release, Covenant, or Sale Injunction as affirmative defenses.

[13] In the event the Court denies the Motion, the Liquidating Trustee requests payment of his costs and expenses, including attorneys' fees from True Health in accordance with section 11.1 of the APA. *See* APA § 11.1 ("[I]n the event of any action or proceeding to interpret or enforce this Agreement, the prevailing party in such action or proceeding (i.e., the party who, in light of the issues contested or determined in the action or proceeding, was more successful) shall be entitled to have and recover from the non-prevailing party such costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing party may incur in the pursuit or defense thereof.").

11

21. The BlueWave Sales Representative Defendants were the real beneficiaries of True Health's decision, because as a result of the filing of the Motion, Judge Novak suspended their obligation to produce financial records as part of the mediation. After the Liquidating Trustee objected, *see* Kanowitz Decl., Ex. E, Judge Novak modified his directive to require immediate financial disclosure from the BlueWave Sales Representative Defendants if this Court either "rules against the defendants" in the Motion, or "indicates that resolution of the issue will involve a lengthy fact-finding process that will extend over time." *See id.*, Ex. F.

22. It appears that True Health was forced to file the Motion by the BlueWave Sales Representatives, who want to escape their obligation to turn over detailed financial information to the Liquidating Trustee. Whatever the reason for filing the Motion, True Health's long and unexplained delay mandates denial of its Motion under the equitable doctrine of laches. *See, e.g.*, *Nat'l Council of Arab Americans v. City of New York*, 331 F. Supp. 2d 258, 265 (S.D.N.Y. 2004) ("Grounds for laches exist when a plaintiff unreasonably and inexcusably delays in seeking an injunction, and the defendant is prejudiced by that delay."); *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F. Supp. 602, 609 (S.D.N.Y. 1979) (plaintiff not entitled to preliminary injunction where it waited "nearly a year before seeking any relief" and delay "of this nature undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury").

23. In addition, True Health's unclean hands bar it from enforcing the provisions of the Sale Order and APA. As set forth in HDL's complaint in the True Health Litigation, True Health committed material breaches of the APA by interfering with HDL's collection of millions of dollars of account receivables. *See* Adv. 16-03011 Dkt. No. 1 at ¶¶ 49 to 79. On February 5 and February 12, 2016, the Court entered orders granting temporary and preliminary injunctions

enjoining True Health from taking any actions to interfere with HDL's collection efforts and finding that HDL demonstrated a likelihood of success on the merits. *See* Adv. 16-03011 Dkt. Nos. 26 and 32. In light of True Health's material breaches of the APA, it is barred from seeking specific enforcement of the APA's provisions, including the Release and Covenant. *Cf. Horton v. Horton*, 254 Va. 111, 115-16, 487 S.E.2d 200, 203-04 (1997) (holding that wife's conduct constituted a material breach that excused the husband's subsequent non-performance and prevented her enforcement of the contract).

24. It would also be inequitable to enforce the Covenant, Release, and Sale Injunction to protect the BlueWave Sales Representative Defendants, based upon their fraudulent and possibly illegal actions. As set forth in the *Supplemental Declaration of Richard S. Kanowitz In Support of the Liquidating Trustee's Opposition to Bouton-Yunger Defendants' Motion for Summary Judgment* [Adv. 16-03271 Dkt. No. 383], several of the BlueWave Sales Representative Defendants, including Charles Maimone and Kyle Martel, invoked the Fifth Amendment privilege against self-incrimination when asked by the DOJ in the Qui Tam whether during the time of their work as sales representatives for BlueWave, they touted the revenue generated from P&H fees to physicians who ordered or considered ordering test panels from HDL; whether BlueWave encouraged them to do so; and how they were compensated. The Department of Justice also submitted the expert report of Eric Hines, CPA, CFF, in the Qui Tam, estimating that the BlueWave Sales Representative Defendants collectively received over $61 million in payments related to their work as sales representatives for HDL. *See* Kanowitz Decl., Ex. H, App'x 14.[14]

---

[14] The Liquidating Trustee believes that many of the BlueWave Sales Representative Defendants each individually received millions of dollars in commissions for selling HDL's tests. Based upon information provided to HDL, the following are preliminary estimates of the sales commissions received by several of the BlueWave Sales Representative Defendants from 2010 through 2014:
- Kyle Martel: $17.1 million
- Charles Maimone: $12.6 million

25. The Release should be narrowly construed given the BlueWave Sales Representative Defendants' actions and the circumstances surrounding entry of the Sale Order and APA. The Release was presented to the Creditors' Committee at the last possible minute before the hearing on the True Health sale motion. The Release was negotiated during the hearing, and while the Creditors' Committee was in the early stages of its investigation into the circumstances surrounding HDL's prepetition practices. As a result, the Creditors' Committee intended for the Release to be narrowly construed in order to protect valuable assets of the estate, as evidenced by the various exclusions to the Release and the preconditions to the Release taking effect. *See* Kanowitz Decl., ¶ 3.

[*Remainder of Page Intentionally Left Blank*]

---

- Nicole Tice: $11 million
- Michael Samadani: $9.2 million
- Shane Marquess: $5.5 million
- Erika Guest: $4.3 million
- Kevin Carrier: $3.4 million
- Jennifer Speer: $1.1 million
- Lee Roberts: $1 million

WHEREFORE, the Liquidating Trustee respectfully requests that this Court enter an order denying the Motion, entering an award of costs and expenses in favor of the Liquidating Trustee and against True Health, and granting such other and further relief as is just.

Dated: September 21, 2017

Respectfully submitted,

*/s/ Cullen D. Speckhart*
Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Richmond, VA 23219
200 Bendix Road, Ste. 300 Virginia Beach, VA 23452
Telephone:    (757) 497-6633
Direct:       (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted *pro hac vice*)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating Trustee, and the Liquidating Trust Oversight Committee*

## Schedule A

## Summary of Claims Asserted Against BlueWave Sales Representative Defendants

| Count | Claim | Plaintiff |
| --- | --- | --- |
| Count 65 | Assumpsit | Assigning Creditors |
| Count 66 | Unjust Enrichment | Assigning Creditors |
| Count 67 | Fraud | Assigning Creditors |
| Count 68 | Constructive Fraud | Assigning Creditors |
| Count 69 | Tortious Interference With Contracts of Assigning Creditors | Assigning Creditors |
| Count 70 | Tortious Interference With Existing Contract, Contract Expectancy, Prospective Business Relationship and Economic Advantage of Assigning Creditors | Assigning Creditors |
| Count 72 | Common Law Conspiracy | Assigning Creditors |
| Count 73 | Statutory Business Conspiracy – Va. Code §§ 18.2-499 et seq. | Assigning Creditors |