IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | HEALTH DIAGNOSTIC LABORATORY, INC., *et al.*, | Case No. 15-32919<br>Chapter 11<br>(Jointly Administered) |
| | Debtors. | |

## MEMORANDUM OPINION

Before the Court in this contested matter is True Health Diagnostics, LLC's ("True Health") Motion to Enforce Release, Covenant Not to Sue and Sale Injunction ("Motion to Enforce"). The Motion to Enforce seeks entry of an order (a) enforcing a release and covenant not to sue contained in Sections 3.1 and 3.2 respectively of the Asset Purchase Agreement (the "APA") dated as of September 29, 2015; (b) enforcing an injunction in Paragraph 35 of the Court's Sale Order approving the sale of substantially all of the assets of Health Diagnostic Laboratory, Inc. ("HDL"), Integrated Health Leaders, LLC, and Central Medical Laboratory, LLC (collectively the "Debtors"), to True Health pursuant to the APA; and (c) dismissing with prejudice all claims asserted by Richard Arrowsmith in his capacity as the Liquidating Trustee (the "Liquidating Trustee") of the HDL Liquidating Trust against True Health's current and former employees in an adversary proceeding pending before the Court (the "Adversary Proceeding").[1] At the conclusion of a hearing conducted on September 28, 2017 (the "Hearing"), the Court ruled that it would deny the Motion to Enforce. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in support of that ruling in accordance with Bankruptcy Rule 7052.[2]

---

[1] Complaint, *Arrowsmith, Liquidating Trustee v. Warnick, et al.*, No. 16-03271 (Bankr. E.D. Va. Sept. 16, 2016), ECF No. 1.
[2] Certain rules under part VII of the Bankruptcy Rules are applicable to contested matters, including Bankruptcy Rule 7052. *See* Fed. R. Bankr. P. 9014(c). Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

1

**Background and Procedural History**

HDL operated an accredited, full service clinical laboratory that provided testing of biomarkers for the indication of risk for cardiovascular disease, diabetes, and other illnesses. BlueWave Healthcare Consultants, Inc. ("BlueWave") sold HDL's testing services to physicians as an outside sales and marketing company. HDL processed lab tests it received from physicians all around the country, and frequently billed the patient's private insurance carrier or a Federal Health Care Program such as Medicare or Medicaid. Afterwards, HDL would reimburse the referring physicians for the costs associated with collecting, processing, and handling the blood samples that they had sent to HDL for testing.

In 2013, the United States Department of Justice ("DOJ") and United States Department of Health and Human Services' Office of Inspector General ("HHS OIG") began investigating the Debtors and BlueWave in connection with HDL's business practices including its payment of process and handling fees to the referring physicians. HHS OIG issued a special fraud alert on June 25, 2014, advising that the payment of processing and handling fees to referring physicians could violate certain federal anti-kickback laws. A number of lawsuits and a string of bad publicity ensued that put considerable liquidity pressure on the Debtors. On April 10, 2015, Aetna filed a complaint against several defendants including HDL and BlueWave in the United States District Court for the Eastern District of Pennsylvania (the "Aetna Action").[3]

In April 2015, HDL agreed to a multi-million dollar settlement for alleged violations of the federal False Claims Act along with a corresponding corporate integrity agreement with HHS OIG. By that time, HDL's relationship with its pre-petition secured lender, Branch Banking and Trust

---

[3] Complaint, *Aetna, Inc. v. Health Diagnostic Laboratory, Inc., et al.*, No. 15-01868 (E.D. Pa. April 10, 2015), ECF No. 1.

Company ("BB&T"), had become severely strained.[4] Following a series of defaults under its BB&T loan facilities, BB&T discontinued HDL's borrowing ability and cut off HDL's access to its existing accounts. With no ability to access its cash and with no alternative sources of financing immediately available, HDL was forced to file for protection under chapter 11 of the Bankruptcy Code.

On September 17, 2015, the Court entered an Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases and (IV) Granting Related Relief (the "Sale Order"). *See* Sale Order, *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. Sept. 17, 2015), ECF No. 512. The Sale Order authorized the sale of substantially all of the Debtors' assets to True Health under the terms of the APA. *See id.* The transaction under the APA closed on September 29, 2015, and True Health acquired substantially all of the Debtors' operating assets (the "Purchased Assets").

The APA contains provisions wherein the Debtors granted True Health and its employees a release (the "Release")[5] and a corresponding covenant not to sue (the "Covenant Not to Sue").[6]

---

[4] HDL was the borrower under three secured loan facilities with BB&T. The first was an equipment loan in the maximum principal amount of $5.5 million. The second was a revolving asset-based line of credit in the maximum principal amount of $20 million. The last was an irrevocable standby letter of credit facility in the amount of $4 million. In January of 2015, BB&T reduced the maximum principal amount of the revolving asset-based line of credit to $12 million.

[5] Sale Order at 48 ¶ 3.1, *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. Sept. 17, 2015), ECF No. 512.

[6] *Id.* at 48 ¶ 3.2.

Paragraph 35 of the Sale Order provides for an injunction ("Sale Order Injunction") against the assertion of certain claims against True Health, its employees, and the Purchased Assets.[7]

The Court confirmed the Debtors' Modified Second Amended Plan of Liquidation (the "Plan")[8] by an order entered on May 12, 2016 (the "Confirmation Order").[9] The HDL Liquidating Trust was formed in accordance with the terms of the Plan on the Effective Date.[10] Pursuant to the Plan, 11 U.S.C. § 1123, and the trust agreement executed to implement the Plan, the HDL Liquidating Trust is the successor of the Debtors and the Committee.[11] In addition, a number of creditors (the "Assigning Creditors") transferred their own creditor causes of action[12] to the HDL Liquidating Trust in accordance with section 6.16 of the Plan (the "Assigned Creditor Claims"). Among the many Assigned Creditor Claims is the Aetna Action. Pursuant to section 6.5(c)(23) of the Plan, the HDL Liquidating Trust is the successor of the Assigning Creditors with respect to the Assigned Creditor Claims.[13]

On September 16, 2016, the Liquidating Trustee commenced the Adversary Proceeding by filing a complaint (the "Complaint") against over 100 different defendants. The Complaint asserts

---

[7] *Id.* at 29–30 ¶ 35.

[8] *See* Plan, *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. March 25, 2016), ECF No. 995.

[9] *See* Confirmation Order, *In re Health Diagnostic Laboratory, Inc., et al.*, No. 15-32919 (Bankr. E.D. Va. May 12, 2016), EFC No. 1095.

[10] The Plan became effective on May 12, 2016 (the "Effective Date"). *See* Notice of Confirmation of Chapter 11 Plan at 1, *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. May 14, 2016), ECF No. 1106.

[11] Section 6.5(c)(12) of the Plan grants the Liquidating Trustee the power and charges the Liquidating Trustee with the duty of pursuing claims of the Debtors, the estates, and the Creditors' Committee defined in section 1.76 of the Plan. *See* Confirmation Order at 81, *In re Health Diagnostic Laboratory, Inc., et al.*, No. 15-32919 (Bankr. E.D. Va. May 12, 2016), ECF No. 1095.

[12] As a condition to the transfer of each third party claim to the HDL Liquidating Trust, the Assigning Creditor had to evidence its ownership of the Assigned Creditor Claim and execute an assignment agreement. *See id.* at 90 ¶ 6.16(c).

[13] Section 6.16(a) of the Plan grants the Liquidating Trustee the power to pursue the Assigned Creditor Claims for the benefit of the beneficiaries of the HDL Liquidating Trust. *See id.* at 90 ¶ 6.16.

eight claims against 24 defendants who were former employees of independent contractors engaged by BlueWave and who are now employees of True Health (the "True Health Defendants").[14] *See* Complaint, *Arrowsmith, Liquidating Trustee v. Warnick, et al.*, No. 16-03271 (Bankr. E.D. Va. Sept. 16, 2016), ECF No. 1. The Liquidating Trustee brought claims for assumpsit and unjust enrichment in Counts 65 and 66 of the Complaint against all the defendants named in the Complaint, including the True Health Defendants, in his capacity as successor to the Debtors and also in his capacity as assignee of the Assigning Creditors.[15] The Liquidating Trustee brought claims against the True Health Defendants for fraud in Counts 67 and 68, for tortious interference with contracts in Counts 69 and 70, and for conspiracy in Counts 72 and 73 only in his capacity as assignee of the Assigning Creditors.

On December 16, 2016, the True Health Defendants, acting separately, filed several motions to dismiss the Complaint (the "Motions to Dismiss") wherein they raised as affirmative defenses many of the same arguments contained in the Motion to Enforce. On August 9, 2017, the True Health Defendants were ordered to participate in a settlement conference before United States Magistrate Judge David. J. Novak, but were unable to agree to a settlement. On that very same day, this Court entered an order that denied in part and granted in part the Motions to Dismiss that had been filed by the True Health Defendants. *See* Corrected Order Denying the Motions to Dismiss in Part; Granting the Motions to Dismiss in Part, *In re Health Diagnostic Laboratory, Inc.*,

---

[14] The True Health Defendants include Leah Bouton, Thomas Carnaggio, Kevin Carrier, Jerry Carroll, John Coffman, Patrick Colberg, Jeffrey "Boomer" Cornwell, Kristin Dukes, Jason Dupin, Seneca Garrett, Leigha Greenwood, Erika Guest, Julie Harding, Robert B. "Burt" Lively, Heather Lockhardt, Courtney Love, Charles Maimone, Kyle Martel, David Pember, Lee Roberts, Michael H. Samadani, Jennifer Speer, Nicole Tice, and Robert E. Younger.

[15] At the Hearing on the Motion to Enforce held on September 28, 2017, the Liquidating Trustee clarified in open court that he was not pursuing the assumpsit and unjust enrichment claims against the True Health Defendants in his capacity as successor in interest to the Debtors, but rather in his capacity as assignee of the Assigned Creditor Claims. The Liquidating Trustee represented that he would file an appropriate stipulation in the Adversary Proceeding to this affect. For the purposes of this Opinion, the only claims at issue are the Assigned Creditor Claims that were transferred to the HDL Liquidating Trust by the Assigning Creditors.

No. 16-03271 (Bankr. E.D. Va. Aug. 9, 2017), ECF No. 366.  In a Memorandum Opinion that accompanied the order resolving the Motions to Dismiss, the Court noted that the Release in the APA and the injunction in the Sale Order applied only to successors-in-interest of HDL.  They did not restrict claims belonging to creditors against third parties.  *See* Memorandum Opinion at 23 n.45, *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Aug. 9, 2017), ECF No. 363.  Nevertheless, the Court did not rule on those affirmative defenses in the context of the Motions to Dismiss.[16]

Following the failed settlement and issuance of the Memorandum Opinion, Judge Novak instructed True Health to inform him whether it planned to file a motion with this Court to enforce the Release in the APA and, if so, to inform him before September 15, 2017.  On August 30, 2017, True Health confirmed that it would file such a motion.  In compliance with Judge Novak's instructions, True Health filed its Motion to Enforce on September 7, 2017.

**Jurisdiction and Venue**

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  The Court has core jurisdiction to interpret and enforce its prior Sale Order.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (holding that a bankruptcy court has jurisdiction to interpret and enforce its own prior orders and injunctions); *In re Motors Liquidation Co.*, 829 F.3d 135, 154 (2d Cir. 2016); *In re Circuit City Stores, Inc.*, 557 B.R. 443, 448 (Bankr. E.D. Va. 2016); *In re LandAmerica Fin. Grp., Inc.*, No. 08-35994, 2013 WL 3731757, at *4 (Bankr. E.D. Va. 2013).  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

---

[16] The Court also did not address whether the True Health Defendants were third party beneficiaries under the APA who were entitled to assert the affirmative defenses.

6

**Discussion**

*Release and Covenant Not to Sue*

True Health acquired substantially all of the Debtors' operating assets under the terms of the APA. The sale prevented the imminent liquidation of the Debtors. It saved over 400 jobs in the Richmond area and brought more than $37 million into the Debtors' bankruptcy estate. True Health was only willing to proceed with the transaction if the Sale Order afforded it the protection of a sale free and clear of all interests under § 363(f) of the Bankruptcy Code.

> The purpose of allowing the sale of an asset "free and clear" of third-party interests is to "maximize the value of the asset, and thus enhance the payout made to creditors." *In re Mundy Ranch, Inc.*, 484 B.R. 416, 422 (Bankr. D.N.M. 2012) (citation omitted). Without this protection, it would be difficult to sell estate assets promptly, and "prospective buyers would be unwilling to pay a fair price for the property subject to sale; instead, the price would have to be discounted, perhaps quite substantially, to account for the liabilities that the buyer would face simply as a result of acquiring the asset." *Id.* at 422 (citation omitted). In short, Section 363(f) is a powerful and necessary tool for achieving one of the primary purposes of the Bankruptcy Code. *See also Toibb v. Radloff*, 501 U.S. 157, 163, 111 S. Ct. 2197, 115 L.Ed.2d 145 (1991) (recognizing the Bankruptcy Code's general policy of "maximizing the value of the bankruptcy estate").

*In re Kent Manor Inn, LLC*, No. 16-18048-TJC, 2017 WL 2267241, at *5 (Bankr. D. Md. May 23, 2017) (citing *In re USA United Fleet Inc.*, 496 B.R. 79, 83 (Bankr. E.D.N.Y. 2013)); *see also In re WBQ P'Ship*, 189 B.R. 97, 108 (Bankr. E.D. Va. 1995); *In re Med. Software Sols.*, 286 B.R. 431, 446–47 (Bankr. D. Utah 2002). Releases, covenants not to sue, and injunctions are all customary protections provided to purchasers in sales free and clear of interests approved under § 363(f) of the Bankruptcy Code.

True Health seeks entry of an order enforcing the Release[17] and the Covenant Not to Sue[18] for which it negotiated in sections 3.1 and 3.2 of the APA. Assuming arguendo that the True Health Defendants are "Buyer Released Parties" as defined in the APA,[19] the Release and Covenant Not to Sue contained in the APA would prevent the Liquidating Trustee from asserting claims against the True Health Defendants as successor in interest to the Debtors' bankruptcy estate. However, the Liquidating Trustee is advancing the claims brought against the True Health Defendants in an entirely different capacity—as assignee of the Assigning Creditors.

True Health argues that the Assigned Creditor Claims constitute property that the estate acquired after commencement of the case and as such became property of the bankruptcy estate by virtue of § 541(a)(7) of the Bankruptcy Code. *See* 11 U.S.C. § 541(a)(7); *In re Bogdan*, 414 F.3d 507, 512 (4th Cir. 2005). True Health asserts that the Assigned Creditor Claims were stripped of

---

[17] The Release provides that:

> Sellers Release. Effective upon the Closing, each of Sellers, for itself and all of its predecessors, Affiliates, Subsidiaries, heirs, estates, successors and assigns, and for all of their respective officers, directors, trustees, principals, managers, partners, shareholders, members, employees, attorneys, representatives and agents (the "Seller Releasing Parties"), hereby jointly and severally release the Persons listed on Schedule 3.1 (the "Buyer Released Parties"), from any and all claims, actions, causes of action, suits, liabilities, obligations, demands, grievances, debts, sums of money, agreements, promises, damages, rights to reimbursement, rights to contribution, rights to indemnification, costs, expenses, attorneys' fees, injunctive relief, disgorgement, restitution, and all other rights and remedies of any type, whether known or unknown, whether in law or in equity, and whether based upon any federal, state, or local law, statute, ordinance, or regulation, or upon any contract, common law source, or any other source, except for any claims that may arise under this Agreement (the "THD Released Claims").

Sale Order at 48 ¶ 3.1, *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. Sept. 17, 2015), ECF No. 512.

[18] The Covent Not to Sue states "[e]ach of the Seller Releasing Parties agrees never to bring any claim, action or proceeding against the Buyer Released Parties relating to the THD released claims." *Id.* at 48 ¶ 3.2.

[19] Schedule 3.1 of the APA lists 21 of the 24 True Health Defendants as Buyer Released Parties. *See* Objection of Warnick to Debtors' Motion for Order Approving Disclosure Statement at 23–27 ("Schedule 3.1"), *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. Feb. 4, 2016), ECF No. 835. Schedule 3.1 also contains a condition that the 21 individuals listed are only Buyer Released Parties for so long as they are employed by True Health. The employment status of the 21 True Health Defendants listed on schedule 3.1 is a material fact that remains in dispute. For purposes of this Memorandum Opinion, the Court assumes without deciding that the 21 True Health Defendants listed on Schedule 3.1 of the APA are Buyer Released Parties.

any separate identity or status they might have enjoyed when they became property of the estate and that they are now undistinguishable from any other claims brought on behalf of the Debtors' estate. This contention is not well founded. The Assigned Creditor Claims never entered the bankruptcy estate. They were transferred directly to the HDL Liquidating Trust. Section 6.16(a) of the Plan states that "the Creditor Causes of Action owned by Assigning Creditors shall be assigned to or otherwise transferred to the Liquidating Trust for . . . the benefit of the Liquidating Trust Beneficiaries."[20]  *See* Confirmation Order at 90 ¶ 6.16(a), *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. May 12, 2016), ECF No. 1095. Separate assignment agreements effectuated the transfers.[21] Under the plain language of the Plan, the Assigned Creditor Claims are property of the HDL Liquidating Trust and were never property of the bankruptcy estate.

The terms of a confirmed plan govern the permissible duties of a trustee following bankruptcy. *See Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 902 (7th Cir. 2010) ("Although the terms of the Bankruptcy Code govern the permissible duties of a trustee *in* bankruptcy, the terms of the plan of reorganization (and of the trust instrument) govern the permissible duties of a trustee *after* bankruptcy.") (emphasis in original); *see also In re Lyondell Chem. Co.*, 541 B.R. 172, 201 (Bankr. S.D.N.Y. 2015), *rev'd and remanded on other grounds*, 554 B.R. 635 (S.D.N.Y. 2016) (distinguishing between suits brought on behalf of the estate and those brought on behalf of assigning creditors); *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 509 (D. Del. 2012) ("[A] post-bankruptcy trustee who is not asserting claims on behalf of the estate is entitled, like any assignee, to bring claims on behalf of assigning creditors."). In this case, the Plan specifically

---

[20] The Liquidating Trust Beneficiaries are the Holders of Allowed Class 3 Claims, Class 4 Claims, and Class 5 Interests.

[21] *See supra* note 12.

entitled the Liquidating Trustee to step into the shoes of the Assigning Creditors and pursue claims on their behalf separate and apart from his duties to pursue claims on behalf of the estate.

In the *Lyondell* case, a Luxembourg entity acquired Lyondell Chemical Corp. ("Lyondell") in a leveraged buyout ("LBO") financed entirely by debt secured by the target company. *See In re Lyondell Chem. Co.*, 541 B.R. at 174–75. The LBO left Lyondell insolvent and overleveraged. Lyondell filed a petition under chapter 11 of the Bankruptcy Code a little over a year later. *Id.* at 175. Lyondell's plan of reorganization created a single trustee to pursue claims from a litigation trust and a creditor trust. *See id.* The trustee pursued fraudulent transfer claims on behalf of both trusts. *See id.* The bankruptcy court in *Lyondell* emphasized that the "carefully crafted terms of the [p]lan" established that the claims pursued by the trustee were "separate and distinct" with respect to the claims pursued on behalf of the estate and those pursued on behalf of assigning creditors. *Id.* at 201.

The focus should not be centered on who is enforcing the claim or on the multiple roles that entity may have; but rather, the focus should be directed on the source of the rights that are being enforced. In the case at bar, as in *Lyondell*, the trustee is pursuing the Assigned Creditor Claims "on behalf of the *creditors*." *Id.* (emphasis in original). This case also involves a carefully crafted Plan that differentiates between claims pursued by a trustee as successor in interest to the estate and claims pursued by a trustee as assignee of the Assigning Creditors. *See id.* Paragraph 6.5(c), Subparagraph 23 of the Plan governs the role of the Liquidating Trustee in this case and describes him as:

> the successor of the Debtors and the Creditors' Committee for all purposes, and to be the successor of the Assigning Creditors with respect to the Creditor Causes of Action of such Assigning Creditor to the extent such Creditor Causes of Action are assignable.

Confirmation Order at 83 ¶ 6.5(c)(23), *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. May 12, 2016), ECF No. 1095. Section 6.16 titled "Assignment of Creditor Causes of Action" further emphasizes that the "Creditor Causes of Action owned by Assigning Creditors shall be assigned to or otherwise transferred to the Liquidating Trust for the purpose of commencing, prosecuting, settling, releasing, and/or liquidating the Creditor Causes of Action for the benefit of Liquidating Trust Beneficiaries" *Id.* at 90 ¶ 6.16(a).

The Plan clearly treats the Assigned Creditor Claims as separate and distinct from estate claims. The Liquidating Trustee serves in two separate capacities: as the "successor of the Debtors" and as the "successor of the Assigning Creditors." *See id.* at 83 ¶ 6.5(c)(23).[22] The Release and Covenant Not to Sue contained in the APA apply only to claims that the Debtors held and had the capacity to release. *See* Sale Order at 48 ¶¶ 3.1–3.2, *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. Sept. 17, 2015), ECF No. 512. The APA could not release claims held by third party creditors. The Assigned Creditor Claims are not governed by the Release and the complementing Covenant Not to Sue set forth in the APA.

*Sale Order Injunction*

The injunction included at Paragraph 35 of the Sale Order does not enjoin creditors from enforcing their own separate claims against third parties. It only enjoined creditors holding claims against the Debtors from asserting those claims against True Health and the Purchased Assets. Accordingly, the injunction does not prohibit the Liquidating Trustee from pursuing the Assigned Creditor Claims as assignee of the Assigning Creditors.

Strict limitations are placed on a court's power to grant nondebtors a release and to enjoin third-parties from asserting such released claims against nondebtors. *See Nat'l Heritage Found. v.*

---

[22] The Plan directs the Liquidating Trustee to "prosecute and/or settle . . . any Litigation Claims." *See id.* at 81 ¶ 6.5(c)(12). The Plan defines Litigation Claims as (i) "Causes of Action which may be asserted by or on behalf of the Debtors" and (ii) "the Creditor Causes of Action assigned to the Liquidating Trust." *See id.* at 62 ¶ 1.76.

*Highbourne Found.*, 760 F.3d 344, 347 (4th Cir. 2014); *see also Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 712 (4th Cir. 2011) ("approval of nondebtor releases in this context should be granted cautiously and infrequently."). A court can release nondebtors from such third-party claims in the context of a confirmation order that complies with the *National Heritage* framework.[23] The case at bar concerns the Sale Order, not the Confirmation Order.[24]

True Health argues that the Sale Order Injunction bars all creditor claims relating to the operation of the Debtors' business. The Court was careful in entering the Sale Order to ensure that the scope of the injunction was not so overbroad. *See In re Merry-Go-Round Enters, Inc.*, 400 F.3d 219, 227 (4th Cir. 2005) ("a court's interpretation of its own order must be given substantial deference.") (citing *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 941 (4th Cir. 1996)). The Sale Order Injunction provides that

> all persons and entities . . . including . . . all **creditors** . . . **holding** a Lien, **Claim**, Encumbrance or Interest … **against**, in or with respect to any of **the Debtors** or the Purchased Assets … shall be forever barred, estopped, and permanently enjoined from asserting . . . **such** Lien, **Claim**, Encumbrance or Interest . . . against the

---

[23] In *National Heritage*, the Fourth Circuit adopted a test to address the adequacy of nondebtor third-party releases in chapter 11 plans. 760 F.3d 344 (4th Cir. 2014). The *National Heritage* court applied a six-factor *Dow Corning* test from the Court of Appeals for the Sixth Circuit that asked whether:
> (1) There is an identity of interests between the debtor and the third party . . . ; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization . . . ; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; [and] (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full.

*Id.* at 347 (quoting *Class Five Nevada Claimants v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 280 F.3d 648, 658 (6th Cir. 2002)).

[24] Citing *In re Sunland, Inc.*, No. 13-13301-tr7, 2014 WL 7011747, at *6 (Bankr. D. N.M. Dec. 11, 2014), True Health argues that "[t]he notion that Congress intended to limit channeling injunctions to § 524(g) [of the Bankruptcy Code] is contradicted by § 363(f) and thus has been rejected by the courts that have entered channeling injunctions to carry out § 363(f) sales." *See* True Health's Reply in Supp. Motion to Enforce at 6, *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. Sept. 27, 2017), ECF No. 3431. *Sunland* involved the sale of an insurance policy that was property of the estate. *See In re Sunland, Inc.*, 2014 WL 7011747 at *1. A creditor objected to an injunction in the sale order that prohibited it from pursuing claims against the policy. *See id.* Section 363(f) of the Bankruptcy Code permits a court to sell property free and clear of any interest in such property. 11 U.S.C § 363(f). The court in *Sunland* found that the creditor had no direct claim against the insurance policy and held that the insurance policy could be sold free and clear of such claims. *See In re Sunland, Inc.*, 2014 WL 7011747 at *3–6. None of the Assigned Creditor Claims in the case at bar assert an interest in or to the Purchased Assets.

12

>Successful Bidder . . . and each of their respective current and former . . . employees . . . ."

Sale Order at 29–30 ¶ 35, *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919 (Bankr. E.D. Va. Sept. 17, 2015), ECF No. 512 (emphasis added). The plain language of the injunction included in the Sale Order is entirely consistent with the holding in *Sunland*. The Sale Order Injunction does not apply to the Assigned Creditor Claims.

The Liquidating Trustee is not asserting the Assigned Creditor Claims "against, in or with respect to any of the Debtors or the Purchased Assets." Those claims are being asserted on behalf of third-party creditors against the True Health Defendants. Aetna, Cigna, and the other Assigning Creditors held those claims against the True Health Defendants individually. The Assigning Creditors did not need to proceed against the Debtors or the Purchased Assets in order to pursue their claims against the True Health Defendants. The transfer of the Assigned Creditor Claims to the HDL Liquidating Trust did not change the underlying nature of those claims. The Assigned Creditor Claims were, and continue to be, claims that the Assigning Creditors had against the True Health Defendants in their personal capacities.[25] The Sales Order Injunction did not enjoin the very broad range of third-party claims for which True Health now advocates.

---

[25] At the Hearing, True Health argued that the Assigned Creditor Claims were claims against the Debtor because they related to activities conducted by the True Health Defendants while they were employees working for the Debtor. This argument lacks factual foundation. The Debtors never employed the True Health Defendants. The True Health Defendants were employees of independent contractors engaged by BlueWave. Even if the True Health Defendants had been employees of the Debtor, any claims that the Assigning Creditors might have had against employees of the Debtors cannot be conflated with claims against the Debtors.

*Equitable Considerations*

True Health argues finally that equity weighs in its favor and that this Court should enforce the APA provisions and Sale Order Injunction under general principles of equity. While the Court recognizes the critical importance True Health played in the bankruptcy case, equity fails to trump the plain language of the Sale Order approved by this Court.

**Conclusion**

The Court finds that the Release, Covenant Not to Sue, and Sale Order Injunction do not bar the Liquidating Trustee from asserting the Assigned Creditor Claims against the True Health Defendants. Accordingly, the Court will deny True Health's Motion to Enforce.

A separate order shall issue.

ENTERED: Oct 4 2017

      /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

ENTERED ON DOCKET: Oct 4 2017