## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## (RICHMOND DIVISION)

| | |
|---|---|
| In re:<br><br>HEALTH DIAGNOSTIC LABORATORY INC. *et. al.*,[1]<br><br>             Debtors. | Chapter 11<br><br>Case No. 15-32919 (KRH)<br><br>(Jointly Administered) |

## THE TRUST PARTIES' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO CONFIRM THE HDL LIQUIDATING TRUST OVERSIGHT COMMITTEE'S DECISION TO APPOINT A LIQUIDATING TRUSTEE ON A PERMANENT BASIS

The HDL Liquidating Trust Oversight Committee (the "**Oversight Committee**") and

Richard Arrowsmith, in his capacity as Liquidating Trustee (the "**Liquidating Trustee**," and

together with the Oversight Committee, the "**Trust Parties**") of the HDL Liquidating Trust (the

"**HDL Liquidating Trust**"), appointed pursuant to the confirmed Modified Second Amended Plan

of Liquidation (the "**Plan**") of the Debtors (the "**Debtors**" or "**HDL**") in these jointly administered

bankruptcy cases (the "**Chapter 11 Cases**" or the "**Cases**"), by their undersigned counsel, hereby

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434).

Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Ste. 2010
Richmond, VA 23219
200 Bendix Road, Ste. 300
Virginia Beach, VA 23452
Telephone: (757) 497-6633
Direct: (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating Trustee
of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted pro hac vice)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating Trustee,
and the Liquidating Trust Oversight Committee.*

submit this memorandum of law (the "**Memorandum**") in accordance with this Court's *Order Adjourning Motion for the Appointment of a Permanent Liquidating Trustee* [D.I. 3638] (the "**Adjournment Order**") regarding the standard that should be applied in determining whether the Liquidating Trustee should be appointed on a permanent basis (the "**Determination Issue**") in connection with the *Motion of the Liquidating Trust Oversight Committee and the Liquidating Trustee to (I) Appoint Permanent Liquidating Trustee and (II) Extend Deadline to Object to Claims* [D.I. 3581] (the "**Permanent Trustee Motion**"),[2] and the objection [D.I. 3605] (the "**Objection**") to the Motion filed by Helena Laboratories, Noel Bartlett ("**Bartlett**"), and Dr. Robert S. Galen ("**Galen**," and together with Helena Laboratories and Bartlett, the "**Objecting Defendants**"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Permanent Trustee Motion should be granted and the Objection should be overruled for three reasons.  *First*, the standard this Court should apply in determining whether the Liquidating Trustee should be appointed on a permanent basis is the business judgment of the Oversight Committee as the Liquidating Trustee is a "representative of the estate" under Bankruptcy Code section 1123(b)(3)(B), not a "trustee" appointed under Bankruptcy Code section 1104 and the cases interpreting that section.  The commercially reasonable decision to appoint Mr. Arrowsmith as the permanent Liquidating Trustee is, however, subject to this Court's confirmation of that appointment under the terms and conditions of the applicable trust agreement and plan documents.

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Permanent Trustee Motion.

2.    As discussed more fully below, a post-confirmation trustee's powers are derived from the chapter 11 plan and liquidating trust agreement rather than from specific provisions of the Bankruptcy Code.  Therefore, in reviewing the trust creator's decision to appoint a trustee, courts primarily look to the trust documents, and to the extent provisions of those documents must be supplemented, to the applicable state law governing the administration of trusts. Further, in reviewing the decision to appoint a trustee, courts have limited their role to determining whether the creator of a trust or its designee complied with the express requirements of the trust agreement, and if so, give high level of deference to such decision.

3.    Where a conflict of interest exists, courts have held that such a conflict is immaterial so long as the trust documents provide sufficient safeguards against a trustee's breach of fiduciary duty. Hence, appointment is not barred unless there is a demonstrated abuse of power that is detrimental to the trust.

4.    Under these standards, the Objection does not implicate a set of facts, even if accepted as true, sufficient to bar the appointment of Mr. Arrowsmith as permanent Liquidating Trustee.  The Objection merely alleges that Mr. Arrowsmith *might* at some future date, become a witness in the D&O Action and *might* be forced to disavow or contradict the allegations in the D&O complaint.  *See* Objection, p. 2.  In other words, the Objecting Defendants assert that a hypothetical, rather than actual conflict of interest exists.  Such a tentative eventuality is not sufficient to bar the appointment of Mr. Arrowsmith under trust law.

5.    ***Second***, the Objection fails as a matter of law because it does not establish any grounds for this Court to overturn the Oversight Committee's discretion in selecting the Liquidating Trustee as permanent.  There are additionally no facts that suggest that Mr. Arrowsmith abused his power in a manner that was detrimental to the HDL Liquidating Trust. It

3

is uncontroverted that the Liquidating Trustee has complied with his fiduciary duty at all stages of these cases, including by filing the D&O Action, negotiating the sale of real property, reaching multi-million dollar settlements, and filing over fourteen-hundred adversary proceedings to avoid fraudulent and preferential transfers. *See* Permanent Trustee Motion, ¶ 19.

6.      Furthermore, had the Objection raised actual conflicts of interest, the Plan and applicable trust agreement establish numerous safeguards to protect against a trustee's breach of fiduciary duty, including an independent Oversight Committee charged with fiduciary duties and the ongoing supervision of this Court.[3]

7.      ***Third***, the Objection is barred by the doctrine of laches as it is predicated upon prepetition facts that were known to the Objecting Defendants Galen and Bartlett as members of the HDL Board of Directors ("**BOD**") at the time of the Liquidating Trustee's initial appointment. As set forth more fully in the Trust Parties' *Response in Opposition to Motion of Helena Laboratories, Noel Bartlett and Robert Galen to Adjourn Hearing on Motion to Appoint Permanent Liquidating Trustee* [D.I. 3672] (the "**Adjournment Opposition**"), the Objection is rife with accusations that are belied by contemporaneous documentary evidence that the Objecting Defendants have had in their possession before the Petition Date. The prepetition roles of the Liquidating Trustee and Alvarez and Marsal ("**A&M**") cannot serve as a basis to disturb the Oversight Committee's current decision to appoint the Liquidating Trustee as permanent under the terms and conditions of the applicable trust agreement.

---

[3] Even if the Court applied the disinterestedness standard of the Bankruptcy Code, Mr. Arrowsmith meets those requirements because the mere possibility of becoming a witness in an adversary proceeding does not constitute an "interest materially adverse to the interest of the estate." 11 U.S.C. § 101(14)(C) (2016).

4

## FACTUAL BACKGROUND

8.      Pursuant to the Plan and Confirmation Order, Richard Arrowsmith was appointed as Liquidating Trustee of the HDL Liquidating Trust on an interim basis.  *See* Confirmation Order ¶54; Plan § 1.74.  The Confirmation Order further provides that the Oversight Committee must select a permanent Liquidating Trustee from the Agreed List; provided, however, that if after commercially reasonable efforts of the Oversight Committee, appointment of a permanent Liquidating Trustee from the Agreed List no longer is practicable, the Liquidating Trust Oversight Committee shall be permitted to seek relief from the Court to appoint an appropriate permanent Liquidating Trustee who is not from the Agreed List.  *Id.*

9.      On December 7, 2018, the Trust Parties timely filed the Permanent Trustee Motion, indicating that, after exerting commercially reasonable efforts, inclusive of discussions of Counsel to the Oversight Committee with certain of the candidates on the Agreed List, the Oversight Committee determined that the appointment of a permanent Liquidating Trustee from the Agreed List was no longer practicable  given, among other things, the circumstances and complexity of these Cases, the economic factors attendant to replacement of Mr. Arrowsmith, and the nature of counsel's communication with other candidates from the Agreed List .

10.      On December 18, 2018, the Movants, all of whom are creditors holding disputed claims against these estates, filed their Objection, thereby commencing a contested matter governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "**Contested Matter**"). A preliminary hearing was convened in the Contested Matter on December 21, 2017 (the "**Preliminary Hearing**").  At the Preliminary Hearing, and as memorialized in the Adjournment Order, the Court directed the parties to brief the issue of what standard should apply to the Court's decision to confirm the appointment of a liquidating trustee on a permanent basis.

## DISCUSSION

**I.**  **Because the Liquidating Trustee is an Estate Representative Under Bankruptcy Code Section 1123(b)(3)(B), the Plan and Liquidating Trust Agreement, Supplemented by State Law, Provide the Standard for Confirming the Oversight Committee's Decision to Appoint Mr. Arrowsmith as Permanent Liquidating Trustee**

11.     Courts have held that specific provisions of the Bankruptcy Code, that would otherwise apply pre-confirmation do not apply to a post-confirmation liquidating trustee because he is the "representative of the estate" rather than a trustee.  *United States v. Bond*, 762 F.3d 255, 260 (2d Cir. 2014) (holding that liquidating trustee was not a "trustee" under section 1104 of the Bankruptcy Code; instead he was a "representative of the estate" under section 1123(b)(3)(B)); *In re Greater Se. Cmty. Hosp. Corp. I*, 341 B.R. 91, 96 (Bankr. D.D.C. 2006) (finding that liquidating trustee not entitled to one-year extension of limitations period under section 546(a)(1)(B) because he was not appointed under section 1104);  *see also In re W. Funding Inc.*, 550 B.R. 841, 850 (B.A.P. 9th Cir. 2016) (finding that for purposes of a settlement motion, a liquidating trustee was governed by different standards that were not "identical to those of a trustee under the Bankruptcy Code"), *aff'd*, 705 F. App'x 600 (9th Cir. 2017).[4]

12.     Illustratively in *Bond*, the government asserted that the waiver of sovereign immunity for bankruptcy court adjudication of tax refund claims did not confer jurisdiction to decide such claims filed by a liquidating trustee appointed under a chapter 11 plan.  The Second Circuit agreed, finding that the liquidating trustee was entirely distinct from a pre-confirmation trustee:

---

[4] Although the Permanent Trustee Motion referenced section 1104 of the Bankruptcy Code, it did so merely to reiterate that this Court has a role in confirming the fiduciaries who represent the interests of the estate.  By its terms, section 1104 only applies to appointment of a trustee "before confirmation of a plan" and is entirely inapplicable here.  11 U.S.C. § 1104(a) (2010).  For similar reasons, section 327(a) of the Bankruptcy Code only applies to professionals employed by "the trustee," which refers to a pre-confirmation debtor-in-possession or trustee.  Thus, by its terms, section 327 does not apply to a post-confirmation trustee, who is instead a "representative of the estate" under section 1123(b)(3)(B) of the Bankruptcy Code.

6

> [T]he Liquidating Trustee, who filed the refund claim with the IRS
> post-confirmation, is not a "trustee" as that word is used in the Code.
> In a Chapter 11 case, a trustee can only be appointed "before
> confirmation of a plan." 11 U.S.C. § 1104(a). The Liquidating
> Trustee, however, was appointed *pursuant* to the Plan, and was
> therefore not appointed "before confirmation." Both the Liquidating
> Trust Agreement and the Confirmation Order make this explicit. *See*
> Liquidating Trust Agreement at § 3.1(a), *In re PT–1 Commc'ns, Inc.*,
> No. 1–01–12655 (Bankr. E.D.N.Y. Oct. 19, 2010), ECF No. 1205–
> 2 ("The Liquidating Trustee shall be appointed pursuant to the
> Confirmation Order."); Confirmation Order ¶ 8, *In re PT–1
> Commc'ns, Inc.*, No. 1–01–12655 (Bankr. E.D.N.Y. Nov. 23, 2004),
> ECF No. 842 ("The Liquidating Trustee shall be appointed in
> accordance with the provisions of the Plan."). The Code makes clear
> that "the debtor," "the trustee," and an appointed "representative of
> the estate"—here, the Liquidating Trustee—are three distinct actors.
> See 11 U.S.C. § 1123(b)(3).

*Bond*, 762 F.3d at 260.

13.    Hence, in analyzing standards that govern liquidating trustees, courts have been

guided by the relevant plan documents and trust agreements rather than the Bankruptcy Code. *Id.*

("[T]he powers of a bankruptcy trustee or debtor-in-possession are set out by Congress in the Code,

whereas the powers of the Liquidating Trustee are found in the Plan and in the Liquidating Trust

Agreement and conferred by the bankruptcy court."); *In re BC Funding, LLC*, 519 B.R. 394, 410

(Bankr. E.D.N.Y. 2014) ("The authority and power of a trustee or debtor-in-possession, as those

terms are used in the Bankruptcy Code, derives from the Bankruptcy Code whereas the authority

and power of an estate representative appointed pursuant to section 1123(b)(3) derives solely from

the confirmed plan, confirmation order, and any operative documents adopted by reference into

the plan and confirmation order.").

14.    To the extent that the relevant trust documents do not address issues of trust

administration, courts look to applicable state law governing trusts to "fill in" the gaps. Indeed, in

an analogous circumstance, a bankruptcy court relied upon "[a]pplicable state law" in deciding

whether to remove a liquidating trustee for gross negligence or willful misconduct because there

7

was a "gap in the Liquidating Trust Agreement," which did not define "'cause' to remove [the liquidating trustee] which falls short of gross negligence or willful misconduct." *In re GSC Grp., Inc.*, 502 B.R. 673, 755 (Bankr. S.D.N.Y. 2013);[5] *see also In re New Century TRS Holdings, Inc.*, No. 07-10416, 2013 Bankr. LEXIS 2781, *21 n.12 (Bankr. D. Del. Jul. 9, 2013) (noting that the court was "uncertain that a post-effective date liquidating trustee is subject to the 'disinterestedness' requirement of the Bankruptcy Code").

15.    In reviewing the Oversight Committee's decision to appoint the Liquidating Trustee on a permanent basis, the Court should first look to the Liquidating Trust Agreement and Plan documents (including the Plan and Confirmation Order).  If any issues regarding the appointment of a permanent trustee are not addressed by the provisions of these documents, the Court should look to Virginia law governing the administration of trusts to supplement the provisions of the Plan, Confirmation Order and the Liquidating Trust Agreement.[6]

**II.    Pursuant to the Plan and the Liquidating Trust Agreement, the Oversight Committee is Charged with Appointing a Permanent Liquidating Trustee and Such Appointment Should be Confirmed In Deference to the Oversight Committee's Discretion Under Virginia Law**

16.    By its terms, the Liquidating Trust Agreement was "intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust."  Liquidating Trust

---

[5] Although the court in *In re GSC Group* referenced section 327 of the Bankruptcy Code, it did so only in the context of reviewing a pre-confirmation professional's fee applications on the United States Trustee's motion for vacatur of retention orders and disgorgement of professional fees.  *In re GSC Grp., Inc.*, 502 B.R. at 726-30.

[6] *See* Liquidating Trust Agreement, § 11.1 ("The Liquidating Trust created by this Agreement shall be construed in accordance with and governed by the laws of the Commonwealth of Virginia without giving effect to principles of conflict of laws, but subject to any applicable federal law.").

Agreement, § 1.3.  As an express trust,[7] the HDL Liquidating Trust is comprised of beneficiaries,[8] a Liquidating Trustee, and the Oversight Committee.  Accordingly, the general principles of law governing express trusts are applicable to the HDL Liquidating Trust.[9]

17.    Pursuant to the Liquidating Trust Agreement, the Oversight Committee is charged with overseeing the administration of the HDL Liquidating Trust and with sole discretion of replacing the Liquidating Trustee in accordance with Article VIII of the Liquidating Trust Agreement.  *See* Liquidating Trust Agreement, §§ 2.2, 3.2. Article VIII of the Liquidating Trust Agreement further provides that the Oversight Committee is charged with selection and appointment of a permanent Liquidating Trustee from the Agreed List.  *See* Liquidating Trust Agreement, § 8.1; *see also* Confirmation Order, ¶ 54; Plan § 1.74.  If appointment of a permanent Liquidating Trustee from the Agreed List is no longer practicable, the Liquidating Trust Agreement, Plan and Confirmation Order provide that the Oversight Committee "shall be permitted to seek relief from the Court to appoint an appropriate permanent Liquidating Trustee who is not from the Agreed List." *Id.*

---

[7] An express trust is a trust created "in express terms, and usually in writing, as distinguished from one inferred by the law from the conduct or dealings of the parties."  *See Black's Law Dictionary*, p. 1354 (5th Ed. 1979).

[8] As defined in the Plan, the "Liquidating Trust Beneficiaries" include holders of Allowed Class 3 Claims, Class 4 Claims, and Class 5 Interests.  The settlors of the HDL Liquidating Trust were the Debtors, who delegated their appointment authority to the Oversight Committee.

[9] Virginia's version of the Uniform Trust Code does not apply to the HDL Liquidating Trust because a "liquidation trust" is excluded from the scope of the statute.  Va. Code § 64.2-700.  Nonetheless, courts may look to the "policies, procedures, or rules of the Code" in resolving issues affecting trusts in general.  *Id.* In addition, the Virginia Uniform Trust Code provides that the statute should be supplemented by the "common law of trusts and principles of equity," and that in applying the Uniform Trust Code, "consideration should be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."  *See* Va. Code §§ 64.2-704, 64.2-805. In analyzing the common law principles that govern trusts, the Supreme Court of Virginia has looked to the Restatement of Law and other secondary sources as persuasive authorities.  *See, e.g., Carlson v. Wells*, 705 S.E.2d 101, 105 (Va. 2011) (looking to Restatement (Second) of Trusts to determine a trust custodian's standard of care); *see also Belcher v. Dandridge*, 61 Va. Cir. 684, *4 (2002) ("[T]he Supreme Court has traditionally viewed the Restatement as persuasive authority.").  Accordingly, this memorandum cites to Virginia law, as supplemented by secondary interpretive authorities and decisions in other common law jurisdictions.

18.     The only qualification placed on the appointment of a Liquidating Trustee is that the Oversight Committee select an "**appropriate** permanent Liquidating Trustee."  Plan, § 1.74; Confirmation Order, ¶ 54; Liquidating Trust Agreement, § 8.1 (emphasis added).  In other words, the only explicit requirement for a liquidating trustee not on the Agreed List is that he be "appropriate."

19.     The principles of governing trust law direct that the decision of a creator of a trust to appoint a trustee is entitled to a substantial level of deference and should not be overturned by a court.  *See Frazer v. Millington*, 475 S.E.2d 811, 815 (Va. 1996) (holding that the "[a]ppointment of trustees must conform precisely to the requirement of the trust document" and that in construing trust agreements, courts "seek to effectuate the intent of the grantor"); *see also* 90 C.J.S. Trusts § 299 ("[C]reator of a trust has the right to appoint his or her own trustees . . . .").[10]  Further, the creator of a trust can delegate the power to appoint a trustee "to any suitable person or agency." *Id.* § 300; § 298 ("A trustee can be appointed by any person so empowered by the terms of the trust.");[11] *see also Harbour v. Suntrust Bank*, 278 Va. 514, 519 (2009) (emphasizing that "[i]n considering the language of a trust agreement, the intent of the grantor controls").

20.     Once the trust's creator (or the person to whom the right to appoint has been delegated) exercises the right of appointment, his decision should be confirmed by the court. *See, e.g. Millington*, 475 S.E.2d at 814.  *See also* 90 C.J.S. Trusts § 301 ("In a proper case, the appointment should be confirmed by the court."); *State ex rel. Johnson v. Reed*, 219 W. Va. 289,

---

[10] *See Rollins v. Branch Banking & Tr. Co. of Va.*, 56 Va. Cir. 147, 148 (2001) (relying upon Corpus Juris Secundum as persuasive authority to resolve issues related to administration of a trust).

[11] Although in some jurisdictions, "persons who seek to be appointed as trustees by a court may be statutorily required to meet certain regulatory qualifications to be eligible for a judicial appointment; however, trustee nominees who are not appointed by a court may not be similarly required to meet these same statutory or regulatory qualifications."  76 Am. Jur. 2d Trusts § 215.  Thus, because the Oversight Committee and not the Court is charged with appointing the Liquidating Trustee, the disinterestedness requirements of the Bankruptcy Code do not apply.

294, 633 S.E.2d 234, 239 (2006) ("Generally, the selection of an executor by a testator or the
selection of a trustee by the settlor of a trust indicates that the testator or settlor did not intend to
leave that choice for others to make. Thus, in honoring that intent, the selection of an executor or
trustee should not be set aside lightly."); *In re Estate of Doyle v. Hunt*, 60 S.W.3d 838, 847 (Tenn.
Ct. App. 2001) ("We note that a settlor has the right to appoint whomever he wishes to serve as
trustee as long as the nominee meets the qualifications required of a trustee."); *Bond v. Bond*, 592
S.E.2d 801, 804 (W. Va. 2003) (holding the court erred in appointing replacement trustee where
trust documents limited that power to the settlor of the trust).

21.     In this case, the Debtors, as authorized by the BOD (which at the time included
Galen and Bartlett), were the creators (or settlors) of the HDL Liquidating Trust.  *See* Liquidating
Trust Agreement, Preamble. The Debtors, as settlors of the HDL Liquidating Trust, through the
BOD, appointed Richard Arrowsmith as the Liquidating Trustee on the interim basis and
authorized the Liquidating Trustee to "investigate (including pursuant to Bankruptcy Rule 2004),
prosecute and/or settle . . . any Litigation Claims not expressly released or waived under the Plan,"
which Litigation Claims included claims against the Objecting Defendants and all of which have
been dutifully brought by the Liquidating Trustee.[12]  *Id.* §§ 4.1(l), 8.1. The Debtors additionally
delegated the authority to appoint the permanent Liquidating Trustee to the Oversight Committee.
*See* Liquidating Trust Agreement, § 8.1; *see also* Confirmation Order, ¶ 54; Plan § 1.74.  The
selection by the Oversight Committee of Richard Arrowsmith as the permanent Liquidating

---

[12] "Litigation Claims" are defined in the Plan under section 1.76 to mean "claims, rights or other Causes of Action (as
defined in the Plan), which may be asserted by or on behalf of the Debtors . . . a nonexclusive list of which is set forth
on Exhibit A" to the Plan. *See* Plan, § 1.76. Exhibit A specifically enumerates as "Litigation Claims" the Causes of
Action identified in the *Motion of Creditors Committee for an Order Authorizing It to Conduct Bankruptcy Rule 2004
Examinations of the Debtors and Certain Third Parties*, the *Order Authorizing the Creditors Committee to Conduct
Bankruptcy Rule 2004 Examinations of the Debtors and Certain Third Parties*, and the Creditors' Committee demand
letter to the directors and officers of the Debtors ("**D&Os**"), dated October 26, 2015, whether such Cause of Action
is against such D&O in his or her capacityas such or is against such D&O in his or her individual capacity.

Trustee is the continuation of the Court-approved course of conduct duly delegated to the Oversight Committee by the Debtors under the terms and conditions of the Liquidating Trust Agreement and Plan documents.

22.     Measured by the above-referenced governing legal standard, the Court should confirm the Oversight Committee's properly exercised right to appoint Mr. Arrowsmith as the permanent Liquidating Trustee pursuant to the Liquidating Trust Agreement and related Plan documents and defer to the Oversight Committee's discretion, as provided by Virginia law.[13]

### III.    Even if a Conflict of Interest Existed, it Would Be Insufficient to Bar the Appointment of Mr. Arrowsmith as Permanent Liquidating Trustee Because Appropriate Safeguards Have Been Placed to Protect Trust Beneficiaries Against Any Breach of Fiduciary Duty

23.     In contesting the Motion, the Objecting Defendants rely upon an assertion that Mr. Arrowsmith suffers from a conflict of interest that bars his appointment as permanent Liquidating Trustee.  However, under the law, a conflict of interest does not constitute grounds for barring the appointment of a trustee where appropriate safeguards have been placed to protect beneficiaries against breach of fiduciary duty.  *See* 76 Am. Jur. 2d Trusts § 234 ("[A] conflict of interest is not sufficient to bar a person from serving as a trustee where the trustee would owe a statutory fiduciary duty to the trust, any breach of which would subject the trustee to a surcharge, and where regulations exist to assure the fulfillment of the fiduciary obligations.");[14] *In re Pace*, 699 N.Y.S.2d 257 (N.Y. Sup. 1999) (parents and brother of trust beneficiary were not barred from serving as trustees despite potential conflict of interest because "the foregoing statutory and

---

[13] As further evidence of the Oversight Committee's discretion in matters relating to the Liquidating Trustee, it is authorized upon the death, resignation, termination, incompetence or removal of the Liquidating Trustee to "appoint a successor Liquidating Trustee without the approval of the Bankruptcy Court."  Liquidating Trust Agreement, § 8.4. Additionally, the Oversight Committee is empowered to remove the Liquidating Trustee, with or without cause, by majority vote.  Liquidating Trust Agreement, § 8.3.

[14] *See Cohn v. Cent. Nat. Bank of Richmond*, 60 S.E.2d 30, 33 (Va. 1950) (looking to American Jurisprudence to resolve issues related to administration of a trust).

regulatory scheme protects the state's remainder interest in a supplemental needs trust from potential violations of a family trustee's fiduciary duty.").

24.     In this case, numerous provisions of the Liquidating Trust Agreement and Plan establish procedures to safeguard against a Liquidating Trustee's breach of duty to the HDL Liquidating Trust.  Section 4.5 of the Liquidating Trust Agreement imposes liability on the Liquidating Trustee if he acts with "bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud or self-dealing."  The Oversight Committee also provides "general oversight and direction to the Liquidating Trustee" and as set forth above, has absolute discretion to remove the Liquidating Trustee, with or without cause. *Id.* §§ 2.2, 8.3.  Thus, even if Mr. Arrowsmith did suffer a conflict of interest, such a conflict would be insufficient to bar his permanent appointment because appropriate measures have been taken to protect the beneficiaries of the HDL Liquidating Trust against any breach of fiduciary duty committed by their trustee.

25.     Recognizing that a conflict of interest could arise in respect of the Liquidating Trustee's service to the trust, this Court provided additional protective safeguards when it confirmed the Plan and entered the Confirmation Order. In taking those steps, this Court enabled Mr. Arrowsmith to resolve any of his own doubt as to what action is appropriate in the event of conflicting interests.  According to the Plan and Confirmation order, "if the Liquidating Trustee believes that he is conflicted or has a "good faith doubt as to any action that should be taken under this Agreement," he is authorized to (a) cease performance under the Liquidating Trust Agreement until the disagreement has been resolved; (b) file an interpleader suit; or (c) file any other appropriate motion for relief with a court of competent jurisdiction.  *Id.* § 4.8. The Bankruptcy Court also retains jurisdiction to "resolve any disputes arising under or related to the

13

implementation, execution, consummation or interpretation of the Plan." Plan, § 11(f); Confirmation Order, ¶ 65(f). Thus, in the event that Mr. Arrowsmith does encounter a conflict of interest, the Plan and Confirmation Order provide him with a roadmap for resolving the issue under this Court's supervision in a way that protects all parties with interests in the HDL Liquidating Trust.

26.    Even in the face of an actual, proven conflict of interest that has not been resolved in accord with the Plan and Confirmation Order, Mr. Arrowsmith should not be displaced unless it is demonstrated that he has abused his power. Indeed, courts have refused to remove the trustee unless there is a "demonstrated abuse of power" that is detrimental to the trust. *Forbes v. Forbes*, 341 P.3d 1041, 1065 (Wyo. 2015) ("Although [trustees] engaged in self-dealing [and breached their duty of loyalty], there is no evidence the trust estate suffered, nor is there a demonstrated abuse of power."); *In re Estate of Klarner*, 113 P.3d 150, 157 (Colo. 2005) (refusing to remove a trustee even though he had a potential conflict of interest and holding that a "settlor has a great deal of discretion in designating a trustee" and that a court generally will not remove a trustee "absent a demonstrated abuse of power"); *Copley v. Copley*, 126 Cal. App. 3d 248, 286–87 (Ct. App. 1981) ("When the settlor of a trust has named a trustee, fully aware of possible conflicts inherent in his appointment, only rarely will the court remove that trustee, and it will never remove him for potential conflict of interest but only for demonstrated abuse of power detrimental to the trust.") (internal quotation marks omitted); *Matter of Estate of Smith v. Boolos*, 204 So. 3d 291 (Miss. 2016) (declining to remove trustee, despite potential conflict of interest, because trustee had no personal interest in estate and his actions were in best interests of all beneficiaries). *See also* Restatement (Second) of Trusts § 107 cmt. f ("The court will less readily remove a trustee named

14

by the settlor than a trustee appointed by the court or by a third person who is by the terms of the trust authorized to appoint a trustee").

27.    Far from alleging an abuse of discretion on the part of the Oversight Committee or an abuse of power on the part of Mr. Arrowsmith, Objecting Defendants only present conclusory allegations that Mr. Arrowsmith has a conflict of interest because he may be a "key witness in the D&O adversary proceeding" and might "be forced, as a witness" to disavow or contradict the allegations in the D&O complaint.  Objection, p. 2.  These allegations are not accompanied by any allegation that either of the Trust Parties undertook actions that were detrimental to the trust.  To the contrary, Mr. Arrowsmith approved the filing of the D&O Action in accordance with his fiduciary duty to the Oversight Committee and all beneficiaries of the HDL Liquidating Trust.  Because the allegations raised in the Objection are insufficient to trigger a legal conclusion that the Motion should be denied, the Objection should be overruled.

### IV.    Allegations As to Mr. Arrowsmith's Prepetition Actions Cannot Constitute a Basis to Bar His Appointment as the Permanent Liquidating Trustee Under Virginia Law

28.    The Objection should also be overruled because it relies upon factual circumstances that were known to the Oversight Committee (and as discussed below, the Objecting Defendants) at the time of Mr. Arrowsmith's initial appointment.  Mr. Arrowsmith's prepetition actions regarding the Debtors were well-known to the creditor body in general, and the Oversight Committee in particular, when Mr. Arrowsmith was initially appointed as interim Liquidating Trustee.  This Court specifically found in the Confirmation Order that the Debtors have "disclosed all material facts regarding, to the extent applicable . . . the selection of the interim and permanent Liquidating Trustees."  Confirmation Order, ¶ 73(c).

29.    Under those circumstances, the Objection does not establish sufficient grounds to bar the appointment of Mr. Arrowsmith as the permanent Liquidating Trustee.  *See* Restatement

15

(Second) of Trusts § 107 cmt. f ("The court will not ordinarily remove a trustee named by the settlor upon a ground existing at the time of his appointment and known to the settlor and in spite of which the settlor appointed him, although the court would not have appointed him trustee");  76 Am. Jur. 2d Trusts § 230 ("[C]ourts will ordinarily not remove a trustee appointed by the settlor for grounds existing at the time of the trust's creation and known to the settlor even though the court would not have appointed such person trustee.").  *See also In re Hanes*, 214 B.R. 786, 816 (Bankr. E.D. Va. 1997) (finding no conflict of interest where trustee served as executor, trustee, attorney-in-fact, and beneficiary because settlors of trust were aware of conflict of interest); *see also In re GSC Group*, 502 B.R. at 755 (finding that pre-confirmation conduct could not serve as a basis to remove a liquidating trustee because "there is absolutely nothing in the Liquidating Trust Agreement that contemplates removal of the trustee for conduct that occurred before such agreement took effect," and that even if it did, the trustee's conduct "does not rise to the level of gross negligence or willful misconduct"); *Schildberg v. Schildberg*, 461 N.W.2d 186, 192 (Iowa 1990) (refusing to remove trustee based upon friction between trustee and beneficiaries when the potential conflict was known to settlor at time of appointment).

## V.    Even Assuming, Arguendo, That the Disinterestedness Standards of the Bankruptcy Code Apply, the Liquidating Trustee Does Not Have an Interest That is Materially Adverse to the Estate

30.    Even assuming the Bankruptcy Code's disinterestedness requirements are applicable to the Contested Matter, the allegations in the Objection do not disqualify Mr. Arrowsmith because he does not have an interest that is materially adverse to the HDL Liquidating Trust.[15]

---

[15] To apply the disinterestedness requirements of the Bankruptcy Code to the Liquidating Trustee when those same requirements are inapplicable to the Liquidating Trustee's retained professionals (including his professional firm) would require an anomalous interpretation of the Plan. *See* Confirmation Order ¶ 71 and Plan § 4.2 ("[A]ny requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or

31.    In order to be retained pre-confirmation as a professional or appointed as a trustee,

a person must be "disinterested," which is defined in section 101 of the Bankruptcy Code as

someone who

> (A) is not a creditor, an equity security holder, or an insider; (B) is
> not and was not, within 2 years before the date of the filing of the
> petition, a director, officer, or employee of the debtor; and (C) does
> not have an interest materially adverse to the interest of the estate or
> of any class of creditors or equity security holders, by reason of any
> direct or indirect relationship to, connection with, or interest in, the
> debtor, or for any other reason.

11 U.S.C. § 101(14) (2016).

32.    Although the phrase "interest adverse to the estate" is not defined in the Bankruptcy

Code, courts in this district have held that an "adverse interest" means either "(1) the possession

or assertion of any economic interest that would tend to lessen the value of the bankruptcy estate

or create an actual or potential dispute with the estate as a rival claimant, or (2) a predisposition of

bias against the estate." *See In re Lewis Road LLC*, No. 09-37672, 2011 WL 6140747, at *7

(Bankr. E.D. Va. Dec. 9, 2011); *see also In re Alpha Nat. Res., Inc.*, 556 B.R. 249, 258 (Bankr.

E.D. Va. 2016).  An "actual dispute" has been further defined as "active competition between two

interests, in which one interest can only be served at the expense of the other."  *Lewis Road*, 2011

WL 6140747, at *7 (internal quotation marks and citations omitted).

33.    The mere potential for Mr. Arrowsmith to become a witness in the D&O Action

does not implicate an "interest adverse to the estate" that would cause him to serve interests hostile

to the HDL Liquidating Trust.  Mr. Arrowsmith acted in accordance with his fiduciary duties at all

---

compensation for services rendered after [the Effective Date] shall terminate, and the Liquidating Trustee, subject to
applicable non-bankruptcy law, may employ and pay any Professional in accordance with the Liquidating Trust
Agreement, in the ordinary course of business without any further notice to or action, order, or approval of the Court.");
Liquidating Trust Agreement, § 4.6 (stating that that the professionals retained by the Liquidating Trustee "need not
be 'disinterested'", and "may include, without limitation, the Liquidating Trustee's firm (should the Liquidating
Trustee be a part of a professional services firm)").

relevant times, including by filing a complaint against HDL's former directors, officers, and others. The Objection does not allege that Mr. Arrowsmith has demonstrated an actual or potential bias against the HDL Liquidating Trust. *See, e.g.*, *In re Barkany*, 542 B.R. 699, 717 (Bankr. E.D.N.Y. 2015) (finding chapter 7 trustee was disinterested even though he had represented a person who was a potentially key witness in an adversary proceeding and finding there was no evidence that the trustee had any "predisposition under circumstances that render a bias against the estate"). Because no such bias was alleged in the Objection, and because no adverse interests are implicated by the appointment of Mr. Arrowsmith as the permanent Liquidating Trustee, the Objection should be overruled.

**VI.    The Objection is Barred by the Equitable Doctrine of Laches Because the Objecting Defendants Consented to the Appointment of Mr. Arrowsmith as Interim Liquidating Trustee But Inexplicably Took No Action**

34.     Finally, the doctrine of laches provides the Trust Parties with a complete defense to the Objection because Galen and Bartlett were aware of any potential conflict of interest on the part of Mr. Arrowsmith when they approved his appointment as Liquidating Trustee.

35.     "'*Laches* is such neglect or omission to do what one should do as warrants the presumption that he has abandoned his claim, and declines to assert his right.'" *Pittman v. Pittman,* 158 S.E.2d 746, 749 (Va. 1968) (citation omitted).  In other words, laches is "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Finkel Outdoor Prods., Inc. v. Bell,* 140 S.E.2d 695, 699 (Va. 1965); *see also Klackner v. Willis*, 15 Va. Cir. 67 (1987), *supplemented*, 1988 WL 619095 (Va. Cir. Ct. Jan. 20, 1988) ("[Laches] applies where prejudicial delay in asserting a right, by one who is knowledgeable of his rights or has means of knowing his rights, works to the disadvantage of another."). *Cf.* Restatement (Second) of Trusts § 219(1) ("The beneficiary cannot hold the trustee

liable for a breach of trust if he fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable.").

36.    As members of the BOD throughout the Chapter 11 Cases, Galen and Bartlett were involved in the development of the Plan and negotiations with the Official Committee of Unsecured Creditors and other constituencies.   In their roles as directors of HDL, Galen and Bartlett were aware of the Liquidating Trustee's role in bringing Litigation Claims against them as well as the fact that Richard Arrowsmith would be appointed as the interim Liquidating Trustee under the Plan, which was approved by the BOD.   Specifically, the Plan makes clear that the Liquidating Trustee would be responsible for "investigation, analyzing, commencing, prosecuting, litigating, compromising, collecting, and otherwise administering all Litigation Claims."   Plan, §§ 6.4(e), 6.5(c)(12).   The Litigation Claims include, among other things, the following causes of action against Helena Laboratories and the Debtors' current and former shareholders and D&Os:

- Intentional or constructive fraudulent conveyance under Section 548 of the Bankruptcy Code and Sections 55-80 and 55-81 of the Virginia Code.

- Preference payments under Section 547 of the Bankruptcy Code.

- Unlawful distributions to shareholders in violation of Section 13.1-653 of the Virginia Code.

- Breach of fiduciary duty under Section 13.1-690 of the Virginia Code.

- Virginia common law conspiracy and statutory conspiracy under Section 18.2-499 of the Virginia Code.

- Claims for claims for overpayments, unjust enrichment, fraud, negligent misrepresentation, tortious interference with contract and unfair and deceptive, and civil conspiracy, whether under federal law or the laws of any state.

- The Claims and Causes of Action asserted in the actions captioned Connecticut General Life Insurance Company et al v. Health Diagnostic Laboratory, Inc.,(Case No. 3:14-cv-01519-VAB).

19

- Aiding and abetting any act or omission of any Entity.

*See* Plan, Ex. A.

37. Based upon the expansive definition of Litigation Claims, Galen and Bartlett were on notice that the Liquidating Trustee was empowered to bring the types of claims that ultimately were asserted against them in the D&O Action. They were also familiar with both Mr. Arrowsmith's and A&M's prepetition roles with respect to the Debtors. When Galen and Bartlett approved the filing of the Plan and Liquidating Trust Agreement, they consented to Mr. Arrowsmith's appointment as interim Liquidating Trustee. *See* Plan, § 1.74 (Liquidating Trustee means "initially on an interim basis, Richard Arrowsmith"); Liquidating Trust Agreement, § 8.1 ("The Liquidating Trustee initially on an interim basis shall be Richard Arrowsmith"). And not only were Galen and Bartlett represented by Debtors' counsel in their capacities as board members, they also retained Barnes and Thornburg, LLP as their personal counsel. *See* Proof of Claim Nos. 1306-1307, 1317-1320 (proof of claims for Galen, Bartlett, and Helena Laboratories were filed by Barnes and Thornburg, LLP). Thus, the Objecting Defendants had knowledge of all material facts relating to Mr. Arrowsmith and were advised by competent counsel at all stages of the Chapter 11 Cases.

38. Despite their knowledge of the alleged potential for a conflict of interest, at no point during the Plan process did the Objecting Defendants raise any objection to the appointment of Mr. Arrowsmith as interim Liquidating Trustee. The timing of the Objection highlights that it is nothing more than a litigation tactic that is barred by laches. The Objecting Defendants waited twenty-nine months after the Petition Date, eighteen months after the Liquidating Trustee was appointed, and fourteen months after the D&O Action was filed to raise their objections to Mr. Arrowsmith's appointment. As evidenced by their receipt of board minutes and emails during their service as directors of HDL, the Objection is predicated upon allegations that were known to

20

the Objecting Defendants well before the Petition Date.  *See* Adjournment Opposition at ¶ 8.  The Objecting Defendants' long and unexplained delay in bringing the Objection has resulted in prejudice to the HDL Liquidating Trust and its beneficiaries who now face uncertainty over the appointment of a permanent Liquidating Trustee.  For the foregoing reasons, the Objection should be dismissed based upon the doctrine of laches.

### CONCLUSION

WHEREFORE, the Trust Parties respectfully request that the Court (1) apply the Virginia state law legal standard for confirming the appointment of a permanent liquidating trustee as set forth herein; (2) grant the Permanent Trustee Motion; (3) overrule the Objection and enter an order appointing Richard Arrowsmith as the permanent Liquidating Trustee; and (4) grant such other and further relief as may be just and proper.

Dated:  January 25, 2018

/s/ Cullen D. Speckhart
Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Ste. 2010
Richmond, Virginia 23219
200 Bendix Road, Ste. 300
Virginia Beach, Virginia 23452
Telephone: (757) 497-6633
Direct: (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Plaintiff Richard Arrowsmith,*
*Liquidating Trustee of the HDL Liquidating*
*Trust*

Respectfully submitted,

Richard S. Kanowitz (admitted *pro hac vice*)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com

*Counsel to Plaintiff Richard Arrowsmith,*
*Liquidating Trustee of the HDL Liquidating*
*Trust, and the Liquidating Trust Oversight*
*Committee*