## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## (RICHMOND DIVISION)

In re:

HEALTH DIAGNOSTIC LABORATORY
INC. *et. al.*,[1]

Debtors.

Chapter 11

Case No. 15-32919 (KRH)

(Jointly Administered)

## MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 105 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 APPROVING (I) SETTLEMENT BETWEEN THE LIQUIDATING TRUSTEE AND UNITED STATES OF AMERICA; AND (II) AUTHORIZING LIQUIDATING TRUSTEE TO ENTER INTO PROPOSED INTERCREDITOR AGREEMENT WITH THE UNITED STATES OF AMERICA

Richard Arrowsmith, in his capacity as Liquidating Trustee of the HDL Liquidating Trust (the "**Liquidating Trustee**"), appointed pursuant to the Debtors' confirmed Modified Second Amended Plan of Liquidation (the "**Plan**") in these jointly administered bankruptcy cases (the "**Chapter 11 Cases**" or the "**Cases**"), by his undersigned counsel, hereby moves the Court (the "**Motion**") pursuant to section 105 of title 11 of the United States Code (the "**Bankruptcy Code**") for an order (i) approving the settlement between the Liquidating Trustee and the United States Department of Justice, Civil Division ("**DOJ**") acting on behalf of The United States of America

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434).

Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Ste. 2010
Richmond, VA 23219
Bendix Road, Ste. 300
Virginia Beach, VA 23452
Telephone: (757) 497-6633
Direct: (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted pro hac vice)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating Trustee, and the Liquidating Trust Oversight Committee*

("**United States**"), and (ii) authorizing the Liquidating Trustee to enter into the proposed intercreditor agreement (the "**Proposed Intercreditor Agreement**") with the United States.  In support of this Motion, the Liquidating Trustee respectfully represents as follows:

## JURISDICTION

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Motion is a core proceeding within the meaning of 28 U.S.C. § 157.

2.      The relief sought in this Motion is predicated upon section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

**A.      Procedural Background**

3.      On June 7, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

4.      On June 9, 2015, the Court entered an order authorizing the joint administration of these Chapter 11 Cases, pursuant to Bankruptcy Rule 1015(b) [Bankr. Dkt. No. 42].[2]

5.      On June 16, 2015, the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division, appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), pursuant to section 1102 of the Bankruptcy Code.

6.      On May 12, 2016, this Court entered its Confirmation Order confirming the Plan.

7.      Pursuant to the Plan and 11 U.S.C. § 1123, the Liquidating Trustee is the successor, for all purposes, of the Debtors and the Creditors' Committee, and is thereby vested with standing to bring this Motion as a representative of the HDL Liquidating Trust.

---

[2] "Bankr. Dkt. No." refers to documents filed in Case No. 15-32919 (KRH), and "Adv. No.__, Dkt. No.__" refers to documents filed in the specified adversary proceeding.

8.      On December 22, 2015, the United States filed Proof of Claim No. 1335 in the amount of $94,144,852.52, plus interest, based on HDL's conduct dating back to November 2008 (the "**United States' Claim**"). The United States' Claim was subsequently reduced pursuant to an Agreement on Allowance of Proof of Prepetition Claim and Subject Matter Waiver between the United States and Liquidating Trustee effective May 2, 2017 [Bankr. Dkt. No. 2196], such that the United States' Claim provides the United States with an allowed Class 3 general unsecured claim in the amount of $40,644,852.50 (the "**Class 3 General Unsecured Claim**").

**B.      The D&O and Tax Actions**

9.      On September 16, 2016, the Liquidating Trustee filed an adversary complaint [Bankr. Dkt. No. 1479] as amended on August 17, 2017 [Adv. Proc. No. 16-03271, Dkt. No. 375] (the "**D&O Complaint**") in Adv. Proc. No. 16-03271 (the "**D&O Action**") against Floyd Calhoun Dent III ("**Dent**") and BlueWave Healthcare Consultants, Inc. ("**BlueWave**"); AROC Enterprises, LLC; CAE Properties, LL; Cobalt Healthcare Consultants, Inc.; Riverland Pines, LLC; Crosspoint Properties, LLC; Helm-Station Investments LLP; Lakelin Pines, LLC; and Trini "D" Island, LLC (each, a "**Dent Entity**," and together with Dent, and his wife, Christina Dent, the "**Dent Debtors**"), Robert Bradford Johnson ("**Johnson**") and BlueWave; Blue Eagle Farming, LLC; War-Horse Properties, LLLP; Eagle Ray Investments, LLC; H J Farming, LLC; Blue Smash Investments, LLC; Forse Investments, LLC; Royal Blue Medical, Inc.; Blue Eagle Farm, LLC; Forse Medical, Inc.; and Armor Light, LLC (each, a "**Johnson Entity**," and together with Johnson, the "**Johnson Debtors**"), and certain other of HDL's former officers, directors, shareholders, and entities affiliated with them, seeking over $600 million in damages.

10.     The D&O Complaint includes various claims and causes of action naming the Dent Debtors and the Johnson Debtors (among others), alleging causes of action including claims for,

*inter alia*, avoidance of fraudulent and preferential transfers, breach of fiduciary duty, violation of the trust fund doctrine, conspiracy, fraud, and tortious interference.

11.     On June 6, 2017, the Liquidating Trustee filed an adversary complaint commencing *Arrowsmith v. Mallory, et al.*, Adv. Proc. No. 17-04300 (the "**Tax Action**") as amended on January 15, 2018 [Adv. Proc. No. 17-04300 No. 63], which asserts claims against Dent and Johnson for, *inter alia*, breach of contract, aiding and abetting breach of fiduciary duty, and conspiracy in their capacities as shareholders of HDL

**C.     The South Carolina Action and Verdict**

12.     On January 31, 2018, a jury entered a verdict in favor of the United States (the "**South Carolina Verdict**"), finding that HDL's former CEO, LaTonya S. Mallory, Dent, and Johnson violated the False Claims Act, 31 U.S.C. §§ 3729-3733 ("**FCA**") and entering a further determination that the total value of the 35,074 claims for services by HDL that violated the FCA was $16,601,591.00. *See United States of America, et al. v. BlueWave Healthcare Consultants, et al.*, Case No. 14-cv-00230-RMG (D.S.C. Sept. 26, 2014) (the "**South Carolina Action**"), Dkt. No. 870. Accordingly, on May 23, 2018, the court in the South Carolina Action entered a judgment against Dent and Johnson (the "**Judgment**") in the amount of $111,109,655.30 for the HDL claims, and $3,039,006.56 for claims relating to Singulex, Inc.  *See* South Carolina Action, Dkt. No. 910.

13.     Pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3103-3105, the United States obtained writs of attachment against the Johnson Debtors and the Dent Debtors in the South Carolina Action on February 10, 2016.  The United States asserts that the writs of attachment grant it allowable, secured claims against the Johnson Debtors and the Dent Debtors.

D.      **The Constructive Trust Action**

14.      On March 9, 2018, the Liquidating Trustee filed an adversary complaint (the "**Constructive Trust Complaint**"), commencing *Arrowsmith v. Dent, et al.*, Adv. Proc. No. 18-03022 (the "**Constructive Trust Action**," and together with the D&O Action and the Tax Action, the "**HDL Actions**") against BlueWave, certain of the Johnson Debtors, certain of the Dent Debtors, and the United States.  The Constructive Trust Complaint alleges causes of action against the defendants for imposition of a constructive trust and a related declaratory judgment.

15.      The Liquidating Trustee seeks to impose a constructive trust over the $220.3 million paid by HDL to BlueWave and subsequently transferred by BlueWave to Dent, Johnson, and their respective transferees. Constructive Trust Complaint at ¶ 87. The Liquidating Trustee seeks a related declaratory judgment that either (i) the $220.3 million paid to BlueWave is held in constructive trust for the benefit of HDL's estate and its creditors, including the Assigning Creditors (as defined in the Constructive Trust Complaint); (ii) the funds HDL paid to BlueWave in excess of the approximately $16.6 million awarded by the South Carolina Verdict, or approximately $203.7 million, are held in constructive trust; or (iii) the funds HDL paid to BlueWave stemming from illegal commissions premised on claims by non-government payors, or approximately $130.6 million, are held in constructive trust.

16.      The Dent Debtors and the Johnson Debtors filed a motion to dismiss the Constructive Trust Complaint on April 12, 2018 [Adv. 18-03022 Dkt. No. 9], and the Liquidating Trustee filed his opposition to the motion on May 17, 2018 [Adv. 18-03022 Dkt. No. 16].  On June 22, 2018, before the United States' response to the Constructive Trust Complaint was due, the Court entered a consent order administratively staying this adversary proceeding for all purposes pending further order of the Court. *See* Adv. 18-03022 Dkt. No. 26.

E.      **The Johnson Debtors' Bankruptcy Cases**

17.     On June 8, 2018, certain of the Johnson Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama (the "**Alabama Bankruptcy Court**"). The Johnson Debtors' cases are jointly administered and currently pending under Case No. 18-02395 (TOM11) (the "**Johnson Bankruptcy Case**").[3] The Liquidating Trustee asserts that he has allowable non-dischargeable claims exceeding the amount of FCA Judgment against the Johnson Debtors and the Dent Debtors. Accordingly, on September 11, 2018, the Liquidating Trustee filed a non-dischargeability action in the Alabama Bankruptcy Court against Johnson. *See* Johnson Bankruptcy Case, Dkt. No. 226.[4]

F.      **The Proposed Intercreditor Agreement**

18.     The Proposed Intercreditor Agreement is the product of negotiations between the United States and the Liquidating Trustee in the court-ordered mediation held before the Honorable David J. Novak, U.S.M.J. *See In re Mediation in Health Diagnostic Laboratory, Inc. Cases*, Misc. Case No. 3:17mc004 (DJN) (E.D. Va. June 6, 2018), Dkt. No. 190. The Proposed Intercreditor Agreement would resolve all disputes relating to the (i) the Liquidating Trustee's challenge to the United States' secured interests in property of the Dent Debtors and the Johnson Debtors; (ii) all outstanding issues between the parties in respect of their competing claims asserted or assertable against the Dent Debtors and the Johnson Debtors, including but not limited to, claims asserted or to be asserted in the Johnson Bankruptcy Case; and (iii) all outstanding disputes between the Liquidating Trustee and the United States arising in the Constructive Trust Action.

---

[3] Neither Dent nor any of his affiliated entities have filed a voluntary bankruptcy petition pursuant to the Bankruptcy Code, nor has any involuntary bankruptcy petition been filed against any of them.

[4] The United States also filed a non-dischargeabilty action in the Alabama Bankruptcy Court against Johnson with respect to the amounts of the FCA Judgment not automatically excepted from the discharge under section 523(a)(7) of the Bankruptcy Code. *See* Johnson Bankruptcy Case, Dkt. No. 246.

19.     The Liquidating Trustee believes the Proposed Intercreditor Agreement is in the best interest of the estate and has sought the DOJ's final approval.  Pending receipt of that approval, because of timing considerations, the Liquidating Trustee believes it is prudent to seek this Court's approval of the Proposed Intercreditor Agreement concurrent with the DOJ's consideration of the agreement.   The Liquidating Trustee anticipates that any DOJ approval of the Proposed Intercreditor Agreement will occur before the hearing on this Motion.  The primary terms of the Proposed Intercreditor Agreement include, but are not necessarily limited to, the following:[5]

a.   **Split of Disbursements and Collections from Dent Debtors and Johnson Debtors.** The Liquidating Trustee and DOJ shall divide all value and consideration in the form of assets, collateral, claims, actions, funds, disbursements, proceeds, real or personal property, or otherwise, collected from the Dent Debtors,  the Johnson Debtors, the Additional Johnson or Dent Transferees[6] and/or the estates of the Dent Debtors and the Johnson Debtors, as well as from Additional Transferee Recovery Actions (as defined in paragraph 2 of the Intercreditor Agreement), (collectively, the "**Assets**"), regardless of whether such collection occurs as a result of distributions from a bankruptcy estate or by any other means, including, but not limited to, actions against

---

[5] This is not an exhaustive list of the terms of the Proposed Intercreditor Agreement. If the DOJ approves the Proposed Intercreditor Agreement, the Liquidating Trustee will supplement this Motion by promptly filing a copy of the agreement in its DOJ-approved form.  This Motion's descriptions of the Proposed Intercreditor Agreement are subject to its terms in the form approved by the DOJ.

[6] The Additional Johnson or Dent Transferees include, *inter alia*, the Johnson Entities; the Dent Entities; Denko Properties, LLC; HisWay of SC; Pilot House, LLC; any trust set up for the benefit of Dent's children and/or descendants and/or relatives and/or church, including, but not limited to, the Dent Children Trust-2013; Johnson Farming; Cobalt Healthcare Consultants; Morning Star Holdings, Limited in Charlestown; Nevis; Eagle Pharmacy, Inc.; Ray-Ray Trust FPO Reagan Johnson; Holland Johnson Trust-2012 FBO Holland Johnson; and any trust set up for the benefit of Johnson's children and/or descendants and/or relatives and/or church, including, but not limited to, the Holland Johnson Trust-2012 FBO Holland Johnson.

certain transferees or execution on property pursuant to federal or state law, as follows:

    i.  With the limited exception of certain costs, the United States is entitled to the first $9 million of Assets disbursed or collected; and

    ii.  With the limited exception of certain costs, any amounts recovered from the Assets that exceed $9 million shall be divided equally between the United States and the Liquidating Trustee.

b.  **Additional Transferee Recovery Actions.** To the extent the Liquidating Trustee pursues Additional Transferee Recovery Actions that the Johnson Debtors, the Dent Debtors, any Additional Johnson or Dent Transferee, or any trustee or representative appointed pursuant to 11 U.S.C. §§ 701-703, 1104, 1123 (as applicable) decline to pursue against any Additional Johnson or Additional Dent Transferees or actions to recover Assets described on any bankruptcy schedules, the United States and the Liquidating Trustee shall share equally in any remaining proceeds, after deducting reasonable expenses and one-half of the amount of reasonable fees incurred by the Liquidating Trustee in pursuing each Additional Transferee Recovery Action.

c.  **HDL Recovery Actions.** All proceeds recovered from potential claims and causes of action that are not Additional Transferee Recovery Actions because they seek recovery against recipients and/or transferees of value or consideration from HDL that the United States could not recover or collect in its own right shall belong solely to HDL's bankruptcy estate and creditors.

d.   **Applicability to Dent Debtors.**  The Proposed Intercreditor Agreement shall apply to all actions to collect value or consideration from the Dent Debtors and the Additional Dent Transferees.

e.   **Treatment of United States' Claims.**  The Liquidating Trustee agrees not to (i) challenge, reduce, or seek to offset the United States' distribution on account of the United States' Class 3 General Unsecured Claim based on any distribution or recovery under this Proposed Intercreditor Agreement, or (ii) challenge the DOJ's current or future liens against the Johnson Debtors or the Debt Debtors.

f.   **Dismissal of the United States from the Constructive Trust Action**.  Within five business days after the order approving the Proposed Intercreditor Agreement becomes final and non-appealable, the Liquidating Trustee shall dismiss the United States as a defendant to the Constructive Trust Action with prejudice.

## RELIEF REQUESTED

20.     By this Motion, the Liquidating Trustee seeks, subject to the DOJ's approval, the entry of an order attached hereto as **Exhibit A**, (i) approving the settlement between the Liquidating Trustee and the United States; and (ii) authorizing the Liquidating Trustee to enter into the Proposed Intercreditor Agreement with the United States attached hereto as **Exhibit B**.

## BASIS FOR RELIEF

21.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  In turn, Rule 9019(a) provides that: "[o]n motion by the trustee and after notice and a

hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

Compromises and settlements are "'a normal part of the process of reorganization.'" *Protective*

*Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)

(quoting *Case v. Los Angeles Lumber Prods. Co*., 308 U.S. 106, 130 (1939)).  And the settlement

of time-consuming, burdensome, and uncertain litigation—especially in the bankruptcy context—

is encouraged.  *See, e.g.*, *In re Penn Central Transp. Co.*, 596 F.2d 1102, 1113 (3rd Cir. 1979); *In*

*re Mavrode*, 205 B.R. 716, 719 (Bankr. D.N.J. 1997).

22.     The decision whether to approve a compromise under Rule 9019 is committed to

the discretion of the Court, which must determine if the compromise or settlement is fair and

equitable.  *In re Alpha Nat. Res. Inc.*, 544 B.R. 848, 856 (Bankr. E.D. Va. 2016); *In re Frye*, 216

B.R. 166, 174 (Bankr. E.D. Va. 1997).  The Court is not required to conduct a "mini-trial" of the

underlying case, however, but instead must decide only whether the settlement proposed falls

"below the lowest point in the range of reasonableness."  *In re Austin*, 186 B.R. 397, 400 (Bankr.

E.D. Va. 1995) (citations omitted); *accord Alpha Nat. Res.*, 544 B.R. at 857.

23.     Factors the Court should consider when evaluating a settlement under Rule 9019

include: (i) the probability of success in the litigation; (ii) the complexity, expense, and likely

duration of the litigation; (iii) all other factors relevant to making a full and fair assessment of the

proposed compromise, including potential difficulties in collection, if any; and (iv) whether the

proposed compromise is fair and equitable to the debtor, its creditors, and other parties in

interest.  *TMT Trailer Ferry*, 390 U.S. at 424; *Alpha Nat. Res.*, 544 B.R. at 857; *Frye*, 216 B.R.

at 174.

24.     Basic to the process of evaluating proposed settlements is "the need to compare the

terms of the compromise with the likely rewards of litigation."  *TMT Trailer Ferry*, 390 U.S. at

425. However, "the settlement may be approved even if the court finds it likely that the trustee would ultimately succeed in the litigation." *In re Austin*, 186 B.R. at 400. Indeed, the Court need only to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608, 613 (2nd Cir. 1983.

25.     The Proposed Intercreditor Agreement represents the culmination of intense, arms-length negotiations that spanned several months. All parties were represented by counsel, and the negotiations were conducted in good faith during court-ordered mediation. The Proposed Intercreditor Agreement has the potential to provide the estate with significant monetary recoveries by making the benefits of the United States' FCA Judgment available to the estate. It also resolves, on terms beneficial to the estate, (i) the Liquidating Trustee's challenge to the United States' secured interests in property of the Dent Debtors and the Johnson Debtors; (ii) all outstanding issues between the parties in respect of their competing claims asserted or assertable against the Dent Debtors and the Johnson Debtors, including but not limited to claims asserted or to be asserted in the Johnson Bankruptcy Case; and (iii) all outstanding disputes between the Liquidating Trustee and the United States arising in the Constructive Trust Action.

26.     The Proposed Intercreditor Agreement is a fair and equitable deal for the parties thereto. Considering all attendant facts and circumstances, the Liquidating Trustee has met his burden to show that the Proposed Intercreditor Agreement is above the lowest point of reasonableness.

## NOTICE

27.     Notice of this Motion has been provided in accordance with the *Order Establishing Post-Confirmation Notice, Case Management and Administrative Procedures* [Docket No. 1261] approved by this Court on June 29, 2016.

## NO PRIOR REQUEST

28.     No previous request for the relief sought herein has been made to this Court or any

other court.

**WHEREFORE**, the Liquidating Trustee respectfully requests that this Court enter an

order, a form of which is attached hereto as **Exhibit A**.

 Dated:  October 25, 2018                              Respectfully submitted,

                                                       */s/ Cullen D. Speckhart*
                                                       Cullen D. Speckhart (VSB No. 79096)
                                                       **WOLCOTT RIVERS GATES**
                                                       919 E. Main Street, Ste. 2010
                                                       Richmond, VA 23219
                                                       Bendix Road, Ste. 300
                                                       Virginia Beach, VA 23452
                                                       Telephone: (757) 497-6633
                                                       Direct: (757) 470-5566
                                                       Email: cspeckhart@wolriv.com

                                                       *Counsel to Richard Arrowsmith, Liquidating*
                                                       *Trustee of the HDL Liquidating Trust*

                                                       Richard S. Kanowitz (admitted pro hac vice)
                                                       **COOLEY LLP**
                                                       1114 Avenue of the Americas
                                                       New York, New York 10036
                                                       Telephone: (212) 479-6000
                                                       Facsimile: (212) 479-6275
                                                       Email: rkanowitz@cooley.com

                                                       *Counsel to Richard Arrowsmith, Liquidating*
                                                       *Trustee, and the Liquidating Trust Oversight*
                                                       *Committee*

**<u>Exhibit A – Proposed Order</u>**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
# (RICHMOND DIVISION)

| | |
|---|---|
| In re:<br><br>HEALTH DIAGNOSTIC LABORATORY INC. *et. al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 15-32919 (KRH)<br><br>(Jointly Administered) |

## ORDER ON MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 105 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 APPROVING (I) SETTLEMENT BETWEEN THE LIQUIDATING TRUSTEE AND UNITED STATES OF AMERICA; AND (II) AUTHORIZING LIQUIDATING TRUSTEE TO ENTER INTO PROPOSED INTERCREDITOR AGREEMENT WITH THE UNITED STATES OF AMERICA

Upon the motion of the Richard Arrowsmith, in his capacity as Liquidating Trustee

of the HDL Liquidating Trust (the "**Liquidating Trustee**"), appointed pursuant to the Debtors'

confirmed Modified Second Amended Plan of Liquidation (the "**Plan**")[2] in these jointly

administered bankruptcy for an order (this "**Order**") pursuant to sections 105 and 502 of the

Bankruptcy Code, (i) approving the settlement between the Liquidating Trustee and the United

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434).

[2]     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Ste. 2010
Richmond, VA 23219
Bendix Road, Ste. 300
Virginia Beach, VA 23452
Telephone: (757) 497-6633
Direct: (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating
Trustee of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted pro hac vice)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating
Trustee, and the Liquidating Trust Oversight
Committee*

States Department of Justice, Civil Division ("**DOJ**") acting on behalf of The United States of America ("**United States**"), and (ii) authorizing the Liquidating Trustee to enter into the proposed intercreditor agreement (the "**Proposed Intercreditor Agreement**") with the United States; and it appearing to the Court that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this being a core matter pursuant to 28 U.S.C. § 157(b)(2); and the Liquidating Trustee having standing to bring the Motion; and due and adequate notice of the Motion having been given; and the Court being fully advised of the premises; and the Court having determined that the relief requested in the Motion is in the best interests of the estates and their creditors; and sufficient cause appearing therefor.

### IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED as set forth herein.

2.     The Liquidating Trustee is authorized to enter into the Proposed Intercreditor Agreement, subject to the approval of the Proposed Intercreditor Agreement by the DOJ.

3.     The Liquidating Trustee and the DOJ are hereby authorized to take any and all steps necessary to consummate and implement this Order and the Proposed Intercreditor Agreement.

4.     Notwithstanding any Federal Rule of Bankruptcy Procedure or Local Bankruptcy Rule of the Eastern District of Virginia that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5.     The Court shall retain jurisdiction to interpret, enforce, and implement the terms and provisions of this Order.

Richmond, Virginia

Dated: _____, 2018

                                           _____
                                           KEVIN R. HUENNEKENS
                                           UNITED STATES BANKRUPTCY JUDGE

We ask for this:

*/s/*
Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Richmond, VA 23219 200
Bendix Road, Ste. 300 Virginia Beach, VA 23452
Telephone: (757) 497-6633
Direct: (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating*
*Trustee of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted pro hac vice)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating*
*Trustee, and the Liquidating Trust*
*Oversight Committee*

## CERTIFICATION OF ENDORSEMENT
## <u>UNDER LOCAL BANKRUPTCY RULE 9022-1(C)</u>

I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/*
Cullen D. Speckhart

**Exhibit B – Intercreditor Agreement**

## **INTERCREDITOR AGREEMENT**

This intercreditor agreement (the "**Intercreditor Agreement**") is entered into as of _____ __, 2018, by and between Richard Arrowsmith, in his capacity as Liquidating Trustee of the HDL Liquidating Trust (the "**Liquidating Trustee**") and the United States of America (the "**United States**," and together with the Liquidating Trustee, each a "**Party**" and collectively, the "**Parties**").

**WHEREAS,** shortly after receiving several *qui tam* complaints beginning in 2011, the United States commenced an extensive government investigation of Health Diagnostic Laboratory, Inc.'s ("**HDL's**") business practices, as well as those of, *inter alia*, Robert Bradford Johnson ("**Johnson**"), Floyd Calhoun Dent, III ("**Dent**"), BlueWave Healthcare Consultants, Inc. ("**BlueWave**"), and HDL's CEO, LaTonya Mallory ("**Mallory**"). On August 7, 2015, the United States filed a Complaint in Intervention under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("**FCA**"), and the common law, styled *United States of America, et al. vs. BlueWave Healthcare Consultants, Inc. et al.*, Case No. 14-cv-00230-RMG (the "**FCA Action**"). The United States' Complaint in Intervention alleged, *inter alia*, that Johnson, Dent, BlueWave and Mallory paid kickbacks in the form of "process and handling" or "P&H" fees and entered into improper commission-based sales agreements, in violation of the FCA, the Anti-Kickback Statute, 42 U.C.S. § 1320(a)-7b(b)(1)(A) ("**AKS**"), and common law. The Complaint in Intervention also alleged that Johnson, Dent, BlueWave, and Mallory knowingly caused the submission of claims for medically unnecessary testing services to Medicare and TRICARE, in violation of the FCA. The FCA Action was tried before the United States District Court for the District of South Carolina, Beaufort Division (the "**District Court**");

**WHEREAS**, on April 9, 2015, HDL entered into a settlement with the United States (the "**United States Settlement**") pursuant to which HDL agreed to pay the federal government approximately $47 million in fixed payments, plus interest, over a five-year period and up to an additional $53 million upon the occurrence of certain triggering events;

**WHEREAS**, on June 7, 2015 (the "**HDL Petition Date**"), HDL and various of its affiliates (the "**Debtors"**) filed with the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "**Virginia Bankruptcy Court**"), voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), thereby commencing the chapter 11 proceedings of HDL and various of its affiliates, which are jointly administered under main case number 15-32919 (KRH) (the "**HDL Bankruptcy Case**");

**WHEREAS**, on December 22, 2015, the United States filed Proof of Claim No. 1335 in the amount of $94,144,852.52, plus interest, in the HDL Bankruptcy Case based on HDL's conduct dating back to November 2008 (the "**United States' Claim**"). The United States' Claim was subsequently reduced pursuant to an Agreement on Allowance of Proof of Prepetition Claim and Subject Matter Waiver between the United States and Liquidating Trustee effective May 2, 2017, such that the United States' Claim provides the United States with an allowed Class 3 general unsecured claim in the amount of $40,644,852.50 (the "**Class 3 General Unsecured Claim**");

**WHEREAS**, on May 12, 2016, the Virginia Bankruptcy Court entered the order confirming the Debtors' Modified Second Plan of Liquidation ("**Confirmation Order**"). Pursuant to the Confirmation Order and 11 U.S.C. § 1123, the Liquidating Trustee is the successor of the Debtors and is thereby vested with standing to act as a representative of the HDL Liquidating Trust (the "**Liquidating Trust**"). At the time of its June 7, 2015 bankruptcy filing, HDL listed approximately $108 million in scheduled claims;

**WHEREAS**, on September 16, 2016, the Liquidating Trustee filed an adversary complaint [Bankr. D.I. 1479] as amended on August 17, 2017 [Adv. Proc. No. 16-03271, D.I. 375] (the "**D&O Complaint**") in Adv. Proc. No. 16-03271 (the "**D&O Action**") in the HDL Bankruptcy Case against Dent and BlueWave Healthcare Consultants, Inc.; AROC Enterprises, LLC; CAE Properties, LL; Cobalt Healthcare Consultants, Inc.; Riverland Pines, LLC; Crosspoint Properties, LLC; Helm-Station Investments LLP; Lakelin Pines, LLC; and Trini "D" Island, LLC (each, a "**Dent Entity**," and together with Dent, and his wife, Christina Dent, the "**Dent Debtors**"), Johnson and BlueWave Healthcare Consultants, Inc.; Blue Eagle Farming, LLC; War-Horse Properties, LLLP; Eagle Ray Investments, LLC; H J Farming, LLC; Blue Smash Investments, LLC; Forse Investments, LLC; Royal Blue Medical, Inc.; Blue Eagle Farm, LLC; Forse Medical, Inc.; and Armor Light, LLC (each, a "**Johnson Entity**," and together with Johnson, the "**Johnson Debtors**"), and certain other of HDL's former officers, directors, shareholders, and entities affiliated with them, seeking over $600 million in damages;

**WHEREAS**, the D&O Complaint includes various claims and causes of action naming the Dent Debtors and the Johnson Debtors (among others), alleging causes of action including claims for, *inter alia*, avoidance of fraudulent and preferential transfers, breach of fiduciary duty, violation of the trust fund doctrine, conspiracy, fraud, and tortious interference, (collectively, the "**D&O Claims**");

**WHEREAS**, on June 6, 2017, the Liquidating Trustee filed an adversary complaint commencing *Arrowsmith v. Mallory, et al.*, Adv. Proc. No. 17-04300 (the "**Tax Action**"), which asserts claims against Dent and Johnson for, *inter alia*, breach of contract, aiding and abetting breach of fiduciary duty, and conspiracy in their capacities as shareholders of HDL;

**WHEREAS**, on January 31, 2018, a jury entered a verdict in the FCA Action. The jury found that (i) Dent, Johnson and Mallory violated the FCA, (ii) HDL received payments totaling $16,601,591.00 in violation of the FCA, and (iii) Singulex, Inc. ("**Singulex**") received payments totaling $467,935.00 in violation of the FCA;

**WHEREAS**, on March 9, 2018, the Liquidating Trustee filed an adversary complaint in the HDL Bankruptcy Case commencing *Arrowsmith v. Dent, et al.*, Adv. Proc. No. 18-03022 (the "**Constructive Trust Action**," and together with the D&O Action and the Tax Action, the "**HDL Actions**"), which Constructive Trust Action seeks, *inter alia*, a determination that certain assets of Dent and Johnson are subject to a constructive trust for the benefit of HDL's bankruptcy estate and creditors;

**WHEREAS**, on May 23, 2018, the District Court entered a final judgment (the "**FCA Judgment**") finding Dent, Johnson, and Mallory jointly and severally liable to the United States

for $111,109,655.30 (including treble damages and penalties) and also finding Dent and Johnson jointly and severally liable for an additional $3,039,006.56 (including treble damages and penalties);

**WHEREAS,** on June 8 and 9, 2018, certain of the Johnson Debtors[1] filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama (the "**Alabama Bankruptcy Court**"). The Johnson Debtors' cases are jointly administered and currently pending under Case No. 18-02395 (TOM11) (the "**Johnson Bankruptcy Case**"). As of the date of this Intercreditor Agreement, none of the Dent Debtors has filed a voluntary bankruptcy petition pursuant to the Bankruptcy Code, nor has any involuntary bankruptcy petition been filed against any of the Dent Debtors;

**WHEREAS**, the United States asserts that it has allowable, secured claims against the Johnson Debtors and the Dent Debtors pursuant to certain Writs of Attachments authorized in the FCA Action on February 10, 2016 and duly filed in the locations of certain property of the Johnson Debtors and the Dent Debtors, and that it has an allowable, non-dischargeable claim in the entire amount of the FCA Judgment against various of the Johnson Debtors and the Dent Debtors;

**WHEREAS**, the United States may also have claims under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001-3308, for transfers made or obligations incurred by Johnson or Dent or any alter ego of either of them, against any persons or entities to whom Johnson or Dent transferred an asset or to whom Johnson or Dent incurred an obligation, including but not limited to, the Johnson Entities; the Dent Entities; Denko Properties, LLC; HisWay of SC; Pilot House, LLC; any trust set up for the benefit of Dent's children and/or descendants and/or relatives and/or church, including but not limited to the Dent Children Trust-2013; Johnson Farming; Cobalt Healthcare Consultants; Morning Star Holdings, Limited in Charlestown; Nevis; Eagle Pharmacy, Inc.; Ray-Ray Trust FPO Reagan Johnson; Bobby and/or Dolores Johnson; and any trust set up for the benefit of Johnson's children and/or descendants and/or relatives and/or church, including but not limited to the Holland Johnson Trust-2012 FBO Holland Johnson (each, an "**Additional Johnson or Dent Transferee**");

**WHEREAS**, the Liquidating Trustee asserts that he has allowable non-dischargeable claims exceeding the amount of the FCA Judgment against the Johnson Debtors and the Dent Debtors;

**WHEREAS**, to avoid the costs and risks of litigation, and without admitting any fact or conclusion regarding the merits or relative priority of the Parties' claims, the Parties have determined to resolve their disputes as competing creditors against the Johnson Debtors and the Dent Debtors on the terms and subject to the conditions set forth in this Intercreditor Agreement.

**NOW, THEREFORE**, in consideration of the promises and mutual covenants contained herein and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, to resolve (i) the Liquidating Trustee's challenge to the United States' secured

---

[1] The Johnson Bankruptcy Case includes the jointly administered bankruptcy cases of Johnson, Blue Eagle Farming, LLC; War-Horse Properties, LLLP; Eagle Ray Investments, LLC; H J Farming, LLC; Blue Smash Investments, LLC; Armor Light, LLC; and Forse Investments LLC.

interests in property of the Dent Debtors and the Johnson Debtors; (ii) all outstanding issues between the Parties in respect of their competing claims asserted or assertable against the Dent Debtors and the Johnson Debtors, including but not limited to claims asserted or to be asserted in the Johnson Bankruptcy Case; and (iii) all outstanding disputes between the Parties arising in the Constructive Trust Action, it is stipulated and agreed by and between the Parties, as follows:

1.     **Split of Disbursements and Collections from Dent Debtors and Johnson Debtors.**  The Parties shall effectuate the following division between the United States and the Liquidating Trustee of all value and consideration in the form of assets, collateral, claims, actions, funds, disbursements, proceeds, real or personal property, or otherwise, collected from the Dent Debtors,  the Johnson Debtors, the Additional Johnson or Dent Transferees and/or the estates of the Dent Debtors and the Johnson Debtors, as well as from Additional Transferee Recovery Actions (as defined in paragraph 2), (collectively, the "**Assets**"), regardless of whether such collection occurs as a result of distributions from a bankruptcy estate or by any other means, including, but not limited to, actions against certain transferees or execution on property pursuant to federal or state law:

a.     **The United States is Entitled to the First Nine Million Dollars ($9,000,000) of Assets Disbursed or Collected.**  With the limited exception of the Recovery Actions Limited Costs (as defined in paragraph 2(a)), the United States shall be entitled to the first nine million dollars ($9,000,000) that either Party recovers from the Assets, regardless of whether the efforts of the Liquidating Trustee or the United States led to the disbursement or collection of such Assets.  If the total amount of Assets disbursed or collected is less than $9,000,000, the United States shall recover no more than the amount of total Assets disbursed or collected less any Recovery Actions Limited Costs, to the extent they apply. Nothing contained in the Intercreditor Agreement shall in any way reduce, offset, limit, or otherwise prejudice the United States' Class 3 General Unsecured Claim.  To the extent the United States has not already collected or received the full $9,000,000, any remaining payment due to the United States pursuant to this subparagraph shall be made as part of the True-Up Payment, as that term is defined herein.

b.     **Asset Recoveries Exceeding Nine Million Dollars ($9,000,000).**  With the limited exception of the Recovery Actions Limited Costs, any amounts recovered from the Assets, regardless of whether the efforts of the Liquidating Trustee or the United States led to the disbursement or collection of such Assets, that exceed nine million dollars ($9,000,000), shall be divided equally between the Liquidating Trustee and the United States.  For the avoidance of doubt, other than the amount of the Recovery Actions Limited Costs (as defined herein), the Liquidating Trustee is entitled to no amount disbursed or collected on account of the Assets until the United States receives nine million dollars ($9,000,000) from the Assets**.**

c.     **No Payment of Fees and Expenses.**  With the limited exception of the Recovery Actions Limited Costs, neither the Liquidating Trustee nor the United

States shall be entitled to collect fees or expenses for pursuing or recovering Assets.

d.  Any disbursement that the United States has received or may receive on account of its Class 3 General Unsecured Claim shall not be counted as part of the amount to be received by the United States under subparagraph 1(a) or subparagraph 1(b).

2.  **Additional Transferee Recovery Actions; Proceeds.**  To the extent the Johnson Debtors, the Dent Debtors, any Additional Johnson or Dent Transferee, or any trustee or representative appointed pursuant to 11 U.S.C. §§ 701-703, 1104, 1123 (as applicable) in the Johnson Bankruptcy Case or in any Dent Bankruptcy Case (as defined in paragraph 4) or any bankruptcy case of any Additional Johnson or Dent Transferee, declines to pursue actions against any Additional Johnson or Dent Transferees, or actions to recover Assets described on any bankruptcy schedules, as they may be amended from time to time, and any other transferees who received Assets from the Dent Debtors or Johnson Debtors (the "**Additional Transferee Recovery Actions**"), the Liquidating Trustee shall evaluate and determine whether such Additional Transferee Recovery Actions are meritorious and valuable under the Bankruptcy Code. If the Liquidating Trustee determines that the Additional Transferee Recovery Actions are meritorious and valuable, the Liquidating Trustee shall use reasonable efforts to pursue proceeds of such Additional Transferee Recovery Actions, by and through his counsel of record.  A list of known potential Additional Transferee Recovery Actions with regard to the Johnson Debtors can be found in schedules and statements of financial affairs filed in the jointly administered bankruptcy cases proceeding under main Case No. 18-02395 (TOM).

a.  Subject to the last sentence of this subparagraph 2(a), and after deducting reasonable expenses and one-half of the amount of the reasonable fees incurred by the Liquidating Trustee in pursuing each Additional Transferee Recovery Action (such expenses and fees together, the "**Recovery Actions Limited Costs**"), the Liquidating Trustee and the United States shall share equally in any remaining proceeds. Recovery Actions Limited Costs associated with an individual Additional Transferee Recovery Action shall never be allowed in an amount exceeding recovery proceeds from such Additional Transferee Recovery Action, and the Liquidating Trustee bears all risks that the recovery proceeds may not suffice to cover his Recovery Actions Limited Costs.

b.  The Recovery Actions Limited Costs associated with each individual Additional Transferee Recovery Action shall be paid to the Liquidating Trustee from proceeds of each such Additional Transferee Recovery Action, and shall not be paid as part of the True-Up Payment unless otherwise agreed between the Liquidating Trustee and the United States.  Moreover, no Recovery Actions Limited Costs shall be paid until and unless the United States reviews and agrees to them.  If the Parties cannot reach agreement on the amount of Recovery Actions Limited Costs to be paid, they shall refer the dispute to mediation under the provisions of paragraph 20 below.

3. **HDL Recovery Actions; Proceeds.** The Liquidating Trustee may evaluate and independently pursue potential claims and causes of action that are not Additional Transferee Recovery Actions because they seek recovery against recipients and/or transferees of value or consideration from HDL that the United States could not recover or collect in its own right (the "**HDL Recovery Actions**"). All fees and expenses incurred in pursuit of HDL Recovery Actions shall be borne by the Liquidating Trustee and not charged against any recovery by the United States, and all proceeds recovered from HDL Recovery Actions shall belong solely to the HDL's bankruptcy estate and creditors. The United States shall only be entitled to receive a portion of proceeds from HDL Recovery Actions in connection with its Class 3 General Unsecured Claim.

4. **Applicability to Recoveries from Dent Debtors.** This Intercreditor Agreement shall apply to all actions to collect value or consideration from any of the Dent Debtors, the Additional Johnson or Dent Transferees, or all of them. For the avoidance of doubt, no action to collect value or consideration from any of the Dent Debtors shall be pursued outside of the provisions of this Intercreditor Agreement. In the event that a proceeding under the Bankruptcy Code is filed by, on behalf of, or against any of the Dent Debtors (a "**Dent Bankruptcy Case**"), all terms of this Intercreditor Agreement which are applicable to the Johnson Bankruptcy Case shall apply to the Dent Bankruptcy Case. No further court order or action of the Parties shall be required to effectuate such application.

5. **Recovery on Security Interests in Property of Dent Debtors.** The United States shall use reasonable efforts to pursue any and all of its rights, including under the FCA Judgment, against the Dent Debtors and/or property of the Dent Debtors as provided by writs of attachment, judgment liens, or other vehicles providing secured interests in property of the Dent Debtors to the United States. Proceeds of such secured interests shall be subject to, and allocated between the Parties under, the provisions of this Intercreditor Agreement.

6. **Interim Reports.** By the thirtieth day following the end of each calendar quarter, each Party shall provide written notice to the other of its recoveries from the Assets during the preceding calendar quarter, unless such day falls on a Saturday, a Sunday or a legal holiday (as defined in Fed. R. Civ. P. 6(a)(6)), in which case the notice shall be provided on the next business day thereafter.

7. **Notice Ahead of Final Distribution Record Date.** At least sixty (60) days prior to the date when the Liquidating Trustee intends to make a final distribution ("**Final Distribution**") of the Liquidating Trust's assets, the Liquidating Trustee shall provide written notice (the "**Expiration Notice**") to the United States of this proposed distribution.

8. **Pre-Distribution True-Up.** Within thirty (30) days of the Liquidating Trustee's issuance of the Expiration Notice, the Liquidating Trustee shall provide to the United States a statement of amounts outstanding and due to be paid to either Party (the "**True-Up Report**"). If the True-Up Report reflects an amount due and outstanding to either Party, such amount shall be promptly paid (the "**True-Up Payment**"), unless, within fourteen (14) days from the date of the True-Up Report, the United States challenges the calculations in the True-Up Report by written notice to the Liquidating Trustee. In the event of such a challenge, the Parties shall attempt to resolve the dispute by negotiating with each other. If the Parties do not resolve consensually a

challenge to a True-Up Report's calculations, they shall refer the dispute to mediation under the provisions of paragraph 20 below.

9.      **Expiration and Post-Payment Adjustments.**  Subject to the last sentence of this paragraph, this Intercreditor Agreement expires upon the payment of the True-Up Payment.  If, at any time after payment of the True-Up Payment, circumstances warrant an adjustment to the True-Up Report such that a payment adjustment is necessary for compliance with this Intercreditor Agreement, either Party may transmit, in writing to the other Party, a proposed revised True-Up Report with an indication of circumstances underlying any adjustments reflected therein.  Within fourteen days (14) the receiving Party may challenge the revised True-Up Report by written notice to the other Party.  If no such written notice is provided, the Parties shall effectuate the adjustments reflected in the revised True-Up Report. In the event of a challenge to the revised True-Up Report, the Parties shall attempt to resolve the dispute by negotiating with each other.  If the Parties do not resolve consensually a challenge to a revised True-Up Report, they shall refer the dispute to mediation under the provisions of paragraph 20 below.  In the event that either party proposes a revised True-Up Report, this Agreement shall remain in effect until final resolution of the proposed revised True-Up Report.

10.      **Distribution on Account of United States' Claim in the HDL Bankruptcy Case.**  Notwithstanding any other provision of this Agreement, the Liquidating Trustee shall not challenge, reduce, or seek to offset the United States' distribution on account of the United States' Class 3 General Unsecured Claim based on any distribution or recovery under this Intercreditor Agreement.  The United States' Class 3 General Unsecured Claim shall remain an allowed Class 3 claim and eligible for distribution until all funds available for distribution to Class 3 General Unsecured Claims have been distributed.

11.      **United States' liens.**  The Liquidating Trustee shall not challenge the validity or enforcement of the United States' current or future liens against the Johnson Debtors or the Dent Debtors.

12.      **Conditions Precedent to Settlement.**  The Intercreditor Agreement will become effective when all of the following conditions are met (the "**Effectiveness Conditions**"): (i) the Parties fully execute and deliver to each other counterparts of this Intercreditor Agreement; (ii) the Virginia Bankruptcy Court approves the Intercreditor Agreement by order entered pursuant to Rule 9019 (the "**9019 Order**") on the Liquidating Trustee's motion in the Constructive Trust Action; and (iii) the 9019 Order becomes final and non-appealable.  The Liquidating Trustee will provide a copy of its motion seeking the 9019 Order to the United States for comment prior to filing it.  Within five business days after the 9019 Order becomes final and non-appealable, the Liquidating Trustee shall dismiss the United States as a defendant to the Constructive Trust Action with prejudice.

13.      **Reservation of Rights.**  This Intercreditor Agreement and the settlement herein is an accord and satisfaction, not a novation.  In the event this Intercreditor Agreement does not become effective for any reason, including the non-occurrence of any of the Effectiveness Conditions, the Parties will return, without prejudice, to the status quo ante, for all litigation

purposes, as if no settlement had been negotiated or entered into and the settlement and its existence shall be inadmissible for any purpose.

14.     **No Admission of Liability or Relative Priority.**  The Parties acknowledge that this Intercreditor Agreement is a compromise of disputed claims and that neither admits any liability, fact, or conclusion regarding the nature and relative priority of their asserted claims against the Assets, the Johnson Debtors and the Dent Debtors.

15.     **Inadmissibility of Intercreditor Agreement.**     Neither this Intercreditor Agreement, nor any statement made or action taken in connection with the negotiation of this Intercreditor Agreement, shall be offered or received into evidence or in any way referred to in any legal action or administrative proceeding involving, among or between the Parties, other than as may be necessary (i) to enforce or approve this Intercreditor Agreement or its terms, (ii) to seek damages or injunctive relief in connection therewith; or (iii) to demonstrate satisfaction of obligations hereunder.

16.     **Authority to Enter into Intercreditor Agreement.**  Each person signing this Intercreditor Agreement represents and warrants that he/she has been duly authorized and has the requisite authority to execute this Intercreditor Agreement on behalf of such Party, to bind his or her respective client or clients to the terms and conditions of this Intercreditor Agreement (and that each such client has full knowledge and has consented to this Intercreditor Agreement), and to act with respect to the rights and claims that are being altered or otherwise affected by this Intercreditor Agreement.

17.     **No Reliance.**   The Parties represent and acknowledge that, in executing this Intercreditor Agreement, they do not rely and have not relied upon any representation or statement made by any Party or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Intercreditor Agreement or otherwise, other than as specifically stated in this Intercreditor Agreement.

18.     **Knowing and Voluntary.**   The Parties further declare that, in making this Intercreditor Agreement, they rely entirely upon their own judgment, beliefs, and interests, and that they have had a reasonable period of time to read the Intercreditor Agreement in full, and to consider this Intercreditor Agreement with their respective legal counsel.

19.     **Judicial Resolution of Disputes.**  If a dispute arises concerning the meaning of this Intercreditor Agreement that the Parties are unable to resolve consensually, including after mediation under paragraph 20, or either Party seeks enforcement of this Intercreditor Agreement's terms, the Parties agree that any reference under 28 U.S.C. §157 to the Virginia Bankruptcy Court should be withdrawn.

20.     **Mediation.**  In the event the Parties are unable to resolve any disputes arising under this Intercreditor Agreement, the Parties shall use reasonable efforts to identify a mediator acceptable to both Parties, and shall submit the dispute to him or her for non-binding mediation, with each Party bearing its own costs, including its half of the costs for the mediator's services.

21.     **Interpretation.**   This Intercreditor Agreement is the product of negotiations between the Parties and any rule of construction that ambiguities are to be resolved against the drafting Party shall not apply in the interpretation of this Intercreditor Agreement.

22.     **Entire Agreement.**  This Intercreditor Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.  The Parties shall work cooperatively and in good faith to take all actions necessary to implement the terms of this Intercreditor Agreement.

23.     **Modifications.**  No modification of this Intercreditor Agreement shall be binding or enforceable unless it is in a writing signed by the Parties.

24.     **Successors.**  This Intercreditor Agreement shall be binding upon and inure to the benefit of the Parties, their respective heirs, executors, successors, administrators and assigns.

25.     **Governing Law.**  This Intercreditor Agreement shall be construed and enforced in accordance with the federal law (including the Bankruptcy Code) without regard to the conflicts of laws or principles thereof.

26.     **Counterparts.**  This Intercreditor Agreement may be executed in one or more counterparts, including by facsimile and/or electronic mail, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

27.     **Notice.**  Notice to the Parties shall be made by electronic mail delivered to the following, which shall be deemed good and sufficient service of all notice(s) and communication(s):

> To the United States:
>
> michael.kass@usdoj.gov
>
> mary.schmergel@usdoj.gov
>
> To the Liquidating Trustee:
>
> rarrowsmith@alvarezandmarsal.com
>
> and to his counsel:
>
> rkanowitz@cooley.com
> cspeckhart@wolriv.com

**RICHARD ARROWSMITH,**

**LIQUIDATING TRUSTEE OF THE HDL LIQUIDATING TRUST**


By: _____      Dated: _____


**THE UNITED STATES OF AMERICA, U.S. DEPARTMENT OF JUSTICE**



By: _____      Dated:_____