## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Case No. 15-32919 (KRH)** |
| **HEALTH DIAGNOSTIC** | ) | **Chapter 11** |
| **LABORATORY, INC.**, *et al.*, | ) | |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |

**ORDER GRANTING MOTION OF THE LIQUIDATING TRUSTEE
FOR ORDER (I) AUTHORIZING THE TRANSFER OF DEBTORS' PATIENT
RECORDS TO METALQUEST, INC. AND (II) APPROVING THE PROPOSED
AGREEMENT BETWEEN THE LIQUIDATING TRUSTEE AND METALQUEST**

In consideration of the *Motion of the Liquidating Trustee for Order (I) Authorizing the Transfer of Debtors' Patient Records to MetalQuest, Inc. and (II) Approving the Proposed Agreement between the Liquidating Trustee and MetalQuest* (the "Motion")[2] [Docket No. 5855]; and the Court having entered an order on June 6, 2024 [Docket No. 5871], continuing the hearing on the Motion to June 11, 2024, and directing the United States Trustee to appoint an

---

[1]  The Debtors, along with the last four digits of their federal tax identification number, are Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434) (referred to herein collectively as "HDL").

[2]  Capitalized terms that are not defined in this Order have the meaning scribed to them in the Motion.

Robert S. Westermann (VSB No. 43294)
Brittany B. Falabella (VSB No. 80131)
Kollin G. Bender (VSB No. 98912)
HIRSCHLER FLEISCHER, PC
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:      804.771.9515
Facsimile:      804.644.0957
E-mail:  rwestermann@hirschlerlaw.com
         bfalabella@hirschlerlaw.com
         kbender@hirschlerlaw.com

David I. Swan (VSB No. 75632)
Allison P. Klena (VSB No. 96400)
HIRSCHLER FLEISCHER, PC
1676 International Drive
Suite 1350
Tysons, Virginia 22102
Telephone:  703.584.8900
Facsimile:  703.584.8901
E-mail:     dswan@hirschlerlaw.com
            aklena@hirschlerlaw.com

*Counsel for Richard Arrowsmith, Liquidating
Trustee of the HDL Liquidating Trust*

ombudsperson for the purpose of reviewing the proposed transfer of the Records; and the United

States Trustee having appointed Ms. Elise S. Frejka as the consumer privacy ombudsperson (the

"CPO") on May 30, 2024; and the Liquidating Trustee having filed the *Notice of Supplemental*

*Exhibits to the Motion of the Liquidating Trustee for Order (I) Authorizing the Transfer of Debtors'*

*Patient Records to MetalQuest, Inc. and (II) Approving the Proposed Agreement Between the*

*Liquidating Trustee and MetalQuest* (the "Notice") [Docket No. 5880]; and having considered the

*Report of Consumer Privacy Ombudsman* prepared by the CPO, attached as Exhibit A to the

Notice, and the *Business Associate Agreement* (the "BAA"), attached as Exhibit B to the Notice;

and having found that no showing was made that the transfer of the Records would violate

applicable nonbankruptcy law; and the Court having jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and proper notice of the

Motion having been provided to all necessary and appropriate parties; and for good and sufficient

cause shown;

**IT IS HEREBY ADJUDGED, ORDERED, AND DECREED THAT:**

1.      The Motion is **GRANTED** pursuant to the terms of this Order; and it is further

2.      **ORDERED** that the Liquidating Trustee is hereby authorized to transfer the

Records to MetalQuest; and it is further

3.      **ORDERED** that the Agreement between the Liquidating Trustee and MetalQuest,

attached hereto as Exhibit A, is approved; and it is further

4.      **ORDERED** that the BAA, attached hereto as Exhibit B, between the Liquidating Trustee and MetalQuest is approved; and it is further

5.      **ORDERED** that the Liquidating Trustee is authorized to pay MetalQuest a one-time fee of $49,911 in exchange for the services provided by MetalQuest; and it is further

6.      **ORDERED** that, notwithstanding any Bankruptcy Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of this Order is waived; and it is further

7.      **ORDERED** that this Court retains jurisdiction with respect to any of the terms contained in this Order and set forth in the Motion.

Jun 17 2024
_____

Richmond, Virginia

/s/ Kevin R Huennekens
_____
UNITED STATES BANKRUPTCY COURT JUDGE

Entered On Docket: Jun 18 2024

**WE ASK FOR THIS:**

/s/ Kollin G. Bender
_____
Robert S. Westermann (VSB No. 43294)
Brittany B. Falabella (VSB No. 80131)
Kollin G. Bender (VSB No. 98912)
HIRSCHLER FLEISCHER, PC
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:  804.771.9515
Facsimile:  804.644.0957
E-mail:       rwestermann@hirschlerlaw.com
               bfalabella@hirschlerlaw.com
               kbender@hirschlerlaw.com

David I. Swan (VSB No. 75632)
Allison P. Klena (VSB No. 96400)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone:  703.584.8900
Facsimile:   703.584.8901

E-mail:        dswan@hirschlerlaw.com
               aklena@hirschlerlaw.com

*Counsel for Richard Arrowsmith, Liquidating*
*Trustee of the HDL Liquidating Trust*


**SEEN AND NO OBJECTION:**

*/s/ Kathryn R. Montgomery* (by Kollin G. Bender with permission based on 6/12/24 email)
Kathryn R. Mongomery, Esq.
Office of United States Trustee
701 East Broad Street
Suite 4304
Richmond, Virginia 23219

*United States Trustee*


## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9002-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.


*/s/ Kollin G. Bender*

<u>Exhibit A</u>

The Agreement

Exhibit B

The BAA

# Lifecycle Management of  Medical Data Trust Agreement

Prepared
for

**HDL Liquidating Trust**
**Attn: Richard Arrowsmith**
**Liquidating Trustee**
**c/o Robert S. Westermann**
**Hirschler Fleischer, P.C.**
**2100 East Cary Street P.O Box 500**
**Richmond, Virginia 23223**



**P.O. Box 46364**
**Cincinnati, Ohio 45246-0364**

Contact

**William L. Jansen**
**Tel: 513.693.4363**
**Email: WLJansen@MetalQuest.com**

## **INFORMATION MANAGEMENT SERVICES AND TRUST AGREEMENT**

THIS INFORMATION MANAGEMENT SERVICES AND TRUST AGREEMENT

("Agreement") is entered into on this ___14___ day of May  2024 between MetalQuest, Inc. ("MetalQuest" or the "Trustee"), an Ohio corporation, and the HDL Liquidating Trust, ("Liquidating Trustee"), representative of the chapter 11 bankruptcy estate of Health Diagnostic Laboratory, Inc., case no. 15-32919-KRH, filed in the Eastern District of Virginia (the "Estate"). MetalQuest and Liquidating Trustee may hereinafter be collectively referred to as the "Parties".

1.      Background.  MetalQuest is a Subcontractor Business Associate of the Liquidating Trustee as the term is defined under *Health Insurance Portability and Accountability Act of 1996* ("HIPAA") and *HIPAA Privacy and Security Rules 45 CFR Parts 160 and 164*, as amended ("HIPAA Privacy and Security Rules").  Health Diagnostic Laboratory, Inc. ("Laboratory") was a Covered Entity under HIPAA and the HIPAA Privacy and Security Rules, and filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 6, 2015, in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") (Case No. 15-32919-KRH11) (the "Bankruptcy Case").     Liquidating Trustee the is representative of the Estate pursuant to the Liquidating Trust Agreement established under the  *Order Confirming the Debtors' Second Amended Plan of Liquidation* entered on May 12, 2016, by the United States Bankruptcy Court for the Eastern District of Virginia (the "Plan") [Docket No. 1095].  The effectiveness of this Agreement is subject to the entering of an order of the Bankruptcy Court, in form and substance reasonably satisfactory to the Parties, approving this Agreement and the transactions contemplated hereby (the "Approval Order") and such Approval Order becoming final and non-appealable (fifteen days following its entry so long as no appeal is filed in connection therewith).   In connection with seeking the entry of the Approval Order, this Agreement may be filed with the Bankruptcy Court and served on parties in the Bankruptcy Case.

2.      Term.  The term of this Agreement (the "Term") shall begin on the date on which the Approval Order is entered by the Bankruptcy Court and becomes final and non-appealable (the "Effective Date") and shall continue until all Records (as defined below) have been destroyed in accordance with Applicable Medical Record Laws (as defined below), which destruction the Trustee shall  perform  as mandated by State of Virginia, Federal, Law, or any other applicable law at the time of contract execution unless sooner terminated as provided herein.

3.      Scope of Services.  The Liquidating Trustee maintains or has maintained certain health information, electronic protected health information and business records (the "Records"). Liquidating Trustee hereby engages MetalQuest, and MetalQuest hereby accepts such engagement, to permanently store, maintain, provide access to, transmit, catalog, index and periodically destroy the Records, all in accordance with the requirements of HIPAA, the HIPAA Privacy and Security Rules, other Federal law, including Medicare and Medicaid law, and Virginia State law (collectively, "Applicable Medical Record Laws").   MetalQuest has

Page 2 of 15

established policies and procedures to incorporate HIPAA standards and will exercise administrative, physical and technical safeguards in order to assure confidentiality, integrity and availability of the Records.

     a.   <u>Trust</u>.  The Liquidating Trustee hereby creates an Express Trust under the Ohio Trust Code, ORC Chapter 5801, as amended, and designates MetalQuest as the Trustee of the Trust and the Records, for the benefit of the individuals to and for whom Laboratory provided covered health care services.

     b.   <u>Trust Purpose</u>.  Liquidating Trustee hereby creates this Trust under the Ohio Trust Code, ORC Chapter 5801, in order to meet Laboratory's obligations as a Covered Entity, and Liquidating Trustee's obligations as a Business Associate under HIPAA and Applicable Medical Record Laws. The purpose of the Trust is to provide for Records previously maintained by the Laboratory in the normal course of its business as a Covered Entity to be deposited with MetalQuest as Trustee, for their storage, allowance of access to, and transmission and destruction, all in accordance with Applicable Medical Record Laws.  The Trustee hereby agrees to maintain, store, catalog, access, transmit and destroy such Records in accordance with Applicable Medical Record Laws and the terms and provisions hereinafter set forth. This Agreement shall supersede any previous trust agreements between the Parties, and shall be binding upon the Parties and their respective heirs, executors, administrators, successors and assigns.

     c.   <u>Disposal of Records</u>.  Trustee shall maintain, store, catalog, index, permit access to and transmit the Records as required under Applicable Medical Record Laws.  Trustee shall satisfy its continuing compliance obligations under Applicable Medical Record Laws.  Liquidating Trustee transfers all custodial rights and privileges with respect to the Records to the Trustee and authorizes the Trustee to destroy the Records upon expiration of the maintenance obligations with respect to such Records under Applicable Medical Record Laws.

     4.   <u>Independent Contractor Status</u>.  It is understood that MetalQuest, its employees and agents are independent contractors and not employees, agents, or representatives of Liquidating Trustee, and no employee or agent of MetalQuest shall hold herself/himself out to the public as an employee, agent or representative of Liquidating Trustee.  As an independent contractor, MetalQuest is responsible to pay all workers' compensation insurance, disability benefits insurance, and other benefits and insurance as required by law for its employees.

     5.   <u>Trustee Fees</u>.  Liquidating Trustee agrees to pay MetalQuest the Trustee Fees set forth in the schedule attached hereto and incorporated herein as <u>Exhibit A</u>, which Trustee Fees shall not exceed the amount set forth in Exhibit A.

     6.   <u>Duties of MetalQuest</u>.  MetalQuest hereby agrees to (a) provide the services described in <u>Exhibit A</u> and elsewhere in this Agreement; and (b) permanently store, maintain, provide access to, transmit, catalog, index and periodically destroy the Records stored in Trustee's Cincinnati facility as described in Exhibit A and according to the

4900 Spring Grove Avenue • Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 • Fax: 513.488.8614
Email: Info@MetalQuest.com • Web: MetalQuest.com

requirements of Applicable Medical Record Laws.

7.        MetalQuest's Covenants, Representations and Warranties.    MetalQuest represents, warrants, and covenants to Liquidating Trustee as to the following matters:

a.        No Consents Necessary.    MetalQuest has the legal right, power, capacity and authority to enter into and perform its obligations under this Agreement, and no approval or consent of any other person or entity is necessary to authorize the execution of this Agreement by MetalQuest.        MetalQuest represents that it is licensed to do business in the State of Ohio and is authorized to do business in the State of Virginia, and MetalQuest agrees to maintain the currency of such license and authorization. MetalQuest represents that it is familiar with its legal obligations under Applicable Medical Record Laws and covenants to maintain, store, access and destroy the Records in compliance with Applicable Medical Record Laws.  The execution and delivery of the Agreement by MetalQuest have been duly authorized and validly executed and delivered by MetalQuest.

b.        No Violations.    MetalQuest has not received any written notice of any violations of law, rule, regulation, order or ordinance that would impair its ability to do business in the States of Ohio or Virginia or impair its ability to perform the terms of this Agreement.

c.        Compliance with Applicable Medical Record Laws.    MetalQuest represents that it is familiar with its legal obligations as Trustee of the Records under Applicable Medical Record Laws. MetalQuest hereby agrees to maintain comprehensive indexes of the Records it maintains on behalf of Liquidating Trustee and will provide such indexes for inspection at its offices in Cincinnati, Hamilton County, Ohio.  MetalQuest covenants and warrants to Liquidating Trustee that it will maintain currency and compliance with its obligations under Applicable Medical Record Laws.

8.        Indemnification by MetalQuest.    MetalQuest agrees to maintain the Records in compliance with Applicable Medical Record Laws.  MetalQuest shall indemnify, defend and hold harmless Liquidating Trustee and Liquidating Trustee's affiliates, officers, directors, employees, agents, independent contractors, medical staff, successors and assigns from and against any loss or damage incurred or suffered by such indemnified parties relating to any breach by MetalQuest, its employees, agents or independent contractors, of its obligations hereunder.

9.        Duties of Liquidating Trustee.    Following the Effective Date, records currently stored by the Liquidating Trustee with other storage organizations will be made available at the other organization's storage facility as soon as reasonably practicable.  Liquidating Trustee shall pay to MetalQuest all Trustee Fees, in full, in the manner set forth in Exhibit A. The Parties hereby acknowledge that no Express Trust shall be deemed to exist with respect to any Records until some of the Records are removed by Trustee from the storage facility utilized by Liquidating Trustee and the Trustee Fees have been paid to MetalQuest

4900 Spring Grove Avenue • Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 • Fax: 513.488.8614
Email: Info@MetalQuest.com • Web: MetalQuest.com

as provided in <u>Exhibit A</u>.

10.    <u>Liquidating Trustee's Covenants, Representations and Warranties</u>.  Liquidating Trustee represents, warrants, and covenants to MetalQuest as to the following matters:

   a.    <u>No Consents Necessary</u>.  Subject to the Approval Order being entered and becoming final and non-appealable, Liquidating Trustee has the legal right, power, capacity and authority to enter into and perform their obligations under this Agreement.  The execution and delivery of the Agreement have been duly authorized and validly executed and delivered by Liquidating Trustee.

   b.    <u>No Third-Party Rights</u>.  Subject to the Approval Order being entered and becoming final and non-appealable, Liquidating Trustee represents that this Agreement will not conflict with or violate any other agreement between Liquidating Trustee and any third-party or any obligation owed by Liquidating Trustee to any third-party.  Except for the rights of patients and other third parties to retrieve copies of Records with respect to which they are entitled under Applicable Medical Record Laws, the Parties agree that this Agreement is not intended to, and will not, create rights of any type in third parties.  Nothing in this Agreement shall limit the rights of third parties under Applicable Medical Record Laws.

11.    <u>Default</u>.

   a.    <u>By MetalQuest</u>.  If MetalQuest breaches any material obligation hereunder and fail to cure such breach within thirty (30) days of receipt of written notice of such default, MetalQuest agrees that the Liquidating Trustee shall have all remedies available at law or in equity.

   b.    <u>By Liquidating Trustee</u>.  If Liquidating Trustee breaches any material obligation hereunder and fail to cure such breach within thirty (30) days of receipt of written notice of such default, Liquidating Trustee agrees that MetalQuest shall have all remedies available at law or in equity.

12.    <u>Termination of this Agreement</u>.  This Agreement and the express Trust created hereunder shall terminate by operation of law upon completion of all of Trustee's obligations hereunder and the destruction of all Records held in trust by Trustee in accordance with Applicable Medical Record Laws.

13.    <u>Notices</u>.  Any notice required under this Agreement shall be deemed given if in writing and sent by certified mail, return receipt requested, or via reputable overnight courier to MetalQuest's principal office or the office of the Liquidating Trustee or the Liquidating Trustee's heirs, assigns or successors, as the case may be, with a copy of all such notices to Liquidating Trustee also being so delivered

4900 Spring Grove Avenue • Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 • Fax: 513.488.8614
Email: Info@MetalQuest.com • Web: MetalQuest.com

to:            Richard Arrowsmith
               Liquidating Trustee
               c/o Robert S. Westermann, Esq.
               Hirschler Fleisher, P.C.
               The Edgeworth Building
               2100 East Cary Street
               Richmond, Virginia 23223
               Tel: 804-771-5610
               rwestermann@hirschlerlaw.com

               and

               MetalQuest, Inc.
               Trust Services Department
               PO Box 46364
               Cincinnati, Ohio 45246-0364
               Tel: 513-898-1022
               Secure Fax: 513-242-5059
               Email: Retrieve@MetalQuest.com

14.   <u>Miscellaneous</u>.  This Agreement shall be binding upon the respective Parties, their, agents, assigns, executors, administrators and successors-in-interest.

15.   <u>Entire Agreement</u>.  This Agreement contains the entire understanding of the Parties.  It may not be changed orally but only by written agreement signed by both Parties.

16.   <u>Submission to Jurisdiction; Consent to Service of Process</u>.  Without limiting any Party's right to appeal any order of the Bankruptcy Court, as to any disputes or claims between them, the Parties agree (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, or any breach or default hereunder, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 13 hereof; *provided, however*, that if the Bankruptcy Case has closed, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of Ohio in Hamilton County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the Parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each of the Parties hereby consents to process being served by any of the Parties to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 13.

4900 Spring Grove Avenue • Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 • Fax: 513.488.8614
Email: Info@MetalQuest.com • Web: MetalQuest.com

17.    <u>Governing Law</u>.  This Agreement and any dispute between the Parties shall be subject to and governed by the laws of the State of Ohio, without regard to choice of law principles.

18.    <u>Headings and Capitalized Terms</u>.    Headings in  this Agreement are f o r convenience only and shall not be used to interpret or construe any of the provisions or terms hereof.  Capitalized terms that are not otherwise defined in this Agreement shall have the same definitions as under HIPAA or 45 CFR Part 160, et seq.

19.    <u>Waiver</u>.  The waiver by either of the Parties of a breach of any provision of this Agreement shall not operate as, or be construed as, a waiver of any subsequent breach.

20.    <u>Modification</u>.  No change, modification or waiver of any term of this Agreement shall be valid unless it is in writing and signed by both Parties.

21.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties and supersedes all prior agreements or understandings between MetalQuest and Liquidating Trustee.

22.    <u>Execution of this Agreement</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  The exchange of copies of this Agreement and of signature pages by facsimile or other electronic transmission shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes.

4900 Spring Grove Avenue • Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 • Fax: 513.488.8614
Email: Info@MetalQuest.com • Web: MetalQuest.com

In witness whereof, the Parties have executed this Agreement this _____14_____ day of May 2024

**LIQUIDATING TRUSTEE**                         **TRUSTEE**

HDL Liquidating Trust                            MetalQuest, Inc.

By: _____                   By: _____

        *5-15-24*

        Richard Arrowsmith                               William L. Jansen

The:    Liquidating Trustee                     Its:        President and CEO

4900 Spring Grove Avenue • Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 • Fax: 513.488.8614
Email: Info@MetalQuest.com • Web: MetalQuest.com

**EXHIBIT A**

Explanation of Services and Schedule of Fees

### A. Access to Medical Record Information

1. Hardcopy Medical Record Information
1.1. Patients directly requesting their medical records and not using any third-party will not be denied access to their medical or clinical information for treatment purposes due to an inability to pay reproduction fees. Proof of inability to pay is required at the discretion of MetalQuest.
1.2. Except for an emergent request, the turnaround time for a valid medical release of information request is 30 days, after the first three months from assuming custody of the records.
1.3. Any record the Liquidating Trustee requests shall be provided to the Liquidating Trustee at a cost of $0.75 per page, $1.00 per file index, a $13.00 per file transfer per PDF file and a $25.00 search fee. Trustee shall use its best efforts to fulfill the Liquidating Trustee's request with 72 hours after receipt of a valid request.
1.4. Patients requesting their medical record are required to pay a minimum of $35.00 This is a non-refundable deposit.
1.5. When requesting patient data, a minimum of a $125.00 non-refundable deposit must be paid by third-party requestors including a third-party requestors representing a patient.

**Delivery Methods and Address for Submitting a Request for Medical Records**

| |
|---|
| Delivery of Requested Medical Records<br><br>MetalQuest provides requested information in digital format via encrypted USB drive or secure on-line electronic transfer. MetalQuest does not provide information in hardcopy form. MetalQuest will not release the original hardcopy records. |

| |
|---|
| Email Request to:<br><br>Request@MetalQuest.com (not case sensitive) |

| |
|---|
| Fax Request to:<br><br>HDLINC Release of Information<br><br>Telephone Number: 513-242-5059 |

Page 9 of 15

4900 Spring Grove Avenue • Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 • Fax: 513.488.8614
Email: Info@MetalQuest.com • Web: MetalQuest.com

Mail Request to:

MetalQuest
Attn: HDLINC Release of Information
P.O. Box 46364
Cincinnati, Ohio 45246-0364

Courier Request to:

MetalQuest
Attn: HDLINC Release of Information
4900 Spring Grove Avenue
Cincinnati, Ohio 45232-1900

Customer Service Hours:

Monday – Friday, 9:00 A.M. to 5:00 P.M. Eastern Time

Telephone Number: 513-898-1022

### B.  Record Formats

MetalQuest has the ability to store and access a myriad of hardcopy and electronic record formats including microforms. Presently, in addition to traditional hardcopy storage, MetalQuest operates an electronic archive consisting of subsystems including PACS designed to handle a wide variety of file formats including but not limited to:

**Electronic Formats**

| DICOM | PDF | JPEG | VIDEO | TIFF | PST | PNG | BMP | HTML | XML |
|-------|-----|------|-------|------|-----|-----|-----|------|-----|
| RAW | GIF | DOC | XLS | XPS | EPS | DWG | DXF | MP3 | MPEG |

**Hardcopy Formats**

| ANALOG "FLAT" X-RAY | PAPER DOCUMENTS | MICROFICHE | MICROFILM JACKET | ROLLFILM |
|---------------------|-----------------|------------|------------------|----------|
| 35MM CINE FILM | FETAL MONITOR | | | |

**Special Formats and Containers**

| PATHOLOGY: GLASS SLIDES | PATHOLOGY: PARAFFIN TISSUE BLOCKS | CD | DVD |
|-------------------------|-----------------------------------|----|----|

4900 Spring Grove Avenue • Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 • Fax: 513.488.8614
Email: Info@MetalQuest.com • Web: MetalQuest.com

| VHS VIDEO TAPE | MAGNETO-OPTICAL DISK | MAGNETIC TAPE | RIGID AND FLEXIBLE DISK |
|---|---|---|---|
| COMPUTER HARD DRIVE | OTHER OPTICAL DISK | USB DRIVES | |

### C. Information Security

Information security is a top priority at MetalQuest. To protect our customer's data and the privacy of individuals, MetalQuest begins with its people. All employees are subjected to a thorough background check before hire and periodic checks throughout their employment. Each employee is required to attend mandatory information security and HIPAA classes.

**Facility Security**

MetalQuest provides physical access control at its facility along with fire suppression and fire and intrusion alarm and monitoring service.

**Electronic Data Security**

Digital data residing with MetalQuest is secured while in motion and at rest. This means data being transmitted both internally and externally is encrypted using AES 256 encryption including data transmitted by removable media such as a USB drive. (The data on the USB drive is encrypted in the event off loss or theft. The user is provided the password to access the encrypted data. The password is sent separately from the USB drive.) All data access and transmission is logged.

To further protect the data, MetalQuest creates three live mirrors of all data plus a backup. Furthermore, upon receipt of electronic data, each file has a hash generated and is securely stored, so routine data integrity checks can be performed. Data failing a hash test is replaced by restoring from backup or original data, as necessary.

**D. Accepted Records, Retention Schedules and Destruction**

MetalQuest will accept all hardcopy clinical, business and administrative records generated by the Liquidating Trustee and Debtor generated through the final dissolution of the estate including Liquidating Trustee's records stored with the following vendors:

1. Iron Mountain
   Richmond, Virginia
2. Iron Mountain
   Baltimore, Maryland
3. Iron Mountain
   Norfolk, Virginia

**Health Record Retention**

4900 Spring Grove Avenue • Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 • Fax: 513.488.8614
Email: Info@MetalQuest.com • Web: MetalQuest.com

MetalQuest will follow Applicable Medical Record Laws destruction of the health records at the time the trust agreement is executed.

**Record Destruction**

The one-time fee payable hereunder covers the HIPAA compliant destruction of stored records (records are shredded, baled and recycled) at the end of their mandated retention period, including, but not limited to, records received from the following storage vendor:

1. Iron Mountain
   Richmond, Virginia
2. Iron Mountain
   Baltimore, Maryland
3. Iron Mountain
   Norfolk, Virginia

**E. Start Date and Project Duration**

1. MetalQuest will commence the organized removal of records on a mutually agreed date not later than 10 days after the Effective Date and payment to MetalQuest for services. Additional phases of project will commence upon mutually agreed dates.
2. The transfer of boxes from Iron Mountain to MetalQuest is approximately 90 work days.

**F. Notification of Patients and Website Maintenance**

To the extent required by Applicable Medical Record Laws, it is the responsibility of the Liquidating Trustee to notify the patients of the transfer of medical record information to MetalQuest.

MetalQuest will maintain a webpage for the duration of the Term, subject to Liquidating Trustee's  approval, which approval shall not be unreasonably withheld, using the Laboratory's domain name, if available, which will provide detailed instructions regarding medical record retrieval and general retrieval instructions for other non-clinical records.
To the extent allowed by applicable law, the Liquidating Trustee will make best efforts to transfer the Laboratory's domain name to MetalQuest.  Following such transfer, it shall be the sole responsibility, financial and otherwise, of MetalQuest to renew and maintain the domain name during the term of this Agreement.

As applicable, the website will display

1. Laboratory's logo (If available)
2. "Facility Closed" banner
3. Medical records/clinical information disposition and request instruction section

Page 12 of 15

4. Bankruptcy information
5. MetalQuest logo
6. MetalQuest role as trustee
7. The primary website language will be English

### G. Freight

1. MetalQuest is responsible for all freight required to move hardcopy records from the Liquidating Trustee's facilities and their storage vendor facilities to a MetalQuest facility, when moved in accordance with section "I" of this exhibit.

### H. Contaminated Records

1. Records deemed contaminated by MetalQuest with mildew, fecal matter, asbestos, acute water damage, urine, or otherwise rendered illegible and/or unusable will be destroyed.
2. Destroyed records will be identified with one or more of the following data:
   2.1. Record type/name
   2.2. Date range
   2.3. Filing system range, e.g. terminal digit, alphabetical, etc.
   2.4. Contamination description

### I. Liquidating Trustee Hardcopy Records Stored by Liquidating Trustee's Record Storage Vendor

1. When moved in full tractor trailer loads (a minimum of 24 pallets with 40 legal/letter boxes or equivalent per pallet) until the last potentially partial shipment from each storage vendor location, MetalQuest will be responsible for all freight required to move the Liquidating Trustee's records stored with a current record storage vendor to its storage facility.
2. MetalQuest shall work with the Liquidating Trustee's storage vendor in an effort to ensure that Liquidating Trustee's records are moved to MetalQuest's storage facility.
3. The Liquidating Trustee is responsible for the payment of any and all fees required to permanently remove records and any other preparation necessary including all shipping and packing materials and supplies from the storage vendor.
4. The Liquidating Trustee is responsible to deliver a softcopy index from the storage vendor in either Microsoft Excel or CSV file format containing all captured and stored data pertaining to each box and file stored.
5. Liquidating Trustee will provide a contact for the storage vendor.
6. MetalQuest will manage the record transfer process.

4900 Spring Grove Avenue • Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 • Fax: 513.488.8614
Email: Info@MetalQuest.com • Web: MetalQuest.com

### J. Additional Services

Additional services requested and not covered under this agreement must be added by addendum or separately contracted.

### K. One-time Information Lifecycle Management Fee

| Description | Fee | Total |
|---|---|---|
| **Hardcopy Records**<br><br>Lifecycle management of approximately 6,746 boxes of records currently stored with Iron Mountain. | $49,911.00 | $49,911.00<br><br>Accepted (initial below) |
| **Total** | | **$49,911.00** |

### L. Payment Terms

The one time-fee is payable following the Effective Date, as shown.  Additional phases of project will commence upon mutually agreed dates.

1.  $49,911.00 due within ten (10) days of the Effective Date.

| Remittance by Wire Transfer | Remittance by Check |
|---|---|
| MetalQuest<br>Bank: Fifth Third Bank, Cincinnati, Ohio<br>Route: 042000314<br>Account: Provided at time of remittance | MetalQuest<br>Attn: Accounts Receivable<br>PO Box 46364<br>Cincinnati, Ohio 45246-0364 |

4900 Spring Grove Avenue ● Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 ● Fax: 513.488.8614
Email: Info@MetalQuest.com ● Web: MetalQuest.com

### M. Contacts

| | |
|---|---|
| Contract Administration | William L. Jansen<br>Email: WLJansen@MetalQuest.com<br>Tel: 513-693-4363 |
| Operations | Jennifer A. Carol<br>JACarol@MetalQuest.com<br>Tel: 513-693-4367 |
| Compliance and Privacy | Natalie A. Manning<br>Email: NLManning@MetalQuets.com<br>Tel: 513-693-4371 |
| Technical | Nicolas R. Haas<br>Email: NRHaas@MetalQuest.com<br>Tel: 513-693-4360 |
| Finance | Patricia R. Lohmiller<br>Email: PRLohmiller@MetalQuest.com<br>Tel: 513-693-4366 |

### N. Acceptance Period

1.  This agreement is effective until May 31, 2024.

4900 Spring Grove Avenue ● Cincinnati, Ohio 45232-1900
Tel: 513.693.4000 ● Fax: 513.488.8614
Email: Info@MetalQuest.com ● Web: MetalQuest.com



## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement ("Agreement"), effective on the date in which an order entered by the United States Bankruptcy Court for the Eastern District of Virginia approving the *Information Management Services and Trust Agreement,* signed by the Parties on May 14, 2024 (the "Trust Agreement"), becomes a final and non-appealable order ("Effective Date"), is entered into by and between MetalQuest, Inc. ("Business Associate"), with an address at 4900 Spring Grove Avenue, Cincinnati, Ohio 45232-1900 and the Liquidating Trustee of the HDL Liquidating Trust ("Liquidating Trustee" or "Covered Entity"), with an address at Hirschler Fleischer, P.C. c/o Robert S. Westermann, 2100 East Cary Street P.O. Box 500 Richmond, VA 23223 (each a "Party" and collectively the "Parties").

### BACKGROUND:

Liquidating Trustee is a Covered Entity, as defined by the federal Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191 ("HIPAA"), the Health Information Technology for Economic and Clinical Health Act, Title XIII of the American Recovery and Reinvestment Act of 2009 ("HITECH Act") and related regulations promulgated by the Secretary ("HIPAA Regulations"). Covered Entity complies with the HIPAA Privacy and Security Rules and the HITECH Act and requires that Business Associates of Covered Entity agree to and comply with said rules and regulations as condition of doing business with Covered Entity.

### WITNESSETH:

WHEREAS, Business Associate and its employees, affiliates, agents or representatives may access paper and/or electronic records containing PHI in carrying out their obligations to Covered Entity; and

WHEREAS, the Parties desire to enter into this Agreement to protect PHI and EPHI, and to amend any agreements between them, whether oral or written, with the execution of this Agreement;

NOW, THEREFORE, for and in consideration of the premises and mutual covenants and agreements contained herein the parties agree as follows:

1. **Definitions**

    1.1    General. Terms used, but not otherwise defined, in this Business Associate Agreement shall have the same meaning given to those terms by HIPAA, the HITECH Act and HIPAA Regulations as in effect or as amended from time to time.

    1.2    Specific.

        1.2.1    Breach. "Breach" shall have the same meaning as the term "breach" in the HITECH Act, Section 13400(1).

        1.2.2    Covered Entity. "Covered Entity" shall have the same meaning as the term "covered entity" in 45 CFR § 160.103.

        1.2.3    Electronic Health Record. "Electronic Health Record" shall have the same

meaning as the term "electronic health record" in the HITECH Act, Section 13400(5).

1.2.4 <u>Electronic Protected Health Information.</u> "Electronic Protected Health Information" shall have the same meaning as the term "electronic protected health information" in 45 CFR § 160.103, limited to the information that Business Associate created, received, maintains, or transmits from or on behalf of Business Associate or a Covered Entity.

1.2.5 <u>Individual</u>. "Individual" shall have the same meaning as the term "individual" in 45 CFR § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).

1.2.6 <u>Privacy Rule</u>. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164.

1.2.7 <u>Protected Health Information</u>. "Protected Health Information" shall have the same meaning as the term "protected health information "in 45 CFR 160.103, limited to the information created or received by Business Associate from or on behalf of Business Associate or a Covered Entity.

1.2.8 <u>Required By Law.</u> "Required by Law" shall have the same meaning as the term "required by law" in 45 CFR 164.103.

1.2.9 <u>Secretary</u>. "Secretary" shall mean the Secretary of the U.S. Department of Health and Human Services or his designee.

1.2.10 <u>Security Rule</u>. "Security Rule" shall mean the Security Standards at 45 CFR Part 160 and Part 164.

1.2.11 <u>Services Agreement</u>. "Services Agreement" shall mean any present or future agreements, either written or oral, including, but not limited to, the Trust Agreement between Business Associate and Covered Entity under which BusinessAssociate provides services to Covered Entity or its clients which involve the use or disclosure of Protected Health Information. The Business Associate Agreement is amended by and incorporates the terms of this Business Associate Agreement.

1.2.12 <u>Unsecured Protected Health Information</u>. "Unsecured Protected Health Information" shall have the same meaning as the term "unsecured protected health information" in the HITECH Act, Section 13402(h) (1).

2. **Permitted Uses and Disclosures**. Business Associate agrees not to use or disclose Protected Health Information other than as permitted or required by the Business Associate Agreement or as Required by Law. Notwithstanding the foregoing sentence, Business Associate agrees to adhere to the terms and conditions of any Business Associate agreements between Business Associate and any Covered Entity which apply to Protected Health Information and all present and future provisions of HIPAA, the HITECH Act and HIPAA Regulations that relate to the privacy and security of Protected Health Information and that are applicable to Covered Entity and/or Business Associate. Business Associate represents and warrants that he/she/it is familiar with the requirements of HIPAA or HITECH Act regarding Business Associates and Business Associate agreements. Business Associate shall comply with the provisions of this Business Associate Agreement related to privacy and security of PHI and all present and future provisions of HIPAA, the HITECH Act and HIPAA Regulations that relate to the privacy and security of

2

PHI that are applicable to Covered Entity and/or Business Associate.

2.1 <u>Services Agreement</u>. The terms of this Business Associate Agreement are hereby incorporated into the Services Agreement (including present and future agreements). In the event of conflict between the terms of the Services Agreement and this Agreement, the terms and conditions of this Business Associate Agreement shall govern. The Services Agreement together with this Agreement constitutes the entire agreement between the parties with respect to the subject matter contained herein.

2.2 <u>Use and Disclosure of PHI to Provide Services</u>. The Business Associate will not use or further disclose PHI or EPHI (as such terms are defined in the HIPAA Privacy and Security Rules) other than as permitted or required by the terms of the Services Agreement or as Required By Law, provided that such use or disclosure would not violate HIPAA, the HITECH Act or HIPAA Regulations if done by Business Associate or a Covered Entity, or the minimum necessary policies and procedures of the Business Associate. Except as otherwise provided in this document, the Business Associate may make any and all uses of PHI necessary to perform its obligations under the applicable Services Agreement. All other uses not authorized by this Agreement are prohibited.

3. **Additional Business Associate Activities**. Except as otherwise limited in this Agreement, the Business Associate may also:

3.1 use PHI in its possession for its proper management and administration and/or to fulfill any present or future legal responsibilities of the Business Associate, provided that such uses are permitted under state and federal privacy and security laws.

3.2 disclose PHI in its possession for the purpose of its proper management and administration and/or to fulfill any present or future legal responsibilities of the Business Associate. Business Associate represents to Covered Entity that (i) any disclosure it makes is Required by Law, and (ii) the Business Associate will obtain reasonable written assurances from any person to whom the PHI will be disclosed that the PHI will be held confidentially and used or further disclosed only as Required by Law or for the purpose for which it was disclosed to the person, that any such person agrees to be governed by the same restrictions and conditions contained in this Agreement, and that such person will notify the Covered Entity of any instances of which it is aware in which the confidentiality of the PHI has been breached.

4. **Business Associate Covenants**. Business Associate agrees to:

4.1 use or further disclose only the minimum necessary PHI in performing the activities called for under the Services Agreement;

4.2 not to use or further disclose PHI except as permitted under this Agreement, the HIPAA Privacy Rule and Security Rule, and applicable State law, each as amended from time to time;

4.3 use appropriate safeguards to prevent the use or disclosure of PHI other than as provided for in this Agreement. Without limiting the generality of the foregoing, Business Associate will: implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of Electronic Protected Health Information as required by the Security Rule; and ensure that any agent, including a subcontractor, to whom Business Associate provides Electronic Protected Health Information agrees to implement reasonable and appropriate safeguards to protect Electronic Protected Health

Information;

4.4    report to Covered Entity any security incident (as defined by the Security Rule) of which Business Associate becomes aware and any Breach, or use or disclosure of PHI not permitted by this Agreement within three (3) days following the discovery of such use or disclosure. A Breach is considered "discovered" as of the first day on which the Breach is known, or reasonably should have been known, to Business Associate or any employee, officer or agent of Business Associate, other than the individual committing the Breach. Any notice of a Security Incident or Breach of Unsecured Protected Health Information shall include the identification of each Individual whose Protected Health Information has been, or is reasonably believed by Business Associate to have been, accessed, acquired, or disclosed during such Security Incident or Breach as well as any other relevant information regarding the Security Incident or Breach;

4.5    mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate or its employees, officers or agents in violation of the requirements of this Agreement (including, without limitation, any Security Incident or Breach of Unsecured Protected Health Information). Business Associate agrees to reasonably cooperate and coordinate with Covered Entity in the investigation of any violation of the requirements of this Agreement and/or any Security Incident or Breach. Business Associate shall also reasonably cooperate and coordinate with Covered Entity in the preparation of any reports or notices to the Individual, a regulatory body or any third party required to be made under HIPAA, HIPAA Regulation, the HITECH Act, or any other federal or State laws, rules or regulations, provided that any such reports or notices shall be subject to the prior written approval of Covered Entity;

4.6    shall ensure that any of its agents, including any subcontractor, to whom it provides PHI received from, or created or received by, Business Associate on behalf of a Business Associate or a Covered Entity agrees to all of the same restrictions and conditions contained that apply to PHI pursuant to this Agreement;

4.7    maintain the integrity of any PHI transmitted by or received from Covered Entity;

4.8    represents and warrants that all of its employees, agents, representatives, and members of its workforce, whose services may be used to fulfill obligations under this Agreement are or shall be appropriately informed of the terms of this Agreement and are under legal obligations to the Business Associate, by contract or otherwise, sufficient to enable the a to comply with all provisions of this Agreement;

4.9    comply with Business Associate policies and procedures with respect to the privacy and security of PHI and other Covered Entity records, as well as policies and procedures with respect to access and use of Covered Entity's equipment and facilities; and

4.10    provide the rights of access, amendment, and accounting as set forth in **Sections 5, 6 and 8**.

5.    **Access to PHI**. Upon receipt of a request by Covered Entity for access to PHI about an Individual contained in a Designated Record Set, as such term is defined in the HIPAA Privacy Rule, the Business Associate shall in the time and manner reasonably requested by Covered Entity, make available to Covered Entity, or, as directed by a Business Associate, to a Covered Entity or an Individual to whom such PHI relates or his or her authorized representative, such

4

PHI for so long as such information is maintained in the Designated Record Set as defined in 45CFR 164.524. In the event any Individual requests access to PHI directly from the Business Associate, the Business Associate shall, within three (3) days, forward such request to Covered Entity. Any denials of access to the PHI requested shall be the responsibility of Business Associate.

6.      **Amendment of PHI**. Upon receipt of a request from Covered Entity for the amendment of Individual's PHI or a record regarding an Individual contained in a Designated Record Set, the Business Associate agrees to make any amendment(s) to Protected Health Information in a Designated Record Set that Business Associate or a Covered Entity directs or agrees to pursuant to 45 CFR 164.526, and in the time and manner reasonably requested by Business Associate or a Covered Entity.

7.      **Accountings**. Business Associate agrees to document such disclosures of Protected Health Information and information related to such disclosures as would be required for Covered Entities to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with HIPAA, HIPAA Regulations and the HITECH Act.

8.      **Requests for Accounting for Disclosures of PHI**. Upon receipt of a request by Covered Entity to the Business Associate, the Business Associate shall make available to Covered Entity, or at the direction of Covered Entity, to a Covered Entity or an Individual, in the time and manner reasonably requested by Covered Entity, such information as is in the Business Associate's possession and is required for Covered Entity to make the accounting required by 45 CFR 164.528. In the event the request for an accounting is delivered directly to the Business Associate, the Business Associate shall, within three (3) days, forward the request to Covered Entity.

9.      **Access to Books and Records Regarding PHI**. Business Associate agrees to make its internal practices, books, and records, including policies and procedures and PHI relating to the use and disclosure of PHI received from, or created or received by the Business Associate on behalf of Covered Entity available to Covered Entity, or the request of Business Associate to a Covered Entity or to the Secretary, in a time and manner reasonably requested by Business Associate or designated by the Secretary, for purposes of Secretary determining the Business Associate or Covered Entity's compliance with the Privacy Rule.

10.     **Term.** Unless otherwise terminated as provided in **Section 12**, this Agreement shall become effective on the Effective Date and shall terminate when all of the PHI provided by Covered Entity or a Covered Entity to Business Associate, or created or received by Business Associate on behalf of Business Associate or a Covered Entity, is destroyed or returned to Business Associate, or, if it is infeasible to return or destroy Protected Health Information, protections are extended to such information, in accordance with the termination provisions in this Section.

11.     **Termination**

11.1    <u>Termination by Covered Entity</u>. As provided for under 45 CFR 164.504(e)(2)(iii), Covered Entity may immediately terminate this Agreement, all relevant Services Agreement(s) and any related agreements if Covered Entity makes the determination that Business Associate has breached a material term of this Agreement. Alternatively, and in the sole discretion of Covered Entity, Covered Entity may choose to provide Business Associate with written notice of the existence of the breach and provide Business Associate an opportunity to cure said breach upon mutually agreeable terms. Failure by Business Associate to cure said breach or violation in the manner set forth above shall be grounds for immediate termination of the Services Agreement by

Covered Entity. If cure or termination is not feasible, Covered Entity shall report the problem to the Secretary.

12. **Disposition of PHI Upon Termination/Effect of Termination**. Upon termination pursuant to Section 11, Business Associate agrees to return to Covered Entity or destroy all PHI received from Covered Entity or a Covered Entity, or created or received by Business Associate on behalf of Covered Entity or a Covered Entity pursuant to 45 CFR§ 164.504(e)(2)(I). This provision shall apply to PHI that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the PHI. Prior to doing so, the Business Associate further agrees to recover any PHI in the possession of its subcontractors or agents. If it is not feasible for the Business Associate to return or destroy all PHI, the Business Associate will notify Covered Entity in writing. Such notification shall include: (i) a statement that the Business Associate has determined that it is infeasible to return or destroy the PHI in its possession, and (ii) the specific reasons for such determination. Upon mutual agreement of the parties that return or destruction of Protected Health Information is infeasible, Business Associate further agrees to extend any and all protections, limitations and restrictions contained in this Agreement to the Business Associate's use and/or disclosure of any PHI retained after the termination of this Agreement, and to limit any further uses and/or disclosures of PHI to the purposes that make the return or destruction of the PHI not feasible, for so long as Business Associate maintains such PHI. This Section 12 shall survive the termination of the Services Agreement or this Agreement.

13. **Permissible Requests by Covered Entity**. Except as set forth in Sections 3 and 4 of this Agreement, Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule if done by the Covered Entity.

14. **Regulatory References**. A reference in this Business Associate Agreement to a section in HIPAA, HIPAA Regulations or the HITECH Act means the section as in effect or as amended or modified from time to time, including any corresponding provisions of subsequent superseding laws or regulations.

15. **Amendments/Waiver**. Except as set forth herein, this Agreement may not be modified, nor shall any provision be waived or amended, except in a writing duly signed by authorized representatives of the Parties. Upon enactment of any law, regulation, court decision or relevant government publication and/or interpretive policy affecting the use or disclosure of PHI, Covered Entity, by written notice to Business Associate may amend this Agreement in such manner as Covered Entity deems necessary to comply with same. The failure of either Party to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement or the right of either Party thereafter to enforce each and every such provision.

16. **Notices**. Any notice required or permitted under this Agreement shall be given in writing and delivered by hand, via a nationally recognized overnight delivery services (e.g., Federal Express), or via registered mail or certified mail, postage pre-paid and return receipt requested, to the following:

Business Associate:          MetalQuest, Inc.
                             P.O. Box 46364
                             Cincinnati, OH 45246
                             Attn: William L. Jansen
                             President

6

Covered Entity: Richard Arrowsmith, Liquidating Trustee of the
HDL Liquidating Trust
Hirschler Fleischer, P.C.
2100 East Cary Street, P.O. Box 500
Richmond, VA 23223
Attn: Robert S. Westermann, Esq.

Notice of a change in address of one of the parties shall be given in writing to the other party as provided above.

17.   **Counterparts/Facsimiles**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original. Facsimile copies hereof shall be deemed to be originals.

18.   **Choice of Law**. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Ohio except to the extent federal law applies. The parties hereby submit to the jursdiction of the courts located in the State of Ohio, Hamilton County including any appellate court thereof.

19.   **Indemnification**. Business Associate agrees to indemnify, defend and hold harmless Covered Entity and it owners, employees, directors/trustees, members, professional staff, representatives and agents (collective, the "Indemnitees") from and against any and all claims (whether in law or in equity), obligations, actions, causes of action, suits, debts, judgments, losses, fines, penalties, damages, expenses (including attorney's fees), liabilities, lawsuits or costs incurred by the Indemnitees which arrive or result from a breach of the terms and conditions of this Business Associate Agreement or a violation of HIPAA, the HITECH Act or HIPAA Regulations by Business Associate or its employees or agents. Business Associate's indemnification obligations hereunder shall not be subject to any limitations of liability or remedies in the Services Agreement.

20.   **Third Party Beneficiaries**. Nothing in this Agreement shall be construed to create any third party beneficiary rights in any person.

21.   **Interpretation**. Any ambiguity in this Agreement shall be resolved to permit Business Associate and its client Covered Entities to comply with HIPAA, HIPAA Regulations and the HITECH Act.

[Signature Page Follows]

**INTENDING TO BE LEGALLY BOUND**, the Parties hereto have duly executed this Agreement as of the Effective Date.

**Business Associate**

Signed: _William L. Jansen_

Print   Name:   William  L.  Jansen

Title:   President  &  CEO

**Covered Entity**

Signed: _Richard Arrowsmith_

Print Name:   Richard Arrowsmith

Title:   Liquidating Trustee